MAUREEN E. McCLAIN (State Bar No. 062050)
Email: mcclain@kmm.com
ALEX HERNAEZ (State Bar No. 201441)
Email: hernaez@kmm.com
MATTHEW P. VANDALL (State Bar No. 196962)
Email: vandall@kmm.com
KAUFF McCLAIN & McGUIRE LLP
One Post Street, Suite 2600
San Francisco, California 94104
Telephone:    (415) 421-3111
Facsimile:    (415) 421-0938

Attorneys for Defendants
ALTA BATES SUMMIT MEDICAL CENTER,
RUSSELL D. STANTEN, M.D., LEIGH I.G.
IVERSON, M.D., STEVEN A. STANTEN, M.D., and
WILLIAM M. ISENBERG, M.D., Ph.D.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX, JR., M.D., as an individual and in his representative capacity under Business & Professions Code Section 17200 et seq.,<br><br>Plaintiff,<br><br>v.<br><br>RUSSELL D. STANTEN, M.D., LEIGH I.G. IVERSON, M.D., STEVEN A. STANTEN, M.D., WILLIAM M. ISENBERG, M.D., Ph.D., ALTA BATES SUMMIT MEDICAL CENTER and does 1 through 100,<br><br>Defendants. | CASE NO. C 07-2486 WHA<br><br>**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**<br><br>**DATE:**    July 5, 2007<br>**TIME:**    8:00 a.m.<br>**DEPT:**    Ctrm. 9, 19th Flr.<br>**JUDGE:**  Hon. William H. Alsup<br><br>**COMPLAINT FILED:**  May 9, 2007<br>**TRIAL DATE:**    No date set. |

Defendants Alta Bates Summit Medical Center; Russell D. Stanten, M.D.;

Leigh I.G. Iverson, M.D.; Steven A. Stanten, M.D.; and William M. Isenberg, M.D., Ph.D.

hereby request that the Court take judicial notice of the following documents pursuant to

Federal Rule of Evidence 201:

Exhibit A:    The Verified Complaint that was filed by Plaintiff Coyness L.

Ennix, Jr., M.D., in the Superior Court for Alameda County on April 3, 2007 (Case No.

RG 0718658) (the "State Court Action").  *See Hott v. City of San Jose*, 92 F. Supp. 2d

KAUFF, McCLAIN
& McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA  94104
TELEPHONE (415) 421-3111

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE                    CASE NO. C 07-2486 WHA

1  996, 998 (N.D. Cal. 2000) ("Pursuant to Federal Rule of Evidence 201, the Court may

2  take judicial notice of papers filed in other courts.").

3               **Exhibit B**:    The Notice of Entry of Dismissal (without prejudice) of the

4  State Court Action which was executed on May 11, 2007.  *See Hott*, 92 F. Supp. 2d at

5  998.

6               **Exhibit C**:    The Complaint in this action is attached for the Court's

7  convenience as Exhibit C hereto.

8               Defendants also request, pursuant to Federal Rule of Evidence 201, that

9  the Court take judicial notice of the February 2003 Summit Medical Staff of Alta Bates

10  Summit Medical Center Bylaws cover page, the table of contents, Article II ("Purposes

11  and Responsibilities"), Section 3.4 ("Basic Responsibilities of Medical Staff

12  Membership"), Article VII ("Corrective Action"), Article VIII ("Interviews, Hearings and

13  Appellate Reviews"), Article IX ("Officers"), Article X ("Clinical Departments and

14  Services"), Article XI ("Committees"), and Article XIII ("Records and Proceedings of the

15  Medical Staff"), as well as true and correct copies of the above sections adopted

16  effective June 2005 and June 2006 (attached as Exhibits A, B and C, respectively, to the

17  Declaration of William M. Isenberg, M.D., Ph.D., in Support of Defendants' Special

18  Motion to Strike Plaintiff's Complaint Under C.C.P. 425.16, filed concurrently herewith.

19  *See Paulson v. Carter*, 2005 U.S. Dist. LEXIS 10724, *29 n.2 (D. Or. 2005) (taking

20  judicial notice of Hospital Bylaws where the Complaint referenced one of the Bylaws);

21  *see also Hott,* 92 F. Supp. 2d at 998 ("The court's review [on a Rule 12(b)(6) motion to

22  dismiss] is limited to the face of the complaint, documents referenced by the complaint,

23  ///

24  ///

25  ///

26

27

28

KAUFF, McCLAIN
& McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA  94104
TELEPHONE (415) 421-3111

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE                          CASE NO. C 07-2486 WHA

1    and matters of which the court may take judicial notice."); *see also* Exhibit C (Complaint)

2    at ¶ 28 (referencing Article VII, Section 8.36 of the [Summit] Medical Staff Bylaws).

3    DATED:  May 30, 2007                    Respectfully submitted,

4                                            KAUFF McCLAIN & McGUIRE LLP

5

6                                            By: _____/S/_____

7                                                  MATTHEW P. VANDALL

8                                            Attorneys for Defendants
                                             ALTA BATES SUMMIT MEDICAL
9                                            CENTER; RUSSELL D. STANTEN, M.D.,
                                             LEIGH I.G. IVERSON, M.D., STEVEN A.
10                                           STANTEN, M.D., and WILLIAM M.
                                             ISENBERG, M.D., Ph.D.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAUFF, McCLAIN
& McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA  94104
TELEPHONE (415) 421-3111

-3-

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE                         CASE NO. C 07-2486 WHA

EXHIBIT A

04-02-2007   02:45pm   From-MOSCONE EMBLIDGE & QUADRA LLP        +4159840414        T-659   | *5512970*

FILED ALAMEDA COUNTY

APR -3 2007

CLERK OF SUPERIOR COURT

BY *Alphonsine Oates*
DEPUTY

1   G. SCOTT EMBLIDGE, State Bar No. 121613
    RACHEL J. SATER, State Bar No. 147976
2   ANDREW E. SWEET, State Bar No. 160870
    MOSCONE, EMBLIDGE, & QUADRA, LLP
3   220 Montgomery Street, Suite 2100
    San Francisco, California 94104-4238
4   Telephone:    (415) 362-3599
    Facsimile:    (415) 362-2006
5
6   Attorneys for Coyness L. Ennix Jr., M.D.

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                       COUNTY OF ALAMEDA

9

10  COYNESS L. ENNIX JR., M.D., as an        Case No.: ____ **P G0 7 3 1 8 6 5 3**
    individual and in his representative
11  capacity under Business & Professions
    Code § 17200 *et seq.*,                  **COMPLAINT RE:**
12                                           **(1) RACE DISCRIMINATION;**
            Plaintiff,                       **(2) VIOLATION OF UNRUH ACT;**
13                                           **(3) VIOLATION OF CARTWRIGHT**
        vs.                                  **ACT;**
14                                           **(4) TORTIOUS INTERFERENCE**
    RUSSELL D. STANTEN, M.D., LEIGH          **WITH RIGHT TO PRACTICE**
15  I. G. IVERSON, M.D., STEVEN A.           **PROFESSION;**
    STANTEN, M.D., WILLIAM M.                **(5) BUSINESS & PROFESSIONS**
16  ISENBERG, M.D., Ph.D., ALTA BATES        **CODE § 17200,** *et seq.*
    SUMMIT MEDICAL CENTER and does
17  1 through 100,                           **DEMAND FOR JURY TRIAL**

18          Defendants.

19

20

21

22                              **NATURE OF ACTION**

23      1.      This case arises out of the concerted effort of medical doctors Steven A. Stanten,

24  M.D., Russell D. Stanten, M.D., Leigh I.G. Iverson, M.D., and William M. Isenberg, M.D., Ph.

25  D. (collectively "Individual Defendants") and Alta Bates Summit Medial Center ("Alta Bates

26  Summit") to destroy the career of Plaintiff Coyness L. Ennix Jr., M.D. ("Plaintiff or "Dr.

27  Ennix"), a highly experienced and accomplished African American cardiac surgeon.  Defendants

28  sponsored, initiated and/or participated in a lengthy sham peer review process that falsely sought

1
COMPLAINT

1   to blame Dr. Ennix for complications some patients experienced during or following cardiac

2   surgery—unsurprising complications all Defendants knew did not reflect any lack of skill or

3   attention by Dr. Ennix.  After subjecting Dr. Ennix to months of an unwarranted and humiliating

4   review process, Alta Bates Summit suspended Dr. Ennix's surgical privileges based on

5   demonstrably false accusations that Dr. Ennix had neglected patients, and then reinstated Dr.

6   Ennix's surgical privileges only upon the condition that he have a proctor present at all surgeries.

7   During this proctorship period, Defendant Isenberg, then President of the Medical Staff of the

8   Summit Campus, Alta Bates Summit, summarily suspended Dr. Ennix a second time without

9   justification and without first consulting the proctors.  Months later, Defendants refused to

10   remove the proctoring requirement even after the panel of proctors—having observed twenty-

11   nine of Dr. Ennix's surgeries—unanimously called for the lifting of the proctoring restriction.

12   Dr. Ennix suffered hundreds of thousands of dollars in lost income, devastating damage to his

13   reputation, and emotional distress as a result of Defendants' groundless and malicious actions.

14   Dr. Ennix is informed and believes that Alta Bates Summit has not subjected a white surgeon to

15   such harsh and unjustified treatment.

16       2.    Throughout this tortuous peer review process, all evaluations of Dr. Ennix's

17   performance provided by qualified, disinterested experts found no deviation from the standard of

18   care and no justification for the restrictions placed on Dr. Ennix's privileges.  Indeed, the

19   Medical Board of California, after evaluating cases in question and the actions taken against Dr.

20   Ennix, concluded that "[t]here is no evidence whatsoever, in these reviewed cases, that the

21   conduct of Dr. Ennix, preoperatively, intraoperatively, or postoperatively, has violated the

22   standard of practice in cardiac surgery."  Thus, Defendants could not reasonably have believed

23   that the restrictions they imposed on Dr. Ennix were warranted by the facts or furthered quality

24   health care; rather, their actions were motivated by malice and racial discrimination.

25       3.    This lawsuit claims race discrimination (42 U.S.C. Section 1981), violations of

26   the Unruh Act (California Civil Code Section 51 *et seq.*), interference with Dr. Ennix's right to

27   practice his profession, violations of the Cartwright Act (California Business & Professions Code

28   Section 16700, *et seq.*), and violations of California's Unfair Competition Law (Business &

1  Professions Code Section 17200, *et seq.*), against Alta Bates Summit, the Individual Defendants

2  and Does 1-100.  As detailed below, Alta Bates Summit and the Individual Defendants have

3  discriminated against Dr. Ennix based on his race, conspired to injure Dr. Ennix's business

4  prospects and reputation, and otherwise caused damage to Dr. Ennix and his career.

5                              **PARTIES AND JURISDICTION**

6      4.    Plaintiff Coyness L. Ennix Jr., M.D., is a certified cardiac and thoracic surgeon

7  and the only African American lead cardiac surgeon at Alta Bates Summit.  Dr. Ennix obtained

8  certification by the American Board of Surgery in 1978 and the American Board of Thoracic and

9  Cardiac Surgery in 1980, 1989 and 1999.  Dr. Ennix currently has surgical privileges at the

10 Summit and Alta Bates Campuses of Alta Bates Summit, Doctors Hospital in San Pablo,

11 Highland General Hospital in Oakland, San Ramon Medical Center in San Ramon, and Valley

12 Care Hospital in Livermore.  During the time period relevant to this suit, Dr. Ennix held surgical

13 privileges at Alta Bates Summit, Summit Campus, and Doctors Hospital in San Pablo.  Dr. Ennix

14 has held numerous hospital administrative appointments, including Medical Director and Chief

15 of Cardiac Surgery at Alta Bates Medical Center; Chairman of the Cardiac Surgery Quality

16 Management Committee at Alta Bates; Editor-in-Chief of the Alta Bates Cardiac & Vascular

17 Rounds Newsletter; and Director of the Annual Cardiology Conference at Alta Bates.  Dr. Ennix

18 has also served on the Sutter Cardiac Services Oversight Committee.  Dr. Ennix's teaching

19 appointments have included Assistant Clinical Professor of Surgery at the University of

20 California and Assistant Professor of Surgery at Baylor College of Medicine in Houston, Texas.

21 Dr. Ennix is the founder and past president of the Bay Area Society of Thoracic Surgeons and

22 past president of the California affiliate of the American Heart Association.  He received the

23 Frank Jordan Outstanding Citizen Award and American Heart Association Honored Citizen

24 Award for his professional and civic contributions.  Dr. Ennix has written and lectured

25 extensively in his field of cardiac surgery.  Dr. Ennix currently serves as Secretary of the Bay

26 Area Society of Thoracic Surgeons, President of the Marcus Foster Educational Institute,

27 member of the Clinical Advisory Panel of the California CABG Outcomes Reporting Program

28 and Co-Chairman of Mayor Ron Dellums' Oakland Health Task Force.

5.  Dr. Ennix resides in Piedmont, California.  Plaintiff sues on his own behalf and on behalf of the general public.

6.  During the period of time relevant to this suit, Dr. Ennix, Defendant Russell Stanten, Defendant Leigh Iverson and Junaid Khan, M.D. co-owned a cardiac surgery partnership known as East Bay Cardiac Surgery Center, Medical Group.

7.  Plaintiff is informed and believes that defendant Alta Bates Summit is a non-profit entity doing business in Oakland and Berkeley, California.

8.  Defendant Steven Stanten, M.D. is Chair of the Department of Surgery and the Surgical Peer Review Committee at Alta Bates Summit, Summit Campus.  Plaintiff is informed and believes that Steven Stanten is a resident of Contra Costa County.

9.  Defendant Russell D. Stanten, M.D. is a cardiac surgeon at the Summit Campus of Alta Bates Summit and is the brother of Defendant Steven Stanten.  Russell Stanten was a member of the Surgical Peer Review Committee, Chief of Cardiac Surgery and a partner in the East Bay Cardiac Surgery Center, Medical Group during the time relevant to this suit.  Plaintiff is informed and believes that Russell Stanten is a resident of Contra Costa County.

10.  Defendant Leigh I.G. Iverson ("Iverson") was a cardiac surgeon at Alta Bates Summit, a member of the Surgical Peer Review Committee and a partner in the East Bay Cardiac Surgery Center, Medical Group during the time relevant to this suit.  Plaintiff is informed and believes that Iverson is a resident of Monterey County.

11.  Defendant William M. Isenberg, M.D., Ph.D. ("Isenberg") is a member of the Medical Executive Committee at the Summit Campus of Alta Bates Summit and was the President of the Medical Staff, Summit Campus, at Alta Bates Summit during the time period relevant to this suit.

12.  Plaintiff is informed and believes that Defendants, and each of them, including all Doe Defendants, were at all times relevant the agents and/or employees of every other Defendant, and in doing the things herein alleged were acting within the course and scope of that agency and with the knowledge and/or consent of each co-Defendant.  Plaintiff is further informed and believes that each of the Defendants herein gave consent to, ratified, and

1   authorized the acts alleged herein to each of the remaining Defendants.  Defendants are sued

2   both in their own right and on the basis of respondeat superior.

3       13.    The true names and capacities of Defendants named herein as Does 1 through

4   100, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff,

5   who therefore sues such Defendants by such fictitious names pursuant to California Code of

6   Civil Procedure § 474.  Plaintiff is informed and believes that Doe Defendants are California

7   residents and/or unknown business entities authorized to do business in the State of California.

8   Plaintiff will amend this complaint to show the true names and capacities of such Doe

9   Defendants when and as they have been determined.

10      14.    Plaintiff is informed and believes that each Defendant is responsible for Plaintiff's

11   damages as alleged herein and each is jointly and severally liable with all other Defendants.

12      15.    Venue is proper because Defendant Alta Bates Summit has its principal place of

13   business in Alameda County.

14                              **ALLEGATIONS**

15      16.    From 1981 to 1993, Dr. Ennix was a partner in a five-person cardiac surgery

16   group which included Iverson, practicing at Summit Hospital in Oakland.  In 1993, Dr. Ennix

17   and another partner, Dr. J. Nilas Young ("Young"), separated from the group and commenced an

18   independent cardiac surgery program at Alta Bates Hospital in Berkeley.  The Alta Bates

19   program proved to be very lucrative for Drs. Ennix and Young, which lead to resentment and

20   friction among Dr. Ennix's former partners, including Iverson.

21      17.    In April 2001, Dr. J. Nilas Young left the practice at the Alta Bates Campus.  In

22   the fall of 2001, Dr. Ennix merged his practice with that of Junaid Khan, M.D., and Defendants

23   Iverson and Russell Stanten to form the East Bay Cardiac Surgery Center, Medical Group.  Dr.

24   Ennix championed the cause of consolidating cardiac surgeries from Alta Bates with cardiac

25   surgeries at the Summit Campus.  In the Fall of 2002, the medical staff and administration agreed

26   to close the Alta Bates cardiac surgery program.

27      18.    In 2003, Dr. Ennix was the busiest surgeon performing cardiac procedures among

28   the private doctors practicing at the Summit Campus.  During that year, Dr. Ennix began

1   promoting the idea of developing a minimally invasive cardiac surgery and robotic surgery

2   program at Summit.  Minimally invasive cardiac surgery was a relatively new technique

3   requiring specialized equipment and training.  The technique allows surgeons to perform cardiac

4   surgery by way of a small incision on the side of the rib cage, instead of by opening the chest at

5   the sternum, which can cause substantial noticeable scarring.  In partnership with the Alta Bates

6   Foundation, Dr. Ennix helped to raise one million dollars to fund purchase of the robot, and

7   attended numerous training programs throughout the United States on minimally invasive and

8   robotic techniques.  Defendant Steven Stanten, chair of the Department of Surgery, was

9   interested in the use of the robot for general surgery and assisted in the establishment of a

10  Robotic Surgical Program at Summit.

11          19.     In January and February of 2004, Dr. Ennix performed four minimally invasive

12  cardiac surgery procedures (also known as "Heart Port" procedures) at the Summit Campus.  In

13  these cases, Dr. Ennix and the surgical staff encountered issues such as prolonged procedure

14  time, increased blood usage and conversion to the more traditional approach.  None of these

15  issues was unexpected given the newness of the minimally invasive surgical technique

16  employed.  Nevertheless, these four cases came to the attention of the Defendant Steven Stanten,

17  Chair of the Department of Surgery and Chair of the Surgical Peer Review Committee ("SPRC")

18  at the Summit Campus, who called for a moratorium on all minimally invasive cardiac surgery

19  procedures, pending further evaluation.  Dr. Ennix was the only surgeon to have completed any

20  minimally invasive cardiac procedures at that time, and Dr. Ennix suspended use of this

21  technique in compliance with the moratorium.  Dr. Steven Stanten asked another cardiac

22  surgeon, Dr. Hon Lee, an Asian American and a member of the Kaiser Permanente Medical

23  Group, to review the four minimally invasive surgeries with regard to the standard of care.  Dr.

24  Lee concluded that there were no patient care concerns on any of the four cases.

25          20.     The SPRC reviewed Dr. Lee's report on April 10, 2004.  The SPRC included

26  Chair Steven Stanten (a general surgeon), his brother Russell Stanten and Iverson—the sole

27  cardiac surgeons on the committee and Dr. Ennix's partners—as well as a urologist, an

28  Ear/Nose/Throat Specialist and several general surgeons.  Despite Dr. Lee's clearing of the four

6

COMPLAINT

10561351.tif - 4/2/2007 2:50:08 PM

04-02-2007  02:46pm  From-MOSCONE EMBLIDGE & QUADRA LLP          +4159840414          T-659  P.010/018  F-203

1   cases of any patient care issues and despite his own lack of expertise in cardiac surgery, Steven

2   Stanten expressed his concern that the cases presented care issues.  Minutes from this meeting

3   reflect that the SPRC questioned whether the long operating times were justified by the new

4   technique and expressed concern regarding Dr. Ennix's overall patient selection, technical skills,

5   and judgment.  The SPRC declined to accept Dr. Lee's findings that issues with the cases were

6   of documentation, not care.  Dr. Ennix was not afforded an opportunity to address the SPRC

7   regarding the four minimally invasive cases or the general concerns referred to in the minutes.

8   Plaintiff is informed and believes that his partners Iverson and Russell Stanten supported Steven

9   Stanten's initiative to further investigate Dr. Ennix in spite of Dr. Lee's report: as the only

10  cardiac surgeons on the SPRC, their opinions would have carried significant weight with the

11  SPRC.

12       21.    On April 16, 2004, Dr. Steven Stanten and Dr. Isenberg informed Dr. Ennix of the

13  SPRC's conclusions regarding the four minimally invasive procedures and other generalized

14  concerns.  Steven Stanten and Isenberg also informed Dr. Ennix that the moratorium on

15  performing minimally invasive procedures had been lifted, allowing other surgeons, such as

16  Steven Stanten's brother, Russell Stanten, to perform minimally invasive cardiac surgery

17  procedures.  However, Steven Stanten and Isenberg recommended that Dr. Ennix continue to

18  refrain from performing the minimally invasive cardiac surgery procedures until the issues raised

19  by the SPRC could be resolved by an ad hoc committee.  Thereafter, despite the fact that Dr.

20  Ennix had voluntarily suspended performing minimally invasive procedures before the SPRC

21  decided to investigate his performance, Isenberg submitted a report to the Medical Board of

22  California and the National Practitioner Data Bank stating that Dr. Ennix had suspended use of

23  the procedure while under investigation.

24       22.    Several months later, Isenberg and the MEC established an Ad Hoc Committee

25  ("AHC") to review the four minimally invasive procedures and the other generalized concerns

26  discussed in the April 10, 2004 SPRC meeting.  Although there were ten cardiac surgeons and

27  more than forty cardiologists on the medical staff, the AHC did not include any cardiac surgeons

28  or cardiologists.  Defendant Isenberg, President of the Medical Staff, appointed Lamont Paxton

10561351.tif - 4/2/2007 2:50:08 PM

1  to be Chairman of the AHC. Paxton was a member of the SPRC who had presumably attended

2  the April 10, 2004 meeting and knew of comments regarding Dr. Ennix by Steven Stanten and

3  Dr. Ennix's business partners Russell Stanten and Iverson.

4        23.      After many months of delay, and without affording Dr. Ennix the opportunity to

5  appear before the AHC despite his requests, on January 4, 2005, the AHC requested that a

6  private, outside peer review organization called National Medical Audit ("NMA") review not

7  only the four minimally invasive cases, but also an additional six cases that had previously

8  undergone peer review by the Summit Cardiac Surgery Peer Review Committee and had been

9  found to present no patient care issues. Dr. Ennix objected to the referral to NMA, which

10 appeared to be a sham outfit, comprised of a nephrologist who had not practiced medicine in

11 many years, a surgeon with a very poor performance record, and a surgeon who had never

12 practiced in California. On May 3, 2005, the NMA returned an unsigned report harshly

13 criticizing Dr. Ennix's performance on all ten of the reviewed cases. The NMA report was at

14 odds with the Summit Cardiac Surgery Peer Review, Dr. Lee's report, subsequent reviews of the

15 cases by several nationally renowned cardiac surgeons and, ultimately, the review by the

16 Medical Board of the State of California.

17       24.      On May 4, 2005, Dr. Ennix performed an operation in which he replaced two

18 valves in a young male patient ("double valve patient"). The surgery went very well. The next

19 day, Dr. Ennix performed surgery on two very ill patients. That day, Dr. Ennix made rounds on

20 the double valve patient twice—once in the morning and once in the afternoon—as is

21 documented in the nurses' notes. Dr. Ennix did not himself note his rounds on the double valve

22 patient because he was busy with the two surgeries scheduled that day. The next day, May 6,

23 2005, Dr. Ennix made rounds on the double valve patient again, noted those rounds, and then

24 noted his previous rounds on that patient which he had been unable to record the day before.

25       25.      On May 11, 2005, Defendant Isenberg, President of the Medical Staff, summarily

26 suspended Dr. Ennix alleging that he had placed the double valve patient in danger by not

27 making rounds on the patient on May 5th. Isenberg accused Dr. Ennix of not only failing to see

28 the double valve patient, but also of falsifying the record claiming that he had seen the patient.

1  Dr. Ennix produced a letter from the on-duty nurse as well as nurses' notes verifying that he had

2  seen the patient more than once on May 5th.  Despite this, the MEC upheld the suspension on

3  May 18, 2005 pending the outcome of the AHC process.

4       26.    Faced with a complete loss of his ability to practice, Dr. Ennix asked Dr. Isenberg

5  to at least allow him to continue surgical assisting.  The MEC accepted Dr. Ennix's proposal.

6       27.    Dr. Ennix requested a hearing pursuant to Article VIII, Section 8.36 of the

7  Medical Staff Bylaws to review Isenberg's summary suspension and the MEC's subsequent

8  upholding of that suspension.  However, Isenberg and Alta Bates Summit insisted that no hearing

9  rights attached to these actions because Dr. Ennix "expressly stipulated" to surgical assisting in

10  lieu of suspension.

11       28.    Despite the fact that the medical staff includes several other cardiac surgeons,

12  plaintiff is informed and believes that the AHC solicited the help of Dr. Ennix's partners Russell

13  Stanten and Iverson—both of whom had participated in the initial SPRC meetings regarding Dr.

14  Ennix initiated by Steven Stanten, the brother of Russell Stanten—to help determine the validity

15  of the NMA report.  Russell Stanten concluded that the report was very thorough and valid.  The

16  AHC delivered a harsh review of Dr. Ennix that recommended reinstating Dr. Ennix's surgical

17  privileges subject to the requirement that he have a proctor present.  On September 7, 2005, the

18  MEC upheld the AHC's report and recommendation.

19       29.    Approximately forty-five days later, Alta Bates Summit gave Dr. Ennix two

20  choices: either appeal the MEC's decision and remain suspended indefinitely or accept a

21  condition that he have a proctor present at all his surgeries.  In order to begin rebuilding his

22  surgical practice as quickly as possible, Dr. Ennix was forced to opt for the latter course.  On

23  October 25, 2005, Dr. Ennix voluntarily separated from his business partners, secured six staff

24  cardiac surgeons from the Kaiser Permanente Medical Group to serve as proctors, and began a

25  solo cardiac surgery practice which he retains today.

26       30.    On December 30, 2005, in the final days of Isenberg's tenure as President of the

27  Medical Staff, Dr. Isenberg, an obstetrician and gynecologist, again summarily suspended Dr.

28  Ennix' privileges without justification.  Further, Isenberg imposed the summary suspension

1 | without first consulting the proctors who had been observing Dr. Ennix' surgeries. After

2 | consulting officers of the MEC, Dr. Isenberg reinstated Dr. Ennix' proctor-restricted privileges

3 | on January 6, 2006.

4 |      31.    On April 19, 2006, the proctors reported on the twenty-nine surgical cases they

5 | had proctored, stating that "[i]t was the unanimous opinion that Dr. Ennix met" or exceeded

6 | expectations in pre-operative and post-operative phases, and met the standard of care in the peri-

7 | operative phases. The proctors went on to state "'[i]t is with unanimous decision from the group

8 | of proctors, that we recommend the proctorship be terminated and that Dr. Ennix be reinstated to

9 | the medical staff with full unrestricted privileges."

10 |      32.    Despite the proctors' evaluation and recommendation, the MEC voted to continue

11 | the proctorship requirement, stating that 29 cases was an insufficient number. The MEC finally

12 | voted to remove the proctoring requirement on July 11, 2006.

13 |      33.    Dr. Ennix endured fourteen months of restricted privileges, costing him and his

14 | family hundreds of thousands of dollars in lost profits, emotional distress and damage to his

15 | reputation. Until only recently, Dr. Ennix' cases were subject to ongoing review by the Chief of

16 | Cardiac Surgery, Dr. Russell Stanten, upon the recommendation of the AHC. Plaintiff is

17 | informed and believes that each Defendant, and especially Plaintiff's former partners and fellow

18 | cardiac surgeons Russell Stanten and Leigh Iverson, knew that the four minimally invasive cases

19 | were not below the standard of care, particularly in light of Dr. Hon Lee's report confirming this.

20 | Plaintiff is further informed and believes that Steven Stanten, Russell Stanten, Isenberg and

21 | Iverson knew that the other cases reviewed by the AHC were within the standard of care, as the

22 | Summit Cardiac Surgery Peer Review Committee had concluded. Plaintiff is further informed

23 | and believes that Isenberg and the MEC acted with racially-based malice and in reckless

24 | disregard of the facts in suspending Plaintiff's privileges, and subjected Dr. Ennix to far harsher

25 | treatment than similarly situated white physicians.

26 |      34.    Individual Defendants provided information to the SPRC, AHC, NMA and MEC

27 | that they knew to be false. Defendants' professional review actions—including the SPRC's

28 | decision to review Dr. Ennix's performance notwithstanding that Dr. Lee and the Summit

1  Cardiac Surgery Peer Review Committee had previously determined there had been no breach in

2  the standard of care; Dr. Isenberg's report to the Medical Board of California and the National

3  Practitioner Data Bank that Dr. Ennix suspended use of minimally invasive procedures while

4  under investigation; the MEC"S and SPRC's assignment of the review to the AHC which

5  included no cardiac surgeons or cardiologists, thus ensuring that the AHC would have no means

6  to critically assess the facts; the SPRC's failure to allow Dr. Ennix to address it regarding the

7  issues; the AHC's referral of the matter to the sham peer review outfit NMA; the suspension of

8  Dr. Ennix's privileges based on demonstrably false allegations that he neglected a patient; Dr.

9  Isenberg's second unwarranted summary suspension of Dr. Ennix's privileges; the AHC's heavy

10  reliance on the false, malicious and self-serving representations of Dr. Ennix's partners Russell

11  Stanten and Iverson in their evaluation of the NMA report and Dr. Ennix's performance; the

12  AHC's factually groundless report and recommendation; the MEC's decision on that

13  recommendation to require Dr. Ennix to practice only with a proctor present; and finally the

14  MEC's decision to continue the proctorship requirement despite the unanimous opinion of all six

15  proctors that the requirement should be immediately lifted (collectively "Professional Review

16  Actions")—were not taken in the reasonable belief that they furthered quality health care.  Nor

17  were these actions taken after a reasonable effort to obtain the facts, or in the reasonable belief

18  that the actions were warranted by the facts.  Rather, Defendants took the Professional Review

19  Actions against Dr. Ennix with the malicious and racially-motivated intent to destroy Dr. Ennix's

20  career and eliminate one of the most successful cardiac surgeons practicing at Alta Bates

21  Summit.

22      35.    Plaintiff exhausted all administrative remedies available to him.

23                    **FIRST CAUSE OF ACTION**
               Race Discrimination in violation of 42 U.S.C. § 1981
24                    (Against Alta Bates Summit and Does 1-100)

25      36.    Plaintiff incorporates by reference all paragraphs set forth above as though fully

26  set forth herein.

27

28

37. Alta Bates Summit's conduct as alleged in this complaint violates 42 U.S.C. § 1981, which guarantees that all citizens shall have the same rights under the law as are enjoyed by white citizens.

38. Dr. Ennix is African American.

39. In taking the Professional Review Actions, Alta Bates Summit intended to discriminate against Dr. Ennix on the basis of Dr. Ennix's race and treated Dr. Ennix differently than similarly situated white physicians.

40. Such actions and discrimination concerned Dr. Ennix's abilities to perform his contractual duties with Alta Bates Summit and his patients and Dr. Ennix's abilities to enjoy the benefits, privileges, terms, and conditions of those contractual relationships.

41. Dr. Ennix suffered damages proximately caused by Alta Bates Summit's conduct.

## SECOND CAUSE OF ACTION
Race Discrimination in violation of Unruh Civil Rights Act
(Against Alta Bates Summit and Does 1-100)

42. Plaintiff incorporates by reference all paragraphs set forth above as though fully set forth herein.

43. The Professional Review Actions violate California Civil Code § 51, *et seq.*, which prohibits any business establishment from discriminating against any person on account of race.

44. In taking the Professional Review Actions, Defendants intended to discriminate against Dr. Ennix on the basis of Dr. Ennix's race and treated him differently than they treat similarly situated white physicians.

45. As alleged herein, Defendants specifically discriminated against Dr. Ennix because of Dr. Ennix's race in taking the Professional Review Actions. Defendants denied Dr. Ennix full and equal advantages and privileges because of Dr. Ennix's race.

46. Dr. Ennix suffered damages proximately caused by Defendants' conduct.

12
COMPLAINT

### THIRD CAUSE OF ACTION
Violation of Cartwright Act
(Against Iverson, Russell Stanten, Steven Stanten, William Isenberg and Does 1-100)

47.    Plaintiff incorporates by reference all paragraphs set forth above as though fully set forth herein.

48.    Iverson, Russell Stanten, Steven Stanten and Isenberg formed and operated a conspiracy or combination to provide false information and false opinions regarding Dr. Ennix's professional competence, judgment and skill, to initiate a sham peer review process against Dr. Ennix, and to impose unwarranted and professionally and financially devastating restrictions on his surgical privileges.

49.    The purpose of the conspiracy was to restrain trade by eliminating Dr. Ennix from the pool of lead cardiac surgeons available in his region.

50.    Dr. Ennix suffered damages proximately caused by Defendants' conspiratorial conduct.

### FOURTH CAUSE OF ACTION
Interference with Right to Practice Profession
(Against All Defendants)

51.    Plaintiff incorporates by reference all paragraphs set forth above as though fully set forth herein.

52.    Defendants' conduct as alleged in this complaint violates the common law doctrine that prohibits intentional interference with one's right to practice a profession by means that are either unlawful or that are otherwise lawful, but unprivileged or without sufficient justification.

53.    By taking the Professional Review Actions which were factually unwarranted, not in furtherance of quality health care and motivated by race-based discrimination, Defendants have unlawfully interfered with Dr. Ennix's right to practice his profession without privilege or sufficient justification.

54.    Dr. Ennix suffered damages proximately caused by Defendants' conduct.

13
COMPLAINT

## FIFTH CAUSE OF ACTION
Business & Professions Code Section 17200, *et seq.*
(Against All Defendants)

55.     Plaintiff incorporates by reference all paragraphs set forth above as though fully set forth herein.

56.     The Professional Review Actions violate Business and Professions Code §§ 17200 *et seq.*, which prohibit unlawful, unfair, and/or fraudulent business acts or practices.

57.     As alleged herein, Defendants' Professional Review Actions were unlawful, in that the Actions discriminated against Dr. Ennix based on his race, and lacked factual justification. As such, Defendants' actions constitute an unlawful, unfair, and/or fraudulent business act or practice within the meaning of Business and Professions Code §§ 17200 *et seq.*

58.     Dr. Ennix lost profits and suffered injury in fact as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the defendants, and each of them, as follows:

1.     For an award of compensatory, restitution, disgorgement and other special and general damages according to proof;

2.     For an award of punitive damages;

3.     For an award of interest, including prejudgment interest, at the legal rate;

4.     For an award of costs of suit incurred herein on all causes of action;

5.     For an award of attorneys' fees;

6.     For an injunction pursuant to California Business & Professions Code Section 17203 requiring Alta Bates Summit to take immediate action to prevent future racial-based discrimination against Plaintiff and any Alta Bates Summit employees;

7.     For such other and further relief as this court deems just and proper.

## JURY DEMAND

Plaintiff requests this matter be tried before a jury.

14
COMPLAINT

1    Dated: April 2, 2007                    Respectfully Submitted,

2                                              MOSCONE, EMBLIDGE & QUADRA, LLP

3

4

5                                            By:_____
                                                   G. Scott Emblidge
6                                                  Rachel J. Sater
                                                   Andrew E. Sweet
7
                                             Attorneys for Coyness L. Ennix Jr., M.D.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10561351.tif - 4/2/2007 2:50:08 PM

04-02-2007   02:48pm   From-MOSCONE EMBLIDGE & QUADRA LLP        +4159840414        T-659   P.010/019   F-203

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I, Coyness L. Ennix Jr., M.D., declare as follows:

I am the Plaintiff in *Ennix v. Stanten, et al.*  I have read the foregoing COMPLAINT and know its contents.

I am a party to this action.  The matters stated in the foregoing document are true to my own knowledge, except as to those matters that are stated on information and belief and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 29 day of March 2007, at Oakland California

COYNESS L. ENNIX JR., M.D.

*Ennix v. Stanten, et al.*

**EXHIBIT B**



*5524500*

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name and Address):*

G. Scott Emblidge, SBN 121613
Moscone, Emblidge & Quadra, LLP
220 Montgomery Street
Suite 2100
San Francisco, California 94104

**TELEPHONE NO.:** (415) 362-2599

**CIV-120**

**ATTORNEY FOR** *(Name):*  Plaintiff Coyness L. Ennix Jr., M.D.

Insert name of court and name of judicial district and branch court, if any:

Alameda County Superior Court
Rene C. Davidson Courthouse

**PLAINTIFF/PETITIONER:**  Coyness L. Ennix Jr., M.D.

**DEFENDANT/RESPONDENT:**  Russell D. Stanten, M.D., Leigh I.G. Iverson, M.D., William M. Isenberg, M.D., Ph.D., Alta Bates Summit Medical Cente  and does 1-100.

**NOTICE OF ENTRY OF DISMISSAL AND PROOF OF SERVICE**
- [ ] Personal Injury, Property Damage, or Wrongful Death
  - [ ] Motor Vehicle  [ ] Other
- [ ] Family Law
- [ ] Eminent Domain
- [X] Other *(specify):* Civil Rights

**FOR COURT USE ONLY**

FILED
ALAMEDA COUNTY

MAY 1 1 2007

CLERK OF THE SUPERIOR COURT
By *Guthrie S. Boyle*
                        Deputy

**CASE NUMBER:**

RG07318658

---

**TO ATTORNEYS AND PARTIES WITHOUT ATTORNEYS:**  A dismissal was entered in this action by the clerk as shown on the Request for Dismissal. *(Attach a copy completed by the clerk.)*

Date: May 11, 2007

G. Scott Emblidge
_____
(TYPE OR PRINT NAME OF [X] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

▶  (SIGNATURE)

**BY FAX**

## PROOF OF SERVICE

1. I am over the age of 18 and not a party to this cause. I am a resident of or employed in the county where the mailing occurred. My residence or business address is:

   Moscone, Emblidge & Quadra, LLP  220 Montgomery Street, Suite 2100
   San Francisco, California 94104

2. [X] I served a copy of the Notice of Entry of Dismissal and Request for Dismissal by mailing them, in a sealed envelope with postage fully prepaid, as follows:
   a. [ ] I deposited the envelope with the United States Postal Service.
   b. [X] I placed the envelope for collection and processing for mailing following this business's ordinary practice with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.
   c. Date of deposit:  May 11, 2007
   d. Place of deposit *(city and state):*  San Francisco, CA
   e. Addressed as follows *(name and address):*
      Matt Vandall, Kauff McClain & McGuire LLP
      One Post Street, Suite 2600
      San Francisco, CA 94104

3. [ ] I served a copy of the Notice of Entry of Dismissal and Request for Dismissal by personally delivering copies to the person served as shown below:
   Name:                    Date:           Time:            Address:

4. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: May 11, 2007

Laura Helland
_____
(TYPE OR PRINT NAME)

▶  (SIGNATURE OF DECLARANT)

Form Adopted for Mandatory Use
Judicial Council of California
CIV-120 [Rev. January 1, 2007]

**NOTICE OF ENTRY OF DISMISSAL
AND PROOF OF SERVICE**

Legal
Solutions
Plus

Page 1 of 1

Code of Civil Procedure, § 581 et seq.;
Cal. Rules of Court, rule 3.1390

# EXHIBIT A

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

G. Scott Emblidge, SBN 121613
Moscone, Emblidge & Quadra, LLP
220 Montgomery Street
Suite 2100
San Francisco, CA 94104

TELEPHONE NO.: **(415) 362-3599**

ATTORNEY FOR *(Name)*:   Plaintiff Coyness L. Ennix Jr., M.D.

Insert name of court and name of judicial district and branch court, if any:

Alameda County Superior Court
Rene C. Davidson Courthouse

PLAINTIFF/PETITIONER:  COYNESS L. ENNIX JR., M.D.

DEFENDANT/RESPONDENT:  RUSSELL D. STANTEN, M.D., LEIGH I. G. IVERSON, M.D., STEVEN A. STANTEN, M.D., WILLIAM M. ISENBERG, M.D., Ph.D., ALTA BATES SUMMIT MEDICAL CENTER, and does 1-100.

**REQUEST FOR DISMISSAL**
- [ ] **Personal Injury, Property Damage, or Wrongful Death**
  - [ ] Motor Vehicle   [ ] Other
- [ ] **Family Law**
- [ ] **Eminent Domain**
- [X] **Other** *(specify)*: Civil Rights

FOR COURT USE ONLY

ENDORSED
FILED
ALAMEDA COUNTY

MAY 1 0 2007

CLERK OF THE SUPERIOR COURT
By    CYNTHIA S. BOGLE
                          Deputy

CASE NUMBER:

**- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -**

**1. TO THE CLERK:** Please dismiss this action as follows:

a. (1) [ ] With prejudice       (2) [X] Without prejudice

b. (1) [X] Complaint            (2) [ ] Petition
   (3) [ ] Cross-complaint filed by *(name)*:
   (4) [ ] Cross-complaint filed by *(name)*:
   (5) [ ] Entire action of all parties and all causes of action
   (6) [ ] Other *(specify)*:*

**BY FAX**

on *(date)*:
on *(date)*:

Date:  5/10/07

G. Scott Emblidge, SBN 121613

(TYPE OR PRINT NAME OF  [ ] ATTORNEY  [ ] PARTY WITHOUT ATTORNEY)

* If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

▶ _(signature)_

Attorney or party without attorney for:                (SIGNATURE)

[X] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross - complainant

**2. TO THE CLERK:** Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF  [ ] ATTORNEY  [ ] PARTY WITHOUT ATTORNEY)

** If a cross-complaint-or Response (Family Law) seeking affirmative relief-is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

▶

Attorney or party without attorney for:                (SIGNATURE)

[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross - complainant

*(To be completed by clerk)*

3. [X] Dismissal entered as requested on *(date)*:  5-10-07
4. [ ] Dismissal entered on *(date)*:                                    as to only *(name)*:
5. [ ] Dismissal **not entered** as requested for the following reasons *(specify)*:

6. [ ] a. Attorney or party without attorney notified on *(date)*:
       b. Attorney or party without attorney not notified.  Filing party failed to provide
          [ ] a copy to conform    [ ] means to return conformed copy

Date:  May 10, 2007

Clerk, by _(signature)_ Cindy Bo ___, Deputy

Form Adopted for Mandatory use
Judicial Council of California
CIV-110 [Rev. January 1, 2007]

**REQUEST FOR DISMISSAL**

Legal
Solutions
Plus

Page 1 of 1
Code of Civil Procedure, § 581 et seq.;
Cal. Rules of Court, rule 3.1390

# EXHIBIT C

1   G. SCOTT EMBLIDGE, State Bar No. 121613
    emblidge@meqlaw.com
2   RACHEL J. SATER, State Bar No. 147976
    sater@meqlaw.com
3   ANDREW E. SWEET, State Bar No. 160870
    sweet@meqlaw.com
4   MOSCONE, EMBLIDGE, & QUADRA, LLP
    220 Montgomery Street, Suite 2100
5   San Francisco, California 94104-4238
    Telephone:    (415) 362-3599
6   Facsimile:    (415) 362-2006
7   Attorneys for Plaintiff

**JCS**

8              UNITED STATES DISTRICT COURT FOR THE

9               NORTHERN DISTRICT OF CALIFORNIA

10

11  COYNESS L. ENNIX JR., M.D., as an      C 07      2486
    individual and in his representative
12  capacity under Business & Professions   Case No.: _____
    Code § 17200 *et seq.,*
13
                                            **COMPLAINT RE:**
14           Plaintiff,                      **(1) RACE DISCRIMINATION;**
                                            **(2) VIOLATION OF UNRUH ACT;**
15      vs.                                 **(3) VIOLATION OF CARTWRIGHT**
                                            **ACT;**
16  RUSSELL D. STANTEN, M.D., LEIGH         **(4) TORTIOUS INTERFERENCE**
    I. G. IVERSON, M.D., STEVEN A.          **WITH RIGHT TO PRACTICE**
17  STANTEN, M.D., WILLIAM M.               **PROFESSION;**
    ISENBERG, M.D., Ph.D., ALTA BATES       **(5) CALIFORNIA BUSINESS &**
18  SUMMIT MEDICAL CENTER and does          **PROFESSIONS CODE § 17200,** *et seq.*
    1 through 100,
19                                          **DEMAND FOR JURY TRIAL**
20           Defendants.
21
22                            **JURISDICTION**
23       1.    This action arises under 42 U.S.C. Section 1981 as hereinafter more fully appears.
24                           **NATURE OF ACTION**
25       2.    This case arises out of the concerted effort of medical doctors Steven A. Stanten,
26  M.D., Russell D. Stanten, M.D., Leigh I.G. Iverson, M.D., and William M. Isenberg, M.D., Ph.
    D. (collectively "Individual Defendants") and Alta Bates Summit Medial Center ("Alta Bates
27
    Summit") to destroy the career of Plaintiff Coyness L. Ennix Jr., M.D. ("Plaintiff or "Dr.
28

                                     1
                                 COMPLAINT

1    Ennix"), a highly experienced and accomplished African American cardiac surgeon. Defendants

2    sponsored, initiated and/or participated in a lengthy sham peer review process that falsely sought

3    to blame Dr. Ennix for complications some patients experienced during or following cardiac

4    surgery—unsurprising complications all Defendants knew did not reflect any lack of skill or

5    attention by Dr. Ennix. After subjecting Dr. Ennix to months of an unwarranted and humiliating

6    review process, Alta Bates Summit suspended Dr. Ennix's surgical privileges based on

7    demonstrably false accusations that Dr. Ennix had neglected patients, and then reinstated Dr.

8    Ennix's surgical privileges only upon the condition that he have a proctor present at all surgeries.

9    During this proctorship period, Defendant Isenberg, then President of the Medical Staff of the

10   Summit Campus, Alta Bates Summit, summarily suspended Dr. Ennix a second time without

11   justification and without first consulting the proctors. Months later, Defendants refused to

12   remove the proctoring requirement even after the panel of proctors—having observed twenty-

13   nine of Dr. Ennix's surgeries—unanimously called for the lifting of the proctoring restriction.

14   Dr. Ennix suffered hundreds of thousands of dollars in lost income, devastating damage to his

15   reputation, and emotional distress as a result of Defendants' groundless and malicious actions.

16   Dr. Ennix is informed and believes that Alta Bates Summit has not subjected a white surgeon to

17   such harsh and unjustified treatment.

18        3.      Throughout this tortuous peer review process, all evaluations of Dr. Ennix's

19   performance provided by qualified, disinterested experts found no deviation from the standard of

20   care and no justification for the restrictions placed on Dr. Ennix's privileges. Indeed, the

21   Medical Board of California, after evaluating cases in question and the actions taken against Dr.

22   Ennix, concluded that "[t]here is no evidence whatsoever, in these reviewed cases, that the

23   conduct of Dr. Ennix, preoperatively, intraoperatively, or postoperatively, has violated the

24   standard of practice in cardiac surgery." Thus, Defendants could not reasonably have believed

25   that the restrictions they imposed on Dr. Ennix were warranted by the facts or furthered quality

26   health care; rather, their actions were motivated by malice and racial discrimination.

27        4.      This lawsuit claims race discrimination (42 U.S.C. Section 1981), violations of

28   the Unruh Act (California Civil Code Section 51 *et seq.*), interference with Dr. Ennix's right to

1  practice his profession, violations of the Cartwright Act (California Business & Professions Code

2  Section 16700, *et seq*.), and violations of California's Unfair Competition Law (Business &

3  Professions Code Section 17200, *et seq*.), against Alta Bates Summit, the Individual Defendants

4  and Does 1-100.  As detailed below, Alta Bates Summit and the Individual Defendants have

5  discriminated against Dr. Ennix based on his race, conspired to injure Dr. Ennix's business

6  prospects and reputation, and otherwise caused damage to Dr. Ennix and his career.

7                              **PARTIES AND VENUE**

8         5.       Plaintiff Coyness L. Ennix Jr., M.D., is a certified cardiac and thoracic surgeon

9  and the only African American lead cardiac surgeon at Alta Bates Summit.  Dr. Ennix obtained

10  certification by the American Board of Surgery in 1978 and the American Board of Thoracic and

11  Cardiac Surgery in 1980, 1989 and 1999.  Dr. Ennix currently has surgical privileges at the

12  Summit and Alta Bates Campuses of Alta Bates Summit, Doctors Hospital in San Pablo,

13  Highland General Hospital in Oakland, San Ramon Medical Center in San Ramon, and Valley

14  Care Hospital in Livermore.  During the time period relevant to this suit, Dr. Ennix held surgical

15  privileges at Alta Bates Summit, Summit Campus, and Doctors Hospital in San Pablo.  Dr. Ennix

16  has held numerous hospital administrative appointments, including Medical Director and Chief

17  of Cardiac Surgery at Alta Bates Medical Center; Chairman of the Cardiac Surgery Quality

18  Management Committee at Alta Bates; Editor-in-Chief of the Alta Bates Cardiac & Vascular

19  Rounds Newsletter; and Director of the Annual Cardiology Conference at Alta Bates.  Dr. Ennix

20  has also served on the Sutter Cardiac Services Oversight Committee.  Dr. Ennix's teaching

21  appointments have included Assistant Clinical Professor of Surgery at the University of

22  California and Assistant Professor of Surgery at Baylor College of Medicine in Houston, Texas.

23  Dr. Ennix is the founder and past president of the Bay Area Society of Thoracic Surgeons and

24  past president of the California affiliate of the American Heart Association.  He received the

25  Frank Jordan Outstanding Citizen Award and American Heart Association Honored Citizen

26  Award for his professional and civic contributions.  Dr. Ennix has written and lectured

27  extensively in his field of cardiac surgery.  Dr. Ennix currently serves as Secretary of the Bay

28  Area Society of Thoracic Surgeons, President of the Marcus Foster Educational Institute,

3

COMPLAINT

1  member of the Clinical Advisory Panel of the California CABG Outcomes Reporting Program

2  and Co-Chairman of Mayor Ron Dellums' Oakland Health Task Force.

3      6.    Dr. Ennix resides in Piedmont, California. Plaintiff sues on his own behalf and on

4  behalf of the general public.

5      7.    During the period of time relevant to this suit, Dr. Ennix, Defendant Russell

6  Stanten, Defendant Leigh Iverson and Junaid Khan, M.D. co-owned a cardiac surgery

7  partnership known as East Bay Cardiac Surgery Center, Medical Group.

8      8.    Plaintiff is informed and believes that defendant Alta Bates Summit is a non-

9  profit entity doing business in Oakland and Berkeley, California.

10     9.    Defendant Steven Stanten, M.D. is Chair of the Department of Surgery and the

11  Surgical Peer Review Committee at Alta Bates Summit, Summit Campus. Plaintiff is informed

12  and believes that Steven Stanten is a resident of Contra Costa County.

13     10.   Defendant Russell D. Stanten, M.D. is a cardiac surgeon at the Summit Campus

14  of Alta Bates Summit and is the brother of Defendant Steven Stanten. Russell Stanten was a

15  member of the Surgical Peer Review Committee, Chief of Cardiac Surgery and a partner in the

16  East Bay Cardiac Surgery Center, Medical Group during the time relevant to this suit. Plaintiff

17  is informed and believes that Russell Stanten is a resident of Contra Costa County.

18     11.   Defendant Leigh I.G. Iverson ("Iverson") was a cardiac surgeon at Alta Bates

19  Summit, a member of the Surgical Peer Review Committee and a partner in the East Bay Cardiac

20  Surgery Center, Medical Group during the time relevant to this suit. Plaintiff is informed and

21  believes that Iverson is a resident of Monterey County.

22     12.   Defendant William M. Isenberg, M.D., Ph.D. ("Isenberg") is a member of the

23  Medical Executive Committee at the Summit Campus of Alta Bates Summit and was the

24  President of the Medical Staff, Summit Campus, at Alta Bates Summit during the time period

25  relevant to this suit.

26     13.   Plaintiff is informed and believes that Defendants, and each of them, including all

27  Doe Defendants, were at all times relevant the agents and/or employees of every other

28  Defendant, and in doing the things herein alleged were acting within the course and scope of that

1   agency and with the knowledge and/or consent of each co-Defendant. Plaintiff is further

2   informed and believes that each of the Defendants herein gave consent to, ratified, and

3   authorized the acts alleged herein to each of the remaining Defendants. Defendants are sued

4   both in their own right and on the basis of respondeat superior.

5         14.     The true names and capacities of Defendants named herein as Does 1 through

6   100, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff,

7   who therefore sues such Defendants by such fictitious names pursuant to California Code of

8   Civil Procedure § 474. Plaintiff is informed and believes that Doe Defendants are California

9   residents and/or unknown business entities authorized to do business in the State of California.

10   Plaintiff will amend this complaint to show the true names and capacities of such Doe

11   Defendants when and as they have been determined.

12         15.     Plaintiff is informed and believes that each Defendant is responsible for Plaintiff's

13   damages as alleged herein and each is jointly and severally liable with all other Defendants.

14         16.     Venue is proper in the Northern District because the events that gave rise to the

15   claims occurred in that District.

16                                **ALLEGATIONS**

17         17.     From 1981 to 1993, Dr. Ennix was a partner in a five-person cardiac surgery

18   group which included Iverson, practicing at Summit Hospital in Oakland. In 1993, Dr. Ennix

19   and another partner, Dr. J. Nilas Young ("Young"), separated from the group and commenced an

20   independent cardiac surgery program at Alta Bates Hospital in Berkeley. The Alta Bates

21   program proved to be very lucrative for Drs. Ennix and Young, which lead to resentment and

22   friction among Dr. Ennix's former partners, including Iverson.

23         18.     In April 2001, Dr. J. Nilas Young left the practice at the Alta Bates Campus. In

24   the fall of 2001, Dr. Ennix merged his practice with that of Junaid Khan, M.D., and Defendants

25   Iverson and Russell Stanten to form the East Bay Cardiac Surgery Center, Medical Group. Dr.

26   Ennix championed the cause of consolidating cardiac surgeries from Alta Bates with cardiac

27   surgeries at the Summit Campus. In the Fall of 2002, the medical staff and administration agreed

28   to close the Alta Bates cardiac surgery program.

19.    In 2003, Dr. Ennix was the busiest surgeon performing cardiac procedures among the private doctors practicing at the Summit Campus. During that year, Dr. Ennix began promoting the idea of developing a minimally invasive cardiac surgery and robotic surgery program at Summit. Minimally invasive cardiac surgery was a relatively new technique requiring specialized equipment and training. The technique allows surgeons to perform cardiac surgery by way of a small incision on the side of the rib cage, instead of by opening the chest at the sternum, which can cause substantial noticeable scarring. In partnership with the Alta Bates Foundation, Dr. Ennix helped to raise one million dollars to fund purchase of the robot, and attended numerous training programs throughout the United States on minimally invasive and robotic techniques. Defendant Steven Stanten, chair of the Department of Surgery, was interested in the use of the robot for general surgery and assisted in the establishment of a Robotic Surgical Program at Summit.

20.    In January and February of 2004, Dr. Ennix performed four minimally invasive cardiac surgery procedures (also known as "Heart Port" procedures) at the Summit Campus. In these cases, Dr. Ennix and the surgical staff encountered issues such as prolonged procedure time, increased blood usage and conversion to the more traditional approach. None of these issues was unexpected given the newness of the minimally invasive surgical technique employed. Nevertheless, these four cases came to the attention of the Defendant Steven Stanten, Chair of the Department of Surgery and Chair of the Surgical Peer Review Committee ("SPRC") at the Summit Campus, who called for a moratorium on all minimally invasive cardiac surgery procedures, pending further evaluation. Dr. Ennix was the only surgeon to have completed any minimally invasive cardiac procedures at that time, and Dr. Ennix suspended use of this technique in compliance with the moratorium. Dr. Steven Stanten asked another cardiac surgeon, Dr. Hon Lee, an Asian American and a member of the Kaiser Permanente Medical Group, to review the four minimally invasive surgeries with regard to the standard of care. Dr. Lee concluded that there were no patient care concerns on any of the four cases.

21.    The SPRC reviewed Dr. Lee's report on April 10, 2004. The SPRC included Chair Steven Stanten (a general surgeon), his brother Russell Stanten and Iverson—the sole

1   cardiac surgeons on the committee and Dr. Ennix's partners—as well as a urologist, an

2   Ear/Nose/Throat Specialist and several general surgeons. Despite Dr. Lee's clearing of the four

3   cases of any patient care issues and despite his own lack of expertise in cardiac surgery, Steven

4   Stanten expressed his concern that the cases presented care issues. Minutes from this meeting

5   reflect that the SPRC questioned whether the long operating times were justified by the new

6   technique and expressed concern regarding Dr. Ennix's overall patient selection, technical skills,

7   and judgment. The SPRC declined to accept Dr. Lee's findings that issues with the cases were

8   of documentation, not care. Dr. Ennix was not afforded an opportunity to address the SPRC

9   regarding the four minimally invasive cases or the general concerns referred to in the minutes.

10  Plaintiff is informed and believes that his partners Iverson and Russell Stanten supported Steven

11  Stanten's initiative to further investigate Dr. Ennix in spite of Dr. Lee's report: as the only

12  cardiac surgeons on the SPRC, their opinions would have carried significant weight with the

13  SPRC.

14      22.     On April 16, 2004, Dr. Steven Stanten and Dr. Isenberg informed Dr. Ennix of the

15  SPRC's conclusions regarding the four minimally invasive procedures and other generalized

16  concerns. Steven Stanten and Isenberg also informed Dr. Ennix that the moratorium on

17  performing minimally invasive procedures had been lifted, allowing other surgeons, such as

18  Steven Stanten's brother, Russell Stanten, to perform minimally invasive cardiac surgery

19  procedures. However, Steven Stanten and Isenberg recommended that Dr. Ennix continue to

20  refrain from performing the minimally invasive cardiac surgery procedures until the issues raised

21  by the SPRC could be resolved by an ad hoc committee. Thereafter, despite the fact that Dr.

22  Ennix had voluntarily suspended performing minimally invasive procedures before the SPRC

23  decided to investigate his performance, Isenberg submitted a report to the Medical Board of

24  California and the National Practitioner Data Bank stating that Dr. Ennix had suspended use of

25  the procedure while under investigation.

26      23.     Several months later, Isenberg and the MEC established an Ad Hoc Committee

27  ("AHC") to review the four minimally invasive procedures and the other generalized concerns

28  discussed in the April 10, 2004 SPRC meeting. Although there were ten cardiac surgeons and

1    more than forty cardiologists on the medical staff, the AHC did not include any cardiac surgeons

2    or cardiologists. Defendant Isenberg, President of the Medical Staff, appointed Lamont Paxton

3    to be Chairman of the AHC. Paxton was a member of the SPRC who had presumably attended

4    the April 10, 2004 meeting and knew of comments regarding Dr. Ennix by Steven Stanten and

5    Dr. Ennix's business partners Russell Stanten and Iverson.

6        24.    After many months of delay, and without affording Dr. Ennix the opportunity to

7    appear before the AHC despite his requests, on January 4, 2005, the AHC requested that a

8    private, outside peer review organization called National Medical Audit ("NMA") review not

9    only the four minimally invasive cases, but also an additional six cases that had previously

10   undergone peer review by the Summit Cardiac Surgery Peer Review Committee and had been

11   found to present no patient care issues. Dr. Ennix objected to the referral to NMA, which

12   appeared to be a sham outfit, comprised of a nephrologist who had not practiced medicine in

13   many years, a surgeon with a very poor performance record, and a surgeon who had never

14   practiced in California. On May 3, 2005, the NMA returned an unsigned report harshly

15   criticizing Dr. Ennix's performance on all ten of the reviewed cases. The NMA report was at

16   odds with the Summit Cardiac Surgery Peer Review, Dr. Lee's report, subsequent reviews of the

17   cases by several nationally renowned cardiac surgeons and, ultimately, the review by the

18   Medical Board of the State of California.

19       25.    On May 4, 2005, Dr. Ennix performed an operation in which he replaced two

20   valves in a young male patient ("double valve patient"). The surgery went very well. The next

21   day, Dr. Ennix performed surgery on two very ill patients. That day, Dr. Ennix made rounds on

22   the double valve patient twice—once in the morning and once in the afternoon—as is

23   documented in the nurses' notes. Dr. Ennix did not himself note his rounds on the double valve

24   patient because he was busy with the two surgeries scheduled that day. The next day, May 6,

25   2005, Dr. Ennix made rounds on the double valve patient again, noted those rounds, and then

26   noted his previous rounds on that patient which he had been unable to record the day before.

27       26.    On May 11, 2005, Defendant Isenberg, President of the Medical Staff, summarily

28   suspended Dr. Ennix alleging that he had placed the double valve patient in danger by not

8

COMPLAINT

1 | making rounds on the patient on May 5th. Isenberg accused Dr. Ennix of not only failing to see

2 | the double valve patient, but also of falsifying the record claiming that he had seen the patient.

3 | Dr. Ennix produced a letter from the on-duty nurse as well as nurses' notes verifying that he had

4 | seen the patient more than once on May 5th. Despite this, the MEC upheld the suspension on

5 | May 18, 2005 pending the outcome of the AHC process.

6 |   27.  Faced with a complete loss of his ability to practice, Dr. Ennix asked Dr. Isenberg

7 | to at least allow him to continue surgical assisting. The MEC accepted Dr. Ennix's proposal.

8 |   28.  Dr. Ennix requested a hearing pursuant to Article VIII, Section 8.36 of the

9 | Medical Staff Bylaws to review Isenberg's summary suspension and the MEC's subsequent

10 | upholding of that suspension. However, Isenberg and Alta Bates Summit insisted that no hearing

11 | rights attached to these actions because Dr. Ennix "expressly stipulated" to surgical assisting in

12 | lieu of suspension.

13 |   29.  Despite the fact that the medical staff includes several other cardiac surgeons,

14 | plaintiff is informed and believes that the AHC solicited the help of Dr. Ennix's partners Russell

15 | Stanten and Iverson—both of whom had participated in the initial SPRC meetings regarding Dr.

16 | Ennix initiated by Steven Stanten, the brother of Russell Stanten—to help determine the validity

17 | of the NMA report. Russell Stanten concluded that the report was very thorough and valid. The

18 | AHC delivered a harsh review of Dr. Ennix that recommended reinstating Dr. Ennix's surgical

19 | privileges subject to the requirement that he have a proctor present. On September 7, 2005, the

20 | MEC upheld the AHC's report and recommendation.

21 |   30.  Approximately forty-five days later, Alta Bates Summit gave Dr. Ennix two

22 | choices: either appeal the MEC's decision and remain suspended indefinitely or accept a

23 | condition that he have a proctor present at all his surgeries. In order to begin rebuilding his

24 | surgical practice as quickly as possible, Dr. Ennix was forced to opt for the latter course. On

25 | October 25, 2005, Dr. Ennix voluntarily separated from his business partners, secured six staff

26 | cardiac surgeons from the Kaiser Permanente Medical Group to serve as proctors, and began a

27 | solo cardiac surgery practice which he retains today.

28 |

31.    On December 30, 2005, in the final days of Isenberg's tenure as President of the Medical Staff, Dr. Isenberg, an obstetrician and gynecologist, again summarily suspended Dr. Ennix' privileges without justification. Further, Isenberg imposed the summary suspension without first consulting the proctors who had been observing Dr. Ennix' surgeries. After consulting officers of the MEC, Dr. Isenberg reinstated Dr. Ennix' proctor-restricted privileges on January 6, 2006.

32.    On April 19, 2006, the proctors reported on the twenty-nine surgical cases they had proctored, stating that "[i]t was the unanimous opinion that Dr. Ennix met" or exceeded expectations in pre-operative and post-operative phases, and met the standard of care in the peri-operative phases. The proctors went on to state "'[i]t is with unanimous decision from the group of proctors, that we recommend the proctorship be terminated and that Dr. Ennix be reinstated to the medical staff with full unrestricted privileges."

33.    Despite the proctors' evaluation and recommendation, the MEC voted to continue the proctorship requirement, stating that 29 cases was an insufficient number. The MEC finally voted to remove the proctoring requirement on July 11, 2006.

34.    Dr. Ennix endured fourteen months of restricted privileges, costing him and his family hundreds of thousands of dollars in lost profits, emotional distress and damage to his reputation. Until only recently, Dr. Ennix' cases were subject to ongoing review by the Chief of Cardiac Surgery, Dr. Russell Stanten, upon the recommendation of the AHC. Plaintiff is informed and believes that each Defendant, and especially Plaintiff's former partners and fellow cardiac surgeons Russell Stanten and Leigh Iverson, knew that the four minimally invasive cases were not below the standard of care, particularly in light of Dr. Hon Lee's report confirming this. Plaintiff is further informed and believes that Steven Stanten, Russell Stanten, Isenberg and Iverson knew that the other cases reviewed by the AHC were within the standard of care, as the Summit Cardiac Surgery Peer Review Committee had concluded. Plaintiff is further informed and believes that Isenberg and the MEC acted with racially-based malice and in reckless disregard of the facts in suspending Plaintiff's privileges, and subjected Dr. Ennix to far harsher treatment than similarly situated white physicians.

35.    Individual Defendants provided information to the SPRC, AHC, NMA and MEC that they knew to be false.  Defendants' professional review actions—including the SPRC's decision to review Dr. Ennix's performance notwithstanding that Dr. Lee and the Summit Cardiac Surgery Peer Review Committee had previously determined there had been no breach in the standard of care; Dr. Isenberg's report to the Medical Board of California and the National Practitioner Data Bank that Dr. Ennix suspended use of minimally invasive procedures while under investigation; the MEC"S and SPRC's assignment of the review to the AHC which included no cardiac surgeons or cardiologists, thus ensuring that the AHC would have no means to critically assess the facts; the SPRC's failure to allow Dr. Ennix to address it regarding the issues; the AHC's referral of the matter to the sham peer review outfit NMA; the suspension of Dr. Ennix's privileges based on demonstrably false allegations that he neglected a patient; Dr. Isenberg's second unwarranted summary suspension of Dr. Ennix's privileges; the AHC's heavy reliance on the false, malicious and self-serving representations of Dr. Ennix's partners Russell Stanten and Iverson in their evaluation of the NMA report and Dr. Ennix's performance; the AHC's factually groundless report and recommendation; the MEC's decision on that recommendation to require Dr. Ennix to practice only with a proctor present; and finally the MEC's decision to continue the proctorship requirement despite the unanimous opinion of all six proctors that the requirement should be immediately lifted (collectively "Professional Review Actions")—were not taken in the reasonable belief that they furthered quality health care.  Nor were these actions taken after a reasonable effort to obtain the facts, or in the reasonable belief that the actions were warranted by the facts.  Rather, Defendants took the Professional Review Actions against Dr. Ennix with the malicious and racially-motivated intent to destroy Dr. Ennix's career and eliminate one of the most successful cardiac surgeons practicing at Alta Bates Summit.

36.    Plaintiff exhausted all administrative remedies available to him.

1

**FIRST CAUSE OF ACTION**
Race Discrimination in violation of 42 U.S.C. § 1981
(Against Alta Bates Summit and Does 1-100)

2

3      37.     Plaintiff incorporates by reference all paragraphs set forth above as though fully

4   set forth herein.

5      38.     Alta Bates Summit's conduct as alleged in this complaint violates 42 U.S.C. §

6   1981, which guarantees that all citizens shall have the same rights under the law as are enjoyed

7   by white citizens.

8      39.     Dr. Ennix is African American.

9      40.     In taking the Professional Review Actions, Alta Bates Summit intended to

10  discriminate against Dr. Ennix on the basis of Dr. Ennix's race and treated Dr. Ennix differently

11  than similarly situated white physicians.

12     41.     Such actions and discrimination concerned Dr. Ennix's abilities to perform his

13  contractual duties with Alta Bates Summit and his patients and Dr. Ennix's abilities to enjoy the

14  benefits, privileges, terms, and conditions of those contractual relationships.

15     42.     Dr. Ennix suffered damages proximately caused by Alta Bates Summit's conduct.

16

**SECOND CAUSE OF ACTION**
Race Discrimination in violation of Unruh Civil Rights Act
(Against Alta Bates Summit and Does 1-100)

17

18     43.     Plaintiff incorporates by reference all paragraphs set forth above as though fully

19  set forth herein.

20     44.     The Professional Review Actions violate California Civil Code § 51, *et seq.*,

21  which prohibits any business establishment from discriminating against any person on account of

22  race.

23     45.     In taking the Professional Review Actions, Defendants intended to discriminate

24  against Dr. Ennix on the basis of Dr. Ennix's race and treated him differently than they treat

25  similarly situated white physicians.

26     46.     As alleged herein, Defendants specifically discriminated against Dr. Ennix

27  because of Dr. Ennix's race in taking the Professional Review Actions.  Defendants denied Dr.

28  Ennix full and equal advantages and privileges because of Dr. Ennix's race.

47.     Dr. Ennix suffered damages proximately caused by Defendants' conduct.

### THIRD CAUSE OF ACTION
Violation of Cartwright Act
(Against Iverson, Russell Stanten, Steven Stanten, William Isenberg and Does 1-100)

48.     Plaintiff incorporates by reference all paragraphs set forth above as though fully set forth herein.

49.     Iverson, Russell Stanten, Steven Stanten and Isenberg formed and operated a conspiracy or combination to provide false information and false opinions regarding Dr. Ennix's professional competence, judgment and skill, to initiate a sham peer review process against Dr. Ennix, and to impose unwarranted and professionally and financially devastating restrictions on his surgical privileges.

50.     The purpose of the conspiracy was to restrain trade by eliminating Dr. Ennix from the pool of lead cardiac surgeons available in his region.

51.     Dr. Ennix suffered damages proximately caused by Defendants' conspiratorial conduct.

### FOURTH CAUSE OF ACTION
Interference with Right to Practice Profession
(Against All Defendants)

52.     Plaintiff incorporates by reference all paragraphs set forth above as though fully set forth herein.

53.     Defendants' conduct as alleged in this complaint violates the common law doctrine that prohibits intentional interference with one's right to practice a profession by means that are either unlawful or that are otherwise lawful, but unprivileged or without sufficient justification.

54.     By taking the Professional Review Actions which were factually unwarranted, not in furtherance of quality health care and motivated by race-based discrimination, Defendants have unlawfully interfered with Dr. Ennix's right to practice his profession without privilege or sufficient justification.

55.     Dr. Ennix suffered damages proximately caused by Defendants' conduct.

COMPLAINT

1

**FIFTH CAUSE OF ACTION**
Business & Professions Code Section 17200, *et seq.*
(Against All Defendants)

2

3    56.    Plaintiff incorporates by reference all paragraphs set forth above as though fully

4    set forth herein.

5    57.    The Professional Review Actions violate Business and Professions Code §§

6    17200 *et seq.*, which prohibit unlawful, unfair, and/or fraudulent business acts or practices.

7    58.    As alleged herein, Defendants' Professional Review Actions were unlawful, in

8    that the Actions discriminated against Dr. Ennix based on his race, and lacked factual

9    justification. As such, Defendants' actions constitute an unlawful, unfair, and/or fraudulent

10    business act or practice within the meaning of Business and Professions Code §§ 17200 *et seq.*

11    59.    Dr. Ennix lost profits and suffered injury in fact as a result of Defendants' actions.

12    **PRAYER FOR RELIEF**

13    WHEREFORE, Plaintiff prays for judgment against the defendants, and each of them, as

14    follows:

15    1.    For an award of compensatory, restitution, disgorgement and other special and

16    general damages according to proof;

17    2.    For an award of punitive damages;

18    3.    For an award of interest, including prejudgment interest, at the legal rate;

19    4.    For an award of costs of suit incurred herein on all causes of action;

20    5.    For an award of attorneys' fees;

21    6.    For an injunction pursuant to California Business & Professions Code Section

22    17203 requiring Alta Bates Summit to take immediate action to prevent future racial-based

23    discrimination against Plaintiff and any Alta Bates Summit employees;

24    7.    For such other and further relief as this court deems just and proper.

25

26

27

28

1

**JURY DEMAND**

2

Plaintiff requests this matter be tried before a jury.

3

4

Dated: May 8, 2007                    Respectfully Submitted,

5

6                                        MOSCONE, EMBLIDGE & QUADRA, LLP

7

8                          By:

9                                        G. Scott Emblidge
                                         Rachel J. Sater
10                                       Andrew E. Sweet

11                                       Attorneys for Coyness L. Ennix Jr., M.D.

12

13

14

15

16                **CERFICATE OF INTERESTED ENTITED OR PERSONS**

17

18        Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

19   named parties, there is no such interest to report.

20   Dated: May 8, 2007

21

22                          By:

                                         G. Scott Emblidge
23                                       Attorneys for Coyness L. Ennix Jr., M.D.

24

25

26

27

28

COMPLAINT

# United States District Court
## NORTHERN DISTRICT OF CALIFORNIA



COYNESS L. ENNIX JR., M.D., as an
individual and in his representative
capacity under Business & Professions
Code § 17200 et seq.,

### SUMMONS IN A CIVIL CASE

CASE NUMBER:

V.

RUSSELL D. STANTEN, M.D., LEIGH I.G. IVERSON,
M.D., STEVEN A. STANTEN, M.D., WILLIAM M. ISENBERG,
M.D., Ph.D., ALTA BATES SUMMIT MEDICAL CENTER
and does 1 through 100,

C 07 - 2486

JCS

TO: (Name and address of defendant)

William M. Isenberg, M.D.
365 Hawthorne Avenue, #301
Oakland, CA 94609-3115

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

G. Scott Emblidge
Moscone, Emblidge & Quadra, LLP
220 Montgomery Street, Suite 2100
San Francisco, CA 94104

an answer to the complaint which is herewith served upon you, within   20   days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in
the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking
CLERK

(BY) DEPUTY CLERK

DATE   5/09/07

AO 440 (Rev. 8/01) Summons in a Civil Actic.

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me [1] | |

| Name of SERVER | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐    Served Personally upon the Defendant. Place where served:

☐    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

☐    Returned unexecuted:

☐    Other *(specify):*

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
            *Date*                                          *Signature of Server*

                                             _____
                                             *Address of Server*


(1)   As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure