G. SCOTT EMBLIDGE, State Bar No. 121613
emblidge@meqlaw.com
RACHEL J. SATER, State Bar No. 147976
sater@meqlaw.com
ANDREW E. SWEET, State Bar No. 160870
sweet@meqlaw.com
MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street, Suite 2100
San Francisco, California 94104-4238
Telephone:   (415) 362-3599
Facsimile:   (415) 362-7332

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX, JR., M.D., as an individual and in his representative capacity under Business & Professions Code Section 17200 et seq.,<br><br>Plaintiffs,<br><br>v.<br><br>RUSSELL D. STANTEN, M.D., LEIGH I.G. IVERSON, M.D., STEVEN A. STANTEN, M.D., WILLIAM M. ISENBERG, M.D., Ph.D., ALTA BATES SUMMIT MEDICAL CENTER and does 1 through 100,<br><br>Defendants. | Case No.: C 07-2486 WHA<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**<br><br>Date:   August 16, 2007<br>Time:   8:00 a.m.<br>Dept:   Crtm. 9, 19th Floor<br>Judge:  Hon. William H. Alsup |

Plaintiff Coyness L. Ennix, Jr., M.D. hereby requests that this court take judicial notice of the following documents pursuant to Federal Rule of Evidence 201:

**Exhibit A:** The complaint that was filed by Albertine Omani, M.D., Tracy Phillips, M.D. and Coletta Hargis, M.D., in the Superior Court for Alameda County on June 13, 2006 (Case No. RG 06274466).

**Exhibit B:** California Office of Statewide Health Planning and Development, *Coronary Artery Bypass Graft Surgery in California: 2003-2004 Hospital and Surgeon Data,* March 2007 (California CABG Outcomes Reporting Program) (available online at www.oshpd.ca.gov/HQAD/Outcomes/Studies/cabg/200304HospSurgReport/index.htm)

Dated: July 12, 2007

Respectfully submitted,

MOSCONE, EMBLIDGE & QUADRA LLP

By _____
G. Scott Emblidge
Rachel J. Sater

Attorneys for Plaintiff

# EXHIBIT A

G. SCOTT EMBLIDGE, State Bar #121613
RACHEL J. SATER State Bar #147976
SAMANTHA W. ZUTLER State Bar #238514
MOSCONE, EMBLIDGE & QUADRA, LLP
180 Montgomery Street, Suite 1240
San Francisco, California 94104-4238
    Telephone:  (415) 362-3599
    Facsimile:  (415) 362-7332

Attorneys for Plaintiffs

ENDORSED
FILED
ALAMEDA COUNTY

JUN 1 3 2006

CLERK OF THE SUPERIOR COURT
BY YASMIN SINGH, Deputy

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

ALBERTINE OMANI, M.D., TRACY PHILLIPS, M.D., COLETTA HARGIS, M.D., both individually and in their representative capacity under Business & Professions Code §§ 17200 et seq.,

    Plaintiffs,

v.

ALTA BATES SUMMIT MEDICAL CENTER and DOES 1 through 100,

    Defendants.

Case No.: RG06274466

COMPLAINT RE:
(1) RACE DISCRIMINATION;
(2) VIOLATION OF THE UNRUH ACT;
(3) INTERFERENCE WITH RIGHT TO PRACTICE PROFESSION; AND
(4) BUSINESS & PROFESSIONS CODE §§ 17200, ET. SEQ.

DEMAND FOR JURY TRIAL

BY FAX

Plaintiffs allege as follows:

### NATURE OF THE ACTION

1. Defendant Alta Bates Summit Medical Center ("Alta Bates") provides medical services to a diverse community, including a large number of African American families. Plaintiffs Albertine Omani, Tracy Phillips, and Coletta Hargis are African American obstetricians dedicated to providing high-quality and compassionate medical services to this same diverse community. One would expect Alta Bates to foster the professional careers of Plaintiffs so that they could continue to provide the services Alta Bates' patients want and need.

1
COMPLAINT

G. SCOTT EMBLIDGE, State Bar #121613
RACHEL J. SATER State Bar #147976
SAMANTHA W. ZUTLER State Bar #238514
MOSCONE, EMBLIDGE & QUADRA, LLP
180 Montgomery Street, Suite 1240
San Francisco, California 94104-4238
    Telephone:    (415) 362-3599
    Facsimile:    (415) 362-7332

Attorneys for Plaintiffs

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| ALBERTINE OMANI, M.D., TRACY PHILLIPS, M.D., COLETTA HARGIS, M.D., both individually and in their representative capacity under Business & Professions Code §§ 17200 *et seq.*,<br><br>    Plaintiffs,<br><br>v.<br><br>ALTA BATES SUMMIT MEDICAL CENTER and DOES 1 through 100,<br><br>    Defendants. | Case No.: _____<br><br>**COMPLAINT RE:**<br>**(1) RACE DISCRIMINATION;**<br>**(2) VIOLATION OF THE UNRUH ACT;**<br>**(3) INTERFERENCE WITH RIGHT TO PRACTICE PROFESSION; AND**<br>**(4) BUSINESS & PROFESSIONS CODE §§ 17200, *ET. SEQ.***<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs allege as follows:

## NATURE OF THE ACTION

1. Defendant Alta Bates Summit Medical Center ("Alta Bates") provides medical services to a diverse community, including a large number of African American families. Plaintiffs Albertine Omani, Tracy Phillips, and Coletta Hargis are African American obstetricians dedicated to providing high-quality and compassionate medical services to this same diverse community. One would expect Alta Bates to foster the professional careers of Plaintiffs so that they could continue to provide the services Alta Bates' patients want and need.

1

COMPLAINT

Unfortunately, Alta Bates has done the opposite, irrationally mistreating Plaintiffs and discriminating against them based on their race and gender.

2.  This is a lawsuit for race discrimination (42 U.S.C. § 1981), violations of the Unruh Act (California Civil Code section 51 *et seq.*), interference with Plaintiffs' right to practice their profession, and violations of Business & Professions Code section 17200, *et seq.*, against Alta Bates and Does 1-100. As detailed below, Alta Bates has discriminated against Plaintiffs based on their race and gender, has injured Plaintiffs' reputations, and has otherwise caused damage to Plaintiffs and their careers.

## PARTIES AND JURISDICTION

3.  Plaintiffs are female African American medical doctors who at all material times did and do reside in California.

4.  Plaintiff Albertine Omani earned her medical degree from the University of California at San Francisco. She has been practicing medicine for over 20 years. In addition to her medical work for patients in the San Francisco Bay Area, Dr. Omani is active in the medical community in Nigeria. For example, she recently led a medical missionary team to a Nigerian village to screen residents for diabetes and hypertension.

5.  Plaintiff Tracy Phillips grew up in East Oakland. In 1998, she earned her medical degree from Meharry Medical College in Nashville, Tennessee. After completing her residency in Rush Presbyterian/St. Luke's Medical Center in Chicago, during which she was Chief Resident and received the Senior Resident Research Award, Dr. Phillips chose to return to the East Bay to provide quality health care in the community in which she was raised, a community she knew to be traditionally underrepresented by minority physicians. Dr. Phillips is active in community outreach efforts to educate women about health issues.

6.  Plaintiff Coletta Hargis earned her medical degree from and completed her residency at the University of California at San Francisco in 1983 and 1987, respectively. She graduated with honors. Dr. Hargis has twice been recognized as one of America's Top 100 Obstetricians. Dr. Hargis joined East Bay Perinatal Medical Association ("EBPMA") because the practice serves women of diverse ethnic groups who are often of lower socioeconomic status.

7. Plaintiffs sue on their own behalf and on behalf of the general public.

8. Plaintiffs are informed and believe and thereon allege that defendant Alta Bates is a non-profit entity doing business in Berkeley, California.

9. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, including all Doe Defendants, were at all times relevant the agents and/or employees of every other Defendant, and in doing the things herein alleged were acting within the course and scope of that agency and with the knowledge and/or consent of each co-Defendant. Plaintiffs are further informed and believe, and thereupon allege, that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants. Defendants are sued both in their own right and on the basis of respondeat superior.

10. The true names and capacities of Defendants named herein as Does 1 through 100, inclusive, whether individual, corporate, associate, or otherwise, are unknown to plaintiffs, who therefore sue such Defendants by such fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiffs are informed and believe that Doe Defendants are California residents and/or unknown business entities authorized to do business in the State of California. Plaintiffs will amend this Complaint to show the true names and capacities of such Doe Defendants when and as they have been determined.

11. Plaintiffs are informed and believe and thereon allege that each Defendant is responsible for the Plaintiffs' damages as alleged herein and each is jointly and severally liable with all other Defendants.

## ALLEGATIONS

12. At all relevant times, Plaintiffs were independent contractors of East Bay Perinatal Medical Association ("EBPMA"), a private practice which in turn contracts with Alta Bates to provide specific obstetrical services for all patients of EBPMA, unassigned patients and for the patients of providers for which EBPMA has agreed to cover. EBPMA doctors are also required to be available for emergencies at Alta Bates if a private medical doctor is not available.

13. EBPMA is a group of perinatologists who specialize in high-risk pregnancies. Their patients are almost exclusively Medi-Cal members and are generally of a lower

1  socioeconomic status than those who employ private doctors. In addition to offering perinatal
2  consulting services to hospitals, EBPMA doctors and midwives see their own patients at free and
3  low-cost clinics in outlying areas.
4       14.  At all relevant times herein, Plaintiffs worked at the Ashby campus of Alta Bates.
5  All Plaintiffs have worked at Alta Bates since September 1, 2004, when it was merged with
6  Summit Hospital. Prior to the merger, Dr. Phillips worked at Summit Hospital for approximately
7  six months, Dr. Hargis worked at Summit Hospital for approximately seven years, and Dr.
8  Omani worked at Summit and Alta Bates Hospitals for approximately ten years.
9       15.  All three Plaintiffs have vast experience delivering babies, from routine vaginal
10 deliveries, to cesarean deliveries, to deliveries with extreme and life-threatening complications.
11      16.  On April 14, 2005, Drs. Hargis and Phillips worked the day shift. Their shifts
12 ended at 7:00 p.m., at which time Dr. Omani was scheduled to begin her evening shift. Doctors
13 going off-duty must briefly meet with incoming doctors to "hand-over" information and charts of
14 all patients in the Labor and Delivery Suite. This hand-over is critical to patient care, as the off-
15 going physicians must convey to the on-coming physicians all information regarding the
16 patients' statuses, events of the day, and plans of care. Hand-over of information pertaining to
17 the EBPMA patients treated by Plaintiffs is especially critical because of the patient population's
18 high risk factors, including pre-term labor, maternal diabetes in pregnancy, and maternal
19 hypertension in pregnancy. Failure to properly conduct hand-over would jeopardize patient
20 safety.
21      17.  While Drs. Omani, Phillips, and Hargis were completing the hand-over, a private
22 doctor, Eleanor Kim, was preparing to perform a cesarean section after attempting a vaginal
23 delivery using the vacuum. Dr. Kim approached Dr. Hargis several minutes before the end of
24 Dr. Hargis' shift to ask if Dr. Hargis could assist with the cesarean section Dr. Kim intended to
25 perform. Dr. Hargis replied that she personally was unavailable to help but she would pass the
26 request to the on-coming doctors who would be able to assist Dr. Kim. Shortly after the hand-
27 over began, the charge nurse entered the room where Drs. Hargis, Phillips, and Omani were
28

4
COMPLAINT

handing over patient information to inform them that Dr. Kim was ready for the assistant to scrub for surgery. Drs. Philips and Hargis stated that they would need a few more minutes.

18. Cesarean deliveries are often routine procedures scheduled well in advance. There are several reasons for an unscheduled cesarean to be performed during the course of labor (intrapartum). Intrapartum cesareans are usually considered urgent and, on rarer occasions, emergency or "crash" procedures. Emergency cesarean sections are performed when there is a sudden, non-recoverable episode of fetal distress or acute onset of a life threatening condition to the mother and vaginal delivery is remote.

19. In this case, the charge nurse did not communicate that the delivery had turned into an emergency. In fact, Dr. Kim never mentioned that there was an emergency during her conversation with Dr. Hargis prior to the procedure. Plaintiffs relied upon the charge nurse to relay to Dr. Kim the message that one of the Plaintiffs would be in to assist Dr. Kim upon completion of hand-over in a "few more minutes." Shortly thereafter, the charge nurse returned and announced to Plaintiffs that the operating doctor had started the case. Plaintiffs were still engaged in the hand-over procedure. Again, the charge nurse did not indicate that the cesarian delivery was being performed as an emergency; she failed to communicate any urgency or to indicate that anything about the procedure or Dr. Kim's need for assistance was extraordinary. Again, Plaintiffs responded that they were almost finished with the hand-over and would provide assistance as soon as they finished communicating this critical information to Dr. Omani. Within a few minutes, another doctor starting the evening shift arrived and, at Plaintiffs' request, left to scrub in and assist Dr. Kim.

20. Almost immediately after the doctor left to assist Dr. Kim, Gary Goldman, the anesthesiologist assisting Dr. Kim, burst into the room and began berating Plaintiffs for not also assisting Dr. Kim. He announced that Dr. Kim had experienced difficulties delivering the baby and yelled that Plaintiffs were wrong for "leaving that poor girl [Dr. Kim] to struggle."

21. Dr. Goldman's conduct shocked Plaintiffs and caused them significant distress because they had done nothing wrong. In fact, as Dr. Kim later indicated in her statement to the

5
COMPLAINT

1  Medical Executive Board, there had been no emergency and Dr. Kim had delivered a healthy
2  baby.
3      22. On the following day, April 15, 2005, Plaintiffs received calls requesting that they
4  attend a meeting on April 18, 2005 with Dr. Kurt Wharton, Chairman of the Obstetrics and
5  Gynecology Department. Plaintiffs viewed the April 18, 2005 meeting as an appropriate
6  opportunity to clarify the events of April 15, 2005.
7      23. At the April 18, 2005 meeting, each Plaintiff relayed her recollection of the events
8  of April 15, 2005 to Dr. Wharton. Dr. Kim was present and stated that she had not viewed the
9  case as an emergency, and that she had not taken particular note of the incident until Dr.
10 Goldman and the charge nurse phoned her, at home, and urged her to file a complaint against
11 Plaintiffs. At the close of the meeting, all in attendance agreed that the incident was attributable
12 to the fact that the charge nurse did not communicate to Plaintiffs any emergency need for
13 assistance. Dr. Wharton agreed that there had been no emergency on the night of April 15, 2006
14 and the issue had been resolved. Since these types of issues are only forwarded to the Alta Bates
15 Medical Executive Board ("MEB") if they are unable to be resolved at the departmental level,
16 Plaintiffs believed the issue had come to a close. Accordingly, Plaintiffs reported to work as
17 usual.
18      24. On April 21, 2005, Plaintiffs were shocked to be summoned to a meeting with the
19 Chairman of the Medical Executive Board ("MEB"), Dr. John Girard, scheduled for noon the
20 following day. Dr. Phillips and Dr. Hargis did not receive this request until 4:30 p.m. on April
21 21, 2005; neither was given details of the pending meeting. Dr. Hargis and Dr. Phillips were
22 scheduled to be on duty the following day. Despite requests from all Plaintiffs to reschedule the
23 meeting so that Drs. Hargis and Phillips would not be required to leave their shifts to attend the
24 meeting, thus jeopardizing patient care, and so that all Plaintiffs could prepare for the meeting,
25 the MEB refused to reschedule. All Plaintiffs were warned that, if they did not attend the
26 meeting, their privileges would be suspended immediately. Drs. Hargis and Phillips were
27 required to leave an especially busy shift in the hospital to attend the meeting. Since Plaintiffs
28 had such short notice, they were not able to arrange for other doctors to cover their shifts.

25. The April 22, 2005 meeting was not, as Plaintiffs had been led to believe, simply with the Chairman of the MEB. Rather, Plaintiffs – who were all required to enter the room alone and separately – were shocked to face approximately twenty-five members of the MEB. Plaintiffs again conveyed that they had been unaware that the cesarian procedure was an emergency or that there was any urgent need for their assistance. For the first time, Plaintiffs were told that the charge nurse on duty claimed she had told plaintiffs that their assistance was needed "ASAP." None of the Plaintiffs recalled hearing such a statement.

26. Later that same day, April 22, 2005, Plaintiffs were notified that their privileges had been suspended for seven days, effective immediately. Plaintiffs did not report to work for the following seven days. Plaintiffs were requested to meet with the MEB on Friday, April 29, 2005 to discuss the suspension.

27. Plaintiffs demanded that Alta Bates lift the suspension of their privileges and expunge any record relating to the suspension of their privileges.

28. On April 29, 2005, Plaintiffs were notified by letter that the MEB voted to remove the suspension, effective immediately. However, Alta Bates refused to expunge any record of the suspension from Plaintiffs' records, thus requiring Plaintiffs to disclose the suspension if ever asked, including on any future employment applications.

29. Over six months later, on December 13, 2005, Alta Bates sent a letter to Plaintiffs, stating that the MEB had voted to approve the expungement. The letter was inflammatory and accused Plaintiffs of failing to respond to a critical patient care issue. Despite Defendant's promise to expunge Plaintiffs' records, to this date, Plaintiffs are informed and believe that their files at Alta Bates contain documentation accusing them of misconduct based on the April 14, 2005 incident.

30. Plaintiffs are informed and believe that the disciplinary action taken against them was far more severe than disciplinary actions Alta Bates has taken against similarly situated white or male physicians.

31. Plaintiffs are informed and believe that white and male physicians at Alta Bates have engaged in conduct far more detrimental to the health and well-being of patients but have

7
COMPLAINT

received disciplinary action less severe than Plaintiffs, or have received no disciplinary action at all.

32. Plaintiffs are informed and believe that the unjustified disciplinary action Alta Bates took against Plaintiffs is part of a pattern and practice by Alta Bates of taking unjustified disciplinary action against non-white and female physicians, and of taking disciplinary actions against non-white and female physicians that are more severe than disciplinary actions Alta Bates has taken against similarly situated white and male physicians.

33. Plaintiffs have exhausted all administrative remedies available to them.

34. In taking the actions alleged herein, Defendants have acted with malice, oppression, or fraud.

**FIRST CAUSE OF ACTION**
Race Discrimination in Violation of 42 U.S.C. § 1981
(Against Alta Bates and Does 1-100)

35. Plaintiffs incorporate by reference all paragraphs set forth above as though fully set forth herein.

36. Defendants' conduct as alleged in this complaint violates 42 U.S.C. § 1981, which guarantees that all citizens shall have the same rights under the law as are enjoyed by white citizens.

37. Plaintiffs are African American.

38. In taking the actions alleged herein, Defendants intended to discriminate against Plaintiffs on the basis of Plaintiffs' race.

39. Such actions and discrimination concerned Plaintiffs' abilities to perform their contractual duties with EBPMA and Plaintiffs' abilities to enjoy the benefits, privileges, terms, and conditions of the contractual relationship.

40. Plaintiffs suffered damages proximately caused by Defendants' conduct.

## SECOND CAUSE OF ACTION
Race Discrimination in Violation of the Unruh Act
(Against Alta Bates and Does 1-100)

41. Plaintiffs incorporate by reference all paragraphs set forth above as though fully set forth herein.

42. Defendants' actions as alleged in this complaint are in violation of California Civil Code § 51, *et seq.*, which prohibits any business establishment from discriminating against any person on account of race or gender.

43. In taking the actions alleged herein, Defendants intended to discriminate against Plaintiffs on the basis of plaintiffs' race and/or gender.

44. As alleged herein, Defendants specifically discriminated against Plaintiffs because of Plaintiffs' race and/or gender during the events of April 14, 2005, and related events thereafter. Defendants denied plaintiffs full and equal advantages and privileges because of Plaintiffs' race.

45. Plaintiffs suffered damages proximately caused by Defendants' conduct.

## THIRD CAUSE OF ACTION
Interference with Right to Practice Profession
(Against Alta Bates and Does 1-100)

46. Plaintiff incorporates by reference all paragraphs set forth above as though fully set forth herein.

47. Defendants' conduct as alleged in this complaint violates the common law doctrine that prohibits intentional interference with one's right to practice her profession by means that are either unlawful or that are otherwise lawful, but unprivileged or without sufficient justification.

48. By imposing on Plaintiffs a suspension that was not warranted and was motivated by racial and/or gender-based discrimination, Defendants have, in a manner that is unlawful, interfered with Plaintiffs' rights to practice their profession.

49. By failing to remove all evidence of the suspension, including the proceedings imposing and expunging the suspension from Plaintiffs' personnel files, Defendants have

interfered with Plaintiffs' right to practice their profession in a manner that is without privilege or sufficient justification.

50. Plaintiffs suffered damages proximately caused by Defendants' conduct.

**FOURTH CAUSE OF ACTION**
Violation of Business & Professions Code § 17200
(Against Alta Bates and Does 1-100)

51. Plaintiffs incorporate by reference all paragraphs set forth above as though fully set forth herein.

52. Defendants' conduct as alleged in this complaint violates Business and Professions Code §§ 17200 *et seq.*, which prohibits unlawful, unfair, and/or fraudulent business acts or practices.

53. As alleged herein, Defendants' actions during the events of April 14, 2005, and related events thereafter were unlawful, in that the actions were discriminatory towards Plaintiffs based on Plaintiffs race and/or gender. As such, Defendants' actions constitute an unlawful, unfair, and/or fraudulent business act or practice within the meaning of Business and Professions Code §§ 17200 *et seq.*

54. Plaintiffs lost money and/or property and suffered injury in fact as a result of Defendants' actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against the defendants, and each of them, as follows:

1. For an award of compensatory and other special and general damages according to proof;

2. For an award of punitive damages on all causes of action;

3. For an award of interest, including prejudgment interest, at the legal rate;

4. For an award of costs of suit incurred herein on all causes of action;

5. For an award of attorneys' fees;

6. For an injunction pursuant to California Business & Professions Code section 17203 requiring Alta Bates to take immediate action to minimize future racial and gender-based discrimination against Plaintiffs and any of Alta Bates' employees.

8. For an award to Plaintiffs of such other and further relief as this court deems just and proper.

### JURY DEMAND

Plaintiffs request this matter be tried before a jury.

Dated: June 13, 2006    Respectfully Submitted,

MOSCONE, EMBLIDGE & QUADRA, LLP

By: _____
G. Scott Emblidge

Attorneys for Plaintiffs

# EXHIBIT B