1  MAUREEN E. McCLAIN (State Bar No. 062050)
   Email: mcclain@kmm.com
2  ALEX HERNAEZ (State Bar No. 201441)
   Email: hernaez@kmm.com
3  MATTHEW P. VANDALL (State Bar No. 196962)
   Email: vandall@kmm.com
4  KAUFF McCLAIN & McGUIRE LLP
   One Post Street, Suite 2600
5  San Francisco, California 94104
   Telephone:  (415) 421-3111
6  Facsimile:   (415) 421-0938

7  Attorneys for Defendants
   ALTA BATES SUMMIT MEDICAL CENTER,
8  RUSSELL D. STANTEN, M.D., LEIGH I.G.
   IVERSON, M.D., STEVEN A. STANTEN, M.D., and
9  WILLIAM M. ISENBERG, M.D., Ph.D.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX, JR., M.D., as an individual and in his representative capacity under Business & Professions Code Section 17200 et seq.,<br><br>Plaintiff,<br><br>v.<br><br>RUSSELL D. STANTEN, M.D., LEIGH I.G. IVERSON, M.D., STEVEN A. STANTEN, M.D., WILLIAM M. ISENBERG, M.D., Ph.D., ALTA BATES SUMMIT MEDICAL CENTER and does 1 through 100,<br><br>Defendants. | CASE NO. C 07-2486 WHA<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANTS' MOTION TO DISMISS**<br><br>[FED R. CIV. PROC. 12(b)(6)]<br><br>DATE:  August 16, 2007<br>TIME:  8:00 a.m.<br>DEPT:  Ctrm. 9, 19th Flr.<br>JUDGE: Hon. William H. Alsup<br><br>COMPLAINT FILED:  May 9, 2007<br>TRIAL DATE:  No date set |

KAUFF, McCLAIN
& McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

# TABLE OF CONTENTS

Page

I. ARGUMENT ..................................................................................................................1

    A. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981 ...............................1

        1. Plaintiff Must Allege that he has a Contractual Relationship With ABSMC in order for his Section 1981 Claim to Proceed..........1

        2. Plaintiff's Multiple Contract Theories Are Insufficient as a Matter of Law to State Claims for Relief Under Section 1981 .........2

            a. The Summit Medical Staff Bylaws did not create a contractual relationship between Plaintiff and ABSMC .........2

            b. Plaintiff cannot pursue a Section 1981 claim based upon the Medical Group's contract with ABSMC ..................6

    B. The Court Should Dismiss the Complaint Because Plaintiff Fails to Allege that he Pursued the Administrative Mandamus Remedy.................8

    C. Plaintiff's State Law Claims Are Based On Communications Protected By an Absolute Privilege and Must Be Dismissed With Prejudice ........................................................................................................9

    D. The Court Should Dismiss Plaintiff's Cartwright Claim for Failure to Allege Either a Relevant Market or an Antitrust Injury ..............................12

    E. The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims Whether or Not the Section 1981 Claim is Dismissed ..............................................................................................14

    F. The Court Should Dismiss the Doe Defendants .......................................14

II. CONCLUSION ..............................................................................................................15

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-i-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

Domino's Pizza, Inc. v. McDonald,
    546 U.S. 470 (2006) .................................................................. 1, 2, 5, 6, 7

Greene v. Hayward,
    2006 U.S. Dist. LEXIS 33574 (E.D. Cal. 2006) ............................................. 1

Hunt v. Check Recovery Sys.,
    178 F. Supp. 2d 1157 (N.D. Cal. 2007) .................................................... 5

Janda v. Madera Community Hospital,
    16 F. Supp. 2d 1181 (E.D. Cal. 1998) ............................................. 2, 3, 4, 5, 6

Jones v. Tozzi,
    2006 U.S. Dist. LEXIS 41189 (E.D. Cal. 2006) ............................................. 1

Maduka v. Sunrise Hospital,
    375 F.3d 909 (9th Cir. 2004) .............................................................. 1

McGlinchy v. Shell Chemical Co.,
    845 F.2d 802 (9th Cir. 1988) ............................................................. 12

Metha v. HCA Health Services of Florida, Inc.,
    2006 U.S. Dist. LEXIS 74195 (M.D. Fla. Oct. 12, 2006) .................................... 6

Mir v. Little Co. of Mary Hosp.,
    844 F.2d 646 (9th Cir. 1988) ............................................................. 8

Nelson v. City of Irvine,
    143 F.3d 1196 (9th Cir. 1998) ............................................................ 3

Palmer v. Stassinos,
    348 F. Supp. 2d 1070 (N.D. Cal. 2004) .................................................... 5

Real v. Driscoll Strawberry Associates, Inc.,
    603 F.2d 748 (9th Cir. 1979) ............................................................. 7

## STATE CASES

Fillmore v. Irvine,
    146 Cal. App. 3d 649 (1983) .............................................................. 8

G.H.I.I. v. Mts, Inc.,
    147 Cal. App. 3d 256 (1983) ............................................................. 13

Gianetti v. Norwalk Hospital,
    211 Conn. 51 (Conn. 1989) ................................................................ 4

Hagberg v. California Federal Bank,
    32 Cal. 4th 350 (2004) ................................................................... 9

KAUFF, MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

*Kaiser Foundation Hospitals v. Sup. Ct.*,
  128 Cal. App. 4th 85 (2005) .................................................................................. 8

*Kibler v. Northern Inyo County Local Hospital Dist.*,
  39 Cal. 4th 192 (2006) ................................................................................... 9, 11

*Mayer v. C.W. Driver*,
  98 Cal. App. 4th 48 (2002) .................................................................................. 6

*McDaniel v. Bd. of Education*,
  44 Cal. App. 4th 1618 (1996) .............................................................................. 9

*Medical Staff of Doctors Medical Center in Modesto v. Kamil*,
  132 Cal. App. 4th 679 (2005) .............................................................................. 7

*O'Byrne v. Santa Monica-UCLA Medical Center*,
  94 Cal. App. 4th 797 (2001) ............................................................................ 3, 4

*Payne v. Anaheim Memorial Med. Cntr.*,
  130 Cal. App. 4th 729 (2005) .............................................................................. 8

*Quelimane Co. v. Stewart Title Guar. Co.*,
  19 Cal. 4th 26 (1998) ................................................................................... 12, 13

*Rusheen v. Cohen*,
  37 Cal. 4th 1048 (2006) ..................................................................................... 10

*Smith v. Union Oil Co.*,
  241 Cal. App. 2d 338 (1966), *cert. denied*, 385 U.S. 931 ................................ 8

*Tinseltown Video, Inc. v. Transportation Ins. Co.*,
  61 Cal. App. 4th 184 .......................................................................................... 6

*Westlake Comm. Hosp. v. Los Angeles Sup. Ct. (Kaiman)*,
  17 Cal. 3d 465 (1976) .................................................................................... 8, 11

**FEDERAL STATUTES**

28 U.S.C. § 1367(c)(2) ............................................................................................ 14

42 U.S.C. § 1981 ........................................................................... 1, 2, 3, 4, 5,
                                                                                              6, 7, 8, 9, 14

**STATE STATUTES**

Cal. Corp. Code
  § 16201 ............................................................................................................... 6
  § 16203 ............................................................................................................... 6

22 California Code of Regulations § 70703 ............................................................ 6

Civil Code § 47 ............................................................................................ 9, 10, 11

Business & Professions Code § 2282.5 .................................................................. 5

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-iii-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

## I. ARGUMENT.

### A. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981.

#### 1. Plaintiff Must Allege that he has a Contractual Relationship With ABSMC in order for his Section 1981 Claim to Proceed.

Defendants believe that Plaintiff's opposition brief ("Opp." or "Opposition") concedes that the Complaint fails to allege a direct contractual relationship between Plaintiff and ABSMC. *See* Opp. at pp. 8:21-9:10 (arguing that conclusory references to unspecified "contractual duties" and "contractual relationships" are sufficient); *see also id.* at 9-10 (arguing multiple theories of indirect contractual relationships, addressed below). Instead, Plaintiff argues that he does not need to allege a fundamental premise of his claim for relief: the existence of a contractual relationship with ABSMC. *See* Opp. at p. 9:1-2 (citing *Maduka v. Sunrise Hospital*, 375 F.3d 909, 912 (9th Cir. 2004) for the proposition that Plaintiff may rely upon "conclusory allegations" of a contractual relationship). Plaintiff is wrong. *Maduka*, which was decided two years prior to *Domino's Pizza*, addressed the question of whether an employment discrimination plaintiff must allege the prima facie elements of a claim under the *McDonnell-Douglas* burden shifting analysis to survive a motion to dismiss. 375 F.3d at 912. There was no discussion of the pleading requirements as they relate to the issue of Section 1981 contractual privity. Nevertheless, the Court may dismiss a Section 1981 claim "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Jones v. Tozzi*, 2006 U.S. Dist. LEXIS 41189, *25 n.3 (E.D. Cal. 2006).

After *Domino's Pizza,* a Section 1981 plaintiff must allege that "(1) he or she is a member of a racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.)." *Jones*, 2006 U.S. Dist. LEXIS 41189 at *19 (citations omitted); *Greene v. Hayward*, 2006 U.S. Dist. LEXIS 33574, *12 n. 2 (E.D. Cal. 2006) (noting that a Plaintiff who failed to "allege a contract the making or enforcement of

-1-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

which was interfered with by Defendants" would be subject to dismissal because a Section 1981 plaintiff "cannot state a Section 1981 claim unless he has, or would have, rights under an existing or proposed contact that he wishes to make and enforce."). Because Plaintiff fails to allege either an existing or proposed contractual relationship between himself and ABSMC, rather than ABSMC and a third party, his Section 1981 claim should be dismissed. See *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006) (holding that "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not someone else's").

### 2. Plaintiff's Multiple Contract Theories Are Insufficient as a Matter of Law to State Claims for Relief Under Section 1981.

Plaintiff seeks to avoid dismissal by arguing that there are "multiple 'contractual' relationships between Dr. Ennix and Alta Bates"(Opp. at p. 9:11) supporting his Section 1981 claim. These purportedly include (1) a contractual relationship between Plaintiff and ABSMC created by virtue of Plaintiff's membership on the "Alta Bates' Medical Staff" (*id.*, at p. 9:12); and (2) an express written contract between "Alta Bates and Dr. Ennix's medical group, East Bay Cardiac Surgery Center" (the "Medical Group") (*id.*, at p. 10:14-15). With respect to the latter contract, Plaintiff argues both that his status as (a) a "partner" (as opposed to a corporate shareholder) and (b) a third party beneficiary of the Medical Group's contract, distinguish this case from *Domino's Pizza*. As discussed below, Plaintiff is wrong on all counts and his Section 1981 claim should be dismissed. Moreover, because Plaintiff cannot cure these defects, the Court should dismiss the Section 1981 claim with prejudice.

#### a. The Summit Medical Staff Bylaws did not create a contractual relationship between Plaintiff and ABSMC.

Plaintiff's reliance upon *Janda v. Madera Community Hospital*, 16 F. Supp. 2d 1181, 1186-87 (E.D. Cal. 1998) is misplaced for several reasons.

First, at the time *Janda* was decided, there were "no published opinions by California state courts discussing this issue." 16 F. Supp. 2d at 1186 at n. 3. The *Janda* Court, thus, was careful to qualify its decision by stating that the issue of "[w]hether

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-2-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

hospital bylaws create an enforceable contract [was] a question of first impression in California" and that [w]hen interpreting state law, federal courts are bound by decisions of the state's highest court." 16 F. Supp. 2d at 1186 (citing *Nelson v. City of Irvine*, 143 F.3d 1196, 1206 (9th Cir. 1998)). Further, where the state Supreme Court has not addressed the question, the "**federal court must follow the decisions of the state's intermediate appellate courts.**" *Id.* (emphasis added). Since *Janda*, the California Court of Appeal examined the contractual issue and reached the opposite conclusion. *See O'Byrne v. Santa Monica-UCLA Medical Center*, 94 Cal. App. 4th 797, 810 (2001) (holding that "under California contract law, medical staff bylaws adopted pursuant to California Code of Regulations, title 22, section 70703, subdivision (b), do not in and of themselves constitute a contract between a hospital and a physician on its medical staff. Whether they become incorporated into a separate employment contract between the hospital and the physician is another question.").[1] Thus, if *Janda* had the benefit of *O'Byrne*, the *Janda* court would have been compelled to reach a different conclusion. *Nelson*, 143 F.3d at 1206. The Court should therefore follow *O'Byrne* and decline to find that the Summit Medical Staff Bylaws created a contract for Section 1981 purposes.

Second, as noted in *O'Byrne*: "*Janda* itself suggested its conclusion would have been different had it been the medical staff bylaws at issue [as they are here] rather than the hospital's governing body's bylaws." *O'Byrne*, 94 Cal. App. 4th at 808; *see also Janda*, 16 F. Supp. 2d at 1187, which emphasized that 22 Cal. Code Reg. § 70703 requires physicians to comply with medical staff bylaws and not hospital corporate bylaws. In *Janda*, it was this additional agreement which transcended the physician's regulatory obligations and constituted the consideration necessary for the

---

[1] 22 Cal. Code Reg. § 70703 provides that a hospital's medical staff shall adopt bylaws establishing formal procedures for, among other things, evaluating staff members. The Bylaws at issue carry out this mandate. *See* Defendants' Request for Judicial at pp. 2:8-3:2 (requesting the Court take judicial notice of certain provisions of the Summit Medical Staff of Alta Bates Summit Medical Center Bylaws ("Bylaws") for 2003, 2005 and 2006); Isenberg Decl., Exhs. A-C (the Bylaws for the same time period).

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-3-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

creation of a contract. The issue here is whether the Medical Staff's Bylaws, and not ABSMC's bylaws, created a contract between Plaintiff and ABSMC. *See* RJN at pp. 2:8-3:2 (requesting the Court take judicial notice of certain provisions of the Bylaws for 2003, 2005 and 2006); Isenberg Decl., Exhs. A-C (the bylaws for the same time period). Therefore, under both *O'Byrne* and *Janda,* the Court should decline to find that a contractual relationship existed between Plaintiff and ABSMC.

Similarly, the *Janda* court concluded that an "express employment contract was formed between the Hospital and Dr. Janda that is supported by valid consideration." 16 F. Supp. 2d at 1186. According to the Court, the bylaws did not constitute the entire employment agreement; rather, they were "an integral **element** of the parties' contractually bargained for employment relationship." *Id.* at 1188 (emphasis added). Here, Plaintiff does not argue that he has a contractually bargained for employment relationship with ABSMC. Indeed, Plaintiff argues that he was "independent contractor." *See* Opp. at p. 10 (arguing that Plaintiff's status as an "independent contractor", and not an employee, entitles him to pursue his Section 1981 claim). Thus, the Court should disregard *Janda* and apply the analysis in *O'Byrne* which includes no reference to an additional employment contract.[2]

Third, the Section 1981 claim at issue in *Janda* also involved a separate, exclusive contract between a Caucasian orthopedic surgeon and the defendant hospital which the *Janda* plaintiff alleged was awarded with discriminatory motivation. 16 F. Supp. 2d at 1183. Indeed, the *Janda* hospital's medical departments were at times managed under "closed" systems. *Id.* "Under a 'closed system,' the Hospital contracts with an 'exclusive provider' or particular physician group for certain medical services,

---

[2] Plaintiff relies upon *Gianetti v. Norwalk Hospital*, 211 Conn. 51, 58 (Conn. 1989) for the same proposition. In *Gianetti*, however, the Court noted that the medical staff bylaws alone did not create the contractual relationship; rather, there was additional consideration which rendered the bylaws a "*part* of the contract' between the hospital and the physician. There are no allegations of a separate contract here and, in any event, *Gianetti* does not address the California statutory scheme.

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-4-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

thereby 'closing' the medical practice to other physicians who are not members or employees of the contracted physician group." *Id.* Therefore, when the hospital awarded an exclusive contract to the Caucasian orthopedist, the orthopedics medical group was closed to the plaintiff. Under these facts, the *Janda* plaintiff would have been able to assert a Section 1981 claim following *Domino's Pizza* because his right to attempt to form an exclusive contract with the hospital would have been extinguished based on an allegedly improper racial motivation. Such facts are not present here.

Fourth, Plaintiff's interpretation of *Janda* is not supported by California Business and Professions Code (B&P) section 2282.5 or its legislative history. To begin with, B&P section 2282.5 neither creates nor makes any reference to a contractual relationship between a hospital and its medical staff (much less the individual physician members of a hospital's medical staff). Rather, the statute addresses a medical staff's right to self governance. *Id.* Similarly, the legislative history of B&P section 2282.5 does not indicate that the California legislature intended medical staff bylaws to create a contractual relationship between a physician and hospital. *See* Opp. at p. 10.[3] A careful review of Plaintiff's proffered authority reveals only that one of the sponsors of the bill, the California Medical Association (the "CMA"), sought to incorporate into the statute language "stating that the bylaws are deemed to form a contractual relationship." Sen. Comm. on Bus. & Prof., Rep. on Sen. Bill. No. 1325 (2003-2004 Reg. Sess.) (Apr. 12, 2004). The proposed language, however, never made it into the final statute and subsequent legislative history reveals that the agreed upon language "represent[s] a

---

[3] The Court should disregard Plaintiff's legislative history citation because Plaintiff failed to request that the Court take judicial notice of it. *Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1077 (N.D. Cal. 2004) ("Certain materials extrinsic to the complaint may be considered if they are properly subject to judicial notice"). Alternatively, if the Court takes judicial notice of this history, it should take judicial notice of the entire legislative history to assess Plaintiff's citation within the appropriate context. *See Hunt v. Check Recovery Sys.*, 178 F. Supp. 2d 1157, 1161 (N.D. Cal. 2007) (finding that "the legislative history and other court documents for [a California statute] constitute judicial facts sufficiently capable of accurate and ready determination and therefore takes judicial notice of them."). Defendants respectfully submit an additional request for judicial notice for the Court's convenience to accommodate this alternative purpose.

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-5-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

compromise between the sponsors [e.g, the CMA] and [the California Healthcare Association]." *Id.* (Aug. 24, 2004). Therefore, the Court should disregard Plaintiff's reference to the legislature history.

For each of the foregoing reasons, the Court should decline to follow *Janda* and should conclude that no direct contract exists between Plaintiff and ABSMC.

### b. Plaintiff cannot pursue a Section 1981 claim based upon the Medical Group's contract with ABSMC.

Plaintiff's argument that his Section 1981 claim should be allowed to proceed based upon an "express written contract between Alta Bates and Dr. Ennix's [former] medical group" (*see* Opp. at pp. 10-11) is similarly unavailing.

First, Plaintiff admits that his Section 1981 claim is based upon the Medical Group's contract with ABSMC rather than his own contractual relationship. *See Domino's Pizza,* 546 U.S. at 480 (holding that "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's."). Plaintiff cannot evade this holding because the Medical Group was a partnership rather than a corporation. Opp. at p. 11. Under California law, "[a] partnership is an entity distinct from its partners" (Cal. Corp. Code § 16201) and "the property acquired by a partnership is property of the partnership and not of the partners individually" (*id.* § 16203). Moreover, Plaintiff's logic has already been rejected. *See Metha v. HCA Health Services of Florida, Inc.*, 2006 U.S. Dist. LEXIS 74195, *4 (M.D. Fla. Oct. 12, 2006) (allowing a medical group partnership to proceed with a Section 1981 claim after refusing to allow the physician, the sole partner, to pursue a Section 1981 claim in his individual capacity against the hospital because it was the partnership's "right to make and enforce the contract"); *see also Mayer v. C.W. Driver*, 98 Cal. App. 4th 48, 60 (2002) (an individual partner cannot sue an outsider "for damage to 'his' beneficial interest in the partnership property"); *Tinseltown Video, Inc. v. Transportation Ins. Co.*, 61 Cal. App. 4th 184, 197-200 (copartners do not have a personal, private right of action to sue a nonpartner third party).

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-6-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

Second, Plaintiff should not be allowed to proceed with his "intended third party beneficiary" theory of recovery because he is not an intended third party beneficiary under California law. To begin with, Plaintiff cites no authority for the position that he was an intended third party beneficiary. Opp. at pp. 11:24-12:4. If that were true, every partner in a partnership would be an intended third party beneficiary of the partnership's contracts. As described above, individual partners cannot pursue Section 1981 claims on behalf of the partnership's contracts. Further, under California law, "a third party beneficiary contract must either satisfy an obligation of the promissee to pay money to the beneficiary, or the circumstances must indicate the promissee intends to give the beneficiary the benefit of the promised performance. *Medical Staff of Doctors Medical Center in Modesto v. Kamil*, 132 Cal. App. 4th 679, 685-686 (2005). Neither situation exists here. The fact that Plaintiff earned income in connection with the Medical Group's contract with ABSMC does not mean either that the Medical Group contracted with ABSMC to satisfy an obligation it owed to Plaintiff or that ABSMC intended to provide Plaintiff, rather than the Medical Group, with any direct benefits. Moreover, allowing Plaintiff to proceed on his "definition" of an intended third party beneficiary would undermine *Domino's Pizza* by allowing individuals to pursue Section 1981 claims without a contractual relationship or intended contractual benefit.

Third, Plaintiff's theory that he should be allowed to proceed with his Section 1981 claim because the contract between ABSMC and the Medical Group refers to the individual partners as "independent contractors" should be disregarded. To begin with, a reference to Plaintiff as an "independent contractor" in the partnership's contract with ABSMC does not establish a contract between Plaintiff and ABSMC. Moreover, the term "independent contractor" is often used as a distinction from employment status and not to denote the existence of a contractual relationship. *See Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) (ruling that farm workers who signed agreements stating that they were independent contractors were employees and not independent contractors because "economic realities, not contractual labels" determine

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-7-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

employment status); see also *Smith v. Union Oil Co.*, 241 Cal. App. 2d 338, 344-45 (1966), *cert. denied*, 385 U.S. 931 ("In determining whether or not an individual is an employee or an independent contractor, the primary test is that of the right of control. Secondary tests are whether the worker is engaged in special skills . . . and **whether or not there is a written contract describing him as an independent contractor**.") (emphasis added); see also *Fillmore v. Irvine*, 146 Cal. App. 3d 649, 656 (1983) (noting the differences between an employee and independent contractor without regard to an actual contract). Regardless, this theory is no different than either the partnership or third party beneficiary arguments, described above. Plaintiff cannot circumvent the requirement that his Section 1981 claim be premised upon a direct contractual right. In any event, the purported obligations Plaintiff claims he must perform run to the partnership, not to Plaintiff.

**B. The Court Should Dismiss the Complaint Because Plaintiff Fails to Allege that he Pursued the Administrative Mandamus Remedy.**

By failing to address the key cases cited in Defendants' opening brief, the Opposition appears to concede that the administrative mandamus procedure applies to the suspension and proctoring decisions at issue insofar as it was fair.[4] It is clear from the arguments Plaintiff has raised, however, that Plaintiff never moved to compel a hearing to contest the Professional Review Actions. Opp. at p. 7. Nor does the Opposition dispute that the Court need not accept as true the conclusory allegation that Plaintiff exhausted the administrative remedies which were available to him. *See* Opp. at pp. 10:17-11:3. Instead, Plaintiff argues that Defendants failed to ask the court to take judicial notice of the administrative remedy or to prove that the remedy was fair. Opp. at

---

[4] *See* Opp. at pp. 7:20-8:19 (omitting any discussion of the reasoning supplied by *Westlake Comm. Hosp. v. Los Angeles Sup. Ct. (Kaiman)*, 17 Cal. 3d 465, 483-484 (1976), *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 651 (9th Cir. 1988), *Payne v. Anaheim Memorial Med. Cntr.*, 130 Cal. App. 4th 729, 745 (2005), and *Kaiser Foundation Hospitals v. Sup. Ct.*, 128 Cal. App. 4th 85, 105-106 (2005). Taken together, these decisions stand for the proposition that Plaintiff was obligated to exhaust his administrative remedies by pursuing a hearing and then seeking to overturn any adverse decision. *See* Opening Brief at pp. 9-11.

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-8-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

7. Plaintiff is wrong for several reasons.  First, Defendants requested that the Court take judicial notice of the Bylaws which supply the administrative remedies Plaintiff was required to exhaust (see RJN at pp. 2:8-3:2 (requesting judicial notice of certain provisions of the Bylaws for 2003, 2005 and 2006); Isenberg Decl., Exhs. A-C (the Bylaws for the same time period).  Thus, the Court may properly consider whether the Complaint alleges compliance with those procedures in light of Plaintiff's admitted failure to pursue a hearing.  Second, Plaintiff did not allege that the remedies available to him were unfair; rather, Plaintiff alleged he exhausted all of the remedies available to him.  Comp., ¶ 36.  Plaintiff's argument goes beyond his allegations and is disingenuous.  He cannot credibly maintain that administrative remedies he never bothered to pursue were unfair.[5]

### C. Plaintiff's State Law Claims Are Based On Communications Protected By an Absolute Privilege and Must Be Dismissed With Prejudice.

Although Civil Code section 47's absolute privilege typically arises in defamation actions (Opp. at p. 13), the privilege cannot be defeated by affixing a new label to an alleged wrong.  See Hagberg v. California Federal Bank, 32 Cal. 4th 350, 361 (2004) (the privilege applies to all tort theories of liability other than malicious prosecution).  The critical issue for determining whether the privilege applies is whether

---

[5] Defendants' opening brief targets the Complaint as a whole.  Insofar as it asserts independent grounds for dismissing the Section 1981 on exhaustion grounds, Defendants agree that, for pleading purposes, Plaintiff was not required to exhaust his administrative remedies before filing suit.  See Opp. at p. 8:7-19.  However, Defendants contend that (a) Plaintiff's failure to pursue a quasi-judicial hearing to overturn the Professional Review Actions at issue rendered those decisions final; and (b) a final decision in a peer review proceeding which may culminate as a matter of law in a quasi-judicial hearing may be binding upon the Court.  See e.g., McDaniel v. Bd. of Education, 44 Cal. App. 4th 1618, 1621 (1996) (when "an administrative tribunal has rendered a quasi-judicial decision which could be challenged by administrative mandamus . . . a party's failure to pursue that remedy may collaterally estop a federal civil rights action."); see also Kibler v. Northern Inyo County Local Hospital Dist., 39 Cal. 4th 192, 200 (2006) (finding hospital peer review decisions have "a status comparable to that of quasi-judicial public agencies whose decisions likewise are reviewable by administrative mandate").  This argument is not confined to the present allegations of the Complaint and, therefore, Defendants reserve the right to assert it at a later date.

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-9-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

Defendants' conduct was communicative or non-communicative. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006) (applying absolute privilege to bar an abuse of process action arising out of the filing of a perjured proof of service and the action of executing on the resultant default judgment). "[T]he key . . . is whether the injury allegedly resulted from an act that was communicative in nature." *Id.* Here, all of Plaintiff's alleged injuries stem from the Professional Review Actions which, at their root, were communications made either to initiate Plaintiff's peer review or to carry it out. Each Count is premised upon the allegations that (a) the "Individual Defendants **provided information** to the SPRC, AHC, NMA and MEC **that they knew to be false**" (Compl., ¶ 34 at p. 10:26-27 (emphasis added)); and (b) that Defendants "sponsored, initiated and/or participated in a lengthy sham peer review process that falsely sought to blame [Plaintiff] for complications some patients experienced during or following surgery" (*id.*, ¶ 1). Because all of Plaintiff's state claims are premised upon false information concerning his performance and or reputation, the entire Complaint is essentially premised upon allegations no different than those which would normally be affixed with a "defamation" label. The fact that Plaintiff tactically avoided that cause of action should not save him from application of the absolute privilege contained in Civil Code section 47.

Regardless, this Complaint contains **dozens** of allegations referencing oral or written communications made or considered by the Individual Defendants during the peer review process.[6] Each of these communications either constituted or formed the basis of the Professional Review Actions. For example, "the SPRC's decision to review [Plaintiff's] performance" (Compl., ¶ 34 at pp. 10:27-11:2) was made based upon the following allegations of communicative conduct: (1) "Dr. Lee's report" (Compl., ¶ 20 at p. 6:25); (2) "Steven Stanten expressed his concern [to the SPRC] that [the MIV

---

[6] See Compl. at pp. 2:1-4; 2:6-8; 6:20-21; 6:23-25; 7:3-4; 7:4-7; 7:14-16; 7:16-18; 7:19-21; 7:23-25; 7:28; 8:4-5; 8:7-11; 8:14-15; 8:15-18; 9:1-3; 9:6-7; 9:14-17; 9:17; 9:17-19; 9:19-20; 9:21-23; 10:1-3; 10:4-6; 10:7-10; 10:10-12; 10:13-14; 10:14-15; 10:19; 10:22; 11:1-2; 11:5-7; 11:7-8; 11:10-11; 11:12-14; 11:15; and 11:15-16.

KAUFF, McCLAIN
& McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-10-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA


Procedures] presented care issues" (*id.* at p. 7:2); and (3) "Minutes from this meeting reflect that the SPRC questioned whether the long operating times were justified by the new technique and expressed concern regarding Dr. Ennix's overall patient selection, technical skills and judgment." Plaintiff alleges these communications "carried significant weight with the SPRC" which decided further peer review was warranted. *Id.*, ¶ 20 at p. 7:10-11. Similarly, the suspension decisions and the proctoring decisions were based, in whole or in part, upon the NMA Report and the AHC Report which were direct communications prepared in the course of Plaintiff's peer review in accordance with the Medical Staff Bylaws.[7] Indeed, Plaintiff alleges that the decisions which caused his damage (e.g., the suspensions and the proctoring restrictions) were based upon (1) "the AHC's heavy reliance on the false, malicious and self-serving representations of [Plaintiff's] partners Russell Stanten and Iverson in their evaluation of the NMA report and [Plaintiff]s performance" (*id.* at p. 11:9-11); (2) "the AHC's factually groundless report and recommendation" (*id.* at p. 11:11-12); and (3) "the MEC's decision [based upon the AHC Report] to require [Plaintiff] to practice only with a proctor present" (*id.* at p. 11:12-13). Likewise, "Dr. Isenberg's report to the Medical Board of California and the National Practitioner Data Bank" (*id.* at p. 11:2-4) constituted a direct communication that arose out of the peer review proceedings.[8] Therefore, the Court should rule that the Professional Review Actions constituted communications under Civil Code section 47.

---

[7] Like the decision to initiate peer review, the "MEC's and SPRC's assignment of the review to the AHC" (*id.* at p. 11:4-6); and "the AHC's referral of the matter to the sham peer review outfit NMA" (*id.* at p. 11:7) were based on communications (e.g., Dr. Lee's report, the findings of the SPRC, and the statements of Dr. Steven Stanten) made during the Plaintiff's peer review.

[8] Plaintiff's reliance upon *Westlake* for the proposition that statements made during peer review proceedings are not communications for Civil Code section 47 purposes is mistaken. *Westlake* was decided long before *Kibler* which holds that Civil Code section 47 applies to statements made in peer review proceedings. 39 Cal. 4th at 198-199. After *Kibler*, false statements made in quasi-judicial proceedings invoke Civil Code section 47. Those are the facts Plaintiff alleges here.

KAUFF, McCLAIN
& McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-11-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

For these reasons, the Court should dismiss the state court causes of action with prejudice.

### D. The Court Should Dismiss Plaintiff's Cartwright Claim for Failure to Allege Either a Relevant Market or an Antitrust Injury.

Plaintiff expends considerable energy attempting to convince the Court that he is not required to plead either a relevant market or a competitive injury to survive Defendants' motion to dismiss. Opp. at pp. 14-17. Specifically, Plaintiff argues that his conclusory Cartwright claim allegations are sufficient under Rule 8 (*id.* at 14-15) and that the Court should ignore *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 811 (9th Cir. 1988), because (a) federal cases interpreting the Sherman Act are merely helpful, rather than probative, in assessing claims under the Cartwright Act (Compl., at p. 16); and (b) a subsequent California decision (*Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26 (1998)) does not require Plaintiff to pled injury to competition (*id.* at p. 17). Plaintiff's blustering, however, does not remedy the problem. The Cartwright claim neither defines a proper market nor alleges an injury the antirust law was designed to prevent. Indeed, the Opposition fails to distinguish the Cartwright Act claim from an ordinary business tort. *See McGlinchy*, 845 F.2d at 811 ("It is the impact upon competitive conditions in a definable market which distinguishes the antitrust violation from the ordinary business tort.").

Plaintiff's reliance upon *Quelimane* and Rule 8 for the proposition that Cartwright Act claims do not need to allege competitive injury and that the market may be loosely defined so that Plaintiff may "engage in the rock-turning allowed by discovery" (*see* Opp. at p. 15) is misplaced. To begin with, *Quelimane* does not support Plaintiff's position. In that case, the plaintiff alleged that the defendants "had manipulated the market in the El Dorado County area in which they were the only title insurers" (19 Cal. 4th at 36) for the purpose of reaching an "agreement among all title insurers . . . that none will issue policies on property conveyed by tax deed" (*id.* at 50). Unlike Plaintiff's allegations here, the *Quelimane* allegations defined a specific market and alleged anti-

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

competitive conduct affecting that market (e.g., that no consumers in El Dorado county could purchase title insurance on property conveyed by tax deed). Indeed, the plaintiff was one of the potential purchasers who suffered harm as a result of the defendants' alleged anti-competitive conduct in that market. Here, Plaintiff alleges only the defendant conspirators sought to eliminate Plaintiff from an undefined pool of cardiac surgeons. The Individual Defendants have no notice of potential breadth of these allegations or how they affect competition. There is no mention, for example, that cardiac surgery consumers were affected by the alleged conspiracy. Indeed, Plaintiff claims he and his family were the only individuals so affected.[9] Compl., ¶¶ 34, 42.

Further, Plaintiff likely will not be able to resolve these deficiencies through amendment. For example, if Plaintiff defines the market broadly to include hospitals offering cardiac surgery services in the East Bay, he will be stuck with his admission that he "currently" has staff privileges at six different hospitals in Northern California. Compl., ¶ 5 at p. 3:11-14. And if he defines the market narrowly as the pool of cardiac surgeons at ABSMC's Summit Campus, he will be stuck with the facts that he continually performed cardiac surgeries, either as the lead surgeon or through surgical assisting, while at ABSMC and that he is presently performing those services without restriction. *See* Compl., ¶ 34. No matter how many times Plaintiff is allowed to take a bite at the apple, he will not be able to allege a competitive injury in a definable market.

For each of the foregoing reasons, the Court should dismiss Plaintiff's Cartwright Act claim with prejudice.

---

[9] Further, a careful review of *Quelimane* reveals that the California Supreme Court relied upon authority cited in Defendants' opening brief. *See* 19 Cal. 4th at 50 (citing *G.H.I.I. v. Mts, Inc.*, 147 Cal. App. 3d 256, 267 (1983). G.H.I.I. requires Cartwright claims to include "allegations of serious harmful competitive impact." *See* 147 Cal. App. 3d at 267. Plaintiff should be held to this standard.

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-13-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

### E. The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims Whether or Not the Section 1981 Claim is Dismissed.

If the Court dismisses the Section 1981 claim, it should decline to exercise supplemental jurisdiction over any remaining state law claims on the ground that Plaintiff failed to oppose Defendants' request. *See* Opp. at pp. 17-19 (discussing only why the Court should exercise supplemental jurisdiction assuming the Section 1981 remains in the case). Moreover, the Court should decline to exercise supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367(c)(2), even if the Section 1981 claim remains because state law issues clearly predominate. As discussed in the opening brief, the only federal claim at issue here is the Section 1981 claim alleged against ABSMC.[10] A single claim against one corporate defendant should not deprive the Individual Defendants, who are sued solely under state law theories, from the protections of state privilege law. Whether or not the Court dismisses the Section 1981 Claim, the Court should send the state law causes of action back to the state court where this case belongs.

### F. The Court Should Dismiss the Doe Defendants.

This is not a standard case. Prior to the completion of the Rule 26 disclosure process, the parties have already exchanged many of the critical documents in this case and have identified, through those documents, most of the individuals who participated in the Professional Review Actions. Plaintiff does not need any additional time to gather information. He already has it. Despite this, Plaintiff has not provided the Court with any indication that he plans to amend this Complaint. Therefore, the Court

---

[10] The remaining 15 state claims for relief are alleged variously against the five defendants (e.g., Count II against ABSMC; Count III against the four Individual Defendants, and Counts IV and V against all five Defendants) for a total of 16 total claims for relief, 12 of which involve state law claims (Counts III, IV and V) against the four Individual Defendants. It is absurd for Plaintiff to assert that his federal claim "is at the very core of [his] case" (Opp. at 19:5) when he simultaneously admits he is unable to conclude that his alleged injuries were motivated by racial animus.

KAUFF, MCCLAIN
& MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-14-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA

1  should dismiss the Doe Defendants now.

2  **II.  CONCLUSION.**

3        For each of the foregoing reasons and for the reasons identified in
4  Defendants' opening brief, Defendants respectfully request the Court dismiss the
5  Complaint with Prejudice.  Alternatively, Defendants request the Court dismiss each of
6  Plaintiff's individual causes of action.

7  DATED: July 19, 2007          KAUFF McCLAIN & McGUIRE LLP

9        By: _____/S/_____
          MATTHEW P. VANDALL

Attorneys for Defendants
ALTA BATES SUMMIT MEDICAL CENTER, RUSSELL D. STANTEN, M.D., LEIGH I.G. IVERSON, M.D., STEVEN A. STANTEN, M.D., and WILLIAM M. ISENBERG, M.D., Ph.D.

KAUFF, McCLAIN & McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-15-

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
SUPPORTING DEFENDANTS' MOTION TO DISMISS

CASE NO. C 07-2486 WHA