United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX JR., M.D., as an individual and in his representative capacity under Business & Professions Code Section 17200, et seq.,<br><br>Plaintiff,<br><br>v.<br><br>RUSSELL D. STANTEN, M.D., LEIGH I.G. IVERSON, M.D., STEVEN A. STANTEN, M.D., WILLIAM M. ISENBERG, M.D., Ph.D., ALTA BATES SUMMIT MEDICAL CENTER, and DOES 1 through 100,<br><br>Defendants. | No. C 07-02486 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

**INTRODUCTION**

In this case arising out of a medical peer review, defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and move to strike the complaint under California's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute. For the below-stated reasons, defendants' motion to dismiss is **DENIED IN PART** and **GRANTED IN PART**.

**STATEMENT**

The following allegations are taken from the complaint and are taken as true for purposes of the instant motion to dismiss. Plaintiff, Dr. Coyness Ennix, Jr., is an African

1  American cardiac surgeon with surgical privileges at six Bay Area hospitals, including at
2  defendant Alta Bates Summit Medical Center.  During the relevant time period, plaintiff had
3  surgical privileges at Alta Bates Summit, Summit Campus, and Doctors Hospital in San Pablo.
4  Defendants are Alta Bates Summit and certain individual physicians who were alleged
5  participants in a peer review of plaintiff's performance as a cardiothoracic surgeon at Alta Bates
6  Summit (Compl. ¶ 5).

7  In 2003, plaintiff was allegedly the busiest surgeon performing cardiac procedures
8  among the private doctors practicing at Alta Bates Summit.  During that year, plaintiff began
9  promoting the idea of developing a minimally invasive cardiac-surgery and robotic-surgery
10 program at Alta Bates Summit.  Minimally invasive cardiac surgery was a relatively new
11 technique allowing surgeons to perform cardiac surgery by way of a small incision on the side
12 of the rib cage, instead of by opening the chest at the sternum (Compl. ¶ 19).

13 In January and February of 2004, plaintiff performed four minimally invasive
14 cardiac-surgery procedures at Alta Bates Summit.  In these cases, plaintiff and the surgical staff
15 encountered issues such as prolonged procedure time, increased blood usage, and conversion to
16 the more traditional approach.  These four cases came to the attention of defendant Dr. Steven
17 Stanten, Chair of the Department of Surgery and Chair of the Surgical Peer Review Committee
18 at Alta Bates Summit.  Dr. Stanten called for a moratorium on all minimally invasive
19 cardiac-surgery procedures, pending further evaluation.  Plaintiff suspended use of this
20 technique in compliance with the moratorium (Compl. ¶ 20).

21 Dr. Stanten asked Dr. Hon Lee, a cardiac surgeon, to review the four minimally invasive
22 surgeries with respect to the standard of care.  Although Dr. Lee noted some documentation
23 issues, he concluded that there were no patient-care concerns regarding any of the four cases
24 (Compl. ¶ 20).

25 Despite the fact that Dr. Lee allegedly cleared the four minimally invasive cases, Dr.
26 Stanten brought the cases before the Surgical Peer Review Committee.  Plaintiff was not
27 afforded an opportunity to address the peer review committee.  Dr. Stanten stated that the cases
28

2

might present patient-care issues. The review committee declined to accept Dr. Lee's findings that issues with the cases were of documentation, not care (Compl. ¶ 21). Apparently, however, no discipline resulted from the committee's action.

Some months later, an ad hoc committee was formed by management to conduct a second round of peer review on the same four minimally invasive cases, as well as six more of plaintiff's cases. On January 4, 2005, the ad hoc committee requested that a private, outside peer-review organization called National Medical Audit review all ten of plaintiff's cases. Plaintiff objected to the referral to the National Medical Audit, alleging that it was a sham. On May 3, 2005, National Medical Audit returned an unsigned report harshly criticizing plaintiff's performance on all ten of the reviewed cases (Compl. ¶ 24).

On May 4, 2005, plaintiff performed an operation in which he replaced two valves in a young male patient. The next day, plaintiff made rounds on the patient twice, once in the morning and once in the afternoon. Plaintiff did not note the rounds himself that day but his rounds were documented in the nurses' notes. On May 6, plaintiff made rounds on the patient again and noted those rounds. He also noted his previous rounds on that patient which he had not recorded the day before (Compl. ¶ 25).

On May 11, 2005, defendant Dr. William Isenberg, President of the Medical Staff, summarily suspended plaintiff alleging that he had placed the patient in danger by not making rounds on the patient on May 5. Dr. Isenberg accused plaintiff of failing to see the double-valve patient and of falsifying the record claiming that he had seen the patient. Plaintiff produced a letter from the on-duty nurse as well as nurses' notes verifying that he had seen the patient more than once on May 5. Despite this, the Medical Executive Committee upheld the suspension on May 18, 2005, pending the outcome of the ad hoc committee process (Compl. ¶ 26).

Faced with a loss of his ability to practice at the Alta Bates Summit hospital, plaintiff asked Dr. Isenberg to at least allow him to continue working in the reduced capacity as a surgical assistant. The Medical Executive Committee accepted plaintiff's proposal to allow him to retain privileges as a surgical assistant. Defendants, however, insisted that no plaintiff had no

3

hearing rights because plaintiff "expressly stipulated" to surgical assisting in lieu of suspension (Compl. ¶ 27).

The ad hoc committee then delivered a review of plaintiff that recommended reinstating plaintiff's surgical privileges subject to the requirement that he have a proctor present. On September 7, 2005, the Medical Executive Committee upheld the ad hoc committee's report and recommendation (Compl. ¶ 29).

Approximately 45 days later, Alta Bates Summit gave plaintiff two choices: either appeal the decision and remain suspended indefinitely or accept a condition that he have a proctor present at all of surgeries at the hospital. Plaintiff chose the latter course. On October 25, 2005, plaintiff secured six staff cardiac surgeons to serve as proctors (Compl. ¶ 30).

On December 30, 2005, Dr. Isenberg again summarily suspended plaintiff's privileges without justification, it is alleged. Dr. Isenberg imposed the summary suspension without consulting the proctors who had been observing plaintiff's surgeries. After consulting officers of the Medical Executive Committee, however, Dr. Isenberg reinstated plaintiff's proctor-restricted privileges on January 6, 2006 (Compl. ¶ 31).

On April 19, 2006, the proctors reported on the 29 surgical cases they had proctored, stating that they unanimously agreed that plaintiff met or exceeded expectations in pre- and post-operative phases, and met the standard of care in the peri-operative phases. The proctors also unanimously recommended that "the proctorship be terminated and that Dr. Ennix be reinstated to the medical staff with full unrestricted privileges" (Compl. ¶ 32).

The Medical Executive Committee initially voted to continue the proctorship requirement. Eventually, however, on July 11, 2006, the Committee finally voted to remove the proctorship requirement (Compl. ¶ 33).

Plaintiff's instant complaint states six claims against defendants: (1) racial discrimination in violation of 42 U.S.C. 1981; (2) violation of California's Unruh Act; (3) violation of California's Cartwright Act; (4) tortious interference with plaintiff's right to practice his profession; and (5) violation of California Business and Professions Code 17200.

4

Defendants now move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). They also move to strike the state claims pursuant to California's anti-SLAPP statute. Because this order rules in defendants' favor on the motion to dismiss the state claims, there is no need to address the motion to strike under California's anti-SLAPP statute.

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. The Supreme Court has recently explained that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (May 21, 2007) (citations and alterations omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). In complaints that do not allege fraud, plaintiffs need only make "a short and plain statement of the claim," thus giving the defendant fair notice of the claim and of the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).

Although materials outside of the pleadings should not be considered, a court may consider all materials properly submitted as part of the complaint, such as exhibits. *Hal Roach Studios*, 896 F.2d at 1555 n.19. Otherwise, under Rule 12(c), if "matters outside the pleadings are presented to and not excluded by the court," the motion must be treated as a summary judgment motion instead. Under Rule 56, summary judgment is proper where the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

5

### 1. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES OR PURSUE MANDAMUS RELIEF.

Defendants' arguments regarding the exhaustion of administrative remedies and plaintiff's failure to seek a writ of mandamus will be construed as a motion for summary judgment. This order holds that, as to the state claims for relief, plaintiff has neither exhausted his administrative remedies nor successfully pursued mandamus relief before initiating the instant action. Moreover, the administrative procedures were available to plaintiff and were not unfairly applied to him. All the state claims must be dismissed for failure to exhaust.[1]

#### A. The *Westlake* Requirements.

In *Westlake Community Hospital v. Superior Court of Los Angeles County*, 17 Cal. 3d 465, 469, 483–84 (1976), the California Supreme Court established the rule that a doctor whose staff privileges are modified as a result of hospital peer review may not sue the hospital or the individuals involved in the decision without first taking all available steps to have the peer-review decisions overturned:

> [B]efore a doctor may initiate litigation challenging the propriety of a hospital's denial or withdrawal of privileges, he must exhaust the available internal remedies afforded by the hospital. As we explain, this exhaustion of remedies principle has long been applied in suits attacking the actions of comparable "private associations," and we conclude that the doctrine applies when a doctor sues in tort for monetary damages as well as when he seeks a judicial order compelling reinstatement or admission.
>
> We further conclude that whenever a hospital, pursuant to a quasi-judicial proceeding, reaches a decision to deny staff privileges, an aggrieved doctor must first succeed in setting aside the quasi-judicial decision in a mandamus action before he may institute a tort action for damages. As we point out, mandate has been the traditional means for reviewing analogous quasi-judicial determinations, and we believe that before hospital board or committee members are subjected to potential personal liability for actions taken in a quasi-judicial setting, an aggrieved doctor should be required to overturn the challenged quasi-judicial decision directly in a mandamus action.

---

[1] The exhaustion discussion does not apply to plaintiff's federal Section 1981 claim. *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1276 (D.C. Cir. 1991) ("A private party alleging federal civil rights violations need not pursue internal administrative remedies before pressing a claim in federal court.").

The Ninth Circuit has explained that *Westlake* "applies to all cases where a quasi-judicial decision is the basis of a cause of action," and that the principle announced in that decision "is not limited to cases that sound in tort." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 651 (9th Cir. 1988). In *Mir*, the plaintiff doctor sued a hospital which had partially denied his applications for staff privileges. The district court in which the plaintiff sued dismissed the plaintiff's complaint for failure to state a claim. The Ninth Circuit agreed that all of the plaintiff's state claims for relief were barred by his failure to obtain a writ of mandate before filing his complaint for damages. *Id.* at 650–51.

Plaintiff alleges that the failure to exhaust administrative remedies is an affirmative defense that plaintiff need not negate in the complaint. *See Payne v. Anaheim Memorial Med. Ctr.*, 130 Cal. App. 4th 729, 742 n.8 (2005). While *Mir* affirmed an order granting a Rule 12(b)(6) motion to dismiss, *Mir* did not expressly decide whether a plaintiff needs to specifically plead this requirement in federal court. *Mir*, 844 F.2d at 647. This order need not resolve whether plaintiff must plead in the complaint that he exhausted administrative remedies and succeeded in setting aside the quasi-judicial decision in a mandamus action. In support of and in opposition to the instant motions, the parties submitted voluminous documents regarding the administrative relief and attempt (or lack thereof) by plaintiff to petition for mandamus. This order will consider those documents and construe the motion, for this issue, as one for summary judgment. *See Cunningham v. Rothery (In re Rothery)*, 143 F.3d 546, 549 (9th Cir. 1998) (explaining that a federal court may treat a Rule 12(b)(6) motion as one for summary judgment under Rule 56 to the extent extra-complaint material is entertained).

### B. Whether Plaintiff is Excused from *Westlake*.

*Westlake* and *Mir* clearly require that plaintiff have "exhaust[ed] the available internal remedies afforded by the hospital" *and* have "succeed[ed] in setting aside the quasi-judicial decision in a mandamus action" *before* initiating litigation. *Westlake Cmty. Hosp.*, 17 Cal. 3d at 469. It is undisputed that plaintiff never had a hearing on the disciplinary action, nor did he ever seek to force a hearing through a mandamus action. It is also conceded by plaintiff that the

7

procedures used were "peer review." Plaintiff instead alleges that he should benefit from the rule that the *Westlake* requirements have "no application in a situation where an administrative remedy is unavailable or inadequate." *Payne*, 130 Cal. App. 4th at 743 (quotations omitted).

Plaintiff's instant claims arise from two restrictions imposed on his surgical privileges. *First*, in May 2005, defendants allegedly asked plaintiff to choose between: (1) accepting total suspension of his privileges, which would have triggered internal administrative appeal rights; and (2) accepting a lesser restriction (surgical assisting), which defendants claimed would not give him any rights to internal appeals under the bylaws (Isenberg Decl. Exh. J). Plaintiff allegedly chose to accept the surgical-assisting restriction to avoid financial devastation.[2] Importantly, although plaintiff accepted the restriction, counsel for plaintiff steadfastly maintained that any "waiver" of plaintiff's hearing rights was impermissible under the bylaws (Etchevers Decl. Exhs. A, B).

*Second*, in October 2005, defendants again allegedly asked plaintiff to choose between alternate disciplinary routes: (1) accept a total suspension of his surgical privileges, which would have given rise to internal appeal rights, or (2) accept the requirement that he be "proctored," which defendants told plaintiff could not be appealed internally (Isenberg Decl. Exh. K). Plaintiff accepted the proctoring restriction. At oral argument, plaintiff's counsel agreed that plaintiff never signed an express waiver of his hearing rights.[3]

It seems undisputed that had the Committee determined *unilaterally* to place plaintiff under the surgical-assisting restriction or the proctoring restriction, he would have had the right to a hearing. Under the terms of the February 2003 bylaws, which were in effect when plaintiff's privileges were suspended in May 2005, he was clearly entitled to challenge the

---

[2] Given that plaintiff had privileges at other hospitals, the Court is skeptical that plaintiff was "forced" to accept a reduction in privileges because of economic coercion. This order need not decide whether plaintiff was coerced because the findings above are dispositive.

[3] A third restriction, that plaintiff was suspended from performing minimally invasive valve procedures, is alleged in the complaint but abandoned in plaintiff's briefing (Compl. ¶ 22; Opp. to Mtn. to Strike at 14–15).

8

Committee's action by requesting a hearing due to the "[r]eduction in clinical privileges" (Isenberg Decl. Exh. A at 41). Similarly, the June 2005 bylaws, which were in effect when the Committee reinstated plaintiff's privileges as a primary surgeon subject to a proctoring restriction, allowed a physician to request a hearing for "[s]ignificant restriction of clinical privileges (except for proctoring incidental to Provisional Status, new privileges, insufficient activity, or return from leave of absence) for more than fourteen (14) days based on professional competence or conduct which affects or could adversely affect the health or welfare of a patient or patients" (Isenberg Decl. Exh. B at 47).

The problem here is that the Committee did not unilaterally decide to restrict plaintiff's privileges. Plaintiff here expressly agreed to the privilege restrictions, in lieu of a total suspension of his surgical privileges. The issue before the Court is whether these circumstances excuse the exhaustion and mandamus requirements. This order holds that under the facts of this case, plaintiff should not be excused from the requirements of *Westlake*. Whether plaintiff ever validly waived his right to a hearing is not an issue this order needs to decide, although given that he had full privileges at several other hospitals, it is hard to see how loss of one set of privileges would have been as devastating as plaintiff alleges in a conclusory fashion. More to the point, if he did validly waive his entitlement to a hearing, he cannot now, under *Westlake*, seek to litigate claims by alleging the unavailability or unfairness of such an administrative remedy. On the other hand, if the "waiver" of his rights was actually invalid — as plaintiff's counsel maintained during the review process — then he should have requested a hearing even after he agreed to the restrictions on his privilege (Etchevers Decl. Exhs. A, B).

To the extent that plaintiff argues that he did request a hearing and the request was denied, his remedy was a writ of mandate under California Code of Civil Procedure Section 1085, which "anticipates the arbitrary or improper refusal by an association to hold a hearing and authorizes resort to a writ of mandate to compel such a hearing." *Payne*, 130 Cal. App. 4th at 745. Plaintiff could have applied for a writ if he felt that his hearing rights were being wrongfully denied.

9

1    Defendant relies on two inapposite decisions to suggest that the administrative remedy
2 was unavailable. In *Payne*, a colleague of the plaintiff at the hospital had made a remark which
3 the plaintiff considered to be a racial slur. The medical center's internal procedures there did
4 not address that type of disagreement. The state court of appeal excused the exhaustion
5 requirement:

> Anaheim Memorial's medical staff bylaws entitle its medical staff to make certain decisions in accordance with internal procedures. However, only certain of those decisions are subject to being challenged internally through a quasi-judicial process. What happened to Payne was not one of those decisions. Because his privileges were not formally impacted, he had no right to any administrative hearing process to air his grievances.

*Payne*, 130 Cal. App. 4th at 739.

The instant case differs from *Payne* because, as discussed above, the bylaws did allow plaintiff to challenge both the May 2005 and October 2005 decisions. In *Payne*, administrative remedies were truly unavailable for the type of alleged harm suffered by the plaintiff. Here, however, plaintiff had — and indeed was aware of — his right to appeal the specific deprivations he actually suffered. *Payne* is distinguishable.

Plaintiff also relies on *Joel v. Valley Surgical Center*, 68 Cal. App. 4th 360, 371 (1998), for the proposition that even if he "forfeited" his rights to administrative appeals, that does not establish that he forfeited his rights to pursue damages claims arising from those suspensions. In *Joel*, the hospital summarily suspended Dr. Joel's privileges. He was offered a hearing and requested one, but prior to the hearing the parties entered into a written settlement whereby Dr. Joel's privileges were fully reinstated. The agreement included a statement that the settlement "has no legal effect on any other matter or any damages claim resulting from the summary suspension." Additionally, it stated that "nothing in this settlement or agreement releases either party from any claim or action which might otherwise exist or relieves any party from any legal obligation to satisfy or complete any action or proceeding as a precedent to asserting any claim." *Id.* at 68 Cal. App. 4th at 363–64.

10

Following his reinstatement, Dr. Joel sued for damages. The hospital contended that his claim was barred by *Westlake* because he failed to exhaust his administrative remedies. The court of appeal disagreed. The key to the holding was that the settlement agreement provided for the *full reinstatement* of Dr. Joel's privileges. The *Westlake* requirement could be excused where "the administrative machinery has been commenced, but the parties resolve the dispute before its completion through settlement which awards the physician the *maximum* benefit he or she could have been afforded administratively." *Id.* at 366–67 (emphasis added).

The results of the agreements with plaintiff in this case were incomplete. In May 2005 and October 2005, the parties resolved their disputes by compromise — an agreement that plaintiff be limited to surgical-assisting privileges and then to imposed proctorship. Plaintiff does not dispute that full reinstatement could have been sought had he exercised his hearing rights. If he thought he was entitled to a hearing despite the mutual acceptance of an alternative action against his privileges, he "could have sought a writ of mandate from the superior court to compel the Hospital to begin the hearing." *Kaiser Found. Hosp. v. Superior Court*, 128 Cal. App. 4th 85, 105–06 (2005). *Joel* is inapplicable here.

Plaintiff also contends that the process afforded to him was unfair and inadequate. Specifically, plaintiff contends in a conclusory fashion that the process would have resulted in financial hardship to him. This argument lacks merit. The California Court of Appeal has rejected a similar argument, stating that "[a] remedy will not be deemed inadequate merely because additional time and effort would be consumed by its being pursued through the ordinary course of the law, and such time and effort will inevitably involve some cost." *Eight Unnamed Physicians v. Med. Executive Committee*, 150 Cal. App. 4th 503, 512 (2007) (quotations omitted). Moreover, "litigation expenses, however substantial and nonrecoverable, which are normal incidents of participation in the agency process do not constitute irreparable injury." *Ibid.* Strong policy considerations underlie this holding. Specifically, California courts recognize that "it must be remembered that license suspension, revocation or other similar disciplinary proceedings involving licensees are not for the purpose of punishment but

11

primarily to protect the public served by the licensee employed by a hospital." *Bollengier v. Doctors Med. Ctr.*, 222 Cal. App. 3d 1115, 1128 (1990). Plaintiff has not demonstrated that the process was unfair.

For the above-stated reasons, defendants' motion to dismiss, construed as a motion for summary judgment, is granted as to all of plaintiff's state claims on account of his failure to comply with the *Westlake* requirements.

### 2. SECTION 1981 CLAIM.

Defendants also move to dismiss plaintiff's federal claim, which is based on an alleged violation of 42 U.S.C. 1981. In order to establish a claim under Section 1981, "a plaintiff must establish that (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.)." *Jones v. Tozzi*, No. 05-CV-0148 OWW DLB, 2006 WL 1582311, at *7 (E.D. Cal. June 2, 2006) (Wanger, J.). Defendants here contend that the complaint fails to allege the existence of a contractual relationship between plaintiff and the medical center sufficient to state a claim for relief under Section 1981.

In *Domino's Pizza, Inc. v. McDonald*, 126 S. Ct. 1246, 1249 (2006), the Supreme Court held that "[a]ny claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship,' under which the plaintiff has rights." Here the complaint does allege that the actions taken by defendants "concerned Dr. Ennix's abilities to perform his contractual duties with Alta Bates Summit and his patients and Dr. Ennix's abilities to enjoy the benefits, privileges, terms and conditions of those contractual relationships" (Compl. ¶ 41). These allegations satisfy the liberal pleading standards of Rule 8. *See Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912–13 (9th Cir. 2004). Plaintiff has alleged that his contractual relationship with the hospital was impaired on account of Alta Bates Summit's intentional discrimination based on his race. This allegation is sufficient to "identify injuries flowing from a racially motivated breach of [his] own contractual relationship." *Domino's Pizza, Inc.*, 126 S. Ct. at 1252.

Defendants also contend that the allegation in the complaint that a contract existed is false because plaintiff in fact never had a contract with the medical center. For this proposition, defendants rely on *O'Byrne v. Santa Monica-UCLA Med. Ctr.*, 94 Cal. App. 4th 797, 810 (2001), which held: "[U]nder California contract law, medical staff bylaws adopted pursuant to California Code of Regulations, title 22, section 70703, subdivision (b), do not in and of themselves constitute a contract between a hospital and a physician on its medical staff. Whether they become incorporated into a separate employment contract between the hospital and the physician is another question."

The issue raised by defendants' citation to *O'Byrne* is whether the hospital's bylaws either themselves created a separate contract or were incorporated into some other existing employment contract. *Compare O'Byrne*, 94 Cal. App. 4th at 810, *with Janda v. Madera Comm. Hosp.*, 16 F. Supp. 2d 1181, 1187 (E.D. Cal. 1998) (Wanger, J.). This question, however, need not be resolved at the pleading stage, where it is sufficient that plaintiff has made a "plausible" claim that he had a contractual relationship with the hospital. *Twombly*, 127 S.Ct. at 1974 (holding that plaintiff must plead "enough facts to state a claim to relief that is plausible on its face"). Moreover, the *O'Byrne* court also did *not* dispute that there was "an *underlying* contractual employment relationship between the physician and the hospital supported by valid consideration: the hospital's promise to employ the physician under the stated terms and conditions, and his promise to work under those conditions." *Id.* at 807 (emphasis added) (citing *Janda,* 16 F. Supp. 2d at 1186). Construing the allegations in the complaint as true, that contractual relationship existed on its own regardless of the bylaws.

### 3. DOE DEFENDANTS.

Defendants also move to dismiss the Doe defendants. The Ninth Circuit has explained that "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). The court of appeals has also recognized, however, that "situations arise . . . where the identity of alleged defendants will not be known prior to the filing of a complaint." *Ibid.* Accordingly, "[i]n such circumstances, the plaintiff

13

should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Ibid.*

Plaintiff asserts that he is unaware of defendants, other than those identified, who may have participated with the named defendants to participate in the alleged scheme to interfere with plaintiff's practice. It is plausible that other individuals may have played a role in the peer-review process. Under *Gillespie*, plaintiff will be allowed an opportunity to conduct discovery to identify those defendants and will be given a deadline to name and serve them.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the complaint is **GRANTED IN PART** and **DENIED IN PART.** The only remaining claim in this case is the Section 1981 claim. Defendants' motion to strike pursuant to California's anti-SLAPP statute was only directed at the state claims, which have been dismissed on other grounds. Accordingly, the anti-SLAPP motion is **MOOT**. The evidentiary objections filed by both parties are similarly moot.

**IT IS SO ORDERED.**

Dated: August 28, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE