# KM&M
KAUFF McCLAIN & McGUIRE LLP

ONE POST STREET · SUITE 2600
SAN FRANCISCO, CA 94104

TELEPHONE (415) 421-3111
TELECOPIER (415) 421-0938

MATTHEW P. VANDALL
VANDALL@KMM.COM

NEW YORK
SAN FRANCISCO
LOS ANGELES
WWW.KMM.COM

October 12, 2007

Hon. William H. Alsup
United States District Court
Northern District of California
Courtroom 9, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Coyness L. Ennix, Jr., M.D. v. Alta Bates Summit Medical Center* – Case No. C 07-2486 WHA (ENE)

Dear Judge Alsup:

Following efforts to meet and confer and pursuant to paragraph 26 of the Court's Supplemental Case Management Order, I write on behalf of Defendant Alta Bates Summit Medical Center ("ABSMC") to request assistance with a discovery matter.

This case arises out of a medical peer review of Plaintiff's surgical privileges conducted by the Summit Medical Staff between January 2004 and July 2006. Plaintiff has propounded Special Interrogatories seeking to discover, among other things, peer review information regarding every member of the Medical Staffs of ABSMC's Summit and Alta Bates campuses for the last twenty years. The parties are meeting and conferring concerning the scope of the Special Interrogatories, however, an issue has arisen regarding confidentiality objections asserted by two individuals who were peer-reviewed under the Summit Medical Staff Bylaws ("Summit Bylaws"). Although ABSMC is able to produce peer review information for these two individuals, it is uncomfortable doing so in the face of specific objections and therefore seeks the Court's guidance.

The Summit Bylaws state that the Summit Medical Staff "committee members participate in credentialing, peer review and quality assurance activities in reliance upon the preservation of confidentiality." Exh. A at D0256; see also id. at D0257 ("members of the [Summit Medical Staff] shall respect and preserve the confidentiality of all communications and information generated in connection with credentialing, peer review and quality assurance."). Indeed, Summit Medical Staff members, including Plaintiff, "pledge to invoke the protection of California Evidence Code section 1157 as applicable in legal proceedings, in order to preserve the confidentiality of this information." Id. at D0257. Thus, every individual who underwent peer review by the Summit Medical Staff had a reasonable expectation that their peer review information would remain confidential at the time the investigations were conducted.

KM&M
KAUFF McCLAIN & McGUIRE LLP

Hon. William H. Alsup
October 12, 2007
Page 2

    The May 29, 2007 Confidentiality Stipulation and Protective Order ("Stipulated Order") required Counsel to develop a process to notify individuals "whose peer review, quality or credentialing material could be made part of this lawsuit of such a potential occurrence, so that such affected persons have the option of taking individual steps to protect their privacy interests." Stipulated Order at p. 4:1-4. ABSMC therefore drafted a notice to send to individuals who underwent peer review at Summit and who fell within the scope of ABSMC's interrogatory responses. See Exh. B (Draft Notice). Plaintiff's counsel did not object to the notice (see Exh. C (email exchange) at p. 3) which explained that peer review material would be produced, if at all, as confidentially as possible and subject to a protective order confining its use to pending litigation. Exh. B. The notice also advised that the recipients' significant written concerns would be brought to the Court's attention. Id.

    The notice was mailed to the affected persons on September 18, 2007. On or about October 1st, the Summit Medical Staff received two objections expressing serious concern over the potential production of peer review information. See Exh. D (Written Objections (Redacted)). Although the objecting parties acknowledged that the possible use of their information would remain confidential to the litigation, they demanded either (a) "strict confidentiality" and a statement of efforts made to address their concerns; or (b) a description of the information reviewed and comments of the peer reviewers (along with a statement that the objecting party will be unavailable through October 21, 2007). Id. ABSMC interprets the objections as assertions of privacy and/or confidentiality rights concerning peer review information which Plaintiff seeks and which ABSMC is otherwise willing to provide to defend against Plaintiff's discrimination claim. As a result of the objections, however, ABSMC believes it should not produce the third-parties' peer review information without a Court order.[1]

---

[1]  ABSMC is not attempting unreasonably to withhold discoverable information. On October 9, 2007, ABSMC produced a chart summarizing the investigations of all living persons who received the notice but who did not object to it in writing. The information it contains was produced subject to the objections and qualifications asserted in ABSMC's responses to the Special Interrogatories and without prejudice to ABSMC's position that each peer review proceeding described in the chart is an examination into the unique facts of such situation, often by different reviewers, and hence, each such individual is not similarly-situated to the Plaintiff. See e.g., Vesom v. Atchison Hosp. Ass'n, 2006 U.S. Dist. LEXIS 68576, *70-*71 (D. Kan. 2006) (granting summary judgment to hospital on a Section 1981 claim in part because Plaintiff's "similarly situated" evidence did not "deal with the same time period, and therefore the same MEC, as the period during which plaintiff applied for and was denied renewal of staff privileges."); see also Mbadiwe v. Union Mem'l Reg'l Med. Ctr., Inc., 2007 U.S. Dist. LEXIS

(con't)

**KM&M**
KAUFF McCLAIN & McGUIRE LLP

Hon. William H. Alsup
October 12, 2007
Page 3

   ABSMC, therefore, seeks the Court's guidance concerning how to balance the competing interests of allowing Plaintiff to discover information ABSMC is willing to provide and honoring the privacy and confidentiality interests of third parties ABSMC is obligated to protect.[2] Thus, ABSMC proposes the Court either order the parties to brief the issue of third party privacy presented by the objectors (and allow the objecting parties an opportunity to intervene) or order ABSMC to produce the information pursuant to the Stipulated Order. See Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (recognizing that federal courts must balance the invasion of privacy rights against the parties' need for the discovery); see also Cook v. Yellow Freight Sys., Inc., 132 F.R.D. 548, 550-51 (E.D. Cal. 1990) (balancing targeted individual's right of privacy against public's need for discovery in employment discrimination case); Laxalt v. McClatchy, 809 F.2d 885, 889 (D.C. Cir. 1987) (The party or person whose privacy is affected may either object to the discovery request or seek a protective order).

Very truly yours,

*[signature]*

MATTHEW P. VANDALL
Counsel for Defendant
ALTA BATES SUMMIT MEDICAL CENTER

Attachments

---

(Continued)
30319, *5-*6 (W.D.N.C. Apr. 24, 2007) (requiring Section 1981 physician to establish that the alleged acts of his comparators were of "'comparable seriousness' to his own infractions.").

[2]  The parties met and conferred regarding the objections. Plaintiff contends that he needs to review the peer review information of the objecting parties and that the Stipulated Order will ensure that their privacy interests are protected. Plaintiff suggested that ABSMC attempt to persuade the third parties into withdrawing their objections. See Exh. C at pp. 1-2. ABSMC, however, cannot predict how the objecting parties' confidential information will be handled or who will be allowed to review it once it is released to Plaintiff who remains a current member of the Summit Medical Staff. ABSMC therefore believes any assurances it could provide to the objecting parties (one of whom is not available for such discussion until October 21) would be illusory.

# EXHIBIT A

Case 3:07-cv-02486-WHA    Document 103    Filed 10/12/2007    Page 4 of 17

BYLAWS

SUMMIT MEDICAL STAFF

\*\*\*\*\*\*\*\*\*\*

June, 2006

D 0173

member to appear at any meeting with respect to which notice is given, unless excused by the MEC upon a showing of good cause, shall be a basis for corrective action.

12.7   CONDUCT OF MEETINGS

Unless otherwise specified, meetings shall be conducted according to Sturgis Standard Code of Parliamentary Procedure; however, technical or non-substantive departures from such rules shall not invalidate action taken at such a meeting.

## ARTICLE XIII
## RECORDS AND PROCEEDINGS OF THE MEDICAL STAFF

13.1   CONFIDENTIALITY

The following applies to records and proceedings of the medical staff and its committees responsible for the evaluation and improvement of patient care:

A.   All such records and proceedings shall be maintained as confidential.

B.   Access to such records and proceedings shall be limited to duly appointed officers, committees and representatives of the medical staff for the sole purpose of discharging medical staff responsibilities and subject to the requirement that confidentiality be maintained.

C.   Information which is disclosed to the board of directors of the hospital or its appointed representatives -- in order that the board of directors may discharge its lawful obligations and responsibilities -- shall be maintained by that body as confidential.

D.   Information contained in the credentials file of any member may be disclosed with the member's consent to any medical staff or professional licensing board as required by law. However, any disclosure outside of the medical staff shall require the authorization of the president of the medical staff or the practitioner's department chair or service chief and notice to the member.

13.2   PARTICIPATION IN RELIANCE ON CONFIDENTIALITY

Medical staff committee members participate in credentialing, peer review and quality assurance activities in reliance upon the preservation of confidentiality. They understand that the confidentiality of these activities is to be maintained and that these communications and information will be disclosed only in furtherance of credentialing, peer review and quality assurance activities.

13.3   PRESERVATION OF CONFIDENTIALITY

Applicants to and members of the medical staff shall respect and preserve the confidentiality of all communications and information generated in connection with credentialing, peer review and quality assurance. Members pledge to invoke the protection of California Evidence Code Section 1157 as applicable in legal proceedings, in order to preserve the confidentiality of this information.

13.4   CORRECTIVE ACTION FOR BREACH OF CONFIDENTIALITY

Inasmuch as effective peer review and consideration of the qualifications of medical staff members and applicants to perform specific procedures must be based on free and candid discussions, any breach of confidentiality of the discussions or deliberations of medical staff departments, services, or committees, is considered to be in violation of the professional and ethical standards of the medical staff and is disruptive to the operations of the hospital. If it is determined that such a breach has occurred, the MEC may undertake such corrective action as it deems appropriate.

13.5   RECORDS AND PROCEEDINGS COVERED

The confidentiality and immunity provided by this article shall apply to all acts, communications, reports, recommendations or disclosures performed or made in connection with this or any other health care facility's or organization's activities concerning, but not limited to:

A.   application for appointment, reappointment, or clinical privileges;

B.   corrective action;

C.   hearings and appellate reviews;

D.   utilization reviews;

E.   other department, service, committee, or medical staff activities related to monitoring, evaluating and maintaining quality patient and appropriate professional conduct; and

F.   peer review organizations, California Medical Board and similar reports which relate or may relate to a practitioner's professional qualifications, clinical ability, judgment, character, physical and mental health, emotional stability, professional ethics or any other matter that might directly or indirectly affect patient care.

13.6    INDEMNIFICATION

The hospital shall indemnify, defend and hold harmless the medical staff and its individual members, to the fullest extent allowed by law, against any losses and expenses (including attorneys' fees, judgments, settlements, and all other costs, direct or indirect) incurred as a result of any alleged act or failure to act within the scope of peer review or quality assessment activities including, but not limited to a) as a member of or witness for a medical staff department, service, committee or hearing panel, b) as a member of or witness for the hospital board or any hospital task force, group, or committee, and c) as a person providing information to any medical staff or hospital group, officer, board member or employee for the purpose of aiding in the evaluation of the qualifications, fitness or character of a medical staff member or applicant.

## ARTICLE XIV
## GENERAL PROVISIONS

14.1    STAFF RULES AND REGULATIONS

Subject to approval by the board of directors, the MEC shall adopt such rules and regulations as may be necessary to implement more specifically the general principles found in these bylaws. Applicants to and members of the medical staff shall be governed by such rules and regulations as are properly initiated and adopted. If there is a conflict between the bylaws and the rules and regulations, the bylaws shall prevail. The mechanism described herein shall be the sole method for the initiation, adoption, amendment, or repeal of the medical staff rules and regulations.

14.2    DEPARTMENTAL RULES AND REGULATIONS AND DEPARTMENTAL PROCTORING PROTOCOL

Subject to the approval of the MEC and the board of directors, each department shall formulate its own rules and regulations and proctoring protocol for the conduct of its affairs and the discharge of its responsibilities. Such rules and regulations shall not be inconsistent with these bylaws, the general rules and regulations of the medical staff or other policies of the hospital. Department chairs shall have primary responsibility for the initiation of and amendments to departmental rules and regulations subject to notice and an opportunity for comment by voting members of the department prior to presentation to the MEC.

14.3    DUES OR ASSESSMENTS

The MEC shall have the power to establish the amount of annual dues or assessments, if any, for each category of medical staff membership, and to determine the manner of expenditure of such funds received.

14.4    PROFESSIONAL LIABILITY INSURANCE

The MEC jointly with the board of directors have the power to determine the minimum amount of professional liability insurance to be carried by each member of or applicant to the medical staff.

# EXHIBIT B

Case 3:07-cv-02486-WHA   Document 103   Filed 10/12/2007   Page 9 of 17

Dear Dr. _____:

The purpose of this letter is to notify you that federal litigation exists which alleges that a peer review process conducted by the Summit Medical Staff was improper as applied to the plaintiff. This allegation is contested. In connection with the lawsuit, information is being sought concerning various peer review investigations conducted by and corrective actions approved by the Summit Medical Executive Committee over an extended period of time. Federal court processes require that the Medical Center answer discovery requests concerning such peer review activity to the extent that they are related to the claim identified in the lawsuit.

Peer review records or data may therefore be produced during the litigation. To the extent such information is provided, it will be done as confidentially as possible. We plan to provide the information, at least preliminarily, without the names of physicians who were subject to peer review. All information will be provided subject to a protective order which requires that the use of the information be confined to this case, and that the information be treated by all involved in the litigation as confidentially as possible.

If you have concerns about the confidential use of your peer review information in the litigation, please express them in written form by letter to Medical Staff counsel whose address is below. Please note that the concern must be in writing to be considered, and any response will be made only in writing as well. While we cannot assure you that any concerns you have expressed will be recognized by the court, we will endeavor to make any significant concerns known to the court. Please provide any such writing to Mr. Shulman by September __, 2007.

                                                Harry Shulman, Esq.
                                                Davis Wright Tremaine LLP
                                                505 Montgomery Street, Suite 800
                                                San Francisco, California 94111-6533

# EXHIBIT C

## Vandall, Matthew

| | |
|---|---|
| **From:** | Rachel Sater [sater@meqlaw.com] |
| **Sent:** | Thursday, October 11, 2007 4:27 PM |
| **To:** | Vandall, Matthew |
| **Cc:** | emblidge@meqlaw.com |
| **Subject:** | RE: Ennix v. ABSMC - Plaintiff's Special Interrogatories, Set One |

Matt,

You asked for Plaintiff's views regarding your proposal of withholding the information relevant to the two objecting physicians. Plaintiff needs and is entitled to the information regarding those doctors to prove his case, especially in light of the small sample size you have produced given that you've limited your response to Summit, and then only since 1995. Further, the privacy protections afforded by the protective order in this case will ensure that the privacy itnerests of these physicians are protected. Finally, your Exhibit A is a chart of information about the various peer reviews without physician names--not the actual peer review records--and is itself marked confidential. Given all these factors, we don't see any basis for witholding these doctor's peer review documents, much less the information about these peer reviews contained in Exhibit A.

We have not seen these physicians' objections. It could be that with some reassurance as to the manner in which their individual information would be handled and protected, these doctors would withdraw their objections.

Rachel

Rachel J. Sater- Moscone, Emblidge & Quadra, LLP - 220 Montgomery Street, Suite 2100 San Francisco, CA 94104 | P: 415-362-3599 | F. 415-362-2006 sater@meqlaw.com   www.meqlaw.com

---

**From:** Vandall, Matthew [mailto:vandall@kmm.com]
**Sent:** Wednesday, October 10, 2007 7:41 AM
**To:** emblidge@meqlaw.com; sater@meqlaw.com
**Cc:** McClain, Maureen
**Subject:** RE: Ennix v. ABSMC - Plaintiff's Special Interrogatories, Set One

Scott -

You received the chart yesterday. Please let me know whether you are available today to discuss the issues described in our email exchange, below.

Matt

10/12/2007

**From:** Scott Emblidge [mailto:emblidge@meqlaw.com]
**Sent:** Tuesday, October 09, 2007 10:50 AM
**To:** Vandall, Matthew; sater@meqlaw.com
**Cc:** McClain, Maureen
**Subject:** RE: Ennix v. ABSMC - Plaintiff's Special Interrogatories, Set One

Matt:

It is hard for me to have an informed discussion with you about your issues without knowing more information. Could you share with me a draft of the Exhibit A chart so I can better understand what type of information you plan to provide and, consequently, what type of information you plan to withhold concerning the two doctors? Is there any reason that you would withhold information regarding the race of the members?

Of course, I am willing to have a more in depth discussion with you but I need to better understand what you are proposing.

Scott

---

**From:** Vandall, Matthew [mailto:vandall@kmm.com]
**Sent:** Monday, October 08, 2007 5:21 PM
**To:** emblidge@meqlaw.com; sater@meqlaw.com
**Cc:** McClain, Maureen
**Subject:** Ennix v. ABSMC - Plaintiff's Special Interrogatories, Set One

Scott -

As discussed last month, Defendant sent notification letters to certain current and former Summit Medical Staff members indicating that their peer review, quality or credentialing material was being sought in connection with pending federal litigation. As you recall, the letters asked the affected persons to express any concerns they had about the confidential use of their peer review information and advised them that Defendant would endeavor to make any significant written concerns they had known to the Court. Defendant has now received two written objections expressing such concerns and intends to seek the Court's guidance regarding how to address such objections in light of the information sought by Plaintiff's Special Interrogatories, Set One.

Defendant is not seeking to withhold all peer review information from Plaintiff as a result of this development. Rather, Defendant is preparing to produce Exhibit A to its Responses to Plaintiff's Special Interrogatories later this week (rather than on 10/17). Exhibit A will consist of a chart summarizing 12 of 14 peer review investigations of current or former Summit Medical Staff members which took place during the time period of 1995 to the present. Until receiving further guidance from the Court, however, Defendant intends to withhold the peer review investigation information of the two objecting Summit Medical Staff members (one current and one former), described above.

Defendant would like to include a description of Plaintiff's views concerning this issue in its anticipated submission to the Court. Please let me know when you are available to discuss this issue with me by telephone.

Thanks,

Matt

---

**From:** Scott Emblidge [mailto:emblidge@meqlaw.com]
**Sent:** Wednesday, September 19, 2007 10:21 AM
**To:** Vandall, Matthew; sater@meqlaw.com

10/12/2007

**Cc:** McClain, Maureen
**Subject:** RE: Ennix v. ABSMC

Matt:

I do not have concerns about the wording of your letter.

Scott

---

**From:** Vandall, Matthew [mailto:vandall@kmm.com]
**Sent:** Monday, September 17, 2007 9:59 AM
**To:** emblidge@meqlaw.com; sater@meqlaw.com
**Cc:** McClain, Maureen
**Subject:** Ennix v. ABSMC

Scott -

Pursuant to paragraph 7 of the Confidentiality Stipulation and Protective Order, Defendant intends to send the attached letter to notify certain current and former Summit Medical Staff members that their peer review, quality or credentialing material is being sought by Plaintiff so that the affected persons have the option of taking individual steps to protect their privacy interests. If there are objections raised by the Medical Staff members, Defendant may be obligated to present them to the Court (without revealing their names) before producing their information in response to Plaintiff's special interrogatories. I plan to send the letter out shortly with a 10 day response period for written objections (from the date of mailing). Please call me to discuss any concerns Plaintiff might have with the attached by mid-day Tuesday (9/18).

I also look forward to hearing from you today concerning the attorneys' eyes only designation issues we discussed last Wednesday.

Matt

<<3ml101_.DOC>>

10/12/2007

# EXHIBIT D

RECEIVED
OCT 0 1 2007
BY:

**REDACTED**

September 24, 2007

Harry Shulman, Esq.
Davis Wright Tremaine LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533

Dear Mr. Shulman:

The purpose of this letter is to express my deep concern about the confidential use of my peer review information in the litigation Joanne Jellin, PsyD cited in her letter to me dated September 18, 2007.

I request strict confidentiality of all my peer review information.

Please respond to me in writing what efforts have been and will be made to address my great concern.

Sincerely,

**REDACTED**

**REDACTED**

September 24, 2007

RECEIVED
OCT 0 3 2007
BY:_____

Mr. Harry Shulman
c/o Davis, Wright, et al.
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533

RE:     Confidential Subject of Evidence Code 1157

Dear Mr. Shulman:

I had the opportunity of reading your letter of September 20, 2007. I must admit that I don't understand what you are talking about in your letter. My comprehension of what is being stated is that the Summit medical staff improperly conducted peer review involving a patient of mine and when this occurred some of my records were reviewed.

The letter further states that this will be done as confidentially as possible, but I have difficulty believing that you or anyone else is capable of that. I am, therefore, concerned about the confidential use of the peer review material that has been taken from my patients' charts. I don't know if I am more concerned about the ability of the Summit medical staff to keep this material confidential or the court. I have little trust in either entity.

I would like a list of the charts of mine that have been reviewed and the comments of the reviewers pertaining to my charts.

You will receive this letter by October 1, 2007. I will be out of the country from October 3, 1007 until October 21, 2007.

Sincerely yours,

**REDACTED**