LAW OFFICES OF
**MOSCONE, EMBLIDGE & QUADRA, LLP**
MILLS TOWER
220 MONTGOMERY STREET, SUITE 2100
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (415) 362-3599  FAX: (415) 362-2006

October 18, 2007

Hon. William H. Alsup
United States District Court
Northern District of California
Courtroom 9, 19th Floor
450 Golden Gate Avenue
San Francisco, California 94102

      Re:    *Coyness L. Ennxi, Jr., M.D. v. Alta Bates Summit Medical Center,*
              Case No. C 07-2486 WHA (ENE)

Dear Judge Alsup:

      In accordance with your order of October 15, 2007, this letter responds to Defendant's letter of October 12, 2007 seeking the Court's guidance in addressing concerns expressed by two doctors regarding the disclosure of their peer review information in the course of this litigation. Defendant's counsel submitted a second letter on October 15 that attached an additional, late-filed letter from counsel for a third physician.

**Context of Dr. Ennix's Discovery Request and Doctors' Letters.**

      Plaintiff Dr. Ennix is entitled to discovery of information regarding the peer reviews of other Alta Bates Summit Medical Center ("ABSMC") physicians in order to prove his claim of disparate treatment based on race under 42 U.S.C. Section 1981. Proving such a claim depends on showing ABSMC's "disparate treatment" of physicians of color such as Dr. Ennix as compared to Caucasian physicians. (*Wahl v. Charleston Area Medical Center*, 543 F.Supp.2d 942, 958 (S.D.W.Va. 2006); *see Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1195-1196 (9th Cir. 2003).) In this case, Dr. Ennix has significant anecdotal evidence of such disparate treatment, but needs discovery of peer review information to reveal the pattern of investigation and discipline of physicians of color, as compared to Caucasian physicians, to further substantiate his case. To that end, Dr. Ennix propounded special interrogatories asking ABSMC to "identify" each incident in which it has subjected physicians to investigation and various types of disciplinary action.[1] Dr. Ennix defined "identify" to include each physician's

---

[1] Plaintiff requested information from both Alta Bates and Summit Campuses of ABSMC because events and individuals at both campuses contributed to Plaintiff's peer review, and also requested information covering the last twenty years. Defendant declined to produce any information regarding the Alta Bates Campus and provided information from Summit only since 1995, claiming that it cannot locate records

race but to exclude his/her name in accordance with the Stipulated Confidentiality and Protective Order ("Confidentiality Order," attached as Exhibit A), discussed in more detail below. Before responding to this discovery, ABSMC sent the letter, attached to its filing as Exhibit B, to physicians whose records might be subject to this discovery.

In response to these interrogatories, Defendant produced a summary chart including information regarding the peer reviews of twelve doctors. Dr. Ennix did not request, and ABSMC did not produce, actual peer review records. ABSMC's chart stated that two doctors had "objected." Those "objections" are attached to Defendant's October 12th letter, and a third (from a doctor already represented on Defendant's chart) is attached to Defendant's October 15th letter. A review of these letters makes clear that none is so much an "objection" as an expression of concern.

As expected, the chart documents that Defendant disciplines a disproportionate number of physicians of color for alleged patient care issues and disciplines them more severely than their white counterparts. However, especially in light of the small sample size reflected in the chart, Dr. Ennix must have information regarding the two "objecting" physicians to fully analyze the breadth of this apparent disparity.

**The Physicians' Privacy Interests Are Protected by the Confidentiality Order.**

As a physician who has been subjected to peer review by Defendant Alta Bates Summit Medical Center ("ABSMC"), Dr. Ennix acutely appreciates the concerns of his fellow physicians in maintaining the privacy of their peer review records. Indeed, Dr. Ennix agreed to protect those interests in the Confidentiality Order, which ensures that the names of doctors subject to peer review at ABSMC and patient-identifying information would be redacted, delimits who may have access to documents marked "confidential" and requires that "confidential" information not be used for any purposes beyond this litigation. (See Confidentiality Order, Paragraphs 6, 7, 8.)

Although ABSMC's letter to physicians (its Exhibit B) indicates that peer review information would be handled "as confidentially as possible," it does not detail the protections afforded by the Confidentiality Order. Not surprisingly, the two letters ABSMC received from physicians demonstrate the need for further clarification: one of the letters evidences patent misunderstanding of the situation[2] and another requests a response detailing the steps that will be taken to ensure confidentiality. Defendant took no steps to resolve the issues cited in the doctors' letters before seeking the Court's direction, even though the letters themselves suggest that the concerns could be resolved. Defendant's October 12th letter states that counsel declined to contact these doctors

---

preceding that time, and further that records prior to 1992 are not relevant due to organizational changes.

[2] For example, the letter marked "RECEIVED OCT 03 2007" states the doctor's incorrect understanding that "the Summit medical staff improperly conducted peer review involving a patient of mine."

because it "cannot predict how the objecting parties' confidential information will be handled or who will be allowed to review it once it is released to Plaintiff who remains a current member of the Summit Medical Staff."[3]  This reason is nonsensical in light of the Confidentiality Order, which ensures that doctors' and patients' identities are protected and that confidential information may not be used for any purposes outside of this case.

     Plaintiff's counsel was unable to make contact with the first two physicians because ABSMC redacted their identities pursuant to the Confidentiality Order.  On October 16th, I contacted counsel for the third physician, (referenced in Defendant's October 15th letter and attachment), and at his request furnished a copy of the Confidentiality Order to review and discuss with his client.  As of this writing, this office has not received a response.   On October 17th, Dr. Ennix contacted a doctor whom he believed to be the author of one of the letters contained in ABSMC's Exhibit D and furnished him a copy of the Confidentiality Order.[4]  That doctor left me a voicemail message that same day, and I returned his call this morning.  After the doctor stated that he understood that he could retain counsel to review the Confidentiality Order, I confirmed that the Confidentiality Order would protect his identity from public disclosure.  He stated that he had no objection to his peer review information being produced provided that his identity is protected, and confirmed that he was the author of the first letter contained in ABSMC's Exhibit D (beginning "The purpose of this letter is to express my deep concern …").[5]  Shortly after that phone call, I received a faxed letter from this doctor expressing this position, which is attached hereto as Exhibit B.  (If the Court or counsel for ABSMC wishes to view an unredacted version of the letter, Plaintiff's counsel will file it under seal.)

     As ABSMC noted, the author of the second letter contained in Exhibit B appears to be out of town at this time.  In any event, Dr. Ennix has no idea who this doctor is or how to contact him or her.

     For these reasons, Defendant's request for this Court's direction is premature if not unnecessary in that these doctors' concerns could be resolved informally if they understood the protections provided by the Confidentiality Order.  Thus, Dr. Ennix respectfully requests that the Court direct the parties to confer with the three physicians or their counsel to attempt to resolve their concerns informally.  However, in the event

---

[3]    Defendant states that one of the doctor's "is not available for such discussion until October 21," but Defendant appears to have received the letter before that physician left the area.

[4]    In so doing, Dr. Ennix did not divulge any confidential information.  Rather, Dr. Ennix asked whether the doctor had sent a letter to Mr. Shulman regarding production of his peer review records.  When the doctor confirmed that he had, Dr. Ennix offered to send him the Confidentiality Order and asked that he contact this office if he was comfortable with his peer review information being produced in accordance with it.

[5]    I read the doctor the first few words of the letter and he immediately confirmed that it was his.

Judge Alsup
October 18, 2007
Page 4

the Court wishes to decide this issue, Dr. Ennix has no objection to Defendant's request that the Court order Defendant to produce the requested information pursuant to the Confidentiality Order. Dr. Ennix agrees that the Court must balance the privacy rights of third parties with the plaintiff's interest in discovery.[6] In this case, given that the privacy interests of doctors and patients have ample protection in the Confidentiality Order, there is no basis for withholding the requested information.

      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and this declaration is executed in San Francisco, California.

                      /s/
                Rachel J. Sater
                Attorneys for Plaintiff
                Coyness L. Ennix, Jr., M.D.

Attachments

---

[6] Defendant attempts to argue the merits of Plaintiffs case by citing slip opinions for other districts regarding when physicians are "similarly situated" for Section 1981 comparison. Not only are the slip opinions irrelevant and of no precedential value, but also that issue is not properly before the Court at this time.