Law Offices Of
**MOSCONE, EMBLIDGE & QUADRA, LLP**
Mills Tower
220 Montgomery Street, Suite 2100
San Francisco, California  94104
Telephone: (415) 362-3599  Fax: (415) 362-2006

December 26, 2007

Magistrate Judge Joseph C. Spero
United States District Court,
Northern District of California
Courtroom A, 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

    Re:  *Ennix v. Alta Bates Summit Medical Center,* Case No. C 07-2486 WHA

Dear Magistrate Judge Spero:

    The parties respectfully submit this joint letter seeking the Court's guidance regarding disputed discovery issues, having completed an in-person meet-and-confer process between lead trial counsel.  Although that process resolved some outstanding issues, several issues of paramount importance remain.  Because of the number of discovery requests involved, we have been unable to summarize the parties' respective positions in three pages.

**Plaintiff's Request for Documents Underlying Exhibit A**

    Dr. Ennix seeks the documents underlying Defendant's summary chart of Summit's Medical Executive Committee ("MEC") level actions, designated by Defendant as Exhibit A.  Dr. Ennix offered to limit the documents to all the meeting nimutes of the MEC, its officers and subcommittees, regarding all cases included on Exhibit A.  (Exh. A at 3.)  He also offered to accept these documents under "Attorneys' Eyes Only" protection.  (Exh. A at 3.)  Defendant agrees that "Plaintiff's counsel must be allowed to confirm that the information contained on Exhibit A is accurate," but refuses to allow Plaintiff's counsel to copy and retain the documents, agreeing only to allow "inspection" of "certain supporting records" in redacted form.  (Exh. C at 2.)

    **Plaintiff's Position.**  Defendant concedes the relevance of these documents and Dr. Ennix's right to them.  Defendant's position that Plaintiff's counsel may not copy the documents—but rather must review them at Defendant's counsel's office—has no legitimate purpose.  These documents are covered by the Protective Order (Exh. D) ensuring that they cannot be disclosed or used in any way outside of this case.  Further, Plaintiff offered to accept them with Attorney's Eyes Only protection.  Moreover, all the physicians listed on Exhibit A have already been notified of the use of their peer review materials in this case.  Finally, Defendant produced Exhibit A in partial response to Plaintiff's First Set of Special Interrogatories; Plaintiff never agreed to accept Exhibit A in lieu of documentary evidence.  Since the meeting between counsel, Defendant has similarly refused to allow Plaintiff's counsel to copy (allowing only inspection at

Defendant's counsel's office) documents subpoenaed from a witness. Dr. Ennix respectfully requests that the Court rule that Defendant cannot so limit Plaintiff's access to relevant documents so that he is not forced repeatedly to seek the Court's assistance.

Underlying this issue is the parties' disagreement as to the applicability of California Evidence Code Section 1157 to this case. (See Exh. D ¶¶ 3, 7.) Despite the Protective Order, Defendant seeks to limit severely access to the documents underlying Exhibit A and seeks to withhold *most other relevant documentary evidence* crucial to Dr. Ennix's case, asserting the evidentiary privilege under Section 1157. (In response to over one hundred document requests contained in Exhibits E and F, Defendant initially produced only a portion of one document and amended Exhibit A to address a few issues. Defendant made only very minor concessions to this original position in the meet and confer.) However, the protections of California Evidence Code Section 1157 do not apply to federal claims. *See Burrows v. Redbud Community Hospital Dist.*, 187 F.R.D. 606, 609 (N.D.Cal. 1998) (application of section 1157 would be "inconsistent with the flexibility of federal privilege law."). While Dr. Ennix remains willing to take reasonable steps to protect the confidentiality of sensitive documents, Dr. Ennix requests that the Court clarify that California Evidence Code section 1157 does not control discovery in this case.

**Defendant's Position.** The Court has repeatedly recognized the legitimate interest held by Defendant in protecting its peer review information. For example, Judge Alsup has ruled that peer review information in this case should be filed under seal and subject to a Protective Order. Likewise, this Court has found that peer review information need be produced on an "attorneys' eyes only" basis. Indeed, even Plaintiff acknowledges that his requests implicate "sensitive documents." Given the undisputed sensitivity of the underlying material, the appropriate approach to this specific dispute is to allow Plaintiff to validate the summary chart using the method that is otherwise most protective of the information at issue. Here, that is exactly what Defendant has offered— *i.e.*, that Plaintiff's counsel review (but not copy) the relevant documents to validate the summary chart. Defendant has placed no substantive limit on this review process. Rather, Defendant has only insisted that copies of the documents not be made. And nowhere does Plaintiff offer any reason why copies need to be made of the relevant documents. Nor does Plaintiff explain how copying the documents will allow him to better validate the summary chart. Simply stated, Defendant has offered Plaintiff a meaningful and viable method to validate information that this Court has found to be exceedingly sensitive. Given the nature of this information, any balance clearly tips in favor of the solution that most protects the information. Absent any showing of prejudice, Defendant submits that its proposed solution is a reasonable one.

## Plaintiff's Request for Departmental Peer Review Documents

Dr. Ennix seeks minutes from the Summit Cardiothoracic Peer Review Committee and the Surgery Peer Review Committee from 1992 to 2006 and documents generated in the course of peer reviews for those Committees. (Exh. A at 2; Exh. F, Request Nos. 75, 76.) These committees regularly conduct peer reviews of cardiac

surgeons like Dr. Ennix.  Dr. Ennix also seeks information regarding other Ad Hoc Committee processes at Summit, and documents regarding alleged falsification of medical records at the departmental peer review level.  (Exh. A at 4.)  Dr. Ennix was examined by an Ad Hoc Committee and was suspended for alleged falsification of a medical record.

Defendant refuses to produce any responsive documents, asserting that "the manner in which Caucasian or non-African American physicians were treated at the departmental peer review level . . . has no bearing on Plaintiff's Section 1981 claim here because Plaintiff must compare himself with other Summit Medical Staff Members who had similarly alarming performance deficiencies and who were evaluated by the same set of decision makers."  (Exh. C at 3-4.)  Defendant also refuses to respond based on the burden of notifying all affected doctors and privacy grounds.  (Exh. C at 2-3)

**Plaintiff's Position.**  Aside from the fact that the nation's two leading cardiac surgeons (Dr. Bruce Reitz of Stanford Medical Center and Bruce Lytle of the Cleveland Clinic) disagree with Defendant's assertion that Dr. Ennix's cases evinced *any* performance deficiencies whatsoever, Defendant cannot unilaterally limit Dr. Ennix's access to relevant information and is wrong in asserting the Dr. Ennix can only prove disparate treatment by showing the circumstances underlying his suspension and discipline are essentially identical to the circumstances of other doctors.  He need only show that he is similar in "material respects" to Caucasian doctors whom Defendant treated less harshly than it treated Dr. Ennix.  This is the standard established in *McGuinness v. Lincoln*, 263 F.3d 49, 53-54 (2nd Cir. 2001), and adopted by the Ninth Circuit in *Aragon v. Republic Silver State Disposal, Inc.*, 292 F. 3d 654, 660 (9th Cir. 2002).  Further, Dr. Ennix has credible evidence that he suffered disparate treatment from the onset of his peer review at the departmental level; for example, Defendant convened an Ad Hoc Committee to review ten of Dr. Ennix's cases, *each of which had already been cleared of standard of care issues in an initial review.*  Evidence to date indicates that no Caucasian surgeon has ever undergone further scrutiny after his cases were cleared of care issues at the departmental level, even though Caucasian surgeons had surgical complications and outcomes similar to those for which Dr. Ennix was criticized.  Thus, Dr. Ennix is entitled to minutes and other peer review material from these committees to prove that he suffered disparate treatment.  Defendant's objection regarding privacy and the burden of notifying all affected doctors are unavailing:  First, Judge Alsup's standing order states that documents may not be withheld based on burden.  (Supplemental Order ¶ 16 (April 9, 2007).)  Second, assuming the Court believes notification of other surgeons is even necessary under these circumstances, the number of cardiac surgeons potentially affected by these requests could not be more than twenty, if that, and Dr. Ennix offered to limit the Surgery Peer Review materials to only those evidencing similar issues as those encountered in Dr. Ennix's cases.  (Exh. A at 2.)

**Defendant's Position.**  To begin with, Plaintiff's allegations regarding the "two leading cardiac surgeons" are disingenuous at best.  Regarding Dr. Reitz, Plaintiff neglects to inform the Court that he was provided **only** with Plaintiff's versions of the underlying facts, which Dr. Reitz simply assumed to be true for purposes of his "review."

As he explained: "I do not, of course, as in a peer review process, have all aspects of the medical record, or access to the practitioners involved in the care of the patient."[1] Moreover, at the instruction of one of Dr. Ennix's attorneys, Dr. Reitz removed from his "final report" information critical of Plaintiff. As explained by Dr. Reitz, "[t]he wording that appears in the final report is suggested by Mr. Etchevers."[2] Hence Dr. Reitz's review can hardly be called objective.[3] And Plaintiff neglects to inform this Court that at least one other expert retained by Plaintiff in fact found that Dr. Ennix had "breached" the "medical standard of care for the community" in one instance (Dr. Don Hill QAR at No. 2). Nor is it true that Dr. Ennix's cases had already been cleared of standard of care issues in an initial review. The doctor that performed this review repeatedly testified that Dr. Ennix's performance raised "legitimate" and "fair" concerns about patient safety. E.g., ____ Tr. at 23:23-24:5; 48:6-9.[4] Moreover, this physician admits that his own lack of experience with MIV procedures forms its own basis to question his findings. ___ Tr. at 47:25-48:4.

Like his statement of the facts, Dr. Ennix also misstates the applicable law. To be a relevant comparator, one must be similarly situated "in **all** material respects." *Beck v. UFCW, Local 99*, 506 F.3d 874 (9th Cir. 2007) (emphasis added). Here, Plaintiff's Request Nos. 75 and 76 seek documents related to all "Cardiothoracic Surgery Peer Review Committee meetings from 1987 through 2007." However, documents arising out of the Cardiothoracic Surgery Peer Review Committee meetings have nothing to do with the reviews challenged by Dr. Ennix in this lawsuit, which were **not** conducted by this committee. Rather, Dr. Ennix was reviewed by an Ad Hoc Committee and by the Medical Executive Committee. And these reviews were conducted because of a series of cases that, taken together, raised significant patient safety issues. At bottom, there simply is no overlap in any material respect between the information Plaintiff wants and the decision-making process at issue.

### Plaintiff's Requests for Source Data

Dr. Ennix seeks data regarding the outcomes of a variety of surgical procedures at Summit, as well as the source data underlying several tables used in Dr. Ennix's peer review process. (Exh. B at 1-2; Exh. F.**)** Defendant's counsel agreed in the meet and confer session to produce only outcome data regarding the first twenty minimally invasive cardiac surgeries ("MIV") performed at Summit, but only if Dr. Ennix agreed not to press his request for any other source data. Subsequently, during the exchange of drafts of this letter, Defendant's counsel agreed to produce "a chart of the first approximately 20 same procedures (that is minimally invasive valve replacement procedures using the same technique) in terms of comparative surgery times, outcomes and blood usage," but not other data relating to the MIV procedures and no source or

---

[1] Reitz Tr. at 104:17-21.
[2] Reitz Tr. at 95:16-17.
[3] Although Dr. Lytle has not yet been deposed, one might reasonably assume that a similar approach has been taken.
[4] Defendant omits this physician's name in this public record.

comparative data for any of the other surgical procedures regarding which Defendant criticized Dr. Ennix.

**Plaintiff's Position.** Defendant and the individual physicians who participated in Dr. Ennix's peer review justified the peer review and the procedural irregularities therein by allegations that his cases over a period of time involved certain issues and outcomes that lay outside the norm for the practice. They attempted to demonstrate this in part by use of summary tables that sought to compare carefully selected statistics relating to Dr. Ennix's surgeries with those of his peers *in aggregate*. Plaintiff is entitled to the raw source data underlying the tables and charts in order to test the hospital's statistical analysis and its assertion that Dr. Ennix's record lay outside the norm for his practice, and to show that decision makers were presented with artificially skewed statistics regarding Dr. Ennix. Moreover, Defendant has taken the position that the issues allegedly surrounding the four minimally invasive cases could not be explained by the newness of the procedure. Dr. Ennix is entitled to get the records of the first few minimally invasive cases of other doctors as well as later cases to test this assertion. Dr. Ennix expects this data will show that every doctor who engaged in MIV procedures had the same issues in the initial's cases but that those issues dissipated over time. Providing documents relating to just the first 20 cases—without later cases—is insufficient to allow this crucial comparison. Finally, Defendant must produce data regarding the first few cases involving other new procedures and later cases (see, e.g., Exh. F, RFP 122-125) to test Defendants' assertions that long operative time and high blood usage cannot be explained by the newness of a procedure. Statistical information such as this is relevant to proving discrimination in a disparate treatment case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805 (1973). Producing such data is not burdensome: Defendant keeps such data in easily retrievable form and must report all such cardiac surgery data regularly to the State as well as to the Society of Thoracic Surgeons.

**Defendant's Position.**

Defendant has offered to provide comparative information regarding initial, similar MIV procedures done at Summit after Ennix experienced difficulty. Specifically, Defendant will provide a chart of the first approximately 20 same procedures (that is MIV replacement procedures using the same technique) in terms of comparative surgery times, outcomes and blood usage. Information related to unspecified "other new procedures" is irrelevant. Moreover, information beyond that offered by Defendant (i.e., surgery times, outcomes and blood usage) is unnecessary for the comparison at issue. Nor is Plaintiff's statement about burden correct. Collecting such information is extremely time-consuming.

### Plaintiff's Request for National Medical Audit Documents

Dr. Ennix seeks communications and peer review documents related to the National Medical Audit ("NMA"), the outside peer review company that reviewed Dr. Ennix's cases. (Exh. A at 4.) Defendant asserts that it chose the NMA to review Dr. Ennix's cases based on the fairness and quality of NMA's review of *another* Summit

physician.  Dr. Ennix believes Defendant used NMA because Defendant knew that NMA would find fault with Dr. Ennix because that is what Defendant wanted NMA to find. Dr. Ennix also has uncovered evidence that Defendant's lawyer worked closely with the NMA in the preparation of the NMA's reports.  Defendant has agreed only to allow Dr. Ennix's counsel to *inspect* (1) the letter from Defendant to NMA forwarding materials to be reviewed and (2) the NMA's final report regarding this other physician.

**Plaintiff's Position.**  Again, there is simply no basis for Defendant to allow only inspection of these documents, given the Protective Order.  Further, the doctor at issue already has received a privacy notification because his information is included on Exhibit A.  Requiring inspection of the documents at counsel's office is nothing but harassment.  Finally, Defendant must produce more than just the transmittal letter and final report; any draft reports or other correspondence should be produced to allow Dr. Ennix's counsel to evaluate the claim of fairness and objectivity.

**Defendant's Position.**  Nowhere does Plaintiff assert any facts supporting his conclusion that "Defendant knew that NMA would find fault with Dr. Ennix because that is what Defendant wanted NMA to find."  Nonetheless Plaintiff seeks documents regarding peer review conducted on a physician wholly unrelated to this case.  In response, Defendant has offered to allow Plaintiff to review NMA's final report regarding this "other physician" as well as any correspondence between NMA and Defendant. (Defendant does not possess any draft reports.)  As discussed above, this is a fair procedure designed to allow Plaintiff to test his theories against the underlying documents while at the same time maintaining the secrecy of the underlying documents. Nowhere does Plaintiff explain any way in which he is prejudiced by such a procedure.

Respectfully submitted,


By:_____/s/_____

G. SCOTT EMBLIDGE
Counsel for Plaintiff
COYNESS L. ENNIX, JR., M.D.



By:_____/s/_____

ALEX HERNAEZ
Counsel for Defendant
ALTA BATES SUMMIT MEDICAL CENTER


Attachments