Law Offices Of
**MOSCONE, EMBLIDGE & QUADRA, LLP**
Mills Tower
220 Montgomery Street, Suite 2100
San Francisco, California 94104
Telephone: (415) 362-3599   Fax: (415) 362-2006

January 11, 2008

<u>Via E-filing and Hand Delivery</u>

Magistrate Judge Joseph C. Spero
United States District Court,
Northern District of California
Courtroom A, 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

    Re:  *Ennix v. Alta Bates Summit Medical Center*, Case No. C 07-2486 WHA

Dear Magistrate Judge Spero:

    At today's hearing I promised to follow up with Court and identify the specific data Plaintiff seeks that is regularly reviewed by the Cardiothoracic Peer Review Committee and its Performance Improvement Council. I have attached to this letter the one-page agenda to which I referred in today's hearing. The relevant entry is under heading IV.A.3: "STS by MD 2003-2nd qtr. 2004."

    I have also attached a page from Dr. Russell Stanten's deposition in which he discusses this agenda and describes this particular data as follows: "I believe it has to do with the mortality rates and other STS data, such as stroke, return to surgery for any cause, sternal wound infection for any cause, and then it was provided by individual surgeon."

    This is the surgeon-specific, quarterly data we believe the hospital regularly maintains and that Plaintiff needs to review. Please let me know if the Court wants any additional information regarding this issue.

                              Sincerely,

                              MOSCONE, EMBLIDGE & QUADRA, LLP

                              G. Scott Emblidge

cc:  Matthew Vandall (via facsimile)

CONFIDENTIAL

# ABSMC – Summit Campus
# CARDIOTHORACIC SURGERY
Performance Improvement Council/ Peer Review Meeting
August 23, 2004

I.  **CALL TO ORDER**

II. **APPROVAL OF MINUTES:** May 3, 2004

III. **PERFORMANCE IMPROVEMENT**
   A.  **HOSPITAL ISSUES**
      1. Administrative update – A. Bengtson
      2. Lab issues – Dr. Shaieb
      3. Staffing / Bed Issues – N. Brosnan
      4. Tele monitoring post OHS – J. Mendoza
      5. Verbal order compliance (pg. 5)
      6. Equipment Issues

   B.  **OUTCOMES**
      1. Critical Care Performance Improvement – C. Wong
         a. Extubation Data (pg.6-9)
         b. Self-Extubation PI Report (pg. 10)
         c. Medication Profile PI Report (pg. 11)
         d. Donor Site Infection PI Report (pg. 12)
      2. Infection Control Report – J. Wrobel (pg. 13-20)
      3. CT Surgery Profile (pg. 21)
      4. Isolated CABG Data 2003 – A. Mulligan (pg. 22)

IV. **ADJOURNMENT OF P.I. MEETING FOR PEER REVIEW PORTION**

   A.  **MONITORING AND EVALUATION**
      1. August Case Review
      2. Blood use
      3. STS by MD 2003- 2nd qtr. 2004

V.  **ADJOURNMENT**

VI. **ATTACHMENTS**

*NEXT MEETING*

D 4329

```
 1    data that's surgeon specific.
 2         Q.   Can you give me an approximation of when blood
 3    use data was communicated surgeon-specific?
 4         A.   Probably 2005 or 2006.
 5         Q.   And in the third heading, STS by M.D., M.D.
 6    means doctor, right?
 7         A.   Yes.
 8         Q.   What does STS mean?
 9         A.   Society of Thoracic Surgeons.
10         Q.   What type of data is conveyed in that part of
11    the meeting?
12         A.   I don't recall specifically, but I believe it
13    has to do with the mortality rates and other STS data,
14    such as stroke, return to surgery for any cause, sternal
15    wound infection for any cause, and then it was provided
16    by individual surgeon.
17         Q.   In your peer review meetings before February
18    of 2004, did you review data that gave you any concern
19    about Dr. Ennix?
20              MS. McCLAIN:  Objection.  Compound, vague.
21              THE WITNESS:  I don't recall any specific
22    data.  Even the data that was presented at these
23    meetings by surgeon, the surgeon name was blinded, it
24    was coded and only the surgeon knew who he was.
25              MR. EMBLIDGE:  Q.  You say you didn't know
```