1   MAUREEN E. MCCLAIN (State Bar No. 062050)
    Email: mcclain@kmm.com
2   ALEX HERNAEZ (State Bar No. 201441)
    Email: hernaez@kmm.com
3   MATTHEW P. VANDALL (State Bar No. 196962)
    Email: vandall@kmm.com
4   KAUFF MCCLAIN & MCGUIRE LLP
    One Post Street, Suite 2600
5   San Francisco, California 94104
    Telephone:   (415) 421-3111
6   Facsimile:   (415) 421-0938

7   Attorneys for Defendant
    ALTA BATES SUMMIT MEDICAL CENTER
8

9                   UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11

12   COYNESS L. ENNIX, JR., M.D.,              CASE NO.  C 07-2486 WHA

13                   Plaintiff,                **DEFENDANT ALTA BATES
                                               SUMMIT MEDICAL CENTER'S
14   v.                                        NOTICE OF MOTION AND
                                               MOTION FOR SUMMARY
15   ALTA BATES SUMMIT MEDICAL CENTER,         JUDGMENT; MEMORANDUM OF
                                               POINTS AND AUTHORITIES IN
16                   Defendant.                SUPPORT THEREOF**

17                                             **FED. R. CIV. P. 56**

18                                             **DATE:**    April 3, 2008
                                               **TIME:**    8:00 a.m.
19                                             **DEPT:**    Ctrm. 9, 19th Floor
                                               **JUDGE:**   Hon. William H. Alsup
20
                                               **COMPLAINT FILED:**   May 9, 2007
21                                             **TRIAL DATE:**   June 2, 2008

22

23

24

25

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ............................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.     INTRODUCTION ............................................................................................ 2

II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND ............................. 3

III.   ARGUMENT ................................................................................................... 6

       A.    Standard Of Proof Under Fed. R. Civ. P. 56 ............................................. 6

       B.    The § 1981 Claim Fails Because There Is No "Contract" At Issue ............ 6

       C.    Ennix's § 1981 Claim Cannot Pass Muster Under McDonnell
             Douglas Corp. v. Green........................................................................... 10

             1.    Ennix Cannot Establish A Prima Facie Case Of Race
                   Discrimination. .............................................................................. 11

             2.    Assuming Arguendo Ennix Could Establish A Prima Facie
                   Case Under § 1981 (And Surely He Cannot) ABSMC Has
                   More Than Ample Evidence To Rebut It......................................... 13

             3.    ABSMC Is Entitled To Summary Judgment Because Ennix
                   Has No Evidence Whatsoever Of Pretext, Much Less Any
                   Evidence Of Race Discrimination. ................................................. 14

                   a.    Ennix Cannot Be Compared to Other "Similarly
                         Situated" Physicians, Even If Such A Comparison
                         Were Relevant. ..................................................................... 14

                   b.    Ennix Cannot Show Any Racial Bias On The Part Of
                         NMA....................................................................................... 17

                   c.    Despite His Statements to the Contrary, Ennix Has Not
                         Been Cleared by All "Neutral" Reviewers............................. 19

       D.    ABSMC Is Entitled To An Award Of Attorneys' Fees................................. 24

IV.    CONCLUSION ............................................................................................... 25

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF            CASE NO. C 07-2486 WHA

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ................................................................................. 6

*Baqir v. Principi*
434 F.3d 733 (4th Cir. 2006) ...................................................................... 2

*Carmen v. San Francisco Unified Sch. Dist.*
237 F.3d 1026 (9th Cir. 2001) .................................................................. 12

*Celotex Corporation v. Catrett*
477 U.S. 317 (1986) ................................................................................. 6

*County of Tuolumne v. Sonora Community Hosp.*
236 F.3d 1148 (9th Cir. 2001) .................................................................... 2

*Domingo v. New England Fish Co.*
727 F.2d 1429 (9th Cir. 1984) .................................................................. 10

*Domino's Pizza, Inc. v. McDonald*
546 U.S. 470 (2006) ................................................................................. 7

*Fonseca v. Sysco Food Servs. of Ariz., Inc.*
374 F.3d 840 (9th Cir. 2004) ................................................................... 10

*Fontenot v. Upjohn Co.*
780 F.2d 1190 (5th Cir. 1986) ................................................................. 25

*Garza v. Adams*
2008 U.S. Dist. LEXIS 9841 ................................................................... 24

*Hansen v. United States*
7 F.3d 137 (9th Cir. 1993) ...................................................................... 12

*Janda v. Madera Community Hosp.*
16 F. Supp. 2d 1181 (E. D. Cal. 1998) ................................................... 8, 9

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*
466 U.S. 2 (1984) .................................................................................... 2

*Lindsey v. Shalmy*
29 F.3d 1382 (9th Cir. 1994) .................................................................. 12

*Matsushita Electrical Industry Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986) ................................................................................. 6

- ii -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. C 07-2486 WHA

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Mbadiwe v. Union Mem'l Reg'l Med. Ctr., Inc.*
   2007 U.S. Dist. LEXIS 30319 (W.D.N.C. Apr. 24, 2007) .......................................... 15

*McDonnell Douglas Corp. v. Green*
   411 U.S. 792 (1973) ............................................................................................... 10, 14

*Mehta v. HCA Health Servs. of Fla., Inc.*
   2006 U.S. Dist. LEXIS 79536 (M.D. Fla. 2006) ........................................................ 15

*Nidds v. Schindler Elevator Corp.*
   113 F.3d 912 (9th Cir. 1996) ..................................................................................... 13

*Palmer v. United States*
   794 F.2d 534 (9th Cir. 1986) ..................................................................................... 11

*Rabinovitz v. Pena*
   89 F.3d 482 (7th Cir. 1996) ....................................................................................... 19

*Robinson v. Adams*
   847 F.2d 1315 (9th Cir. 1987) ................................................................................... 19

*Smith v. Ricks*
   31 F.3d 1478 (9th Cir. 1994) ..................................................................................... 15

*St. Mary's Honor Ctr. v. Hicks*
   509 U.S. 502 (1993) ................................................................................................... 14

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) ..................................................................................... 24

*Vesom v. Atchison Hosp. Ass'n*
   2006 U.S. Dist. LEXIS 68576 (D. Kan. 2006) ........................................................... 15

*Yartzoff v. Thomas*
   809 F. 2d 1371 (9th Cir. 1987) .................................................................................. 11

## FEDERAL STATUTES

42 U.S.C. § 1981 ............................................................................................... passim

42 U.S.C. § 1988 ...................................................................................................... 24

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. C 07-2486 WHA

# TABLE OF AUTHORITIES
## (continued)

Page(s)

## FEDERAL RULES

Fed. R. Civ. P. 56 ........................................................................................... 6, 25

Fed. R. Civ. P. 56(e) ............................................................................................ 6

Fed. R. Evid. 201(b) ............................................................................................ 24

## CALIFORNIA CASES

*Arnett v. Dal Cielo*
   14 Cal. 4th 4 (1996) ........................................................................................ 9

*Kibler v. Northern Inyo County Local Hosp. Dist.*
   39 Cal. 4th 192 (2006) .................................................................................... 2

*O'Byrne v. Santa Monica-UCLA Medical Ctr.*
   94 Cal. App. 4th 797 (2001) ........................................................................ 8, 9

*Westlake Comm. Hosp. v. Los Angeles Superior Ct.*
   17 Cal. 3d 465 (1976) .................................................................................... 14

## CALIFORNIA REGULATIONS

22 Cal. Code Reg. § 70703 ................................................................................. 8

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF      CASE NO. C 07-2486 WHA

1 | **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

2 | PLEASE TAKE NOTICE that on April 3, 2008 at 8:00 a.m., or as soon

3 | thereafter as counsel may be heard in Courtroom 9 of the above-entitled Court, located

4 | at 450 Golden Gate Ave., 19th Floor, San Francisco, CA, Defendant Alta Bates Summit

5 | Medical Center (the "Medical Center" or "ABSMC") shall ask that the Court grant

6 | summary judgment in its favor and against Plaintiff Coyness L. Ennix, Jr., M.D. ("Ennix"

7 | or "Plaintiff") pursuant to Fed. R. Civ. P. 56.

8 | ABSMC's motion shall be based upon this Notice of Motion and Motion for

9 | Summary Judgment, the accompanying Memorandum Of Points And Authorities in

10 | support thereof, the excerpts of relevant deposition testimony, the Declarations of Alex

11 | Hernaez, Robert H. Breyer, M.D., Dr. Jeffrey Breall, M.D., William M. Isenberg

12 | (previously filed under seal on May 30, 2007), Karen Weaver (previously filed under seal

13 | on May 30, 2007), Lamont D. Paxton (previously filed under seal on May 30, 2007),

14 | Coyness L. Ennix (previously filed on July 19, 2007), as well as all records and

15 | proceedings in this action, and on such other and further matters as may be presented

16 | to the Court in connection with the hearing.

17 | Pursuant to 42 U.S.C. § 1988, ABSMC requests that it be awarded

18 | attorneys' fees as a prevailing party.

19 | DATED:        February 20, 2008         Respectfully submitted,

20 | KAUFF MCCLAIN & MCGUIRE LLP

21 |

22 | By: _____

23 | ALEX HERNAEZ

24 | Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL
CENTER

25 |

26 |

27 |

28 |

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION.**

3    "Hospital peer review, in the words of the [California] Legislature, is

4    essential to preserving the highest standards of medical practice throughout California."

5    *Kibler v. Northern Inyo County Local Hosp. Dist.*, 39 Cal. 4th 192, 199 (2006) (internal

6    quotations omitted). Indeed, both the Supreme Court of the United States and the Ninth

7    Circuit Court of Appeals have acknowledged a medical staff's "unquestioned right to

8    exercise some control over the identity and the number of doctors to whom it accords

9    staff privileges." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 30 (1984);

10    *County of Tuolumne v. Sonora Community Hosp.*, 236 F.3d 1148, 1155 (9th Cir. 2001).

11    Because of this, "the decision of a hospital's governing body concerning the granting of

12    hospital privileges is to be accorded great deference." *Id. (citing Laje v. R.E. Thomason*

13    *Gen. Hosp.*, 564 F.2d 1159, 1162 (5th Cir. 1977)). And because of this deference, the

14    assessment of a particular physician's capabilities "is not one which [courts] are inclined

15    to impugn." *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006).

16    As this Court has already held, Ennix, like all other staff physicians, must

17    adhere to the Summit Medical Staff's internal peer review procedures, which provide

18    both medical expertise and oversight. Indeed, the internal procedures here are

19    fundamentally fair and include the right to a hearing, the right to present evidence, and

20    the right to appeal. Ennix has unilaterally abandoned this process and, at bottom, asks

21    this Court to second guess the combined medical judgment of dozens of unbiased

22    professionals. It should decline the invitation. As discussed more fully below, there

23    simply is no evidence of racial animus by the Summit Medical Staff Medical Executive

24    Committee ("MEC"),[1] which is the **only** question before the Court.

25    In particular, Ennix has admitted possessing no evidence that any of the

26    decision makers held any racial animus. And it is undisputed that the core report, that of

27

28    _____
[1]  The members of the February 8, 2005 MEC are listed in Exhibit A to the previously filed
Declaration of Karen Weaver.

- 2 -

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-2486 WHA

1   the outside review agency, National Medical Audit ("NMA"), was prepared by physicians

2   who did not know Ennix's race.  Moreover, Ennix's central claim—that he has somehow

3   been "cleared" by all neutral reviewers—is patently false.  Rather, his actions have been

4   questioned by the Medical Board of California, by Dr. Hon S. Lee, a physician that Ennix

5   concedes is a "top practitioner," and by **two** of Ennix's own retained experts.

6          As to arguments that other cardiac surgeons should have been treated

7   more harshly, those surgeons simply were not similarly situated.  Specifically, it is

8   undisputed that none of those surgeons' procedures came to the attention of the MEC in

9   a manner akin to what occurred with Dr. Ennix.  Ennix started this case having a vague

10  notion that others had been treated differently.  Now, after months of discovery, covering

11  15 years of peer review, and exhaustive depositions, he still has nothing to rely upon but

12  speculation and conjecture.  Therefore summary judgment is proper.

13         Additionally, Ennix's claim fails for a more fundamental reason: there is no

14  contract between him and ABSMC.  And absent a contractual relationship, a claim under

15  § 1981 cannot be asserted.

16  II.    **PROCEDURAL HISTORY AND FACTUAL BACKGROUND.**

17         On May 9, 2007, Plaintiff commenced an action in this Court styled

18  *Coyness L. Ennix, Jr., M.D., as an individual and in his representative capacity under*

19  *Business & Professions Code § 17200 et seq. v. Russell D. Stanten, M.D., Leigh I.G.*

20  *Iverson, M.D., William M. Isenberg, M.D., Ph.D., Alta Bates Summit Medical Center and*

21  *Does 1 through 100*.  The Complaint asserts five causes of action—one arising under

22  federal law and the balance under California law.  By Order dated August 28, 2007,[2] the

23  Court dismissed the state-law causes of action as well as the individual defendants.

24  Accordingly, there is but a single claim remaining against ABSMC.  Specifically, Count I

25  of the Complaint alleges race discrimination in violation of 42 U.S.C. § 1981 based upon

26

27

28

[2]  The Court's August 28, 2007 Order details the peer review process that Ennix is attempting to challenge.

- 3 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO. C 07-2486 WHA

1    unspecified "contractual duties" Plaintiff alleges he had "with Alta Bates Summit and his

2    patients." *See Complaint*, ¶ 41 at p. 12:13.

3    Ennix has been on staff at Alta Bates or Summit Medical Center (or their

4    predecessors) since 1981—nearly thirty years. *See* Complaint at ¶ 17. At one time,

5    Ennix was a member of the East Bay Cardiac Surgery Center. In October of 2005,

6    however, Ennix left the group. *See* Complaint at ¶ 30. Nonetheless, Ennix remains on

7    the Summit medical staff. Ennix Tr. at 49:13-20. The East Bay Cardiac Surgery Center

8    held certain contracts with ABSMC. *See, e.g.,* Hernaez Decl. at ¶ 2 & Ex. A. By

9    contrast, Defendant contends that Ennix cannot identify any individual contracts between

10   the parties and, as he expressly concedes, Ennix has never been employed by ABSMC.

11   *See* Ennix Tr. at 50:3-8 (attached as Exhibit B to the Hernaez Decl.).

12   The MEC made the peer review decisions at issue in this lawsuit. Those

13   decisions were based upon the work of multiple peer review sub-committees, cardiac

14   surgeon Dr. Lee, and the independent outside peer review organization NMA, which is a

15   unit of The Mercer Human Resource Consulting Group. *See* Isenberg Decl. at ¶ 1.

16   Dr. Neil Smithline, NMA's Director of Clinical Quality, appointed two

17   reviewers, Leland B. Housman, M.D., F.A.C.S., F.A.C.C., a cardiothoracic surgeon, and

18   Robert H. Breyer, M.D., a cardiovascular surgeon. *See* Isenberg Decl. at ¶ 11. Also

19   participating in the NMA review was Dr. Jeffrey Breall, M.D., who is a Board certified

20   physician in internal medicine, cardiovascular diseases and interventional cardiology.

21   *See* Breall Decl. at ¶ 1, lines 6-7.

22   Ennix spoke with these reviewers by telephone and provided them with

23   "lots of information." Ennix Tr. at 297:12-17. In fact, Dr. Ennix was given the opportunity

24   to present written information, his perspectives on each case, and responses to

25   questions from the NMA reviewers prior to the preparation of NMA's written report. *See*

26   Isenberg Decl. at ¶ 11.[3] Importantly, none of the NMA physician-reviewers knew Ennix's

27

28

---

[3] The NMA report is attached as Appendix A to the AHC report submitted with Dr. Paxton's previously filed declaration.

- 4 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-2486 WHA

1   race until after the report was finalized. *See* Breyer Decl. at ¶ 3; *see also* Breall Decl. at

2   ¶ 3 (same); Smithline Tr. at 320:21-23 (not aware of Dr. Ennix's race at any time prior to

3   the date of the NMA report); Housman Tr. at 131:15 to 132:5.[4]

4           Indicative of the care applied by the MEC to this peer review process is the

5   fact that fees for this outside audit were about $115,000, a number which includes

6   charges for over 170 hours of time spent by the three physician reviewers on chart

7   review, data analysis, consideration of material submitted by Dr. Ennix, speaking with Dr.

8   Ennix, and preparation of the NMA report. *See* Isenberg Decl. at ¶ 11.

9           In the May 3, 2005 NMA report, three major problems with Plaintiff's

10  standard of care were identified: (1) poor judgment (leading to death in three cases,

11  post-operative cardiac arrest in one case, and severe complications in another case);[5]

12  (2) substandard surgical technique (six of ten cases); and (3) "grossly substandard"

13  documentation.[6] *See* Paxton Decl., ¶ 5 & Ex. A (Appendix A at pp. 4-31); Isenberg

14  Decl., ¶ 12. The NMA report concluded that "[i]f [Plaintiff's] patterns of care go

15  uncorrected, it is likely that there will be future patient harm." *Id.*

16          Ultimately, Plaintiff's peer review involved input from more than 35 different

17  physicians and stemmed from, among other things, Plaintiff's "poor results" with certain

18  surgical procedures (including death, respiratory failure or a return to surgery) as well as

19  statistical data showing that Plaintiff had a patient mortality rate more than double that of

20  his peers over a four year time period. *See* Isenberg Decl. at ¶¶ 7-9. Based upon this

21  and other similarly alarming patient care information, the MEC took corrective actions

---

[4]   The relevant deposition testimony of Dr. Smithline is attached as Exhibit C to the Hernaez Decl. and the relevant testimony of Dr. Housman is attached as Exhibit D.
[5]   NMA concluded that Plaintiff exercised poor judgment in deciding whether to operate, when to operate, the best treatment option for the patient, and when additional information should have been obtained before making the treatment decision. The cases reviewed showed that Plaintiff frequently failed to integrate his patients' changing clinical situation into his decision making. Paxton Decl., Ex. A (Appendix A at pp. 4-18, 30).
[6]   NMA concluded that Plaintiff's operative notes were "grossly substandard." Paxton Decl., Ex. A (Appendix A at p. 31). The notes reviewed did not provide sufficient detail of operative findings or describe what actually happened in the operating room. Rather, his notes convey the impression that surgery was routine, when in fact, there were multiple complications and very prolonged surgery times. Paxton Decl., Ex. A (Appendix A at p. 31).

- 5 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1   including an agreed upon restriction to surgical assisting from May to October of 2005

2   and proctoring from October of 2005 to July of 2006. *See* Isenberg Decl. at ¶¶ 6-17

3   (outlining each peer review decision made).

4   **III.    ARGUMENT.**

5          **A.    Standard Of Proof Under Fed. R. Civ. P. 56.**

6                On its motion for summary judgment, ABSMC bears the initial burden of

7   demonstrating the absence of a genuine issue of material fact. *See Anderson v. Liberty*

8   *Lobby, Inc.*, 477 U.S. 242, 256 (1986). It need not disprove Ennix's case, however. *See*

9   *Celotex Corporation v. Catrett*, 477 U.S. 317, 325 (1986). If ABSMC meets its initial

10  burden, then Ennix "may not rely merely on allegations or denials in [his] own pleading;

11  rather, [Ennix's] response must--by affidavits or as otherwise provided in this rule--set

12  out specific facts showing a genuine issue for trial. If [he] does not so respond, summary

13  judgment should, if appropriate, be entered against that party." *See* Fed. R. Civ. P.

14  56(e).

15                Moreover, Ennix "must do more than simply show that there is some

16  metaphysical doubt as to the material facts. Where the record taken as a whole could

17  not lead a rational trier of fact to find for [Ennix], there is no 'genuine issue for trial.'" *See*

18  *Matsushita Electrical Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

19  Summary judgment is "properly regarded not as a disfavored procedural shortcut, but

20  rather as an integral part of the Federal Rules as a whole, which are designed 'to secure

21  the just, speedy and inexpensive determination of every action.'" *See Celotex*, 477 U.S.

22  at 327. "[T]he mere existence of a scintilla of evidence" is insufficient to create a

23  genuine issue of material fact. *See Anderson*, 477 U.S. at 252.

24         **B.    The § 1981 Claim Fails Because There Is No "Contract" At Issue.**

25                Plaintiff's first cause of action fails because there is no contractual

26  relationship between Plaintiff individually and ABSMC. In sworn Interrogatory

27  responses, Ennix points to three types of "contracts," none of which are remotely

28  sufficient to support a § 1981 claim.

- 6 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO. C 07-2486 WHA

1    First, Ennix relies on contracts between ABSMC and the East Bay Cardiac

2    Surgery Center. *See, e.g.,* Hernaez Decl. at ¶ 2 & Ex. A. However, these contracts fail

3    under *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006). In *Domino's Pizza*,

4    the plaintiff (McDonald) was the "sole shareholder and president of JWM, Investments,

5    Inc." *Id.* at 472. JWM and Domino's Pizza (rather than McDonald and Domino's Pizza)

6    entered into several contracts. *Id.* Analyzing McDonald's right to bring a § 1981 claim

7    individually, the Supreme Court ruled that a plaintiff "who lacks any rights under an

8    existing contractual relationship with the defendant, and who has not been prevented

9    from entering into such a contractual relationship" may not file suit under Section 1981.

10   *Id.* at 472.

11   The Supreme Court emphasized that this long-standing rule is required by

12   the text of the statute:

13   *Section 1981* offers relief when racial discrimination blocks

14   the creation of a contractual relationship, as well as when

15   racial discrimination impairs an existing contractual

16   relationship, so long as plaintiff has or would have rights

     under the existing or proposed contractual relationship.

17

18   *Id.* at 476. Because no contractual relationship existed between the plaintiff and the

19   defendant, the Court dismissed the claim. *Id.* at 474, 480. The same rule controls here.

20   Because East Bay Cardiac Surgery Center (or any other entity) is not a party to this

21   lawsuit, its rights cannot be enforced by Ennix individually. Indeed, having the benefit of

22   using a corporation to enter into these independent contractor agreements, Ennix cannot

23   now use the agreements as a basis for claiming purely individual benefits.

24   Second, Ennix points to various consent forms signed by Ennix's patients.

25   *See, e.g.,* Hernaez Decl. at ¶ 6 & Ex. E. These simply are not contracts between Ennix

26   and ABSMC. Rather, they provide patients with information regarding medical

27   procedures. The consents do not obligate ABSMC to do anything, they do not show

28   ABSMC to be a party, they do not show any acceptance by ABSMC, and they do not

- 7 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO. C 07-2486 WHA

1  guarantee any consideration to ABSMC.  Moreover, the Court in *Darke v. Estate of*

2  *Isner*, 20 Mass. L. Rep. 419, *22 (Mass. Super. Ct. 2005), held that physician consent

3  forms do not create a contract between physician and patient.  Surely then there can be

4  no contract created between hospital and physician by a consent form.

5          Third, Ennix points to the Medical Staff Bylaws as contractual.  *See*

6  Isenberg Decl. at Exs. A-C.  However, in *O'Byrne v. Santa Monica-UCLA Medical Ctr.*,

7  94 Cal. App. 4th 797, 810 (2001) the Court held that "under California contract law,

8  medical staff bylaws adopted pursuant to California Code of Regulations, title 22, section

9  70703, subdivision (b), do not in and of themselves constitute a contract between a

10  hospital and a physician on its medical staff."[7]  True, the Court in *Janda v. Madera*

11  *Community Hosp.*, 16 F. Supp. 2d 1181, 1185 (E. D. Cal. 1998) reached a somewhat

12  inconsistent (but different) conclusion.  However, it did so without the benefit of *O'Byrne*,

13  a California Court of Appeals case establishing a point of California contract law.

14  Indeed, the *Janda* Court recognized its limitations absent any decisions from the state's

15  highest court or any intermediate appellate court.  *Id.* at 1186.  This Court, unlike the

16  Court in *Janda*, has the benefit of *O'Byrne*.  And, where the state Supreme Court has not

17  addressed the question, the "federal court must follow the decisions of the state's

18  intermediate appellate courts."  *Id.*

19          In addition, "*Janda* itself suggested its conclusion would have been

20  different had it been the medical staff bylaws at issue [as they are here] rather than the

21  hospital's governing body's bylaws."  *O'Byrne*, 94 Cal. App. 4th at 808; *see also Janda*,

22  16 F. Supp. 2d at 1187, which emphasized that 22 Cal. Code Reg. § 70703 requires

23  physicians to comply with medical staff bylaws and not hospital corporate bylaws.  In

24  *Janda*, it was this additional agreement which transcended the physician's regulatory

25  obligations and constituted the consideration necessary for the creation of a contract.

26  The issue here is whether the Medical Staff's Bylaws, and not ABSMC's bylaws, created

---

27  [7] 22 Cal. Code Reg. § 70703 provides that a hospital's medical staff shall adopt bylaws
establishing formal procedures for, among other things, evaluating staff members. The Bylaws at
28  issue carry out this mandate.  *See* Isenberg Decl., Exhs. A-C.

- 8 -

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
    CASE NO. C 07-2486 WHA

1   a contract between Plaintiff and ABSMC.  Therefore, under both *O'Byrne* and *Janda,* the

2   Court should decline to find that a contractual relationship existed between Plaintiff and

3   ABSMC.

4         Finally, unlike the litigants in *Janda* (where a contract of employment

5   existed), there is no employment relationship here.  "Staff physicians are private doctors

6   granted medical staff privileges to treat their patients in the hospital setting." *Arnett v.*

7   *Dal Cielo*, 14 Cal. 4th 4, 12 (1996).  Indeed, Ennix does not even allege any contractual

8   employment relationship.  Rather, he has unequivocally renounced any such

9   relationship:

10        Q.    You're certainly not an employee of the medical
              center; are you?
11

        A.    No.  That's for sure.
12

13        Q.    Have you ever been an employee of the medical
              center?
14        A.    No.

15  Ennix Tr. at 50:3-8.

16        And the very contracts he points to, between ABSMC and East Bay

17  Cardiac Surgery Center, disavow any such status:

18                    **INDEPENDENT CONTRACTOR RELATIONSHIP**

19              In performing the services described in this Agreement,

20              Group (and each Physician and Employee) is acting as an

21              independent contractor, and shall not be considered an

22              employee, joint venturer, or partner of Hospital for any

23              purpose whatsoever."

24  *See* Hernaez Decl. at ¶ 2 & Ex. A (p. 9, Section 5).

25        Nor can Ennix possibly claim to be a third-party beneficiary of the contracts

26  between ABSMC and East Bay Cardiac Surgery Center:

27

28
                                        - 9 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1                  [T]his Agreement shall not be construed as creating any right,

2                  claim or cause of action against either party by any person or

3                  entity not a party to this Agreement.

4  *Id.* at Ex. A (p. 12, Section 11.5). Because Ennix is not defined as a party to the

5  contracts (*id.* at p. 1, above RECITALS), he cannot claim any third-party rights against

6  ABSMC under the contracts. And because he has no contractual agreements with

7  ABSMC whatsoever, he simply cannot use § 1981 to excuse his failure to exhaust the

8  administrative remedies provided him by ABSMC.

9      **C.**    **Ennix's § 1981 Claim Cannot Pass Muster Under *McDonnell Douglas Corp. v. Green.***

10

11            In evaluating disparate treatment claims under § 1981, Courts apply the

analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See*

12

*Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). The

13

applicable test under *McDonnell Douglas* is as follows:

14

15                A plaintiff must first establish a *prima facie* case of

16                discrimination. If the plaintiff establishes a *prima facie* case,

               the burden then shifts to the defendant to articulate a

17

               legitimate nondiscriminatory reason for its employment

18

               decision. Then, in order to prevail, the plaintiff must

19

               demonstrate that the employer's alleged reason for the

20

               adverse employment decision is a pretext for a discriminatory

21

               motive.

22

23  *Green*, 411 U.S. at 802-05. The bottom line in § 1981 cases is straightforward: "proof of

24  intent to discriminate is **necessary** to establish a violation." *Domingo v. New England*

25  *Fish Co.*, 727 F.2d 1429, 1438 (9th Cir. 1984) (emphasis added). Here, Ennix's claim

26  fails because he cannot establish a *prima facie* case and because he has no evidence

27  whatsoever of pretext, much less actual race based discrimination.

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1

### 1.    Ennix Cannot Establish A Prima Facie Case Of Race Discrimination.

In order to establish his *prima facie* case, Ennix must offer evidence that "gives rise to an inference of unlawful discrimination." *See Yartzoff v. Thomas*, 809 F. 2d 1371, 1374 (9th Cir. 1987). If he fails to show "specific facts" that establish a *prima facie* case, summary judgment is appropriate. *Id.* at 1374; *see also Palmer v. United States*, 794 F.2d 534, 536-39 (9th Cir. 1986). To begin with, at deposition Ennix conceded that he has no direct evidence of discriminatory intent by any of the now-dismissed individual defendants:

> Q.    Is it correct, then, that none of the defendants ever said anything to you which was disparaging of your race?
>
> A.    Of course not. I just told you that these are highly intelligent people. Of course not.

Ennix Tr. at 106:6-10.

Ennix further conceded that he has no evidence as to whether any of the non-defendant members of the February 8, 2005 MEC "had a racial bone in his [or her] body," which was defined to mean having "any racial animus against African Americans." *See* Ennix Tr. at 339:12-25. Specifically, when asked whether any non-defendant member of the February 8, 2005 MEC harbored any racial animus against African Americans, Ennix answered either "no," "probably not" or "I don't know" as to each member. *See* Ennix Tr. at 325:12-327:18.

And, as to the members of the February 8, 2005 MEC who are also defendants (i.e., William Isenberg, Leigh Iverson and Steven Stanten), Ennix made equally important concessions:

> Q.    Aside from the fact that Dr. Isenberg participated in the peer review process that you globally believed to have been discriminatory, do you have any basis for believing that Dr. Isenberg has a racial bone in his body?
>
> A.    I don't know.

*See* Ennix Tr. at 328:1-6.

- 11 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1        Q.    Aside from the facts that you believe Dr. Iverson

2               participated in a peer review process which you globally believe to have had aspects of racial

3               discrimination, do you have any factual evidence that Dr. Iverson has a racial bone in his body?

4        A.    Tough to say.

5        Q.    That's your answer?

6        A.    That's my answer.

7    *See* Ennix Tr. at 328:16-24.

8        Q.    Aside from participating in a peer review process

9               which you globally believe had some aspects of racial discrimination, do you have any factual basis for

10             saying that Dr. Steve Stanten has a racial bone in his body?

11        A.    I suspect that he has.

12        Q.    Give me one factual basis for that suspicion?

13        A.    I can't give you any.

14    *See* Ennix Tr. at 329:17-25.

15           Ennix's mere belief that discrimination occurred, without specific supporting

16    facts, is wildly insufficient to avoid summary judgment.  And this rule has been

17    unequivocally stated by the Ninth Circuit:

18           A plaintiff's belief that a defendant acted from an unlawful

19           motive, without evidence supporting that belief, is no more

20           than speculation or unfounded accusation about whether the

21           defendant really did act from an unlawful motive.  To be

22           cognizable on summary judgment, evidence **must** be

23           competent.

24    *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001)

25    (emphasis added); *see also Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir. 1994)

26    ("Mere conclusory assertions of discriminatory intent, embodied in affidavits or

27    deposition testimony, cannot be sufficient to avert summary judgment."); *Hansen v.*

28    *United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only

- 12 -

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF    CASE NO. C 07-2486 WHA

1  on its own affidavits to oppose summary judgment, it cannot rely on conclusory

2  allegations unsupported by factual data to create an issue of material fact.").

3           Based upon the foregoing, the Court should find that Ennix has not

4  established a *prima facie* case of discrimination.

5           **2.      Assuming *Arguendo* Ennix Could Establish A *Prima Facie* Case
             Under § 1981 (And Surely He Cannot) ABSMC Has More Than
6            Ample Evidence To Rebut It.**

7           To rebut Ennix's *prima facie* case, ABSMC "must merely articulate a

8  legitimate, nondiscriminatory reason for the action." *Nidds v. Schindler Elevator Corp.*,

9  113 F.3d 912, 917-18 (9th Cir. 1996). "Once the employer meets this burden, the

10 presumption of discrimination drops away." *Id.* As reviewed in the Statement section of

11 the Court's August 28, 2007 Order, Ennix challenges the MEC's judgment in affirming

12 the various practice restrictions imposed in 2005. However, as detailed above, there is

13 not a scintilla of evidence that anyone operated from other than a good-faith business-

14 related motivation. Indeed, the NMA report itself establishes the legitimate and

15 nondiscriminatory motive for Ennix's peer review—a concern for patient safety. *See*

16 Paxton Decl., ¶ 5 & Ex. A (Appendix A at pp. 4-31); Isenberg Decl., ¶ 12. As Dr.

17 Isenberg explained:

18           My actions concerning Dr. Ennix's peer review were at all

19           times undertaken for the exclusive purpose of fulfilling the

20           Medical Staff's responsibility for the quality of patient care

21           provided at the Medical Center. At <u>no</u> time did I act with any

22           racially discriminatory or other non-peer review related

23           motivation. I never observed anyone in the process acting for

24           reasons other than fostering the quality of patient care. In

25           each instance, my actions were taken in consultation with

26           other Medical Staff officers, and were approved by the MEC.

27 Isenberg Decl. at ¶ 8.

28

- 13 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. C 07-2486 WHA

3.    **ABSMC Is Entitled To Summary Judgment Because Ennix Has No Evidence Whatsoever Of Pretext, Much Less Any Evidence Of Race Discrimination.**

The final step of the *McDonnell Douglas* test requires Ennix to show "pretext." However, a "reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). As discussed above, Ennix has no evidence of discrimination, either direct or indirect. Nor can he possibly show that ABSMC's reasons for conducting peer review are somehow false. Indeed, at the end of the day all Ennix can possibly hope to do is find some doctors who may disagree with the MEC's conclusions. This type of "dispute" is simply not one of a material fact. Indeed, what Ennix really asks this Court to do is re-litigate the results of ABSMC's peer review process. But, if Ennix was unhappy with that process, then—as this Court has already held—he should have exhausted his administrative remedies under *Westlake Comm. Hosp. v. Los Angeles Superior Ct.*, 17 Cal. 3d 465, 483-84 (1976). His failure to do so cannot now support a § 1981 claim.

a.    Ennix Cannot Be Compared to Other "Similarly Situated" Physicians, Even If Such A Comparison Were Relevant.

One contention made by Ennix is that he was "subjected to far harsher treatment than similarly situated white physicians." Compl., ¶ 34. However, the Ninth Circuit has thrown significant doubt on whether such comparisons are even relevant in the peer review context:

> Dr. Smith's only challenge to Good Samaritan's investigation
> is that he was not permitted to discover or introduce evidence
> regarding the conduct of other doctors. Dr. Smith essentially
> claims he was not the worst doctor at Good Samaritan.
> However, nothing in the statute, legislative history, or case
> law suggests the competency of other doctors is relevant in
> evaluating whether Good Samaritan conducted a reasonable

- 14 -

KAUFF McCLAIN & McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF    CASE NO. C 07-2486 WHA

1    investigation into Dr. Smith's conduct.

2    *Smith v. Ricks*, 31 F.3d 1478, 1486 (9th Cir. 1994) (applying the Health Care Quality

3    Improvement Act).

4    And, assuming such evidence is somehow relevant, to make any

5    comparison Ennix must show that another physician is "directly comparable" to him "in

6    all material respects" and that such individual was treated more favorably than him. *See*

7    *Mbadiwe v. Union Mem'l Reg'l Med. Ctr., Inc.*, 2007 U.S. Dist. LEXIS 30319, *5-*6

8    (W.D.N.C. Apr. 24, 2007) (applying the "similarly situated" standard to the Section 1981

9    claim of a minority physician who complained that his hospital privileges were restricted

10   due to his race); *see also Vesom v. Atchison Hosp. Ass'n*, 2006 U.S. Dist. LEXIS 68576,

11   *70-*71 (D. Kan. 2006) (same within the context of an application for reappointment and

12   renewal privileges); *see also Mehta v. HCA Health Servs. of Fla., Inc.*, 2006 U.S. Dist.

13   LEXIS 79536, *19 (M.D. Fla. 2006) (same concerning the termination of staff privileges).

14   In each of these cases, the defendant was granted summary judgment on

15   a § 1981 claim because, in part, the Plaintiffs could not establish that they were similarly

16   situated to other physicians within the highly complex and fact-specific context of peer

17   review. *See Mbadiwe*, 2007 U.S. Dist. LEXIS 30319, *8 (W.D.N.C. Apr. 24, 2007)

18   (granting summary judgment to the hospital where physician plaintiff failed to establish

19   the existence of a similarly situated comparator); *Vesom*, 2006 U.S. Dist. LEXIS 68576

20   at *70-*71 (granting summary judgment to hospital following an extensive analysis of

21   "similarly situated" evidence in which the Court noted that the MEC's stated reason for

22   corrective action was significant to its analysis); and *Mehta*, 2006 U.S. Dist. LEXIS

23   79536, *19 (M.D. Fla. 2006) (granting summary judgment following a determination that

24   a radiologist whose staff privileges were automatically terminated was not similarly

25   situated to a Caucasian physician whose anesthesiology privileges were automatically

26   terminated but whose pain management privileges were retained).

27   As demonstrated by these three cases, the "similarly situated" analysis is

28   very difficult to apply in a peer review context because of the large number of relevant

- 15 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1   variables. Under *Mbadiwe*, for example, the Court will consider the specific problems

2   associated with Plaintiff's provision of patient care when it determines whether any other

3   physicians were similarly situated to Plaintiff. Applied here, that inquiry must include

4   Ennix's acknowledged deficiencies while performing MIV Procedures (e.g., excessive

5   time in surgery, large blood usage, and poor outcomes),[8] the performance concerns

6   expressed by his own experts, Dr. Lee and the Medical Board of California, as well as

7   Plaintiff's elevated mortality rate relative to other cardiac surgeons at the Summit

8   Campus. *See* Isenberg Decl. at ¶ 8-9. Taken together, these fact-specific and

9   egregiously serious factors distinguish Plaintiff's peer review from that of any other

10  physician.

11          Moreover, Ennix was reviewed by the MEC from the outset. *See* Isenberg

12  Decl. at ¶ 9. Accordingly, the only proper possible comparators are those individuals

13  who have been reviewed at the MEC level. Without conceding that any such individuals

14  are appropriate comparators, ABSMC produced a chart describing each situation. *See*

15  Hernaez Decl. at ¶ 7 & Ex. F. Upon review, the chart shows that doctors of all races

16  have been subject to MEC peer review. Moreover, the chart shows that Caucasian

17  doctors are more than **three times** more likely than African-American physicians to be

18  subjected to MEC peer review (i.e., 10 Caucasians have been subject to MEC review

19  compared with only 3 African-Americans). And it shows that the types of restrictions

20  placed on Ennix are similar to the types of restrictions placed on doctors of all other

21  races.

22          These findings significantly undercut Ennix's race claim. For example,

23  Physician O, a Caucasian cardiologist, was investigated by the MEC between 1992 and

24  1994 for a number of issues including clinical judgment errors and an overly aggressive

25  treatment protocol which resulted in patient deaths. *See* Hernaez Decl. at ¶ 7 & Ex. F

26  (p. 10). The corrective actions imposed by the MEC included the summary suspension

27  of certain privileges for more than 1 year, the requirement that Physician O complete a

28

---

[8]  See Isenberg Decl. at ¶ 9; Paxton Decl. at ¶ 8 & Ex. A.

- 16 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO. C 07-2486 WHA

1    remedial education program, as well as 100% monitoring and proctoring of Physician O's

2    clinical practice. Following an external peer review, Physician O resigned from the

3    Summit Medical Staff.

4         Similarly, Physician F, a Caucasian Anesthesiologist, was peer reviewed

5    by the MEC in 2003 on issues concerning Physician F's ability to provide safe patient

6    care and the falsification of medical records. *See* Hernaez Decl. at ¶ 7 & Ex. F (p. 5).

7    The corrective actions imposed included a summary suspension as well as a 100%

8    prospective review of Physician F's cases and 100% monitoring and proctoring of all

9    aspects of Physician F's practice. Although no external review was performed,

10   Physician F ultimately resigned from the Summit Medical Staff. Ennix, who remains an

11   active member of the Summit Medical Staff, received similar, and ultimately more

12   forgiving, corrective actions throughout his peer review.

13                    b.    Ennix Cannot Show Any Racial Bias On The Part Of NMA.

14        Another issue repeatedly raised by Ennix is that NMA was some type of

15   "sham" outfit. *See Complaint* at ¶ 24. This allegation is demonstrably false. NMA has

16   reviewed thousands of records for hundreds of external peer review engagements since

17   2001, including many cardiac surgery cases. See Smithline Tr. at p. 36. Moreover, the

18   Harvard School of Public Health helped the NMA to develop its external peer review

19   methodology for cardiology and cardiac cases. See Smithline Tr. at 43. And Dr.

20   Smithline testified that the NMA finds no substantial problem in the overall practice of the

21   physicians being reviewed 20-30% of the time. See Smithline Tr. at 65. Ennix simply

22   has no factual basis for impugning the reputation of NMA.

23        More importantly, what Ennix cannot show is that the decision to use NMA

24   was racially motivated. As discussed above, Ennix concedes a lack of any such

25   evidence against the former individual defendants and/or the MEC. And, because they

26   did not know even know his race, Ennix cannot prove that the physician reviewers at

27   NMA harbored racial animus. For example, Robert H. Breyer, M.D. testified as follows:

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 17 -

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. C 07-2486 WHA

1    At no time during my review of the medical records of

2    Coyness L. Ennix, Jr., M.D., was I aware of Dr. Ennix's race.

3    In fact, I was not informed of Dr. Ennix's race until January

4    31, 2008 when I learned that Dr. Ennix had filed this lawsuit.

5    Throughout my involvement in the focused review of Dr.

6    Ennix's medical records, I saw no evidence of a "sham peer

7    review" being conducted by either NMA, Mercer, or the Alta

8    Bates Summit Medical Center. Nor did I see any evidence of

9    racial discrimination against Dr. Ennix by any individual or

10    entity.

11    *See* Breyer Decl. at ¶ 3; *see also* Breall Decl. at ¶ 3 (same); Smithline Tr. at 320:21-23

12    (not aware of Dr. Ennix's race at any time prior to the date of the NMA report); Housman

13    Tr. at 131:15 to 132:5 (did not know Dr. Ennix's race at the time he conducted the

14    medical records review for NMA/Mercer; he only learned of Dr. Ennix's race "very

15    recently" when he learned that he had filed this lawsuit).

16    In fact, Dr. Housman, did not know anything about the Hospital's findings

17    regarding Ennix until recently:

18    Q:    So I'm clear, your testimony is at no time before last
      week when you received this May 5th, 2005
19    document, the Alta Bates Summit Medical Center
      Focus Review, May 3rd, 2005, at no point prior to your
20    review of that last week did you know that the hospital
      had identified problems in these five cases?
21
      [*Objections by ABSMC*]
22
      A:    That's correct.
23
      Q:    At any point before Monday morning, which was
24    January 21st, 2008, did Neal Smithline communicate
      with you in any way that the hospital had concerns
25    about the five cases you were reviewing?

26    [*Objections by ABSMC*]

27    A:    Could you read that back.

28    [*Objections by ABSMC*]
      - 18 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1    A:    Yeah. I don't believe so.

2    Q:    What about anybody else at Mercer? The same
           question: Did anybody at Mercer communicate with
3          you that the hospital had concerns about these five
           cases?
4
     A:    No, sir, and that's the nice thing about Mercer. We
5          work in a vacuum. We don't know who sends the
           charts, who asks for them, why they ask for them. It's
6          literally they arrive in a box. And also in that box is the
           electronic form, you know, to answer, and you answer
7          it online. I think early on we had to return the form;
           now we can do it online. And so I had no idea that
8          anyone else had reviewed it.

9    Housman Tr. at 30:22-32:8.

10         Hence, because no one who participated in the production of the NMA

11   report knew of Ennix's race, the report's contents could not have been racially motivated.

12   As the Ninth Circuit has held:

13         [U]nder section 1981, a plaintiff must prove intentional

14         discrimination to make out a discrimination claim using a

15         disparate treatment theory. An employer cannot intentionally

16         discriminate against a job applicant based on race unless the

17         employer knows the applicant's race.

18   *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987); *see also Rabinovitz v. Pena*,

19   89 F.3d 482, 488 (7th Cir. 1996) (discrimination claims cannot survive summary

20   judgment if employee cannot show that the decision-makers were aware of his race).

21              c.    Despite His Statements to the Contrary, Ennix Has Not Been
22                    Cleared by All "Neutral" Reviewers.

23         As supposed evidence of pretext, Ennix argues that he has been "cleared"

24   by all neutral evaluators. For example, in his prior submissions to this Court, Ennix says

25   that "Dr. Lee, cardiac surgeon, cleared the four minimally invasive cases of any quality-

26   of-care issues." *See* Plaintiff's Opposition to Motion to Dismiss at 4:5-6 (filed July

27   12,2007). And the Complaint boasts "[t]hroughout this tortuous peer review process, all

28

                                              - 19 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO. C 07-2486 WHA

1    evaluations of Dr. Ennix's performance provided by qualified, disinterested experts found

2    no deviation from the standard of care and no justification for the restrictions placed on

3    Dr. Ennix's privileges." *See* Compl., at ¶ 3. But as discussed in detail below, Ennix's

4    claims are demonstrably false. To the contrary, the Medical Board of California, Dr. Lee,

5    and **two** of Ennix's own experts all found deviations from the standard of care.

6    　　　　　For example, Ennix retained Bruce Reitz, M.D. to serve as an expert in this

7    matter. Yet, until it was reviewed by Ennix's attorney in the peer review process (John

8    Echevers) and subsequently revised by Dr. Reitz (often at the specific direction of Mr.

9    Etchevers), the doctor's draft report contained substantial criticisms of Ennix's surgical

10    skills. For example:

11    　　　　　**(A)**　　Although subsequently removed from the attorney-

12    　　　　　　　　reviewed report, Reitz testified that he initially "drafted a

13    　　　　　　　　paragraph saying that [his] review of the minimally invasive

14    　　　　　　　　cases created in [his] mind concerns about the lack of

15    　　　　　　　　training on the part of Dr. Ennix, perhaps, and on the part of

16    　　　　　　　　the teams that were engaging in the surgery."

17    Reitz Tr. at 36:23-37:3.

18    　　　　　And, although he removed this concern from his final report,

19    　　　　　　　　Dr. Reitz nonetheless concedes "that concerns about training

20    　　　　　　　　of the OR team and Dr. Ennix's own training still stand."

21    Reitz Tr. at 41:3-7.[9]

22    　　　　　**(B)**　　The draft report says: "I do have concerns about the

23    　　　　　　　　length of time of this operation [Case No. 1], which is

24    　　　　　　　　excessive." This concern was removed from the report

25    　　　　　　　　reviewed by Mr. Etchevers.

26    Reitz Tr. at 51:9-20.

27    

28    [9] For purposes of comparison the draft report is Exhibit 4 to the Reitz deposition transcript and the final report is Exhibit 5.

- 20 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-2486 WHA

1    But, the deletion notwithstanding, Dr. Reitz still believes that
2    "Case Number 1 was longer than he would consider to be
3    standard."

4    Reitz Tr. at 72:17-20; see also Reitz Tr. at 82:13-21.

5    **(C)**    For reasons he cannot recall, Dr. Reitz omitted from
6    his final report the observation that "[t]he operation report is
7    scanty at best and does not go into the details of why the
8    procedure took so much time."

9    Reitz Tr. at 53:15-54:11.

10    Nonetheless, at deposition Dr. Reitz conceded that he still
11    had the same "scanty at best" concerns expressed in the
12    draft report.

13    Reitz Tr. at 62:16-63:25.

14    **(D)**    In evaluating Case No. 3, Dr. Reitz wrote "[t]he
15    operative report should have had more data to explain the
16    length of the procedure and the intra-operative
17    management." And, although that sentence was a "true
18    sentence when [he] wrote it," Dr. Reitz cannot explain its
19    absence from the final report.

20    Reitz Tr. at 90:16-91:2.

21    **(E)**    In evaluating Case No. 4 Dr. Reitz initially wrote "The
22    3.5 hours needed to place a coronary sinus cannula which is
23    documented in the anesthesia record is very excessive. The
24    fact that this took as long as it did should have raised some
25    concern in Dr. Ennix that perhaps this was not the right
26    operation to perform in this patient." These sentences were
27    removed by Mr. Etchevers and he simply re-wrote the
28    paragraph.

- 21 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF    CASE NO. C 07-2486 WHA

1 | Reitz Tr. at 94:6-95:20.

2 |       And these are not the only substantive changes. For example, the final

3 | report includes some praise of Ennix for ultimately recognizing one of his errors. Reitz

4 | Tr. at 68:8-17. When asked "[w]ho suggested that you add that sentence," Dr. Reitz

5 | responded "Probably Mr. Etchevers." However, the factual basis for the praise was not

6 | something Dr. Reitz knew of his personal knowledge. Reitz Tr. at 68:25-69:10.

7 | Similarly, with respect to one of the evaluations relied upon by the MEC, Ennix's attorney

8 | changed Dr. Reitz's criticism from "could certainly be improved" to "substandard" and

9 | "definitely specious." Reitz Tr. at 73:14-25. Lastly, one change went so far as to reverse

10 | Dr. Reitz' opinion:

11 |      Q.   Turning to Case Number 2, please. You say, in your
12 |            August 30, 2005 dictated report, in the last paragraph, "The extreme length of this operation is a concern, as
13 |            is the blood product usage." Does that language appear in the final report?

14 |      A.   No.

15 |      Q.   In fact, the final report attempts to defend the
16 |            prolonged surgery time, correct?

17 |      A.   Yes.

Reitz Tr. at 76:23-77:21.

18 |       Nor is Dr. Reitz alone in his concerns regarding Ennix. Another expert

19 | **retained by Ennix**, Dr. J. Donald Hill, specifically found that in at least one case "the

20 | medical standard of care for the community was breached." *See* Hernaez Decl. at ¶ 9 &

21 | Ex. H (E002889, #2). Indeed, although Ennix did not submit this report to the MEC and

22 | refused to turn over the report in discovery without Court intervention, Dr. Hill's

23 | underlying findings are clear:

24 |      The three main issues in this case are delay in investigating

25 |      the carotid arteries, patient management till the surgery, and

26 |      management of the patient immediately before and at the

27 |      time of surgery.

28 |

- 22 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1        * * * *

2        Later the events just before surgery and the operation were

3        mismanaged.  The patient should not have been allowed to

4        be at risk with ischemic myocardial chest pain in the preop

5        area.

6        * * * *

7        The entire set of events and process that occurred from the

8        time the patient came into the pre op area till the patient went

9        into cardiogenic shock and was emergently placed on

10       cardiopulmonary bypass is below the standard of care for this

11       clinical situation and the surgeon must bear most of the

12       responsibility.

13   *See* Hernaez Decl. at ¶ 9 & Ex. H (E002898).

14            Next, in addition to the various negative findings announced by Ennix's two

15   medical experts, is the opinion of Dr. Hon S. Lee, a cardiac surgeon used by the Summit

16   Medical Staff to review the four problematic MIV surgeries.  Ennix himself regards Lee

17   as "among the top practitioners of the [MIV] procedure in the Bay Area."  *See* Ennix

18   Decl. (filed July 12, 2007) at ¶ 3:8-10.  However, Dr. Lee was critical of Ennix.

19            To begin with, Dr. Lee agreed that the Medical Staff's concern with the

20   extended length of Ennix's MIV procedures was valid.  Lee Tr. at 23:17-25 (attached to

21   the Hernaez Decl. as Exhibit I).  The reason is simple: "the longer the operating time, the

22   more risk to a patient in open heart surgery situation."  Lee Tr. at 26:10-13.  Dr. Lee also

23   agreed that suspending the MIV procedures after Ennix's first four failures was "a

24   reasonable response" and that the "outcomes of these four procedures were alarming."

25   Lee Tr. at 24:5-15.  He also specifically faulted Ennix's failure to obtain the proper

26   patient consents.  Lee Tr. at 25:10-13.

27            Dr. Lee further agreed that a reasonable person reviewing his report "might

28   legitimately determine that there was a need for further review."  Lee Tr. at 40:14-21.

- 23 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. C 07-2486 WHA

1   Hence Dr. Lee did not find the Medical Staff's action in continuing its peer review

2   process unfair to Dr. Ennix. Lee Tr. at 38:24-39:1. Lastly, in his interaction with the

3   Medical Staff, Dr. Lee admits that he heard nothing whatsoever suggesting any type of

4   racial bias. To the contrary, he observed that the peer review personnel were "acting in

5   good faith with a point of view of ensuring patient safety." Lee Tr. at 67:25-68:21.

6           In addition to Ennix's own retained experts and one of the "top practitioners

7   of the [MIV] procedure in the Bay Area," the Medical Board of California also took issue

8   with Ennix's surgical performance. In particular, the Medical Board, after conducting an

9   investigation, interviewing Ennix, and hiring an outside expert, concluded that Ennix

10  committed "negligence" (described as a "simple departure in the standard of practice")[10]

11  in three out of the ten procedures they reviewed. See Ennix Tr. at 31:8-32:9 & Ex. 4.

12  These findings by the Medical Board, which included negligence findings in 2 of the 4

13  MIV procedures, only underscored the propriety of NMA's conclusions. Ennix has no

14  "specific facts" suggesting race discrimination and ABSMC has strong evidence—from

15  the NMA report, from the findings of its committees, from Ennix's own experts, from Dr.

16  Lee, and from the State of California—that corrective action was appropriate and

17  necessary.

18      **D.    ABSMC Is Entitled To An Award Of Attorneys' Fees.**

19          Pursuant to 42 U.S.C. § 1988, a party prevailing in a cause of action

20  arising under, inter alia, § 1981 may be awarded reasonable attorneys' fees. See Staton

21  v. Boeing Co., 327 F.3d 938, 966 (9th Cir. 2003). ABSMC respectfully requests that fees

22  be awarded in this case.

23

24

25  [10]  The Medical Board's definition of "negligence" is stated on its website. ABSMC asks that this
    Court take judicial notice of the definition. See Fed. R. Evid. 201(b) ("A judicially noticed fact
26  must be one not subject to reasonable dispute in that it is either (1) generally known within the
    territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by
27  resort to sources whose accuracy cannot reasonably be questioned.").
    http://www.mbc.ca.gov/publications/medical_consultant_english-print.pdf. Websites may be
28  judicially noticed. See Garza v. Adams, 2008 U.S. Dist. LEXIS 9841 *4 - *5 (E. D. Cal. 2008).

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO. C 07-2486 WHA

## IV. CONCLUSION

Summary judgment is not a "peculiar procedural shortcut," but an integral part of the framework of the Rules, closely related to other provisions which are similarly intended to permit the early elimination of claims and defenses that the proponent cannot support.  Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive.

*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986).

This case demonstrates the wisdom of Rule 56.  Ennix has been on staff at Alta Bates or Summit Medical Center (or their predecessors) for nearly thirty years.  All of a sudden Ennix now believes that the peer review process is racist.  That conclusion simply defies logic.  And more importantly, that conclusion is without even scintilla evidence.  Because there is no contract between the parties, and because there is no race based evidence of discrimination, the Court should grant ABSMC summary judgment.

DATED:    February 22, 2008

Respectfully submitted,

KAUFF MCCLAIN & MCGUIRE LLP

By: _____
            ALEX HERNAEZ

Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL
CENTER

- 25 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA  94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-2486 WHA