**EXHIBIT A**

# B Y L A W S

## MEDICAL STAFF OF SUMMIT MEDICAL CENTER

**********

February 2003

TABLE OF CONTENTS

PREAMBLE .................................................................................................................. 1

DEFINITIONS ............................................................................................................. 1

ARTICLE I ................................................................................................................... 3
    NAME ..................................................................................................................... 3
        1.1   NAME ........................................................................................................... 3

ARTICLE II .................................................................................................................. 3
    PURPOSES AND RESPONSIBILITIES ............................................................... 3
        2.1   PURPOSES .................................................................................................... 3
        2.2   RESPONSIBILITIES OF THE MEDICAL STAFF ..................................... 4

ARTICLE III ................................................................................................................ 5
    MEMBERSHIP ....................................................................................................... 5
        3.1   NATURE OF MEMBERSHIP ..................................................................... 5
        3.2   QUALIFICATIONS FOR MEMBERSHIP ................................................. 5
            A.   General Qualifications .......................................................................... 5
            B.   Particular Qualifications ...................................................................... 6
            C.   Effect of Other Affiliations ................................................................. 7
            D.   Non-Discrimination ............................................................................. 7
            E.   Administrative Practitioners and Practitioners Under Contract ........... 7
            F.   Staff Dues ........................................................................................... 7
            G.   Professional Liability Insurance .......................................................... 8
        3.3   TERMINATION OF MEMBERSHIP BY RESIGNATION ........................ 8
        3.4   BASIC RESPONSIBILITIES OF MEDICAL STAFF MEMBERSHIP ..... 9
        3.5   HARASSMENT PROHIBITED ................................................................ 10

ARTICLE IV ............................................................................................................. 11
    CATEGORIES OF MEMBERSHIP .................................................................... 11
        4.1   CATEGORIES ........................................................................................... 11
        4.2   ACTIVE STAFF ....................................................................................... 11
            A.   Qualifications .................................................................................... 11
            B.   Prerogatives ...................................................................................... 11
            C.   Transfer of Active Staff Member ....................................................... 12
        4.3   COURTESY STAFF ................................................................................. 12
            A.   Qualifications .................................................................................... 12
            B.   Prerogatives ...................................................................................... 12
            C.   Transfer of Courtesy Staff Members to Active Staff ......................... 13
        4.4   PROVISIONAL STAFF ........................................................................... 13
            A.   Qualifications .................................................................................... 13
            B.   Prerogatives ...................................................................................... 13
            C.   Observation and Proctoring of Provisional Staff Members ............... 14
            D.   Action at Conclusion of Provisional Staff ........................................ 15

4.5    AFFILIATE STAFF ...................................................................... 15
    A.    Qualifications ...................................................................... 15
    B.    Prerogatives ........................................................................ 15
4.6    HONORARY AND RETIRED STAFF ........................................ 15
    A.    Qualifications ...................................................................... 15
    B.    Prerogatives ........................................................................ 16
4.7    LIMITATION OF PREROGATIVES ........................................... 16
4.8    MODIFICATION OF MEMBERSHIP ......................................... 16

ARTICLE V .............................................................................................. 17
APPOINTMENT AND REAPPOINTMENT ....................................... 17
5.1    GENERAL .................................................................................. 17
5.2    BURDEN OF PRODUCING INFORMATION .......................... 17
5.3    APPOINTMENT AUTHORITY ................................................. 17
5.4    DURATION OF APPOINTMENT AND REAPPOINTMENT ..... 17
5.5    APPLICATION FOR INITIAL APPOINTMENT AND REAPPOINTMENT ......... 17
    A.    Application Form ................................................................. 18
    B.    Content ................................................................................ 18
    C.    Current and Complete Information ..................................... 19
    D.    Incomplete Application ....................................................... 19
    E.    Application and Processing Fee .......................................... 20
5.6    EFFECT OF APPLICATION ..................................................... 20
5.7    PROCESSING THE APPLICATION ......................................... 21
    A.    Verification of Information ................................................. 21
    B.    Department Action .............................................................. 21
    C.    Credentials Committee Action ............................................ 21
    D.    Medical Executive Committee Action ................................. 21
    E.    Effect of MEC Action ......................................................... 22
    F.    Board Action on the Application ......................................... 22
    G.    Notice of Final Decision ..................................................... 23
    H.    Reapplication After Adverse Decision ................................ 23
    I.    Timely Processing of Applications ..................................... 23
5.8    REAPPOINTMENT PROCESS .................................................. 24
    A.    Application .......................................................................... 24
    B.    Content ................................................................................ 24
    C.    Current and Complete Information ..................................... 25
    D.    Incomplete Application ....................................................... 25
    E.    Verification of Information ................................................. 25
    F.    Department Report and Recommendation .......................... 25
    G.    Credentials Committee Report and Recommendation ......... 26
    H.    Medical Executive Committee Report and Recommendation ......... 26
    I.    Final Processing and Board Action ..................................... 26
    J.    Bases for Recommendations ............................................... 26
    K.    Time Periods for Processing ............................................... 26
    L.    Effect of Application ........................................................... 27

5.9    REQUESTS FOR MODIFICATION OF MEMBERSHIP STATUS ........................ 27
  A. Modification of Staff Status .............................................. 27
  B. Resignations ................................................................ 27
5.10   LEAVE OF ABSENCE .......................................................... 28
  A. Leave Status ............................................................... 28
  B. Termination of Leave ...................................................... 28
  C. Failure to Request Reinstatement ......................................... 28

ARTICLE VI ........................................................................ 29
CLINICAL PRIVILEGES ............................................................... 29
6.1    EXERCISE OF PRIVILEGES ..................................................... 29
6.2    DELINEATION OF PRIVILEGES IN GENERAL ...................................... 29
  A. Requests .................................................................. 29
  B. Bases for Privileges Determination ........................................ 29
  C. Requests for Modification of Clinical Privileges .......................... 29
6.3    PROCTORING ................................................................. 30
  A. General Provisions ........................................................ 30
  B. Medical Staff Advancement ................................................. 30
6.4    PRIVILEGES FOR DENTISTS AND PODIATRISTS AND CLINICAL
  PSYCHOLOGISTS ............................................................. 30
  A. Admissions ................................................................ 30
  B. Surgery ................................................................... 31
6.5    TEMPORARY CLINICAL PRIVILEGES ............................................. 31
  A. Circumstances ............................................................. 31
  B. Conditions ................................................................ 32
  C. Termination ............................................................... 33
  D. Rights of Practitioner .................................................... 33
6.6    EMERGENCY PRIVILEGES ...................................................... 33

ARTICLE VII ....................................................................... 34
CORRECTIVE ACTION ................................................................. 34
7.1    CORRECTIVE ACTION ......................................................... 34
  A. Criteria for Initiation .................................................. 34
  B. Investigation or Deliberation ............................................ 34
  C. Medical Executive Committee Action or Recommendation ...................... 35
  D. Deferral .................................................................. 35
  E. Procedural Rights ......................................................... 35
  F. Action by Board of Directors .............................................. 35
  G. When Corrective Action Takes Effect ....................................... 36
7.2    SUMMARY SUSPENSION OR RESTRICTION ........................................ 36
  A. Criteria for Initiation and Authority to Impose Summary Suspension or
   Restriction ............................................................... 36
  B. When Effective, Notification and Duration ................................. 37
  C. MEC Action ................................................................ 37
  D. Alternative Medical Coverage .............................................. 37
7.3    AUTOMATIC SUSPENSION OR RESTRICTION ...................................... 37
  A. Licensure ................................................................. 37

3

B.   Controlled Substances Privileges: ................................................ 38
C.   Professional Liability Insurance ................................................... 38
D.   Removal of Patient Records ..................................................... ... 38
E.   Medical Records .......................................................................... 39
F.   Failure to Respond to Medical Staff Correspondence...................39
G.   Medical Executive Committee Deliberation and Action ................. 39

ARTICLE VIII ....................................................................................................... 40
INTERVIEWS, HEARINGS AND APPELLATE REVIEWS....................................... 40
8.1   GENERAL PROVISIONS ................................................................... 40
A.   Interviews .................................................................................... 40
B.   Exhaustion of Remedies ............................................................. 40
C.   Application of Article.................................................................. 40
D.   Practitioners Under Contract with the Hospital ......................... 40
8.2   GROUNDS FOR HEARING ............................................................... 40
8.3   NOTICE OF AND REQUESTS FOR HEARING ................................. 41
A.   Notice of Action or Proposed Action .......................................... 41
B.   Request for Hearing..................................................................... 42
C.   Time and Place for Hearing......................................................... 42
D.   Notice of Charges ........................................................................ 42
E.   Judicial Review Committee ......................................................... 43
F.   Failure to Appear or to Proceed.................................................. 43
G.   Postponements and Extensions ................................................... 43
8.4   PRE-HEARING PROCEDURE ............................................................ 43
A.   The Hearing Officer .................................................................... 43
B.   Exchange of Information ............................................................. 44
C.   Hearing Officer Rulings .............................................................. 44
D.   Voir Dire...................................................................................... 45
E.   Procedural Disputes..................................................................... 45
F.   Representation ............................................................................. 45
G.   Record of the Hearing ................................................................. 45
8.5   HEARING PROCEDURE................................................................... 46
A.   Rights of the Parties .................................................................... 46
B.   Miscellaneous Rules..................................................................... 46
C.   Burdens of Presenting Evidence and Proof ................................. 46
D.   Adjournment and Conclusion...................................................... 47
E.   Basis for Decision ....................................................................... 47
F.   Decision of the Judicial Review Committee ................................ 47
8.6   APPEAL ......................................................................................... 47
A.   Time for Appeal .......................................................................... 47
B.   Grounds for Appeal ..................................................................... 48
C.   Time, Place and Notice ............................................................... 48
D.   Appeal Board............................................................................... 48
E.   Appeal Procedure ........................................................................ 48
F.   Representation ............................................................................. 49
G.   Deliberation and Recommendation ............................................. 49
H.   Final Decision.............................................................................. 49

I.    Right to C   Hearing ................................................................ 49

ARTICLE IX........................................................................................ 50
OFFICERS ................................................................................. 50
9.1    OFFICERS OF THE MEDICAL STAFF................................ 50
   A.    Identification ............................................................. 50
   B.    Qualifications ............................................................ 50
   C.    Nominations ............................................................. 50
   D.    Elections ................................................................... 50
   E.    Term of Elected Office .............................................. 51
   F.    Recall of Officer ....................................................... 51
   G.    Vacancies in Elected Office ....................................... 51
9.2    DUTIES OF OFFICERS .................................................... 51
   A.    President ................................................................... 51
   B.    Vice-President ........................................................... 52
   C.    Immediate Past President .......................................... 53
   D.    Secretary-Treasurer ................................................. 53

ARTICLE X ......................................................................................... 54
CLINICAL DEPARTMENTS AND SERVICES................................ 54
10.1    ORGANIZATION OF CLINICAL DEPARTMENTS AND SERVICES ................ 54
10.2    CURRENT DEPARTMENTS AND SERVICES ..................... 54
   A.    Department of Anesthesia .......................................... 54
   B.    Department of Emergency Medicine.............................. 54
   C.    Department of Medicine.............................................. 54
   D.    Department of Obstetrics and Gynecology.................... 54
   E.    Department of Orthopedic Surgery .............................. 54
   F.    Department of Pediatrics ........................................... 54
   G.    Department of Surgery ............................................... 54
   H.    Department of Hospital Services.................................. 55
10.3    ASSIGNMENT TO DEPARTMENTS AND SERVICES ......... 55
10.4    FUNCTIONS OF DEPARTMENTS ..................................... 55
10.5    FUNCTIONS OF SERVICES ............................................. 56
10.6    DEPARTMENT CHAIRMEN ............................................. 56
   A.    Qualifications ............................................................ 56
   B.    Selection ................................................................... 56
   C.    Term of Office............................................................ 57
   D.    Removal .................................................................... 57
   E.    Duties ....................................................................... 59
10.7    SERVICE CHIEFS .......................................................... 59
   A.    Qualifications ............................................................ 59
   B.    Selection ................................................................... 59
   C.    Term of Office............................................................ 59
   D.    Removal .................................................................... 59
   E.    Duties ....................................................................... 59
10.8    DECISIONS REGARDING OVERLAPPING OF SERVICES................... 60
10.9    CONFIDENTIALITY OF DEPARTMENT/SERVICE PROCEEDINGS................. 60

ARTICLE XI..................................................................................................................... 61
    COMMITTEES........................................................................................................ 61
        11.1  DESIGNATION .......................................................................................... 61
        11.2  GENERAL PROVISIONS ......................................................................... 61
            A.   Terms of Committee Members........................................................... 61
            B.   Removal .............................................................................................. 61
            C.   Vacancies............................................................................................ 61
            D.   Quorum................................................................................................ 61
            E.   Voting Members ................................................................................. 62
            F.   Function.............................................................................................. 62
            G.   Meetings ............................................................................................. 62
            H.   Attendance.......................................................................................... 62
            I.   Attendance by Medical Staff Coordinator ........................................ 62
            J.   Appointment of Hospital Personnel .................................................. 62
            K.   Minutes............................................................................................... 62
            L.   Confidentiality.................................................................................... 62
        11.3  MEDICAL EXECUTIVE COMMITTEE ................................................. 62
            A.   Composition ....................................................................................... 62
            B.   Duties ................................................................................................. 63
            C.   Meetings ............................................................................................. 65
            D.   Quorum................................................................................................ 65
        11.4  CREDENTIALS COMMITTEE ................................................................ 65
            A.   Composition ....................................................................................... 65
            B.   Duties ................................................................................................. 65
            C.   Meetings ............................................................................................. 65
            D.   Quorum................................................................................................ 65
        11.5  NOMINATING COMMITTEE .................................................................. 66
            A.   Composition ....................................................................................... 66
            B.   Duties ................................................................................................. 66
            C.   Meetings ............................................................................................. 66

ARTICLE XII.................................................................................................................... 67
    MEETINGS............................................................................................................ 67
        12.1  MEETINGS ................................................................................................ 67
            A.   Regular Meetings ............................................................................... 67
            B.   Order of Business .............................................................................. 67
            C.   Special Meetings ................................................................................ 67
        12.2  COMMITTEE AND DEPARTMENT MEETINGS ................................... 68
            A.   Regular Meetings ............................................................................... 68
            B.   Special Meetings ................................................................................ 68
        12.3  QUORUM.................................................................................................... 68
            A.   General Staff Meetings....................................................................... 68
            B.   Department Meetings ......................................................................... 68
        12.4  MANNER OF ACTION ............................................................................. 68
        12.5  MINUTES ................................................................................................... 68

12.6  ATTENDANCE  REQUIREMENTS.................................................69
    A.   Regular Attendance ..............................................69
    B.   Special Attendance ...............................................69
12.7  CONDUCT OF MEETINGS ...........................................69

ARTICLE XIII ........................................................................70
   RECORDS AND PROCEEDINGS OF THE MEDICAL STAFF ...............70
   13.1  CONFIDENTIALITY..........................................................70
   13.2  PARTICIPATION IN RELIANCE ON CONFIDENTIALITY............70
   13.3  PRESERVATION OF CONFIDENTIALITY...............................70
   13.4  CORRECTIVE ACTION FOR BREACH OF CONFIDENTIALITY......70
   13.5  RECORDS AND PROCEEDINGS COVERED ...........................71
   13.7  INDEMNIFICATION............................................................71

ARTICLE XIV ........................................................................72
   GENERAL PROVISIONS..........................................................72
   14.1  STAFF RULES AND REGULATIONS ...................................72
   14.2  DEPARTMENTAL RULES AND REGULATIONS AND DEPARTMENTAL
        PROCTORING PROTOCOL...............................................72
   14.3  DUES OR ASSESSMENTS ...............................................72
   14.4  PROFESSIONAL LIABILITY INSURANCE...............................72
   14.5  CONSTRUCTION OF TERMS AND HEADINGS ......................72
   14.6  AUTHORITY TO ACT ......................................................72
   14.7  DIVISION OF FEES .........................................................73
   14.8  NOTICES .....................................................................73
   14.9  NOMINATION OF MEDICAL STAFF REPRESENTATIVES .............73

ARTICLE XV ..........................................................................74
   ADOPTION AND AMENDMENT OF BYLAWS....................................74
   15.1  MEDICAL STAFF RESPONSIBILITY....................................74
   15.2  AMENDMENTS ..............................................................74
   15.3  METHOD ......................................................................74
       A.   Medical Staff .............................................74
       B.   Board of Directors .......................................74
   15.4  EXCLUSIVITY ...............................................................74

ARTICLE I
NAME

1.1    NAME

The name of this organization is the Medical Staff of Summit Medical Center.

ARTICLE II
PURPOSES AND RESPONSIBILITIES

2.1    PURPOSES

The purposes of the medical staff are to:

A.    serve as the primary means for accountability to the board of directors for the appropriateness of the professional performance and ethical conduct of its members and the allied health professionals and to strive toward the continual upgrading of the quality and efficiency of patient care delivered in the hospital consistent with the state of the healing arts and the resources locally available.

B.    monitor the quality of medical and health care provided by all practitioners authorized to practice in the hospital through the appropriate delineation of clinical privileges and through an on-going review and evaluation of each practitioner's performance in the hospital.

C.    be the formal organizational structure through which the benefits of membership on the staff may be obtained by individual practitioners and the obligations of staff membership may be fulfilled.

D.    provide a means through which the medical staff may participate in the hospital's policy-making and planning process.

E.    provide a means of effective communication between the medical staff, the administrator and the board of directors.

F.    maintain self-government in cooperation with the administration and the board of directors.

G.    cooperate with recognized accredited medical schools and other educational institutions in undergraduate, graduate, post-graduate and continuing education programs.  All such programs should be evaluated and approved by the medical staff.

3

2.2    RESPONSIBILITIES OF T₁ ₂ MEDICAL STAFF

The responsibilities of the medical staff are to:

A.    account to the board of directors for the quality and efficiency of patient care provided by all practitioners authorized to practice in the hospital through regular reports and recommendations concerning the implementation, operation, and results of the quality review and evaluation activities, through the following measures:

    1.    A credentials program, including mechanisms for appointment and reappointment and the matching of clinical privileges to be exercised or of specified services to be performed with the verified credentials and current demonstrated competence of the applicant or staff member.

    2.    an organizational structure and mechanisms that allow on-going monitoring of patient care practices.

    3.    review and evaluation of the quality of patient care through the quality assurance program

    4.    a continuing education program fashioned, at least in part, on the needs demonstrated through the quality review and evaluation programs.

B.    endorse and participate in a utilization review program to provide for the allocation of medical and health services to patients;

C.    recommend to the board of directors action with respect to medical staff appointments, reappointments, staff category, department assignments, clinical privileges and corrective action.

D.    recommend to the board of directors programs for the establishment, maintenance, continuing improvement and enforcement of professional standards in the delivery of health care within the hospital.

E.    initiate and pursue corrective action with respect to practitioners, when warranted.

F.    develop, administer, recommend amendments to and seek compliance with these bylaws and the rules and regulations of the staff, rules and regulations and proctoring protocol of the clinical departments, and other hospital policies. The bylaws, rules and regulations will be reviewed annually.

G.    assist in identifying community health needs and in setting appropriate institutional goals and implementing programs to meet those needs.

H.    provide that physician backup coverage to the Emergency Room is a joint responsibility shared by the members of the medical staff and the hospital.

I.    exercise the authority granted by these bylaws as necessary to adequately fulfill the foregoing responsibilities.

4

confirmation by the M. .. There shall be no right to a hearing or appeal as described in Article VIII of these Bylaws. A member who is deemed to have resigned under this provision may reapply for appointment pursuant to the procedures set forth in Article V governing initial applications for appointment, except that the MEC may waive this procedure and grant reinstatement upon petition by the member if it determines that good cause existed for the delinquency and full payment of dues accompanies the petition.

G.    Professional Liability Insurance

1.    Basic Requirements

Each practitioner must maintain a policy of professional liability insurance . that complies with the standards set forth in the Medical Staff Rules and Regulations. Such insurance must be consistent with the applicant's/member's existing and/or intended privileges. Upon request from the Medical Staff Office, the practitioner shall provide proof of compliance with this requirement.

2.    Proof of Insurance - Failure to Provide Evidence

At the time of application and reapplication to the medical staff, each applicant and member shall advise on the application/reapplication form:

a.    the name of the insurance carrier, policy number and expiration date;

b.    that coverage provided by such insurance is consistent with the applicant's or member's existing and/or intended privileges;

c.    the coverage limits of the policy; and

d.    evidence satisfactory to the Medical Staff Office and the MEC of the existence of such insurance coverage. In addition, each applicant and member shall have a continuous duty to immediately notify the Medical Staff Office of any cancellation or change in the policy, including a change in carrier, amount, or scope of coverage.

Failure to provide evidence of such professional liability insurance, at the time of appointment/reappointment, shall render the application incomplete and ineligible for processing.

3.3    TERMINATION OF MEMBERSHIP BY RESIGNATION

A staff member may terminate his own membership on the staff by submitting a letter of resignation to the MEC.

3.4    BASIC RESPONSIBILITIES OF MEDICAL STAFF MEMBERSHIP

8

Except for the affiliate, honorary and retired staff, the ongoing responsibilities of each member of the medical staff include:

A.    providing patients with efficient and high quality care which shall include timely patient visits, usually on a daily basis.  For the critically ill patient, more frequent visits may be appropriate and required.

B.    abiding by the medical staff bylaws, medical staff rules and regulations and department rules and regulations and by all other lawful standards, policies and rules of this hospital and medical staff;

C.    discharging in a responsible and cooperative manner such reasonable responsibilities and assignments imposed upon the member by virtue of medical staff membership, including department and committee assignments;

D.    preparing and completing in timely and legible fashion medical records for all the patients to whom the member provides care in the hospital;

E.    aiding in any medical staff approved educational programs for medical students, interns, resident physicians, resident dentists, staff physicians and dentists, nurses and other personnel as assigned;

F.    working cooperatively with members, nurses, hospital administration and others so as not to adversely affect patient care;

G.    making appropriate arrangements for coverage for patients;

H.    refusing to engage in improper inducements for patient referral;

I.    participating in continuing education programs as determined by the MEC;

J.    participating in such emergency service coverage or consultation panels as may be determined by the department chairman and the MEC;

K.    abiding by the lawful ethical principles of the California Medical Association or the member's applicable professional association;

L.    paying staff dues and any application processing fees promptly;

M.    seeking consultation when necessary;

N.    providing continuous care for patients and refrain from knowingly delegating the responsibility for diagnosis or care of hospitalized patients to a practitioner who is not qualified to undertake that responsibility or who is not adequately supervised;

O.    promptly notifying the President of the Staff in writing, through the Medical Staff Office of,

9

1.  a lapse, reduction, or cancellation of professional liability insurance;
2.  the initiation of formal proceedings by a medical licensing authority or the DEA to suspend, revoke, or place on probation a license or a DEA certificate;
3.  an action by the Medical Executive Committee or the governing body of another hospital to suspend, revoke, or deny clinical privileges at that hospital for reasons related to professional competence or conduct; or
4.  the development of any mental or physical condition or other situation that could significantly compromise the member's ability to perform the functions associated with his or her clinical privileges in a safe and effective manner.

P.  discharging such other staff obligations as may be lawfully established from time to time.

3.5    HARASSMENT PROHIBITED

Harassment by a medical staff member against any individual (e.g., against another medical staff member, house staff, hospital employee or patient) on the basis of race, religion, color, national origin, ancestry, physical disability, mental disability, medical disability, marital status, sex, gender or sexual orientation shall not be tolerated.

"Sexual harassment" is unwelcome verbal or physical conduct of a sexual nature which may include verbal harassment (such as epithets, derogatory comments or slurs), physical harassment (such as unwelcome touching, assault, or interference with movement or work), and visual harassment (such as the display of derogatory cartoons, drawings, or posters).

Sexual harassment includes unwelcome advances, requests for sexual favors, and any other verbal, visual, or physical conduct of a sexual nature when (1) submission to or rejection of this conduct by an individual is used as a factor in decisions affecting hiring, evaluation, retention, promotion, or other aspects of employment; or (2) this conduct substantially interferes with the individual's employment or creates an intimidating, hostile, or offensive work environment. Sexual harassment also includes conduct which indicates that employment and/or employment benefits are conditioned upon acquiescence in sexual activities.

All allegations of sexual harassment shall be immediately investigated by the medical staff pursuant to Article VII and, if confirmed, will result in appropriate corrective action, from reprimands up to and including termination of medical staff privileges or membership, if warranted by the facts.

ARTICLE VII
CORRECTIVE ACTION

7.1    CORRECTIVE ACTION

A.    Criteria for Initiation

An investigation or corrective action may be requested by any officer, the chairman of any clinical department, the chairman of a standing committee of the medical staff, the administrator, or a member of the board of directors, whenever any of these persons becomes aware of information which indicates that a medical staff member is or has engaged in conduct either inside or outside of the hospital, which is, or is reasonably likely to be:

1.    detrimental to patient safety or to the delivery of quality patient care;

2.    disruptive to hospital operations;

3.    lower than the professional standards of the medical staff;

4.    unethical;

5.    in violation of these bylaws, rules or regulations, department rules or regulations, or policies or procedures of the hospital.

All requests for investigation or corrective action shall be submitted in writing to the MEC and shall include a description of the conduct or statement which constitutes the grounds for the request. Any person may provide information to the medical staff about the conduct, performance, or competence of its members.

B.    Investigation or Deliberation

The MEC may act on the information reported to it in connection with a request for corrective action, or it may take temporary measures or no measures pending further investigation. If the MEC concludes that an investigation is warranted, it may forward the matter to the chairperson of the appropriate department, who shall investigate the matter or appoint an ad hoc committee to investigate it. Alternatively, the MEC may undertake on its own to appoint an ad hoc investigative committee comprised of such individuals as it sees fit. Any investigation shall be conducted promptly and efficiently, in accordance with such special instructions as the MEC may give, and a written report and recommendation shall be submitted to the MEC. In all instances, the member under investigation shall be given an opportunity by the ad hoc committee to address the committee's concerns, if any, before a report is submitted to the MEC, and the member's input shall be reflected in the report. The MEC, also, may afford the member an opportunity for a meeting after the investigative report has been submitted, but shall provide such an opportunity for a meeting prior to taking action in any case where there has been no investigation by an ad hoc committee.

34

C.    Medical Executive Committee Action or Recommendation

The MEC shall meet as soon as practicable to act in response to a request for corrective action or in response to an investigative report as described above. The options available to the MEC shall include, but not be limited to, the following:

1.    action: invitation to the MEC for discussion of the problem;

2.    action: rejection of the request for corrective action and, if the MEC determines there was no credible evidence for the complaint in the first instance, removing any adverse information from the member's file;

3.    action: a warning, a letter of admonition or a letter of reprimand, although nothing herein shall be deemed to preclude department chairmen from issuing written or oral warnings outside of the mechanism for corrective action. In the event such letters are issued, the affected member may make a written response which shall be placed in the member's file;

4.    recommendation: recommending individual requirements of consultation;

5.    recommendation: recommending reduction, suspension or revocation of clinical privileges;

6.    recommendation: recommending reduction of staff category or limitation of any staff prerogatives directly related to the practitioner's delivery of patient care;

7.    recommendation: recommending suspension or revocation of staff membership;

8.    action: summary suspension pursuant to Section 7.3.

D.    Deferral

If additional time is needed to complete the investigative process, the MEC may defer action on the request.

E.    Procedural Rights

Any recommendation or action by the MEC pursuant to Section 7.1-C (4), (5), (6), (7) or (8), or any combination of such recommendations or actions, shall entitle the practitioner to the procedural rights as provided in Article VIII. The board of directors shall be apprised of the MEC's recommendation or action, but shall not take final action on the matter until the practitioner's hearing rights are either waived or exhausted pursuant to these bylaws.

F.    Action by Board of Directors

If the MEC (a) does not act on a request for corrective action in a timely fashion, (b) decides not to conduct an investigation or otherwise initiate corrective action proceedings, after receiving

either written notice of alleged conduct constituting grounds for corrective action or a written request for correction action, the matter shall be forwarded to the board of directors. The board of directors may concur in the MEC's decision and notify the practitioner accordingly, or, if the board of directors reasonably determines the MEC's decision to be contrary to the weight of the evidence presented, the board of directors may consult with the president of the medical staff as the MEC's representative and thereafter direct the MEC to conduct an investigation or otherwise initiate corrective action proceedings. In the event the MEC fails to take action in response to such a direction from the board of directors, the board of directors may, after written notification to the MEC, conduct an investigation or otherwise initiate corrective action proceedings on its own initiative. Any such proceedings shall afford the practitioner substantially the same procedural rights that are described in connection with judicial review committee hearings under these bylaws.

G.    When Corrective Action Takes Effect

1.    Any corrective action recommended by the MEC as described in Section 7.2 C 4 through 7 in response to a request for corrective action shall not take effect until the affected practitioner has waived any right to a hearing as provided in Article VIII or until any hearing process is completed and final pursuant to Article VIII, whichever occurs sooner. However, this shall not qualify the right or power to impose a summary or automatic suspension or revocation pursuant to Sections 7.3 or 7.4. Moreover, the administrator may sooner apprise the board of directors of any such adverse recommendation for the purpose of informing the board of directors.

2.    The issuance of a warning, a letter of admonition or a letter of reprimand shall not give rise to any right to a hearing or appellate review.

7.2    SUMMARY SUSPENSION OR RESTRICTION

A.    Criteria for Initiation and Authority to Impose Summary Suspension or Restriction

Whenever a medical staff member's conduct may result in an imminent danger to the health of any individual, the president of the staff, any department chairman, the MEC or the administrator may summarily suspend or restrict the medical staff member's status and all or any portion of the clinical privileges of such medical staff member.

When no such person or committee is available to impose a summary suspension or restriction, the board of directors or its designee may take such action if a failure to do so would be likely to result in an imminent danger to the health of any individual. Prior to exercising this authority, the board of directors or its delegate must make a reasonable attempt to contact the president of the medical staff as the representative of the medical staff. Summary action by the board of directors or its delegate which has not been ratified by the president of the medical staff within two (2) working days, excluding weekends and holidays, after the suspension shall terminate automatically without prejudice to further summary action as warranted by the circumstances.

B.    When Effective, Notification and Duration

Such summary suspension or restriction shall be effective immediately upon imposition. The president shall promptly notify the MEC, the administrator and the practitioner (the latter by SPECIAL NOTICE) of confirmation of the suspension or restriction. A summary suspension or restriction may be limited in duration in order to permit the MEC, where deemed appropriate, the authority to conduct an investigation under this Article. Where the duration of the suspension or restriction is temporary, the practitioner shall be notified of its temporary nature.

C.    MEC Action

The practitioner whose clinical privileges have been summarily suspended or restricted shall be invited to attend a meeting with the MEC, to be held within five (5) days after the imposition of the summary suspension, unless the practitioner and the MEC both agree to an extension. The meeting shall be preliminary in nature, shall not involve participation of attorneys, and none of the procedural rules provided in these bylaws with respect to hearings shall apply. The MEC may modify, continue or terminate the summary restriction or suspension and shall promptly notify the practitioner of its decision in writing. Unless the MEC promptly terminates the summary restriction or suspension, the member shall be entitled to the procedural rights described in Article VIII, below.

D.    Alternative Medical Coverage

Immediately upon imposition of the summary suspension or restriction, the president or responsible department chairman or service chief shall have the authority to provide for alternative medical coverage for the patients of the suspended staff member still in the hospital at the time of such suspension or restriction. The patient's wishes shall be considered in the selection of an alternative practitioner.

7.3    AUTOMATIC SUSPENSION OR RESTRICTION

Suspension under this Section shall not entitle the practitioner to the procedural rights specified in Article VIII

Whenever any of the events constituting automatic suspension as outlined in the Section 7.3 occur, the practitioner shall be notified by SPECIAL NOTICE of the suspension as soon as possible after the hospital or medical staff receives notice that one of the applicable events has occurred. It shall be incumbent on the practitioner to notify the president immediately in the event the practitioner learns that any of the events constituting automatic suspension has occurred.

A.    Licensure

1.    Revocation:  Whenever a member's license or other legal credential authorizing practice in this state is revoked, medical staff membership and clinical privileges shall be automatically revoked.

37

2. <u>Restriction:</u> whenever a member's license, certificate or other legal credential is limited or restricted by the applicable licensing or certifying authority, any clinical privileges which the member has been granted at the hospital which are within the scope of said limitation or restriction shall be automatically limited or restricted in a similar manner, as of the date such action becomes effective and throughout its term. Further action on the matter shall proceed pursuant to Section 7.3-F.

3. <u>Suspension:</u> Whenever a practitioner's license, certificate or other legal credential is suspended, such practitioner's staff membership and clinical privileges or specified services shall be automatically suspended effective upon and for at least the term of the suspension. Further action on the matter shall proceed pursuant to Section 7.3-F.

4. <u>Probation:</u> Whenever a member is placed on probation by the applicable licensing or certifying authority, such practitioner's membership status and clinical privileges shall automatically become subject to the same terms and conditions of the probation as of the date such action becomes effective and throughout its term. Further action on the matter shall proceed pursuant to Section 7.3-F.

B.   <u>Controlled Substances Privileges:</u>

1. <u>Suspension:</u> Whenever the Drug Enforcement Agency (DEA) suspends a staff member's privileges to prescribe controlled substances, the staff member shall be divested of the right to prescribe such medication for the term of the suspension. Further action on the matter shall proceed pursuant to Section 7.3-F.

2. <u>Revocation:</u> Whenever the Drug Enforcement Agency (DEA) revokes a staff member's privileges to prescribe controlled substances, the staff member shall immediately and automatically be divested of the right to prescribe such substances. Further action on the matter shall proceed pursuant to Section 7.3-F.

3. <u>Probation:</u> Whenever a staff member is placed on probation insofar as the privilege of prescribing controlled substances under the DEA is concerned, action on the matter shall proceed pursuant to Section 7.3-F below.

C.   <u>Professional Liability Insurance</u>

Failure to maintain professional liability insurance that complies with the standards set forth in the Medical Staff Rules and Regulations shall be grounds for automatic suspension of a member's clinical privileges, and if, within ninety (90) days after written warnings of the delinquency, the member does not provide evidence of required professional liability insurance, the member's membership and clinical privileges shall be automatically terminated.

D.   <u>Removal of Patient Records</u>

Admitting, consulting and clinical privileges (except with respect to patients already in the hospital) of practitioners who remove any record from the hospital without permission will be automatically suspended until all records are returned.

E.     Medical Records

Members of the medical staff are required to complete medical records within such reasonable time as may be prescribed by the MEC. A limited suspension in the form of withdrawal of admitting and other related privileges until medical records are completed, shall be imposed by the president of the medical staff, or designee, after notice of delinquency for failure to complete medical records within such period. For the purpose of this Section, "related privileges" means voluntary on-call service for the emergency room, scheduling surgery, assisting in surgery, consulting on hospital cases, and providing professional services within the hospital for future patients. Bona fide vacation or illness may constitute an excuse subject to approval by the MEC. Members whose privileges have been suspended for delinquent records may admit patients only in life-threatening situations. The suspension shall continue until lifted by the president of the staff or designee.

F.     Failure to Respond to Medical Staff Correspondence

Members are expected to cooperate with Medical Staff committees and representatives in the discharge of their official functions. This includes responding promptly and appropriately to correspondence regarding quality of care issues, utilization management issues, Medical Staff administrative issues, and other issues that may arise in the conduct of Medical Staff affairs. Failure to comply shall constitute grounds for the President of the Medical Staff or a department chair to suspend the member's clinical privileges until a response is provided which is satisfactory to the requesting party. Any such suspension shall remain in effect until the member is expressly notified that it is lifted.

G.     Medical Executive Committee Deliberation and Action

Either before or after a practitioner's clinical privileges become affected pursuant to these automatic suspension or restriction provisions, the president may present the matter to the MEC for its consideration. The practitioner may be compelled to make an appearance. In addition to any action mandated by these provisions, the MEC may decide to take such other corrective action measures as it considers warranted. The practitioner shall be afforded such procedural rights as are provided by Article VIII with respect to the MEC's discretionary action.

39

ARTICLE VIII
INTERVIEWS, HEARINGS AND APPELLATE REVIEWS

8.1    GENERAL PROVISIONS

A.    Interviews

The practitioner may be afforded an interview in situations other than those described in Section 7.2-C, and 7.3 F. At that time, the practitioner shall be informed of the general nature of the matter under consideration and shall be allowed to present relevant information. A record of the substance of that meeting shall be prepared. That meeting shall not constitute a hearing and the procedural rules regarding hearings shall not apply. The scope of any further investigation, hearing or corrective action process need not be restricted to the matters discussed at that meeting.

B.    Exhaustion of Remedies

If adverse action described in Section 8.2 is taken or recommended, the applicant or member must exhaust the remedies afforded by these bylaws before resorting to legal action.

C.    Application of Article

For purposes of this Article, the term "member" may include "applicant," as it may be applicable under the circumstances, unless otherwise stated.

D.    Practitioners Under Contract with the Hospital

Removal from office of a practitioner under contract with the hospital shall not affect his staff membership status or clinical privileges, unless otherwise provided in such practitioner's employment agreement, contract or other arrangement, if any.

In any event, the practitioner under contract with the hospital shall be afforded a Judicial Review Committee hearing under those circumstances described in Section 8.2 M.

If there is no employment agreement, contract or other arrangement, adverse action with respect to the practitioner's staff membership status and/or clinical privileges must be initiated and processed in accordance with Article VIII.

8.2    GROUNDS FOR HEARING

Except as otherwise specified in these bylaws, any one or more of the following actions or recommended actions shall be deemed actual or potential adverse action and constitute grounds for a hearing:

A.    Denial of initial staff appointment

B.    Denial of reappointment

40

C.  Suspension of staff membership for fourteen (14) calendar days or more for medical disciplinary cause or reason

D.  Revocation of staff membership

E.  Denial of requested advancement in staff category if the denial is for a medical disciplinary cause or reason and will result in a termination or restriction of clinical privileges

F.  Reduction in staff category, if the reduction is for a medical disciplinary cause or reason and will result in a termination or restriction of clinical privileges

G.  Restriction or limitation of the right to admit patients for a cumulative total of thirty (30) days or more in a twelve (12) month period for medical disciplinary cause or reason

H.  Denial of requested clinical privileges

I.  Reduction in clinical privileges

J.  Suspension of clinical privileges for fourteen (14) calendar days or more for medical disciplinary cause or reason

K.  Revocation of clinical privileges

L.  Requirement of consultation or proctoring or any other significant limitation on the exercise of clinical privileges, except proctoring for the exercise of new privileges or reinstatement of a practitioner after a leave of absence

M.  Termination of contract between the hospital and a member of the Medical Staff by or upon recommendation from the MEC for a medical disciplinary cause or reason as defined in Business and Professions Code Section 805 or any successor statute.

N.  Denial, reduction, suspension or termination of temporary privileges for a medical disciplinary cause or reason as defined in Business and Professions Code Section 805 or any successor statute

O.  Any other actions for which a report would be required under Section 805 of the California Business and Professions Code.

8.3  NOTICE OF AND REQUESTS FOR HEARING

A.  Notice of Action or Proposed Action

In all cases in which action has been taken or a recommendation made as set forth in Section 8.2, the practitioner involved shall be given written notice by the administrator of the action or proposed action. This notice shall include all of the following:

1.  that the applicant or member has a right to request a hearing;

41

2.  the time limi.    ithin which a hearing may be requested, which shall be thirty (30) days following receipt of the Notice of Action or Proposed Action;

3.  a summary of the applicant's or member's rights in the hearing; and

4.  a concise statement of the reasons for the action or recommendation. (In the event a hearing is requested, a more detailed Notice of Reasons or Charges may be provided subsequently).

In the event the action or recommendation is of a type which must be reported to the Medical Board of California pursuant to Section 805 of the Business and Professions Code or the National Practitioner Data Bank, if adopted or implemented, then the notice must also explain that the action, if adopted or implemented, will be so reported.

B.    Request for Hearing

The member shall have thirty (30) days following receipt of notice of such action to request a hearing. The request shall be in writing addressed to the MEC with a copy to the administrator. In the event the member does not request a hearing within the time and in the manner described, the member shall be deemed to have accepted the action involved, to have waived any right to a hearing and the action shall thereupon become effective immediately.

C.    Time and Place for Hearing

If the applicant or member requests a hearing, the President of the Medical Staff or a designee shall make the necessary arrangements and provide the person who requested the hearing with a Notice of Hearing which includes the date, time and place of the hearing. The date of commencement of the hearing shall be neither fewer than thirty (30) days nor more than sixty (60) days from the date of receipt of the request for the hearing. The Notice of Hearing must be provided at least thirty (30) days prior to the date of commencement. However, when a member who is under summary suspension requests a hearing, the hearing shall commence as soon as the hearing may reasonably be scheduled, but not later than forty-five (45) days from the date of receipt of the request. In such instances, the Notice of Hearing shall be provided within a reasonable time prior to the date of commencement. The parties and the judicial review committee shall cooperate with each other in scheduling additional hearing sessions, as necessary, to complete the process as soon as practicable.

D.    Notice of Charges

A Notice of Reasons or Charges may be sent along with or separate from the Notice of Hearing, further specifying, as appropriate, the acts or omissions with which the person is charged. This supplemental Notice shall provide a list of the charts, if any, which are to be discussed at the hearing, if that information has not been provided previously. In any event, the Notice of Hearing shall include a list of the names and addresses of the individuals, so far as is then reasonably known or anticipated, who are expected to give testimony or evidence in support of the MEC at

the hearing. This list shall be updated, as necessary and appropriate, at least ten (10) days prior to the commencement of the hearing.

E.    Judicial Review Committee

When a hearing is requested, the MEC shall appoint a judicial review committee which shall be composed of not less than three (3) members of the active medical staff who shall gain no direct financial benefit from the outcome, and who have not acted as accusers, investigators, fact finders, initial decision makers, or otherwise have not actively participated in the consideration of the matter leading up to the recommendation or action. Knowledge of the matter involved shall not preclude a member of the medical staff from serving as a member of the judicial review committee. In the event that it is not feasible to appoint a judicial review committee from the active medical staff, the MEC may appoint members from other staff categories or practitioners who are not members of the medical staff. Such appointment shall include designation of the chairman. Where feasible, the judicial review committee shall include an individual practicing the same specialty as the member.

The MEC has the discretion, in lieu of appointing a Judicial Review Committee chosen in the manner set forth above, to enter into an agreement with the applicant or medical staff member to hold the hearing before an arbitrator or arbitrators mutually acceptable to both parties. Failure or refusal to exercise this discretion shall not constitute a breach of the MEC's responsibility to provide a fair hearing.

F.    Failure to Appear or to Proceed

Failure without good cause of the member to personally attend and proceed at such a hearing in an efficient and orderly manner shall be deemed to constitute voluntary acceptance of the recommendations or actions involved and a waiver of all hearing rights. The issue of good cause shall be determined by the judicial review committee.

G.    Postponements and Extensions

Once a request for a hearing is initiated, postponements and extensions of time beyond the times prescribed in these bylaws may be requested by anyone and shall be permitted by the judicial review committee, or its chairman acting on its behalf, upon agreement by the parties or upon a showing of good cause. Good cause shall include but not be limited to failure by either party to comply with the discovery provisions of this article.

8.4    PRE-HEARING PROCEDURE

A.    The Hearing Officer

The administrator shall appoint a hearing officer to preside at the hearing. The hearing officer may be an attorney at law qualified to preside over a quasi-judicial hearing, but an attorney regularly utilized by the hospital for legal advice regarding its affairs and activities shall not be eligible to serve as hearing officer. The hearing officer shall gain no direct financial benefit from the outcome and must not act as a prosecuting officer or as an advocate. The hearing officer shall

43

endeavor to assure th... all participants in the hearing have a reasonable opportunity to be heard and to present relevant oral and documentary evidence in an efficient and expeditious manner, and that proper decorum is maintained. The hearing officer shall be entitled to determine the order of or procedure for presenting evidence and argument during the hearing and shall have the authority and discretion to make all rulings on questions which pertain to matters of law, procedure or the admissibility of evidence. If the hearing officer determines that either side in a hearing is not proceeding in an efficient and expeditious manner, the hearing officer may take such discretionary action as seems warranted by the circumstances. If requested by the judicial review committee, the hearing officer may participate in the deliberations of such committee and be a legal advisor to it, but the hearing officer shall not be entitled to vote.

B. <u>Exchange of Information</u>

The person requesting the hearing shall have the right to inspect and copy at the person's own expense documentary information relevant to the charges which the MEC has in its possession or under its control, as soon as practicable after the receipt of that person's request for a hearing. The MEC shall have the right to inspect and copy at its expense any documentary information relevant to the charges which the person requesting the hearing possesses or controls as soon as practicable after receipt of the MEC's request.

The failure by either party to provide access to this information at least thirty (30) days before the hearing shall constitute good cause for a continuance. The right to inspect and copy by either party does not extend to confidential information referring solely to individually identifiable persons, other than the member under review.

C. <u>Hearing Officer Rulings</u>

The hearing officer shall consider and rule upon any dispute or controversy concerning a request for access to information and may impose any safeguards that the protection of the peer review process and justice requires. In so doing, the hearing officer shall consider:

1. whether the information sought may be introduced to support or defend the charges;

2. the exculpatory or inculpatory nature of the information sought, if any, i.e., whether there is a reasonable probability that the result of the hearing would be influenced significantly by the information if received into evidence;

3. the burden imposed on the party in possession of the information sought, if access is granted; and

4. any previous requests for access to information submitted or resisted by the parties to the same proceeding;

5. whether the information sought is advisory or deliberative, rather than factual, and its disclosure would intrude on privacy rights or otherwise threaten the frank and open exchange of ideas in the process by which peer review decisions or policies are formulated.

44

D.    Voir Dire

The person who requested the hearing shall be entitled to a reasonable opportunity to question and challenge the impartiality of judicial review committee members and the hearing officer. Challenges to the impartiality of any judicial review committee member or the hearing officer shall be ruled on by the hearing officer. The hearing officer shall establish the procedure by which this right may be exercised, which may include requirements that voir dire questions be proposed in writing in advance of the hearing and that the questions be presented by the hearing officer. The hearing officer shall rule on any challenges in accordance with applicable legal principles defining standards of impartiality for hearing panels and hearing officers in proceedings of this type.

E.    Procedural Disputes

It shall be the duty of the person who requested the hearing and the MEC or its designee to exercise reasonable diligence in notifying the chairman of the judicial review committee of any pending or anticipated procedural disputes as far in advance of the scheduled hearing as possible, in order that decisions concerning such matters may be made in advance of the hearing. Objections to any pre-hearing decisions may be succinctly made at the hearing.

F.    Representation

The hearings provided for in these bylaws are for the purpose of intra-professional resolution of matters bearing on professional conduct, professional competency, or character.

Accordingly, neither the person requesting the hearing nor the MEC shall be represented in any phase of the hearing procedure by an attorney at law unless the chairman of the judicial review committee, in such chairman's discretion, permits both sides to be represented by legal counsel or unless the MEC and the person requesting the hearing agree that both sides shall enjoy the opportunity to be represented by legal counsel at the hearing. In no event shall the MEC be represented by legal counsel if the person requesting the hearing is not so represented. In the event legal counsel is not allowed at the hearing, the person requesting the hearing shall be entitled to be accompanied and represented at the hearing only by a member in good standing of the medical staff who is not also an attorney. The body whose decision prompted the hearing shall appoint a representative from the medical staff to present its recommendation in support thereof and to examine witnesses.

Nothing in the foregoing shall be deemed to deprive the practitioner or the MEC of the right to advice from legal counsel in connection with the preparation for the judicial review committee hearing or for possible further proceedings.

G.    Record of the Hearing

A court reporter shall be present to make a record of the hearing proceedings, and the pre-hearing proceedings if deemed appropriate by the hearing officer. The cost of attendance of the court

shorthand reporter shall be borne by the hospital, but the cost of the transcript, if any, shall be borne by the party requesting it. The judicial review committee may, but shall not be required to, order that oral evidence be taken only on oath administered by any person lawfully authorized to administer such oath.

8.5    HEARING PROCEDURE

A.    Rights of the Parties

Within reasonable limitations, both sides at the hearing may call and examine witnesses for relevant testimony; introduce exhibits or other documents determined by the hearing officer to be relevant; cross-examine any witness who shall have testified orally on any matter relevant to the issues, impeach any witness; and rebut any evidence, as long as these rights are exercised in an efficient and expeditious manner. The person who requested the hearing may be called by the MEC and examined as if under cross examination.

B.    Miscellaneous Rules

Judicial rules of evidence and procedure relating to the conduct of the hearing, examination of witnesses, and presentation of evidence shall not apply to a hearing conducted under this article. Any relevant evidence, including hearsay, shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law. The judicial review committee may interrogate the witnesses or call additional witnesses if it deems such action appropriate. At its discretion, the judicial review committee may request or permit both sides to file written arguments.

C.    Burdens of Presenting Evidence and Proof

1.    At the hearing the MEC shall have the initial duty to present evidence for each case or issue in support of its action or recommendation.

2.    The person requesting the hearing who is challenging a recommendation to deny an application for appointment to the medical staff or application for any new clinical privileges shall have the burden of persuading the judicial review committee, by a preponderance of the evidence, that the person is sufficiently qualified to be awarded such membership or privileges at this hospital. This burden requires the production of information which allows for adequate evaluation and resolution of reasonable doubts concerning the applicant's current qualifications. The applicant shall not be permitted to introduce information not produced upon the request of any committee or person on behalf of the medical staff during the application process, unless the person establishes that the information could not have been produced in the exercise of reasonable diligence.

3.    Except as provided above, the MEC shall bear the burden of persuading the judicial review committee, by a preponderance of the evidence, that its action or recommendation was reasonable and warranted. The term "reasonable and warranted" means within the

46

range of reasonable alternatives open to the MEC under the circumstances, and not necessarily that the recommendation is the only measure or the best measure that could have been taken or formulated in the opinion of the judicial review committee.

D.   Adjournment and Conclusion

After consultation with the chairman of the judicial review committee, the hearing officer may adjourn the hearing and reconvene the same without special notice at such times and intervals as may be reasonable and warranted, with due consideration for reaching an expeditious conclusion to the hearing. Both the MEC and the member may submit a written statement at the close of the hearing. Upon conclusion of the presentation of oral and written evidence, or the receipt of closing written arguments, if submitted, the hearing shall be closed.

E.   Basis for Decision

The decision of the judicial review committee shall be based on the evidence introduced at the hearing, including all logical and reasonable inferences from the evidence and the testimony.

F.   Decision of the Judicial Review Committee

Within thirty (30) days after closure of the hearing, the judicial review committee shall render a decision which shall be accompanied by a report in writing and shall be delivered to the parties. If the member is currently under suspension, however, the time for the decision and report shall be fifteen (15) days. A copy of said decision also shall be forwarded to the administrator, and the board of directors. The report shall contain a concise statement of the reasons in support of the decision including findings of fact and a conclusion articulating the connection between the evidence produced at the hearing and the conclusion reached. Both the member and the MEC shall be provided a written explanation of the procedure for appealing the decision. The decision of the judicial review committee shall be subject to such rights of appeal or review as described in these bylaws, but shall otherwise be affirmed by the board of directors as the final action if it is supported by substantial evidence, following a fair procedure.

8.6   APPEAL

A.   Time for Appeal

Within ten (10) days after receipt of the decision of the judicial review committee, either the member or the MEC may request an appellate review by the board of directors. A written request for such review shall be delivered to the administrator and the other party in the hearing. If a request for appellate review is not received by the administrator within the prescribed period, all rights to such review shall be deemed waived. It shall be the obligation of the party requesting appellate review to produce the record of the judicial review committee hearing, at the appellant's expense. If the record is not produced within a reasonable period, appellate rights shall be deemed waived.

47

B.    Grounds for Appeal

A written request for an appeal shall include an identification of the grounds for appeal and a clear and concise statement of the facts in support of the appeal. The grounds for appeal from the hearing shall be:

1.    substantial non-compliance with the procedures required by these bylaws in the conduct of hearings and decisions, so as to deny due process and a fair hearing and/or

2.    action taken was arbitrary, capricious or with prejudice and the decision was not supported by substantial evidence based upon the hearing record or such additional information as may be permitted pursuant to Section 8.6-E.

C.    Time, Place and Notice

If an appellate review is to be conducted, the appeal board shall, within fifteen (15) days after receipt of notice of appeal, schedule a review date and cause each side to be given notice of the time, place and date of the appellate review. The date of appellate review shall not be less than thirty (30) nor more than sixty (60) days from the date of such notice, provided however, that when a request for appellate review concerns a member who is under suspension which is then in effect, the appellate review shall be held as soon as the arrangements may reasonably be made, not to exceed fifteen (15) days from the date of the notice. The time for appellate review may be extended by the appeal board for good cause, including but not necessarily limited to a reasonable time for the production of the record.

D.    Appeal Board

The board of directors shall appoint an appeal board, which shall be composed of not less than three (3) members of the board of directors. Knowledge of the matter involved shall not preclude any person from serving as a member of the appeal board, so long as that person did not take part in a prior hearing on the same matter. The appeal board may select an attorney to assist it in the proceeding, but that attorney shall not be entitled to vote with respect to the appeal.

E.    Appeal Procedure

The proceeding by the appeal board shall be in the nature of an appellate hearing based upon the record of the hearing before the judicial review committee, provided that the appeal board may accept additional oral or written evidence, subject to a foundational showing that such evidence could not have been made available to the judicial review committee in the exercise of reasonable diligence and subject to the same rights of cross-examination or confrontation provided at the judicial review hearing; or the appeal board may remand the matter to the judicial review committee for the taking of further evidence and/or clarification, supplementation or reconsideration of its decision. Each party shall have the right to present a written statement in support of its position on appeal and to personally appear for the purpose of presenting oral argument and responding to questions in accordance with the procedure established by the board of directors.

48

F.    Representation

Each party shall have the right to be represented by legal counsel, or any other representative designated by that party in connection with the appeal.

G.    Deliberation and Recommendation

After the appellate hearing, the appeal board may conduct, at a time convenient to itself, deliberations outside the presence of the appellant and respondent and their representatives. The appeal board shall present to the board of directors its written recommendations as to whether the board of directors should affirm, modify, or reverse the judicial review committee decision.

H.    Final Decision

1.    Within thirty (30) days after receipt of the appeal board's report, the board of directors shall render a final decision.

2.    Should the board of directors determine that the judicial review committee decision is not supported by substantial evidence, the board may modify or reverse the decision of the judicial review committee or remand the matter to the judicial review committee for reconsideration or further proceedings, stating the purpose for the referral. If the board determines that a fair procedure has not been afforded, it may remand the matter to the judicial review committee for further proceedings or take such other measures as it deems appropriate to provide a fair procedure before a decision is made. If the matter is remanded to the judicial review committee for further review and recommendation, the committee shall promptly conduct its review and make its recommendations to the board of directors. This further review and the time required to report back shall not exceed thirty (30) days in duration except as the parties may otherwise agree or for good cause as jointly determined by the chairman of the board of directors and the judicial review committee.

3.    The decision shall be in writing, shall specify the reasons for the action taken, and shall be forwarded to the president of the medical staff, the subject of the hearing, and the administrator.

I.    Right to One Hearing

No member shall be entitled to more than one evidentiary hearing and one appellate review on any matter which shall have been the subject of adverse action or recommendation.

49

ARTICLE IX
OFFICERS

9.1    OFFICERS OF THE MEDICAL STAFF

A.    Identification

The officers of the medical staff shall be the president, vice president, immediate past president and secretary-treasurer.

B.    Qualifications

Officers must be members of the active medical staff at the time of their nominations and election, and must remain members in good standing during their term of office. Failure to maintain such status shall create a vacancy in the office involved.

C.    Nominations

1.    The medical staff shall provide for elections every two (2) years. The medical staff election year shall begin February 1.

A nominating committee consisting of the current president, the vice-president, two other members of the MEC appointed by the president, and three (3) members chosen by the active medical staff at its annual closed staff meeting shall meet not later than forty-five (45) days prior to the annual staff meeting to be held during the election year or at least forty-five (45) days prior to any special election. The president shall appoint the chairman of the nominating committee. The nominating committee shall nominate one or more nominees for each office to be filled. The nominations of the committee shall be reported to the MEC at its next meeting and shall be delivered or mailed to the voting members of the medical staff at least fifteen (15) days prior to the election.

2.    Further nominations may be made for any office by any voting member of the medical staff, provided that the name of the candidate is submitted in writing to the chairman of the nominating committee, is endorsed by the signature of at least ten (10) percent of other members who are eligible to vote, and bears the candidate's written consent. These nominations shall be delivered to the chairman of the nominating committee as soon as reasonably practicable, but at least thirty (30) days prior to the date of the election. If any nominations are made in this manner, the voting members of the medical staff shall be advised by notice delivered or mailed at least ten (10) days prior to the meeting.

D.    Elections

The vice-president and secretary-treasurer shall be elected by written ballot mailed to members of the active medical staff. The ballots shall also provide space for a write-in candidate for each office. Ballots will be sent to voters three weeks prior to the election. Three tellers appointed by the president shall count the ballots and report the results to the president. Candidates receiving a simple majority of votes cast shall be deemed elected. Ballots will be returned in sealed

50

envelopes with the hand written signature of the voter for comparison with signatures on file, when necessary.

If no candidate for the office receives a majority vote on the first ballot, a run-off election shall be held promptly between the two candidates receiving the highest number of valid votes cast. In the case of a tie on the second ballot, the majority vote of the MEC shall decide the election by secret written ballot at its next meeting or a special meeting called for that purpose, whichever comes first.

E.    Term of Elected Office

Each officer shall serve a, two (2) year term, commencing on the first day of the medical staff year (February 1) following such election. Each officer shall serve in each office until the end of that officer's term, or until a successor is elected, unless that officer shall sooner resign or be removed from office. At the end of that officer's term, the president shall automatically assume the office of immediate past president and the vice president shall automatically assume the office of president.

F.    Recall of Officer

Any medical staff officer may be removed from office for cause, including, but not limited to neglect or misfeasance in office or failure to satisfactorily discharge the duties of office. Recall of a medical staff officer may be initiated by the Medical Executive Committee or by a petition signed by at least one-third of the members of the medical staff eligible to vote for officers. Recall shall be considered at a special meeting called for that purpose. The grounds for the proposed removal shall be presented to the officer, in writing, at least 10 days prior to the special meeting, and the officer be given the opportunity to address them before the matter is put to vote. Recall shall require a two-thirds vote of the medical staff members eligible to vote for medical staff officers who actually cast votes at the special meeting in person by confidential written ballot marked "for" or "against" removal.

G.    Vacancies in Elected Office

If there is a vacancy in the office of president, the vice president shall serve as president for the remainder of the president's term. If a vacancy in office occurs during the year, other than in the office president, the nominating committee shall meet and present at least one nominee to the MEC. Election of the replacement officer shall be by vote of the active medical staff either at a meeting or by mail.

9.2    DUTIES OF OFFICERS

A.    President

The president shall serve as the chief officer of the medical staff. The duties of the president shall include, but not be limited to:

51

1.    enforcing the medical staff bylaws and rules and regulations, implementing sanctions where indicated, and promoting compliance with procedural safeguards where appointments, summary suspensions, corrective action, hearings or appeals have been requested or initiated;

2.    calling, presiding at, and being responsible for the agenda of all general meetings of the medical staff;

3.    serving as chairman of the MEC;

4.    serving as an ex-officio member on all other medical staff committees except the credentials committee, with vote;

5.    interacting with the administrator and board of directors in all matters of mutual concern within the hospital;

6.    appointing, in consultation with the MEC, committee members for all standing and special medical staff liaison, or multi-disciplinary committees, except where otherwise provided by these bylaws and, except where otherwise indicated, designating the chairmen of these committees;

7.    representing the views and policies of the medical staff to the board of directors and to the administrator;

8.    being a spokesperson for the medical staff in external professional and public relations;

9.    performing such other functions as may be assigned to the president of staff by these bylaws of the medical staff, or by the MEC;

10.   serving on liaison committees with the board of directors and administration, as well as outside licensing or accreditation agencies;

11.   receiving and interpreting the policies of the board of directors as transmitted by the administrator, to the medical staff and report to the administrator on the performance of the medical staff's responsibility to provide medical care and maintain the quality of medical care;

12.   being responsible for assuring that the educational activities of the medical staff are adequately assigned to and discharged by appropriate members, departments and committees of the medical staff.

B.    <u>Vice-President</u>

The vice-president shall assume all duties and authority of the president in the absence of the president. The vice president shall serve as chairman of the quality assurance committee, shall be a member of the MEC, and shall perform such other duties as the president may assign or as may be delegated by these bylaws, or by the MEC.

52

C.    Immediate Past President

The immediate past president shall serve as chairman of the credentials committee, and the bylaws committee and shall be a member of the MEC, and shall perform such other duties as may be assigned by the president or delegated by these bylaws, or by the MEC.

D.    Secretary-Treasurer

The secretary-treasurer shall be a member of the MEC. The duties shall include, but not be limited to:

1.    keeping accurate and complete minutes of all MEC and general medical staff meetings;

2.    calling meetings on the order of the president or MEC;

3.    serve as vice chairman of the Utilization Management Committee;

4.    attending to all appropriate correspondence and notices on behalf of the medical staff;

5.    supervise the collection, banking, and accounting for all funds that may be collected in the form of medical staff dues, assessments or application fees and shall render in writing a monthly report of disbursal and collection and, in addition have a yearly audit of the funds with the results of the audit presented to the MEC;

6.    performing such other duties as ordinarily pertain to the office or as may be assigned from time to time by president or MEC.

53

ARTICLE X
CLINICAL DEPARTMENTS AND SERVICES

10.1   ORGANIZATION OF CLINICAL DEPARTMENTS AND SERVICES

The medical staff shall be divided into clinical departments. Each department shall be organized as a separate component of the medical staff and shall have a chairman selected and entrusted with the authority, duties, and responsibilities specified in Section 10.6. A department may be further divided, as appropriate, into services which shall be directly responsible to the department within which it functions, and which shall have a service chief selected and entrusted with the authority, duties and responsibilities specified in Section 10.7. When appropriate, the MEC may recommend to the medical staff the creation, elimination, modification, or combination of departments or services.

10.2   CURRENT DEPARTMENTS AND SERVICES

The current departments and services are:

A.   Department of Anesthesia

B.   Department of Emergency Medicine

C.   Department of Medicine with services of:
    1.   Behavioral Medicine
    2.   Cardiology
    3.   Dermatology
    4.   Family Practice
    5.   Gastroenterology
    6.   Hematology/Oncology/
         Radiation Oncology
    7.   Infectious Disease
    8.   Internal Medicine
    9.   Nephrology
    10.  Neurology
    11.  Pulmonary Medicine

D.   Department of Obstetrics and Gynecology

E.   Department of Orthopedic Surgery with services of:
    1.   Foot
    2.   Hand
    3.   Podiatry

F.   Department of Pediatrics

G.   Department of Surgery with services of:
    1.   Dentistry & Oral Surgery
    2.   General Surgery
    3.   Neurosurgery
    4.   Ophthalmology
    5.   Otolaryngology
    6.   Plastic Surgery
    7.   Thoracic & Cardiac Surgery
    8.   Urology
    9.   Vascular Surgery

54

H.   Department of Hospital Services with services of:
1.   Diagnostic Imaging
2.   Pathology

## 10.3   ASSIGNMENT TO DEPARTMENTS AND SERVICES

Each member shall be assigned membership in at least one department, and to a service, if any, within such department, but may also be granted membership and/or clinical privileges in other departments or services consistent with practice privileges granted.

## 10.4   FUNCTIONS OF DEPARTMENTS

The general functions of each department shall include:

A.   conducting patient care reviews for the purpose of analyzing and evaluating the quality and appropriateness of care and treatment provided to patients within the department.  The department shall routinely collect information about important aspects of patient care provided in the department, periodically assess this information, and develop objective criteria for use in identifying problem areas and opportunities for the improvement of patient care.

Patient care reviews shall include all clinical work performed under the jurisdiction of the department, regardless of whether the member whose work is subject to such review is a member of that department;

B.   recommending to the MEC criteria for the delineation of clinical privileges and the performance of specified services within the department;

C.   conducting, participating and making recommendations regarding continuing education programs pertinent to departmental clinical practice;

D.   reviewing and evaluating departmental adherence to:

1.   department rules and regulations and

2.   sound principles of clinical practice;

E.   coordinating patient care provided by the department's members with nursing and ancillary patient care services;

F.   submitting written reports to the MEC concerning:

1.   the department's review and evaluation activities, actions taken thereon, and the results of such action; and

55

2.  recommendations for maintaining and improving the quality of care provided in the department and the hospital;

G.  meeting at least twice a year for the purpose of considering patient care review findings and the results of the department's other review and evaluation activities, as well as reports on other department and staff functions;

H.  establishing such committees or other mechanisms as are necessary and desirable to perform properly the functions assigned to it, including proctoring protocols;

I.  taking appropriate action when important problems in patient care and clinical performance or opportunities to improve care are identified;

J.  accounting to the MEC for all professional and medical staff administrative activities within the department;

K.  establishing such committees as may be necessary or appropriate to conduct department functions; and

L.  formulating recommendations for departmental rules and regulations reasonably necessary for the proper discharge of its responsibilities subject to the approval by the MEC and the board of directors.

## 10.5    FUNCTIONS OF SERVICES

Subject to approval of the MEC, each service shall perform the functions assigned to it by the department chairman. Such functions may include, without limitation, retrospective patient care reviews, evaluation of patient care practices, credentials review and privileges delineation, and continuing education programs. The service shall transmit regular reports to the department chairman on the conduct of its assigned functions.

## 10.6    DEPARTMENT CHAIRMEN

A.  Qualifications

Each department shall have a chairman and vice-chairman who shall be members of the active medical staff and shall be board certified by their specialty board or affirmatively established through the privilege delineation process that they are possessed of comparable competence, and qualified by training, experience and demonstrated ability in at least one of the clinical areas covered by the department.

B.  Selection

Department chairmen shall be elected every three (3) years by those members of the department who are eligible to vote for general officers of the medical staff. Vice-chairmen shall be nominated by the department chairman and voted on by members of the department. Election of the department chairmen shall be so arranged that the chairmen of at least two (2) departments

56

shall be elected annually.

For the purpose of this election, each department chairman, or designee, shall appoint a nominating committee of three (3) members at least sixty (60) days prior to the election. The recommendations of the nominating committee of one or more nominees for each office shall be circulated to the voting members of each department at least thirty (30) days prior to the election. Nominations also may be made by any voting member, in writing to the chair of the Nominating Committee and must bear the candidate's written consent. The candidate obtaining the majority vote of those cast will be elected. Election of department chairmen and vice-chairmen shall be subject to ratification by the MEC. If the MEC rejects the electees of the department, the department shall revote. If upon revote there is at least a two-thirds (2/3) majority of those department members eligible to vote in favor of the electees, that name shall be resubmitted and accepted by the MEC. If an electee does not receive two-thirds (2/3) majority, then the department shall be required to hold another election according to the preceding provisions. Vacancies due to any reason shall be filled for the unexpired term through special election by the respective department with such mechanisms as that department may adopt.

C.   Term of Office

Each department chairman and vice-chairman shall serve a three (3) year term which coincides with the medical staff year or until their successors are chosen, unless they shall sooner resign, be removed from office, or lose their medical staff membership or clinical privileges in that department. Department officers shall be eligible for two consecutive terms. Departments may propose alternative terms of office for chairman and vice-chairman for good cause. After approval by a two-thirds (2/3) majority of the members voting at the MEC and approval by the board of directors, the alternative terms will be established in the department rules and regulations.

D.   Removal

After election and ratification, removal of department chairmen and vice-chairmen from office may occur by a two-thirds (2/3) vote of the MEC.

Because department chairs/(vice chairs) are elected by the medical staff, and occupy their respective leadership positions based on subjective factors involving the trust and confidence of their peers, the sole condition for their removal is that the requisite number of members vote for their recall as provided in this paragraph; no statement of charges or cause need be presented or resolved through any hearing process, and no issue other than the ultimate question of whether there shall be a recall need be put to a vote.

E.   Duties

Each chairman shall have the following authority, duties and responsibilities, and the vice-chairman, in the absence of the chairman, shall assume all of them and shall otherwise perform such duties as may be assigned to him:

1.   act as presiding officer at departmental meetings;

2.  report to the MEC and to the president of the medical staff regarding all professional and administrative activities within the department;

3.  generally monitor and evaluate the quality of patient care and professional performance rendered by applicants for and members with clinical privileges in the department through a planned and systematic process; oversee the effective conduct of the patient care, evaluation, and monitoring functions delegated to the department by the MEC;

4.  develop and implement departmental programs for retrospective patient care review, on-going monitoring of practice, credentials review and privilege delineation, medical education, utilization review, and quality assurance;

5.  be a member of the MEC, and give guidance on the overall medical policies of the medical staff and hospital and make specific recommendations and suggestions regarding the department; and review of outside contract in terms of quality of service affecting patient care;

6.  evaluate and make appropriate recommendations regarding the qualifications of applicants seeking appointment or reappointment and clinical privileges within that department;

7.  conduct, participate in and make recommendations regarding orientation and CME programs pertinent to departmental clinical practice;

8.  endeavor to enforce the medical staff bylaws, rules, and regulations and the department rules and regulations within the department;

9.  recommend to the MEC criteria for delineation of privileges and the performance of specified service with the department;

10. Recommend a sufficient number of qualified and competent persons to provide care, as appropriate.

11. Determine the qualifications and competence of department personnel who provide patient care services and who are not licensed independent practitioners, as appropriate.

12. implement within the department appropriate actions taken by the MEC;

13. participate in every phase of administration of the department, including cooperation with the nursing service and the hospital administration in matters such as personnel, supplies, special regulations, standing orders and techniques;

14. assist in the preparation of such annual reports, including budgetary planning, pertaining to the department as may be required by the MEC;

15. establish committees as reasonably necessary to assist in the discharge of the above

58

functions and appoint members to such committees as may be established by the department;

16. participate, as warranted, in selecting outside sources for needed services; and

17. perform such other duties commensurate with the office as may from time to time be reasonably requested by the president or the MEC;

## 10.7   SERVICE CHIEFS

A.   Qualifications

Each service shall have a chief and associate chief who shall be an active staff member of the service, and shall be board certified by their specialty board or affirmatively established through the privilege delineation process that they are possessed of comparable competence, and shall be qualified by training, experience, and demonstrated current ability in the clinical area covered by the service.

B.   Selection

With the exception of the Department of Hospital Services, each service chief and associate service chief shall be selected by the department chairman with approval of the MEC. Vacancies due to any reason shall be filled for the unexpired term by the department chairman. Members of the Hospital Services Department shall elect their service chiefs according to their Service Rules and Regulations.

C.   Term of Office

Service chiefs and associate chiefs shall serve a three-year term which coincides with the medical staff year or until a successor is chosen, unless they shall sooner resign or be removed from office or lose medical staff membership or clinical privilege in that service. Service chiefs and associate chiefs may not hold office for more than two (2) consecutive terms.

D.   Removal

After appointment and ratification, a service chief or associate chief may be removed by the department chairman and the MEC.

E.   Duties:

Each service chief shall:

1. act as presiding officer at service meetings;

2. assist in the development and implementation, in cooperation with the department chairman, of programs to carry out the quality review, and evaluation and monitoring functions assigned to the service.

59

3.    evaluate the clinical work performed in the service;

4.    conduct investigations and submit reports and recommendations to the department chairman regarding the clinical privileges to be exercised within his service by members of
or applicants to the medical staff; and

5.    perform such other duties commensurate with the office as may from time to time be reasonably requested by the department chairman, the president, or the MEC.

## 10.8    DECISIONS REGARDING OVERLAPPING OF SERVICES

Differences of opinion regarding the overlapping of services provided by departments/services will be adjudicated on an immediate and temporary basis by the President, and on a long term basis by the direction of the MEC.

## 10.9    CONFIDENTIALITY OF DEPARTMENT/SERVICE PROCEEDINGS

All departments and services in the medical staff function and conduct their proceedings, including all meetings at the departmental and service levels, as committees of the medical staff having a responsibility for the evaluation and improvement of the quality of care rendered in the hospital. Accordingly, the minutes, files, records and proceedings of the departmental/ service meetings shall be subject to the confidentiality provisions of Article XIII of these bylaws.

ARTICLE XI
COMMITTEES

11.1   DESIGNATION

With the approval of the MEC, the president shall determine the composition, type and duties of each staff committee.  The names and/or description of these committees  are elaborated in the rules and regulations of the medical staff.  Special or ad hoc committees may be created consistent with these bylaws to perform specified tasks.  Unless otherwise specified, the chairman  and members of all committees shall be appointed by and may be removed by the president, subject to consultation with and approval by the MEC.  Medical staff committees shall be responsible to the MEC.

Where appropriate, nursing, administration and other hospital representatives shall be appointed to committees as consultants (ex-officio) unless otherwise indicated in the committee composition.

Medical staff functions covered by appropriate committees include, but are not limited to, executive review, credentialing, medical records, tissue review, utilization review, infection control, pharmacy and therapeutics, and assisting the medical staff members impaired by chemical dependency and/or mental illness to obtain necessary rehabilitation services.

11.2   GENERAL PROVISIONS

A.   Terms of Committee Members

Unless otherwise specified, committee members shall be appointed for a term of one (1) year, and shall serve until the end of this period or until the member's successor is appointed, unless the member shall sooner resign or be removed from the committee.

B.   Removal

If a member of a committee ceases to be a member in good standing of the medical staff, or loses employment or a contract relationship with the hospital, suffers a loss or significant limitation of practice privileges, or if any other good cause exists, that member may be removed by the MEC.

C.   Vacancies

Unless otherwise specifically provided, vacancies on any committee shall be filled in the same manner in which an original appointment to such committee is made; provided however, that if an individual who obtains membership by virtue of these bylaws is removed for cause, a successor may be selected by the MEC.

D.   Quorum

Unless otherwise stipulated in these bylaws, a quorum is constituted by at least three (3) voting members for the purpose of conducting business.

E.  <u>Voting Members</u>

Unless otherwise required by law, provided by these bylaws, or decided by the chairman of the affected committee, only physician members of the medical staff committees may vote. The chairman of the committee votes only in the event of a tie vote.

F.  <u>Function</u>

Except as is otherwise expressly provided in these bylaws, committees shall act in an advisory capacity and shall report to the MEC.

G.  <u>Meetings</u>

Except as is otherwise expressly provided in these bylaws, all committees shall meet as often as is necessary for the performance of their duties.

H.  <u>Attendance</u>

Any committee may invite the attendance of any individuals who may be useful to its work. Unexcused absence of a committee member for more than one-half of the scheduled meetings, may be the basis for removal from the committee.

I.  <u>Attendance by Medical Staff Coordinator</u>

The Medical Staff Coordinator or designee may attend any medical staff committee meeting in order to provide staff support.

J.  <u>Appointment of Hospital Personnel</u>

The president may appoint hospital personnel to any committee to which he/she may make appointments. Such personnel shall only vote and be counted for purposes of establishing a quorum if permitted by the rules of the committee.

K.  <u>Minutes</u>

Minutes shall be maintained of all medical staff committee meetings.

L.  <u>Confidentiality</u>

All information discussed or generated by a medical staff committee shall be subject to the confidentiality provisions of Article XIII of these bylaws.

11.3  MEDICAL EXECUTIVE COMMITTEE

A.  <u>Composition</u>

The MEC shall consist of the following persons:

1.    The officers of the medical staff;

2.    The department chairmen of Anesthesia, Emergency Medicine, Family Practice, Medicine,
Obstetrics and Gynecology, Orthopedics, Pediatrics, and Surgery;

3.    Two (2) at-large members of the active medical staff, one each from the Department of Medicine and the Department of Surgery, who shall be nominated and elected for one (1) two-(2)year term in the same manner and at the same time as provided in Section 10.6-B for the selection of department chairmen.

All of the above positions, with vote.

4.    A representative from Diagnostic Imaging and from Pathology. These representatives shall be appointed according to the rules and regulations of these services. Only one of these members shall have a vote. The representative from Diagnostic Imaging shall vote in even numbered years and the representative from Pathology shall vote in odd numbered years.

5.    As ex-officio members, without vote, a rotating physician member and a non-physician member of the board of directors and the administrator.

6.    Attendance by other members of the administrative team, without vote, will be agreed upon by the president of the medical staff and the chief executive officer.

B.    Duties

The duties of the MEC shall include, but not be limited to:

1.    representing and acting on behalf of the medical staff in the intervals between medical staff meetings, subject to such limitations as may be imposed by these bylaws;

2.    coordinating and implementing the professional and organizational activities and policies of the medical staff;

3.    receiving and acting upon reports and recommendations from medical staff departments, services, committees, and assigned activity groups, and those recommendations generated through the Hospital wide Performance Improvement programs as set out in the MEC approved PI Plan;

4.    recommending actions to the board of directors on matters of a medical-administrative nature;

5.    through the medical staff bylaws process, review and recommend regarding establishing

63

the structure of the medical staff, the mechanism to review credentials and delineate individual clinical privileges, the organization of quality assurance activities and mechanisms of the medical staff for termination of medical staff membership and fair hearing procedures, as well as other matters relevant to the operation of an organized medical staff;

6.    evaluating the medical care rendered to patients in the hospital;

7.    participating in the development of medical staff and hospital policy, practice, and planning;

8.    reviewing the qualifications, credentials, performance and professional competence, and character of applicants and staff members, and making recommendations to the board of directors regarding staff appointments and reappointments, assignments to departments, clinical privileges, and corrective action;

9.    taking reasonable steps to promote ethical conduct and competent clinical performance on the part of all members including the initiation of and participation in medical staff corrective or review measures when warranted;

10.   taking reasonable steps to develop continuing education activities and programs for the medical staff;

11.   designating such committees as may be appropriate or necessary to assist in carrying out the duties and responsibilities of the medical staff and approving or rejecting appointments to those committees by the president of the medical staff;

12.   reporting to the medical staff at each regular staff meeting;

13.   assisting in the obtaining and maintenance of accreditation;

14.   developing and maintenance of methods for the protection and care of patients and others in the event of internal or external disaster;

15.   appointing such special or ad hoc committees as may seem necessary or appropriate to assist the MEC in carrying out its functions and those of the medical staff; and

16.   reviewing the quality and appropriateness of services provided by contract physicians; and

17.   To assure adequate supervision over all budgetary and monetary matters, including:

        a.    establishment of medical staff dues
        b.    collection of funds
        c.    preparation and approval of annual budget
        d.    approval of disbursement of funds

C.  Meetings

The MEC shall meet as often as necessary, but at least monthly and shall maintain a permanent record of its proceedings and actions.

D.  Quorum

To conduct business, the MEC must have a majority of its voting members present.

11.4  CREDENTIALS COMMITTEE

A.  Composition

The credentials committee shall consist of not less than seven (7) members of the active staff selected on a basis that will ensure, insofar as feasible, broad representation of major clinical specialties and each of the staff departments and shall include the immediate past president who shall be the Chairman.

B.  Duties

The credentials committee shall:

1.  review and evaluate the qualifications of each practitioner applying for initial appointment, reappointment, or modification of clinical privileges, and, in connection therewith, obtain and consider the recommendations of the appropriate departments;

2.  submit required reports and information on the qualifications of each practitioner applying for membership or particular clinical privileges including recommendations with respect to appointment, membership category, department affiliation, clinical privileges, and special conditions;

3.  investigate, review and report on matters referred by the president of the medical staff or the MEC regarding the qualifications, conduct, professional character or competence of any applicant or medical staff member; and

4.  submit periodic reports to the MEC on its activities and the status of pending applications.

C.  Meetings

The credentials committee shall meet as often as necessary at the call of its chairman. The committee shall maintain a record of its proceedings and actions and shall report to the MEC.

D.  Quorum

To conduct business, the Credentials Committee must have a majority of its voting members

present.

## 11.5   NOMINATING COMMITTEE

A.    Composition

The committee shall consist of the current president, the vice-president and two (2) other members of the MEC appointed by the president and three (3) members chosen by the active medical staff at its annual closed staff meeting. The president shall appoint the chairman of the nominating committee.

B.    Duties

The duties involved in presenting to the staff qualified candidates for elective positions in the staff organization are to:

1.    consult with the MEC and administration concerning the qualifications and acceptability of prospective nominees.

2.    submit, at the appropriate times as provided in these bylaws, one or more nominations for: (a) each elective office of the staff to be filled, and (b) such other elective positions as may be required by these bylaws.

C.    Meetings

The committee shall meet at least every two (2) years. It shall maintain a written record of its recommendations and shall report to the MEC.

**EXHIBIT B**

# B Y L A W S

## SUMMIT MEDICAL STAFF

**********

June, 2005

# TABLE OF CONTENTS

BYLAWS OF THE SUMMIT MEDICAL STAFF .................................................................1

PREAMBLE ....................................................................................................................1

DEFINITIONS ..................................................................................................................1

**ARTICLE I**        NAME ................................................................................3
   1.1     NAME ................................................................................3

**ARTICLE II**      PURPOSES AND RESPONSIBILITIES .................................3
   2.1     PURPOSES ............................................................................3
   2.2     RESPONSIBILITIES OF THE MEDICAL STAFF .......................4

**ARTICLE III**     MEMBERSHIP ................................................................5
   3.1     NATURE OF MEMBERSHIP .....................................................5
   3.2     QUALIFICATIONS FOR MEMBERSHIP ....................................5
        A.   General Qualifications ...............................................5
        B.   Particular Qualifications .............................................6
        C.   No Entitlement To Appointment ..................................7
        D.   Effect of Other Affiliations .........................................7
        E.   Non-Discrimination ...................................................8
        F.   Administrative Practitioners and Practitioners Under Contract ................8
        G.   Staff Dues ...............................................................8
        H.   Professional Liability Insurance .................................8
   3.3     TERMINATION OF MEMBERSHIP BY RESIGNATION ..............9
   3.4     BASIC RESPONSIBILITIES OF MEDICAL STAFF MEMBERSHIP .............9
   3.5     HARASSMENT PROHIBITED ..................................................11

**ARTICLE IV**     CATEGORIES OF MEMBERSHIP .......................................11
   4.1     CATEGORIES ........................................................................11
   4.2     ACTIVE STAFF .....................................................................12
        A.   Qualifications ..........................................................12
        B.   Prerogatives ...........................................................12
        C.   Transfer of Active Staff Member ................................12
   4.3     COURTESY STAFF ................................................................13
        A.   Qualifications ..........................................................13
        B.   Prerogatives ...........................................................13
        C.   Transfer of Courtesy Staff Members to Active Staff ................14
   4.4     PROVISIONAL STAFF .............................................................14

|       | A.   | Qualifications .......................................................................... | 14 |
|       | B.   | Prerogatives .......................................................................... | 14 |
|       | C.   | Observation and Proctoring of Provisional Staff Members ...... | 14 |
|       | D.   | Action at Conclusion of Provisional Staff ............................... | 16 |
| 4.5   | AFFILIATE STAFF ........................................................................ | | 16 |
|       | A.   | Qualifications .......................................................................... | 16 |
|       | B.   | Prerogatives .......................................................................... | 16 |
| 4.6   | HONORARY AND RETIRED STAFF ........................................... | | 16 |
|       | A.   | Qualifications .......................................................................... | 16 |
|       | B.   | Prerogatives .......................................................................... | 17 |
| 4.7   | LIMITATION OF PREROGATIVES ............................................. | | 17 |
| 4.8   | MODIFICATION OF MEMBERSHIP .......................................... | | 17 |
|       |      |  |    |
| **ARTICLE V** | APPOINTMENT AND REAPPOINTMENT ........................... | | 17 |
| 5.1   | GENERAL ..................................................................................... | | 17 |
| 5.2   | BURDEN OF PRODUCING INFORMATION.......................... ....... | | 17 |
| 5.3   | APPOINTMENT AUTHORITY ...................................................... | | 18 |
| 5.4   | DURATION OF APPOINTMENT AND REAPPOINTMENT ......... | | 18 |
| 5.5   | APPLICATION FOR INITIAL APPOINTMENT AND REAPPOINTMENT.... | | 18 |
|       | A.   | Application Form ...................................................................... | 18 |
|       | B.   | Content ...................................................................................... | 18 |
|       | C.   | Current and Complete Information .......................................... | 20 |
|       | D.   | Incomplete Application............................................................. | 20 |
|       | E.   | Application and Processing Fee................................................ | 21 |
| 5.6   | EFFECT OF APPLICATION .......................................................... | | 21 |
| 5.7   | PROCESSING THE APPLICATION ............................................. | | 22 |
|       | A.   | Verification of Information ....................................................... | 22 |
|       | B.   | Department Action.................................................................... | 22 |
|       | C.   | Credentials Committee Action.................................................. | 22 |
|       | D.   | Medical Executive Committee Action...................................... | 23 |
|       | E.   | Effect of MEC Action................................................................ | 23 |
|       | F.   | Expedited Credentialing............................................................ | 23 |
|       | G.   | Board Action on the Application .............................................. | 24 |
|       | H.   | Notice of Final Decision .......................................................... | 24 |
|       | I.   | Reapplication After Adverse Decision or Involuntary Termination of Credentialing Process......................................................... | 25 |
|       | J.   | Timely Processing of Applications .......................................... | 25 |
| 5.8   | REAPPOINTMENT PROCESS........................................................ | | 26 |
|       | A.   | Application................................................................................. | 26 |
|       | B.   | Content....................................................................................... | 26 |
|       | C.   | Current and Complete Information .......................................... | 27 |
|       | D.   | Incomplete Application............................................................. | 27 |
|       | E.   | Verification of Information ....................................................... | 27 |
|       | F.   | Department Report and Recommendation................................ | 28 |
|       | G.   | Credentials Committee Report and Recommendation............... | 28 |
|       | H.   | Medical Executive Committee Report and Recommendation.......... | 28 |

|  | I. | Final Processing and Board Action | 28 |
|  | J. | Bases for Recommendations | 28 |
|  | K. | Time Periods for Processing | 29 |
|  | L. | Effect of Application | 29 |
|  | M. | Reapplication After Adverse Decision or Involuntary Termination of Credentialing Process | 29 |
| 5.9 |  | REQUESTS FOR MODIFICATION OF MEMBERSHIP STATUS | 30 |
|  | A. | Modification of Staff Status | 30 |
|  | B. | Resignations | 30 |
| 5.10 |  | LEAVE OF ABSENCE | 30 |
|  | A. | Leave Status | 30 |
|  | B. | Termination of Leave | 31 |
|  | C. | Failure to Request Reinstatement | 31 |
| **ARTICLE VI** |  | **CLINICAL PRIVILEGES** | 31 |
| 6.1 |  | EXERCISE OF PRIVILEGES | 31 |
| 6.2 |  | DELINEATION OF PRIVILEGES IN GENERAL | 32 |
|  | A. | Requests | 32 |
|  | B. | Bases for Privileges Determination | 32 |
|  | C. | Requests for Modification of Clinical Privileges | 32 |
| 6.3 |  | PROCTORING | 32 |
|  | A. | General Provisions | 32 |
|  | B. | Medical Staff Advancement | 33 |
| 6.4 |  | PRIVILEGES FOR DENTISTS AND PODIATRISTS AND CLINICAL PSYCHOLOGISTS | 33 |
|  | A. | Admissions | 33 |
|  | B. | Surgery | 33 |
| 6.5 |  | TEMPORARY CLINICAL PRIVILEGES | 34 |
|  | A. | Circumstances | 34 |
|  | B. | Application Process -- Care of Specific Patient and Locum Tenens | 34 |
|  | C. | Application Process -- Pendency of Application | 35 |
|  | D. | General Conditions | 36 |
| 6.6 |  | DISASTER PRIVILEGES | 37 |
|  | A. | General Conditions | 37 |
| 6.7 |  | EMERGENCY PRIVILEGES | 38 |
| **ARTICLE VII** |  | **CORRECTIVE ACTION** | 38 |
| 7.1 |  | CORRECTIVE ACTION | 38 |
|  | A. | Criteria for Initiation | 38 |
|  | B. | Investigation | 39 |
|  | C. | Initiation | 39 |
|  | D. | Medical Executive Committee Action | 39 |
|  | E. | Board of Trustees Action | 40 |
|  | F. | Summary Restriction or Suspension | 41 |
|  | G. | Special Actions | 42 |

iii

**ARTICLE VIII**     HEARINGS AND APPELLATE REVIEWS ..........................................45
    8.1     General Provisions................................................................................45
        A.     Intent .....................................................................................45
        B.     Exhaustion of Remedies .........................................................46
        C.     Intraorganizational Remedies .................................................46
        D.     Definitions..............................................................................46
        E.     Substantial Compliance ..........................................................46
        F.     Grounds for Hearing ..............................................................47
        G.     Requests for Hearing..............................................................47
        H.     Hearing Procedure .................................................................48
        I.     Discovery ...............................................................................51
        J.     Procedural Disputes ...............................................................52
        K.     Record of Hearing..................................................................52
        L.     Attendance .............................................................................52
        M.     Rights of the Participants .......................................................53
        N.     Rules of Evidence ........................................................ ........53
        O.     Burdens of Presenting Evidence and Proof ............................53
        P.     Adjournment and Conclusion .................................................54
        Q.     Basis for Decision ..................................................................54
        R.     Decision of the Hearing Committee .......................................54
        S.     Appeal ....................................................................................54
        T.     Right to One Hearing .............................................................56

**ARTICLE IX**     OFFICERS.....................................................................................57
    9.1     OFFICERS OF THE MEDICAL STAFF.............................................57
        A.     Identification ..........................................................................57
        B.     Qualifications.........................................................................57
        C.     Nominations............................................................................57
        D.     Elections.................................................................................57
        E.     Term of Elected Office ..........................................................58
        F.     Recall of Officer ....................................................................58
        G.     Vacancies in Elected Office....................................................58
    9.2     DUTIES OF OFFICERS.....................................................................58
        A.     President..................................................................................58
        B.     Vice-President.........................................................................59
        C.     Immediate Past President........................................................60
        D.     Secretary-Treasurer................................................................60

**ARTICLE X**     CLINICAL DEPARTMENTS AND SERVICES ...............................60
    10.1     ORGANIZATION OF CLINICAL DEPARTMENTS AND SERVICES............60
    10.2     CURRENT DEPARTMENTS AND SERVICES ..................................60
        A.     Department of Anesthesia.......................................................61
        B.     Department of Emergency Medicine .......................................61
        C.     Department of Medicine with services of:................................61
        D.     Department of Obstetrics and Gynecology...............................61
        E.     Department of Orthopedic Surgery with services of: ...............61

|  | F. | Department of Surgery with services of: | 61 |
|  | G. | Department of Hospital Services with services of: | 61 |
| 10.3 | | ASSIGNMENT TO DEPARTMENTS AND SERVICES | 61 |
| 10.4 | | FUNCTIONS OF DEPARTMENTS | 61 |
| 10.5 | | FUNCTIONS OF SERVICES | 63 |
| 10.6 | | DEPARTMENT CHAIR | 63 |
|  | A. | Qualifications | 63 |
|  | B. | Selection | 63 |
|  | C. | Term of Office | 64 |
|  | D. | Removal | 64 |
|  | E. | Duties | 64 |
| 10.7 | | SERVICE CHIEFS | 66 |
|  | A. | Qualifications | 66 |
|  | B. | Selection | 66 |
|  | C. | Term of Office | 66 |
|  | D. | Removal | 66 |
|  | E. | Duties | 66 |
| 10.8 | | DECISIONS REGARDING OVERLAPPING OF SERVICES | 67 |
| 10.9 | | CONFIDENTIALITY OF DEPARTMENT/SERVICE PROCEEDINGS | 67 |
| **ARTICLE XI** | | COMMITTEES | 67 |
| 11.1 | | DESIGNATION | 67 |
| 11.2 | | GENERAL PROVISIONS | 67 |
|  | A. | Terms of Committee Members | 67 |
|  | B. | Removal | 68 |
|  | C. | Vacancies | 68 |
|  | D. | Quorum | 68 |
|  | E. | Voting Members | 68 |
|  | F. | Function | 68 |
|  | G. | Meetings | 68 |
|  | H. | Attendance | 68 |
|  | I. | Attendance by Medical Staff Services Director | 68 |
|  | J. | Appointment of Hospital Personnel | 69 |
|  | K. | Minutes | 69 |
|  | L. | Confidentiality | 69 |
| 11.3 | | MEDICAL EXECUTIVE COMMITTEE | 69 |
|  | A. | Composition | 69 |
|  | B. | Duties | 70 |
|  | C. | Meetings | 71 |
|  | D. | Quorum | 71 |
| 11.4 | | CREDENTIALS COMMITTEE | 71 |
|  | A. | Composition | 71 |
|  | B. | Duties | 71 |
|  | C. | Meetings | 72 |
|  | D. | Quorum | 72 |
| 11.5 | | NOMINATING COMMITTEE | 72 |

A.    Composition ...................................................................................72
B.    Duties .............................................................................................72
C.    Meetings .........................................................................................73

ARTICLE XII    MEETINGS ..................................................................................73
12.1    MEETINGS ...........................................................................................73
A.    Regular Meetings ..........................................................................73
B.    Order of Business ..........................................................................73
C.    Special Meetings ...........................................................................73
12.2    COMMITTEE AND DEPARTMENT MEETINGS ..........................74
A.    Regular Meetings ..........................................................................74
B.    Special Meetings ...........................................................................74
12.3    QUORUM ...............................................................................................74
A.    General Staff Meetings .................................................................74
B.    Department Meetings ....................................................................74
12.4    MANNER OF ACTION .......................................................................74
12.5    MINUTES ...............................................................................................75
12.6    ATTENDANCE REQUIREMENTS ....................................................75
A.    Regular Attendance .......................................................................75
B.    Special Attendance ........................................................................75
12.7    CONDUCT OF MEETINGS .................................................................75

ARTICLE XIII    RECORDS AND PROCEEDINGS OF THE MEDICAL STAFF ...........75
13.1    CONFIDENTIALITY ............................................................................75
13.2    PARTICIPATION IN RELIANCE ON CONFIDENTIALITY ...........76
13.3    PRESERVATION OF CONFIDENTIALITY .......................................76
13.4    CORRECTIVE ACTION FOR BREACH OF CONFIDENTIALITY .................76
13.5    RECORDS AND PROCEEDINGS COVERED ....................................77
13.6    INDEMNIFICATION ............................................................................77

ARTICLE XIV    GENERAL PROVISIONS ............................................................77
14.1    STAFF RULES AND REGULATIONS ...............................................77
14.2    DEPARTMENTAL RULES AND REGULATIONS AND DEPARTMENTAL
PROCTORING PROTOCOL .................................................................78
14.3    DUES OR ASSESSMENTS ..................................................................78
14.4    PROFESSIONAL LIABILITY INSURANCE .......................................78
14.5    CONSTRUCTION OF TERMS AND HEADINGS ............................78
14.6    AUTHORITY TO ACT .........................................................................78
14.7    DIVISION OF FEES .............................................................................78
14.8    NOTICES ...............................................................................................79
14.9    NOMINATION OF MEDICAL STAFF REPRESENTATIVES .........79
14.10    INDEPENDENT LEGAL COUNSEL ...................................................79

ARTICLE XV    ADOPTION AND AMENDMENT OF BYLAWS .................................79
15.1    MEDICAL STAFF RESPONSIBILITY ...............................................79
15.2    AMENDMENTS ....................................................................................79
15.3    METHOD ...............................................................................................79

        A.      Medical Staff..............................................................................................80
        B.      Board of Trustees........................................................................................80
15.4    EXCLUSIVITY ....................................................................................................80

ARTICLE I
NAME

1.1    NAME

The name of this organization is the Summit Medical Staff of Alta Bates Summit Medical Center.

ARTICLE II
PURPOSES AND RESPONSIBILITIES

2.1    PURPOSES

The purposes of the medical staff are to:

A.    serve as the primary means for accountability to the board of trustees for the appropriateness of the professional performance and ethical conduct of its members and the allied health professionals and to strive toward the continual upgrading of the quality and efficiency of patient care delivered in the hospital consistent with the state of the healing arts and the resources locally available.

B.    monitor the quality of medical and health care provided by all practitioners authorized to practice in the hospital through the appropriate delineation of clinical privileges and through an on-going review and evaluation of each practitioner's performance in the hospital.

C.    be the formal organizational structure through which the benefits of membership on the staff may be obtained by individual practitioners and the obligations of staff membership may be fulfilled.

D.    provide a means through which the medical staff may participate in the hospital's policy-making and planning process.

E.    provide a means of effective communication between the medical staff, the administrator and the board of trustees.

F.    maintain self-government in cooperation with the administration and the board of trustees.

G.    cooperate with recognized accredited medical schools and other educational institutions in undergraduate, graduate, post-graduate and continuing education programs.  All such programs should be evaluated and approved by the medical staff.

2.2    RESPONSIBILITIES OF THE MEDICAL STAFF

The responsibilities of the medical staff are to:

A.    account to the board of trustees for the quality and efficiency of patient care provided by all practitioners authorized to practice in the hospital through regular reports and recommendations concerning the implementation, operation, and results of the quality review and evaluation activities, through the following measures:

   1.    A credentials program, including mechanisms for appointment and reappointment and the matching of clinical privileges to be exercised or of specified services to be performed with the verified credentials and current demonstrated competence of the applicant or staff member.

   2.    an organizational structure and mechanisms that allow on-going monitoring of patient care practices.

   3.    review and evaluation of the quality of patient care through the quality assurance program.

   4.    a continuing education program fashioned, at least in part, on the needs demonstrated through the quality review and evaluation programs.

B.    endorse and participate in a utilization review program to provide for the allocation of medical and health services to patients;

C.    recommend to the board of trustees action with respect to medical staff appointments, reappointments, staff category, department assignments, clinical privileges and corrective action.

D.    recommend to the board of trustees programs for the establishment, maintenance, continuing improvement and enforcement of professional standards in the delivery of health care within the hospital.

E.    initiate and pursue corrective action with respect to practitioners, when warranted.

F.    develop, administer, recommend amendments to and seek compliance with these bylaws and the rules and regulations of the staff, rules and regulations and proctoring protocol of the clinical departments, and other hospital policies. The bylaws, rules and regulations will be reviewed annually.

G.    assist in identifying community health needs and in setting appropriate institutional goals and implementing programs to meet those needs.

H.    provide that physician backup coverage to the Emergency Room is a joint responsibility shared by the members of the medical staff and the hospital.

consistent with the applicant's/member's existing and/or intended privileges. Upon request from the Medical Staff Office, the practitioner shall provide proof of compliance with this requirement.

      2.    <u>Proof of Insurance – Failure to Provide Evidence</u>

At the time of application and reapplication to the medical staff, each applicant and member shall advise on the application/reapplication form:

      a.    the name of the insurance carrier, policy number and expiration date;

      b.    that coverage provided by such insurance is consistent with the applicant's or member's existing and/or intended privileges;

      c.    the coverage limits of the policy; and

      d.    evidence satisfactory to the Medical Staff Office and the MEC of the existence of such insurance coverage. In addition, each applicant and member shall have a continuous duty to immediately notify the Medical Staff Office of any cancellation or change in the policy, including a change in carrier, amount, or scope of coverage.

Failure to provide evidence of such professional liability insurance, at the time of appointment/reappointment, shall render the application incomplete and ineligible for processing.

## 3.3    TERMINATION OF MEMBERSHIP BY RESIGNATION

A staff member may terminate membership on the staff by submitting a letter of resignation which shall be effective upon receipt by the medical staff office.

## 3.4    BASIC RESPONSIBILITIES OF MEDICAL STAFF MEMBERSHIP

Except for the affiliate, honorary and retired staff, the ongoing responsibilities of each member of the medical staff include:

      A.    providing patients with efficient and high quality care which shall include timely patient visits, usually on a daily basis. For the critically ill patient, more frequent visits may be appropriate and required.

      B.    abiding by the medical staff bylaws, medical staff rules and regulations and department rules and regulations and by all other lawful standards, policies and rules of this hospital and medical staff;

C.     discharging in a responsible and cooperative manner such reasonable responsibilities and assignments imposed upon the member by virtue of medical staff membership, including department and committee assignments;

D.     preparing and completing in timely and legible fashion medical records for all the patients to whom the member provides care in the hospital;

E.     aiding in any medical staff approved educational programs for medical students, interns, resident physicians, resident dentists, staff physicians and dentists, nurses and other personnel as assigned;

F.     working cooperatively with members, nurses, hospital administration and others so as not to adversely affect patient care, or jeopardize the ability of the treatment team to provide quality patient care, or disrupt hospital operations;

G.     making appropriate arrangements for coverage for patients;

H.     refusing to engage in improper inducements for patient referral;

I.     participating in continuing education programs as determined by the MEC;

J.     participating in such emergency service coverage or consultation panels as may be determined by the department chairman and the MEC;

K.     abiding by the lawful ethical principles of the California Medical Association or the member's applicable professional association;

L.     paying staff dues and any application processing fees promptly;

M.     seeking consultation when necessary;

N.     providing continuous care for patients and refrain from knowingly delegating the responsibility for diagnosis or care of hospitalized patients to a practitioner who is not qualified to undertake that responsibility or who is not adequately supervised;

O.     promptly notifying the President of the Staff in writing, through the Medical Staff Office of:

    1.     a lapse, reduction, or cancellation of professional liability insurance;

    2.     the initiation of formal proceedings by a medical licensing authority or the DEA to suspend, revoke, or place on probation a license or a DEA certificate;

    3.     an action by the Medical Executive Committee or the governing body of another hospital to suspend, revoke, or deny clinical privileges at that hospital for reasons related to professional competence or conduct; or

4.    the development of any mental or physical condition or other situation that could significantly compromise the member's ability to perform the functions associated with his or her clinical privileges in a safe and effective manner.

P.    complying with requests from the Medical Executive Committee, as it deems necessary, to demonstrate qualifications or fitness for ongoing medical staff membership or clinical privileges, for example, by submitting to a medical or mental examination.

Q.    discharging such other staff obligations as may be lawfully established from time to time.

## 3.5    HARASSMENT PROHIBITED

Harassment by a medical staff member against any individual (e.g., against another medical staff member, house staff, hospital employee or patient) on the basis of race, religion, color, national origin, ancestry, physical disability, mental disability, medical disability, marital status, sex, gender or sexual orientation shall not be tolerated.

"Sexual harassment" is unwelcome verbal or physical conduct of a sexual nature which may include verbal harassment (such as epithets, derogatory comments or slurs), physical harassment (such as unwelcome touching, assault, or interference with movement or work), and visual harassment (such as the display of derogatory cartoons, drawings, or posters).

Sexual harassment includes unwelcome advances, requests for sexual favors, and any other verbal, visual, or physical conduct of a sexual nature when (1) submission to or rejection of this conduct by an individual is used as a factor in decisions affecting hiring, evaluation, retention, promotion, or other aspects of employment; or (2) this conduct substantially interferes with the individual's employment or creates an intimidating, hostile, or offensive work environment. Sexual harassment also includes conduct which indicates that employment and/or employment benefits are conditioned upon acquiescence in sexual activities.

All allegations of sexual harassment shall be immediately investigated by the medical staff pursuant to Article VII and, if confirmed, will result in appropriate corrective action, from reprimands up to and including termination of medical staff privileges or membership, if warranted by the facts.

## ARTICLE IV
## CATEGORIES OF MEMBERSHIP

## 4.1    CATEGORIES

The categories of the medical staff shall include the following: active, courtesy, provisional, affiliate, honorary and retired. At each time of reappointment, the member's staff category shall be determined.

5.     All persons requesting or receiving disaster privileges shall be bound by the Medical Staff Bylaws, Rules and Regulations, and Medical Staff and hospital policies and procedures.

6.     As soon as practicable and the immediate situation is under control, unless the practitioner's disaster privileges have already terminated, the Medical Staff shall seek to collect and verify information concerning the background, education and training of each practitioner granted disaster privileges. Each practitioner granted disaster privileges shall be asked to complete a temporary privileges application, which shall be processed as described in Section 6.3-2.

6.7    EMERGENCY PRIVILEGES

In case of emergency, any member of the Medical Staff who has been granted privileges under these Bylaws, to the degree permitted by his/her license and regardless of department or staff category, shall be permitted and assisted to do everything possible to save the life of a patient, using every facility of the hospital necessary, including the calling for any consultation necessary or desirable. When the emergency situation no longer exists, the patient shall be promptly assigned to a member of the Medical Staff having privileges appropriate to the patient's care. For the purpose of this Section, an "emergency" is defined as a condition in which serious or permanent harm might result to a patient or in which the life of a patient is in immediate danger and any delay in administering treatment would add to that danger.

**ARTICLE VII**
**CORRECTIVE ACTION**

7.1    CORRECTIVE ACTION

A.     Criteria for Initiation

Any person may provide information to the Medical Staff about the conduct, performance, or competence of its Members. When reliable information indicates that a Member may have exhibited acts, demeanor, or conduct, whether on or off the hospital premises, that is reasonably likely to be:

1.     detrimental to patient safety or to the delivery of quality patient care;

2.     unethical or unprofessional;

3.     in violation of the Medical Staff's Bylaws, Rules and Regulations or Policies;

4.     inconsistent with the performance standards of the Medical Staff; or

5.     disruptive of hospital operations,

A request for an investigation or action against such Member may be initiated by the Medical Staff President, a Department Chairman or the Hospital CEO, or the Medical Executive Committee may commence an investigation or take an action on its own initiative.

B.    Investigation

An investigation under these Bylaws ("Investigation") means an investigation ordered by the Medical Executive Committee, or by the Medical Staff President on its behalf, based upon information indicating that a Member has exhibited acts, demeanor or conduct as described above in Section A. An Investigation does not include the usual activities of departments and other committees of the Medical Staff, including the usual quality assessment and improvement activities undertaken by the Medical Staff in compliance with the licensing and certification requirements for health facilities set forth in Title 22 of the California Code of Regulations, or preliminary deliberations or inquiries of the Medical Executive Committee, or its representatives, to determine whether to order an Investigation.

C.    Initiation

A request for action or for an Investigation under the auspices of the Medical Executive Committee must be supported by reference to specific activities or conduct alleged. The Medical Executive Committee shall determine how to proceed. The Medical Staff President may act on behalf of the Medical Executive Committee to initiate an Investigation, subject to subsequent review and approval by that Committee. In addition, the Medical Staff President or any other Medical Staff official may, instead of initiating an Investigation, initiate or conduct such reviews as may be appropriate to his or her responsibilities under the Medical Staff's Bylaws, Rules and Regulations, or Policies.

If the Medical Executive Committee concludes that an Investigation is warranted, it may conduct the investigation itself, or may assign the task to an appropriate Medical Staff official, Medical Staff Department, or standing or Ad Hoc Committee of the Medical Staff. The Member shall, at an appropriate time, be notified that an Investigation is being conducted and shall be given an opportunity to provide information in a manner and upon such terms as the investigator or investigating body deems appropriate. The individual or body investigating the matter may, but is not obligated to, conduct interviews with persons involved; however, such Investigation shall not constitute a "hearing," nor shall the procedural rules with respect to hearings or appeals apply. At the conclusion of the Investigation a written summary of the findings and recommendation(s) shall be forwarded to the Medical Executive Committee. Despite the status of any Investigation, at all times the Medical Executive Committee shall have authority and discretion to take whatever action may be warranted by the circumstances, including summary suspension, termination of the Investigative process, or other action.

D.    Medical Executive Committee Action

As soon as practicable, but not later than the next scheduled meeting following the conclusion of the Investigation, the Medical Executive Committee shall take action which may include, without limitation:

1.    Determining that no corrective action is warranted.

2.    Deferring action for a specified period.

3.    Issuing a letter of admonition, censure, reprimand, or warning.

4.    Taking special measures to monitor the Member's exercise of privileges on a non-restrictive basis.

5.    Recommending restrictions or special limitations regarding the exercise of clinical privileges including, but not necessarily limited to, requirements for co-admission, mandatory consultation, or restrictive proctoring.

6.    Recommending reduction, modification, suspension or revocation of Medical Staff membership and/or clinical privileges.

7.    Imposing a suspension or restriction of clinical privileges and/or Medical Staff membership for a duration of fourteen (14) days or less, after giving the Member an opportunity to be heard by the Medical Executive Committee.

8.    Summarily suspending or restricting Medical Staff membership and/or clinical privileges.

9.    Taking other actions deemed appropriate under the circumstances.

E.    Board of Trustees Action

1.    The Medical Executive Committee's action or recommendation following an Investigation as described herein shall be reported to the Board of Trustees at its next regularly scheduled meeting.

a.    If the Medical Executive Committee has imposed or recommended corrective action as to which the affected Practitioner may request a hearing, the Board of Trustees shall take no action on the matter until the Practitioner has either waived or exhausted his hearing rights.

b.    If the Practitioner invokes his hearing and appeal rights, the Board of Trustees shall proceed as described in Article VIII.

c.    If the Medical Executive Committee has taken or recommended corrective action and the Practitioner has no rights of hearing or appeal, or has waived such rights, and the Board of Trustees questions or disagrees with the action of the Medical Executive Committee, the matter must be remanded back to the Medical Executive Committee for further consideration. If the decision of the Board of Trustees is to take corrective action more severe than the action presented for the Board's consideration, the Practitioner shall be given an opportunity for a hearing before the Board of

Trustees or a committee thereof. The procedures governing the hearing shall be determined by theBoard of Trustees, in accordance with the Member's rights under California law. The decision following the hearing shall be the final decision of the Hospital.

2.  If the Medical Executive Committee decides not to conduct an Investigation or otherwise initiate corrective action proceedings as set forth above, the matter shall be subject to review by the Board of Trustees. The Board of Trustees may concur in the Medical Executive Committee's decision or, if the Board of Trustees reasonably determines the Medical Executive Committee's decision to be contrary to the weight of the evidence presented, the Board of Trustees may consult with the Medical Staff President and thereafter direct the Medical Executive Committee to conduct an investigation or otherwise initiate corrective action proceedings. In the event the Medical Executive Committee fails to take action in response to a directive from the Board of Trustees, the Board of Trustees may, after written notification to the Medical Executive Committee, conduct an investigation or otherwise initiate corrective action proceedings on its own initiative. Any such proceedings shall afford the Member the rights to which he or she is entitled under California law. The decision following such proceedings shall be the final decision of the Hospital.

F.  <u>Summary Restriction or Suspension</u>

1.  <u>Initiation</u>

a.  Member's clinical privileges may be summarily suspended or restricted where the failure to take such action may result in an imminent danger to the health or safety or any individual, including current or future hospital patients.

b.  The following persons are authorized to impose a summary suspension or restriction: The Hospital CEO in consultation with the Medical Staff President; the Medical Staff President; the Medical Executive Committee; or the Chair of the Department(s) in which the Member holds privileges. Unless otherwise stated, such summary restriction or suspension shall become effective immediately upon imposition, and the person or body responsible shall promptly give written confirmation to the Member.

c.  When none of the persons listed above is available to impose a summary suspension or restriction, the Board of Trustees or its designee may take such action if a failure to do so would be likely to result in an imminent danger to the health or safety of any individual, including current or future hospital patients. Prior to exercising this authority, the Board of Trustees must make a

reasonable attempt to contact the Medical Staff President. Summary action by the Board of Trustees which as not been ratified by the Medical Staff President within two (2) working days, excluding weekends and holidays, after the suspension shall terminate automatically without prejudice to further summary action as warranted by the circumstances.

    d.    The summary restriction or suspension may be limited in duration and shall remain in effect for the period and/or subject to the terms stated or, if none, until resolved as set forth herein. Unless otherwise indicated by the terms of the summary restriction or suspension, the Member's patients shall be promptly assigned to another Member by the clinical service Chief or by the Medical Staff President, considering, where feasible, the wishes of the patient in the choice of a substitute Member.

    e.    Unless an Investigation of the practitioner is already underway at the time the summary suspension or restriction is imposed, that action shall automatically constitute a request to the Medical Executive Committee for Investigation or action pursuant to this Article. If the Medical Executive Committee imposed the summary suspension or restriction on its own initiative, it shall determine what, if any, Investigation and further actions are warranted.

  2.    <u>Medical Executive Committee Action</u>

As soon as practicable, within seven (7) days after a summary restriction or suspension has been imposed, a meeting of the Medical Executive Committee shall be convened to review and consider the action. The Member shall attend and make a statement concerning the relevant issues, on such terms and conditions as the Medical Executive Committee may impose, although in no event shall any such meeting of the Medical Executive Committee, with or without the Member, constitute a "hearing" within the meaning of Article VIII, nor shall any procedural hearing rules apply. The Medical Executive Committee may modify, continue, or lift the summary restriction or suspension, and it shall give the Member notice of its decision. If the summary restriction or suspension is not lifted, the Member shall be entitled to such hearing rights as are described in Article VIII.

G.    <u>Special Actions</u>

  1.    <u>Failure to Complete Medical Records</u>

Members of the Medical Staff are required to complete medical records within such reasonable time as may be prescribed by the Medical

Executive Committee. Failure to comply shall result in an automatic suspension of all clinical privileges, to be imposed by the Medical Staff President, or designee. A grace period may be allowed under compelling circumstances, such as illness. A Member whose privileges have been suspended for delinquent records may continue to care for patients in the hospital at the time the suspension is imposed, and may admit patients in life-threatening situations. The suspension shall continue until lifted by the individual who imposed it.

2.    Removal of Patient Records

Admitting, consulting and clinical privileges (except with respect to patients already in the hospital) of practitioners who remove any record from the hospital without permission will be automatically suspended until all records are returned.

3.    Action by State Licensing Agency

Whenever a Member's license or other legal credential authorizing practice in this state is:

a.    revoked or suspended, Medical Staff membership and clinical privileges shall be automatically revoked or suspended, as applicable, as of the date such action becomes effective and throughout its term.

b.    limited or restricted by the applicable licensing or certifying authority, any clinical privileges which the Member has been granted at the Hospital which are within the scope of said limitation or restriction shall be automatically limited or restricted, as applicable, as of the date such action becomes effective and throughout its term.

c.    placed on probation his or her membership status and clinical privileges shall automatically become subject to the same terms and conditions of the probation as of the date such action becomes effective and throughout its term.

4.    Failure to Be Adequately Insured

If at any time a Member's professional liability insurance coverage lapses, falls below the required minimum, is terminated or otherwise ceases to be in effect (in whole or in part), the Member's affected clinical privileges shall be suspended automatically as of that date until documentation of adequate professional liability insurance coverage is received. If insurance is not obtained within ninety (90) days of the lapse then clinical privileges and membership shall be automatically terminated.

5.    Action by DEA

Whenever a Member's DEA certificate is:

a.    revoked, limited, or suspended, the Member shall automatically and correspondingly be divested of the right to prescribe medications covered by the certificate, as of the date such action becomes effective and through its term;

b.    subject to probation, the Member's right to prescribe medications shall automatically become subject to the same terms of the probation, as of the date such action becomes effective and throughout its term.

6.    Action by Government Funded Health Program

Whenever a Member's provider status is suspended, revoked or subjected to probationary terms by a government funded health program, his or her authority to care for, or to order hospital goods and services for, any beneficiary of such program shall automatically be subject to the same action.

7.    Failure to Respond or Appear

Members are expected to cooperate with Medical Staff committees and representatives in the discharge of their official functions. This includes responding promptly and appropriately to correspondence, and appearing at appropriately announced meetings regarding quality of care issues, utilization management issues, Medical Staff administrative issues, and other issues that may arise in the conduct of Medical Staff affairs. It also includes submitting to mental or physical examinations, as requested by the Medical Staff President or the Medical Executive Committee, for the purpose of resolving issues of fitness to perform mental or physical functions associated with the practitioner's privileges or related issues of reasonable accommodation. Failure to comply shall constitute grounds for the Medical Staff President or a Department Chair to suspend the Member's clinical privileges or take other appropriate action until a response is provided which is satisfactory to the requesting party. Any such suspension or action shall remain in effect until the Member is expressly notified that it is rescinded.

8.    Medical Executive Committee Deliberation And Action

As soon as practicable after action is taken or warranted as described elsewhere in this Article, with the exception of routine suspensions for failure to complete medical records, the Medical Executive Committee shall review and consider the facts, and may take or recommend such additional action as it deems appropriate.

9.     Procedural Rights

There shall be no formal hearing rights under Article VIII for actions affecting a Member's Medical Staff status or clinical privileges. However, the Member may be given an opportunity to be heard by the Medical Executive Committee related solely to the question whether grounds exist for the special action as described above; the Medical Executive Committee shall reverse any action that was based on a material mistake of fact as to the existence of the grounds for such special action. Additional actions taken by the Medical Executive Committee on a discretionary basis shall be subject to hearing rights to the extent provided by Article VIII.

10.     Member Obligations

A members shall immediately provide written notice to the Medical Staff office of any of the above described actions or events – i.e., action taken by a state licensing agency, failure to maintain adequate insurance, action by the DEA, or action by a government funded health program. The member shall also promptly provide the Medical Staff office with a written explanation of the basis for such actions, including copies of relevant documents. The limitations described above shall take effect automatically as of the date of the underlying action or event, regardless of whether the member provides notice thereof to the Medical Staff office. The Medical Executive Committee may request the member to provide additional information concerning the above described actions or events, and a failure of the member to provide such information may extend the special actions listed above, even though the underlying limitation may have been removed.

## ARTICLE VIII
## HEARINGS AND APPELLATE REVIEWS

8.1    GENERAL PROVISIONS

A.    Intent

The intent of these hearing and appellate review procedures is to provide for a fair review of decisions that adversely affect practitioners (as described below) and at the same time to protect the peer review participants from liability. It is further the intent to establish flexible procedures which do not create burdens that will discourage the Medical Staff and Board of Trustees from carrying out peer review. Accordingly, discretion is granted to the medical staff and Board of Trustees to create a hearing process which provides for the least burdensome level of formality in the process and yet still provides a fair review and to interpret these Bylaws in that light. The Medical Staff, Board of Trustees, and their officers, committees and agents hereby constitute themselves as peer review bodies under the Federal Health Care Quality

Improvement Act of 1986 and the California peer review hearing laws and claim all privileges and immunities afforded by the federal and state laws.

B.    Exhaustion of Remedies

If adverse action as described in these provisions is taken or recommended, the Practitioner must exhaust the remedies afforded by these bylaws before resorting to legal action.

C.    Intraorganizational Remedies

The hearing and appeal rights established in these Bylaws are strictly "judicial" rather than "legislative" in structure and function. The hearing committees have no authority to adopt or modify rules and standards or to decide questions about the merits or substantive validity of Bylaws, Rules or Policies. However, the Board of Trustees may, at its discretion, entertain challenges to the merits of substantive validity of Bylaws, Rules and Regulations or Policies and decide those questions. If the only issue in a case is whether a Bylaw, Rule and Regulation or Policy is lawful or meritorious, the Practitioner is not entitled to a hearing or appellate review. In such cases, the Practitioner must submit his challenges first to the Governing Body. The Governing Body shall consult with the Medical Executive Committee before taking final action regarding the Bylaw, Rule or Policy involved.

D.    Definitions

Except as otherwise provided in these bylaws, the following definitions shall apply under this Article:

> "Body whose decision prompted the hearing" refers to the Medical Executive Committee in all cases where the Medical Executive Committee or authorized Medical Staff officers, members or committees took the action or rendered the decision which resulted in a hearing being requested. It refers to the Governing Body in all cases where the Governing Body or its authorized officers, directors or committees took the action or rendered the decision which resulted in a hearing being requested.

> "Practitioner," as used in this Article and refers to the practitioner who may request or has requested a hearing pursuant to this Article.

> "Day" means calendar day.

E.    Substantial Compliance

Technical, insignificant, or non-prejudicial deviations from the procedures set forth in these Bylaws shall not be grounds for invalidating the action taken or recommended by the body whose decision prompted the hearing.

F.    Grounds for Hearing

Except as otherwise specified in applicable bylaws, rules, regulations or policies, any one of the following adverse actions or recommended actions shall be deemed grounds for a hearing:

  1.    Denial of Medical Staff membership, reappointment and/or clinical privileges, based on professional competence or conduct which affects or could affect adversely the health or welfare of a patient or patients;

  2.    Revocation of Medical Staff membership, based on professional competence or conduct which affects or could affect adversely the health or welfare of a patient or patients;

  3.    Revocation or reduction of clinical privileges, based on professional competence or conduct which affects or could affect adversely the health or welfare of a patient or patients;

  4.    Significant restriction of clinical privileges (except for proctoring incidental to Provisional Status, new privileges, insufficient activity, or return from leave of absence) for more than fourteen (14) days based on professional competence or conduct which affects or could affect adversely the health or welfare of a patient or patients;

  5.    Suspension of Medical Staff membership and/or clinical privileges for more than fourteen (14) days based on professional competence or conduct which affects or could affect adversely the health or welfare of a patient or patients; and,

  6.    Any other disciplinary action or recommendation that must be reported, by law, to the Medical Board of California.

No actions or recommendations except those described above shall entitle the Practitioner to request a hearing.

G.    Requests for Hearing

  1.    Notice of Action or Recommendation

In all cases in which action has been taken or recommended as set forth in Section B, the Practitioner shall be given prompt written notice of the action or recommendation including the following information:

  a.    A description of the action or recommendation;

  b.    A brief statement of the reasons for the action or recommendation;

  c.    A statement that the Practitioner may request a hearing;

    d.      A statement of the time limit within which a hearing may be requested;

    e.      A summary of the Practitioner's rights at a hearing; and

    f.      A statement as to whether the action or recommendation must be reported to the Medical Board of California and/or the National Practitioner Data Bank.

2.     Request for Hearing

The Practitioner shall have thirty (30) days following receipt of the notice of the action or recommendation within which to request a hearing. The request shall be in writing addressed to the Medical Staff President, and received by the Medical Staff Office within the deadline. A copy also shall be sent to the Chief Executive Officer.

If the Practitioner does not request a hearing within the time and in the manner described, the Practitioner shall be deemed to have waived any right to a hearing and accepted the recommendation or action involved. Said action shall thereupon become the final action of the Medical Staff. The action or recommendation shall be presented for consideration by the Board of Trustees, which shall not be bound by it. If the Board of Trustees ratifies the action or recommendation, it shall thereupon become the final action of the Hospital. However, if the Board of Trustees, after consulting with the Medical Executive Committee, is inclined to take action against the Practitioner that is more adverse than the action recommended by the Medical Staff, the Practitioner shall be so notified and given an opportunity for a hearing based on "an adverse action by the Board of Trustees," as provided herein.

H.     Hearing Procedure

1.     Hearings Prompted by Board of Trustees Action

If the hearing is based upon an adverse action by the Board of Trustees, the Chair of the Board of Trustees shall fulfill the functions assigned in this Article to the Medical Staff President. The procedure may be modified as warranted under the circumstances, but the practitioner shall have all of the same rights to a fair hearing.

2.     Time and Place for Hearing

Upon receipt of a request for hearing, the Medical Staff President shall schedule a hearing and, within thirty (30) days from the date he or she received the request for a hearing, give written notice to the Practitioner of the time, place and date of the hearing. The date of commencement of the hearing shall be not less than thirty (30) days nor more than sixty (60) days from the date the Medical Staff President received the request for a hearing.

3.     Notice of Charges

Together with the Notice stating the place, time and date of the hearing, the Medical Staff President shall state clearly and concisely in writing the reasons for the adverse action taken or

recommended (if not already provided), including a description of the acts or omissions with which the practitioner is charged and a list of the charts or cases in question, where applicable. The Notice of reasons or charges may be supplemented or amended at any time prior to the issuance of the Hearing Committee's decision, provided the Practitioner is afforded a fair and reasonable opportunity to respond.

### 4.   Hearing Committee

When a hearing is requested, the Medical Staff President shall appoint a Hearing Committee which shall be composed of not less than three (3) members of the Active Medical Staff who shall gain no direct financial benefit from the outcome and who have not acted as accusers, investigators, fact-finders or initial decision-makers, and otherwise have not actively participated in the consideration of the matter leading up to the recommendation or action. Knowledge of the matter involved shall not preclude a member of the Medical Staff from serving as a member of the Hearing Committee. In the event that it is not feasible to appoint a Hearing Committee from the Active Medical Staff, the Medical Staff President may appoint members from other Medical Staff categories or practitioners who are not Medical Staff members. Such appointment shall include designation of the chair. When feasible, the Hearing Committee shall include at least one member who has the same healing arts licensure and practices in the same specialty as the Practitioner involved.

Alternatively, the Medical Staff President shall have the discretion to enter into an agreement with the Practitioner involved to hold the hearing before a mutually acceptable arbitrator or arbitrators. Failure or refusal to exercise this discretion shall not constitute a breach of the Medical Staff's responsibility to provide a fair hearing.

A majority of the Hearing Committee must be present throughout the hearing. In unusual circumstances when a Hearing Committee member must be absent from any part of the proceedings, he or she shall not be permitted to participate in the deliberations or the decision unless and until he or she has read the entire transcript of the portion of the hearing from which he or she was absent.

The Hearing Committee or the arbitrator (if one is used) shall have such powers as are necessary to discharge its or his or her responsibilities.

### 5.   The Hearing Officer

The Chief Executive Officer shall appoint a hearing officer to preside at the hearing. The hearing officer shall be an attorney-at-law who is qualified to preside over a quasi-judicial hearing, but an attorney regularly utilized by the hospital or medical staff for legal advice regarding its affairs and activities shall not be eligible to serve as hearing officer. The hearing officer shall not be biased for or against any party, shall gain no direct financial benefit from the outcome and must not act as a prosecuting officer or as an advocate. The hearing officer shall endeavor to assure that all participants in the hearing have a reasonable opportunity to be heard and to present relevant oral and documentary evidence in an efficient and expeditious manner, and that proper decorum is maintained. The hearing officer shall be entitled to determine the order of or the procedure for presenting evidence and argument during the hearing and shall have

the authority and discretion to make all rulings on questions which pertain to matters of law, procedure or the admissibility of evidence that are raised prior to, during, or after the hearing. If the hearing officer determines that either party in a hearing is not proceeding in an efficient and expeditious manner, the hearing officer may take such action as he or she deems warranted by the circumstances. The hearing officer should participate in the deliberations of the hearing committee and be a legal advisor to it, but the hearing officer shall not be entitled to vote.

      6.     Voir Dire

          The Practitioner shall have the right to a reasonable opportunity to voir dire the Hearing Committee members and the hearing officer, and the right to challenge the appointment of any member or the hearing officer. The hearing officer shall establish the procedure by which this right may be exercised, which may include reasonable requirements that voir dire questions be proposed in writing in advance of the hearing and that the questions be presented by the hearing officer. The hearing officer shall rule on any challenges in accordance with applicable legal principles defining standards of impartiality for hearing panels and hearing officers in proceedings of this type.

      7.     Representation

      The hearings provided for in these Bylaws are for the purpose of intra professional resolution of matters bearing on professional conduct, professional competency, or character. Neither party may be represented in any phase of the hearing by an attorney-at-law unless the hearing officer agrees, in his or her sole discretion, to allow both parties to be represented by legal counsel. In any event, the body whose decision prompted the hearing shall not be represented by an attorney-at-law if the Practitioner is not so represented. The foregoing shall be not be deemed to deprive any party of its right to be represented by legal counsel for the purpose of preparing for the hearing. When attorneys are not allowed, the Practitioner and the body whose decision prompted the hearing may be represented at the hearing only by a Practitioner licensed to practice in the State of California who is not also an attorney-at-law.

      In all instances, whether or not attorneys are allowed to represent the parties during the hearing, the Medical Executive Committee shall be represented by a member of the Medical Staff who shall be responsible for representing the Medical Executive Committee's interests in connection with the peer review matter and proceeding. This responsibility shall include the authority to make decisions regarding the detailed contents of the Notice of Reasons or Charges; to make decisions regarding the presentation of testimony and exhibits; to direct the activities of the Medical Executive Committee's attorney, if any; to consult with specialists; and to amend the Notice of Reasons or Charges as he or she deems warranted during the course of the proceedings, subject to the Practitioner's procedural rights. However, the Medical Executive Committee's representative shall not have the authority to modify the nature of the Medical Executive Committee's action or recommendation without the Medical Executive Committee's approval.

      8.     Failure to Appear or Proceed

Failure without good cause of the practitioner to personally attend and proceed at a hearing in an efficient and orderly manner shall be deemed to constitute a waiver of any hearing rights and voluntary acceptance of the recommendation(s) or action(s) involved. Good cause shall be determined by the hearing officer. The practitioner's voluntary acceptance of an action or recommendation pursuant to this provision shall be presented for consideration by the Board of Trustees, and the matter will be addressed in the same manner as a waiver of hearing rights.

9.     Postponements And Extensions

Once a timely request for a hearing has been made, postponements and extensions of the time beyond those referenced in this Article may be permitted by the hearing officer within his or her discretion.

I.     Discovery

1.     Rights of Inspection and Copying

The practitioner may inspect and copy, at his or her expense, any documentary information relevant to the charges that the Medical Executive Committee has in its possession or under its control. The Medical Executive Committee may inspect and copy, at its expense, any documentary information relevant to the charges that the practitioner has in his or her possession or under his or her control. Requests for discovery shall be met as soon as practicable. Failure to comply with reasonable discovery requests at least thirty (30) days prior to the hearing shall be good cause for a continuance of the hearing.

2.     Limits on Discovery

The hearing officer shall rule on discovery disputes that the parties cannot resolve. Discovery may be denied or safeguards may be imposed when justified to protect peer review or in the interest of fairness and equity. Further, the right to inspect and copy by either party does not extend to confidential information referring to individually identifiable practitioners other than the practitioner under review, nor does it create or imply any obligation to modify or create documents in order to satisfy a request for information.

3.     Ruling on Discovery Disputes

In ruling on discovery disputes, the factors that may be considered include:

a.     whether the information sought may be introduced to support or to defend against the charges;

b.     whether the information is "exculpatory" in that it would dispute or cast doubt upon the charges or "inculpatory" in that it would prove or help support the charges and/or recommendation;

c.     the burden imposed on the party in possession of the information sought, if access is granted; and

d.    any previous requests for access to information submitted or resisted by the parties to the same proceeding.

4.    Prehearing Document Exchange

The parties must exchange all documents that will be introduced at the hearing. The documents must be exchanged at least ten (10) day prior to the hearing. Failure to comply with this rule is good cause for the hearing officer to grant a continuance, or to limit the introduction of any documents not provided to the other party in a timely manner.

5.    Witness Lists

Not less than fifteen (15) days prior to the hearing, each party shall furnish to the other a written list of the names and addresses of the individuals, so far as is then reasonably known or anticipated, who are expected to give testimony or evidence in support of that party at the hearing. Nothing in the foregoing shall preclude the testimony of additional witnesses whose possible participation was not reasonably anticipated. The parties shall notify each other as soon as they become aware of the possible participation of such additional witnesses. Failure to provide the name of any witness at least ten (10) days prior to the hearing date at which the witness is to appear shall constitute good cause for a continuance.

J.    Procedural Disputes

It shall be the duty of the parties to exercise reasonable diligence in notifying the hearing officer of any pending or anticipated procedural disputes as soon as possible in advance of the scheduled hearing, in order that decisions concerning such matters may be made in advance of the hearing. Objections to any pre-hearing decisions may be succinctly made at the hearing.

The parties shall be entitled to file motions or otherwise request rulings as deemed necessary to give full effect to rights established by the Bylaws and to resolve such procedural matters as the hearing officer determines may properly be resolved outside the presence of the full Hearing Committee. All such motions or requests, the arguments presented by both parties, and rulings thereon shall be reflected in the hearing record in a manner deemed appropriate by the hearing officer.

K.    Record of Hearing

A shorthand reporter shall be present to make a record of the hearing proceedings, and the prehearing proceedings if deemed appropriate by the hearing officer. The cost of attendance of the shorthand reporter shall be borne by the hospital, but the cost of preparing a transcript, if any, or of a copy of the transcript if it has already been prepared, shall be borne by the party requesting it. The hearing officer may, but shall not be required to, order that oral evidence shall be taken only under oath administered by a person lawfully authorized to administer such oath.

L.    Attendance

Except as otherwise provided in these Bylaws and subject to reasonable restriction by the hearing officer, the following shall be permitted to attend the entire hearing in addition to the

hearing officer, the court reporter, and the parties (with attorneys, if allowed): The Director of Medical Staff Services, one or more key consultants for each party, one or more key witnesses for each party, and the Chief Executive Officer or his or her designee. An individual shall not be excluded from attending any portion of the hearing solely by reason of the possibility or expectation that he or she will be a witness for one of the parties.

M.    Rights of the Participants

Within reasonable limitations, both parties may call and examine witnesses for relevant testimony; introduce relevant exhibits or other documents; cross-examine or impeach witnesses who have testified orally on any matter relevant to the issues, and otherwise rebut evidence; receive all information made available by the other party to the Hearing Committee; and submit a written statement, as long as these rights are exercised in an efficient and expeditious manner. The practitioner may be called by the body whose decision prompted the hearing or the Hearing Committee and examined as if under cross-examination. The Hearing Committee may question witnesses or call additional witnesses if it deems such action appropriate. The hearing officer shall also have the discretion to ask questions of witnesses if he or she deems it appropriate for purposes of clarification or efficiency.

N.    Rules of Evidence

Judicial rules of evidence and procedure relating to the conduct of a trial regarding the examination of witnesses and presentation of evidence shall not apply to a hearing conducted under these provisions. Any relevant evidence, including hearsay, may be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law.

O.    Burdens of Presenting Evidence and Proof

1.    The body whose decision prompted the hearing shall have the initial duty to present evidence which supports its recommendation or action. The practitioner shall be obligated to present evidence in response.

2.    An applicant for membership and/or privileges shall bear the burden of persuading the Hearing Committee, by a preponderance of the evidence, that he or she is sufficiently qualified to be awarded such membership and/or privileges at this hospital. This burden requires the production of information which allows for adequate evaluation and resolution of reasonable doubts concerning the practitioner's current qualifications. The applicant shall not be permitted to introduce information that was not produced upon the request of any committee or person on behalf of the Medical Staff during the application process, unless the member establishes that the information could not have been produced in the exercise of reasonable diligence. This provision shall not be construed to compel the Medical Staff to act on, or to afford a practitioner a hearing regarding, an incomplete application.

3.    Except as provided above, the body whose decision prompted the hearing shall bear the burden of persuading the Hearing Committee, by a preponderance of the evidence, that its action or recommendation is reasonable and warranted. The term "reasonable and warranted" means within the range of reasonable and warranted alternatives open to the body whose decision prompted the hearing, as a matter of discretion, and not necessarily the only or best action or recommendation that could be formulated in the opinion of the Hearing Committee.

P.    Adjournment and Conclusion

The hearing officer may adjourn and reconvene the hearing at such times and intervals as may be reasonable and warranted, with due regard for the objective of reaching an expeditious conclusion to the hearing.

Q.    Basis for Decision

The decision of the Hearing Committee shall be based on the evidence and written statements introduced at the hearing, including all logical and reasonable inferences from the evidence.

R.    Decision of the Hearing Committee

Within thirty (30) days after the final adjournment of the hearing, the Hearing Committee shall render a written decision. Final adjournment shall be when the Hearing Committee has concluded its deliberations. A copy of the decision shall be forwarded to the Hospital CEO, the Medical Staff President, the Board of Trustees, and the practitioner. The report shall contain the Hearing Committee's findings of fact and a conclusion articulating the connection between the evidence produced at the hearing and the decision reached. Both the practitioner and the body whose decision prompted the hearing shall be provided a written explanation of the procedure for appealing the decision. The decision of the Hearing Committee shall be considered final, subject only to such rights of appeal or review as described in these Bylaws.

S.    Appeal

1.    Time for Appeal

a.    Within ten (10) days after receipt of the decision of the Hearing Committee, either the practitioner or the Medical Executive Committee may request an appellate review. A written request for such review shall be delivered to the Hospital CEO and the other party in the hearing. If a request for appellate review is not received by the Hospital CEO within such period, the decision of the Hearing Committee shall thereupon become final, except if modified or reversed by the Board of Trustees.

b.    It shall be the obligation of the party requesting appellate review to produce the record of the Hearing Committee's proceedings. If the

record is not produced within a reasonable period, as determined by the Governing Body or its authorized representative, appellate rights shall be deemed waived.

c.    In the event of a waiver of appellate rights by a practitioner, if the Board of Trustees is inclined to take action which is more adverse than that taken or recommended by the Medical Executive Committee, the Board of Trustees must consult with the Medical Executive Committee before taking such action. If the Board of Trustees is still inclined to take such action then the practitioner shall be given an opportunity to be heard before a final decision is made. Said opportunity shall not involve additional evidentiary proceedings if the action under consideration by the Board of Trustees is based on the factual findings or conclusions of the Hearing Committee.

2.    Grounds for Appeal

A written request for an appeal shall include an identification of the grounds of appeal, and a clear and concise statement of the facts in support of the appeal. The recognized grounds for appeal from a Hearing Committee decision are:

a.    substantial noncompliance with the standards or procedures required by these Bylaws, or applicable law which has created demonstrable prejudice; or

b.    the factual findings of the Hearing Committee were not supported by substantial evidence based upon the hearing record or such additional information as may be permitted pursuant to Section 5 below.

c.    the Hearing Committee's failure to sustain an action or recommendation of the Medical Executive Committee that, based on the evidence, was reasonable and warranted.

3.    Time, Place and Notice

The appeal board shall, within thirty (30) days after receipt of a request for appellate review, schedule a review date and cause each side to be given notice of time, place and date of the appellate review. The appellate review shall not commence less than thirty (30) or more than sixty (60) days from the date of notice; provided, however, that when a request for appellate review concerns a practitioner who is under suspension which is then in effect, the appellate review may commence as soon as the arrangements may reasonably be made. The time for appellate review may be extended by the appeal board for good cause.

4.  Appeal Board

The Board of Trustees may sit as the appeal board, or it may delegate that function to an appeal board which shall be composed of not less than three (3) members of the Board of Trustees. Knowledge of the matter involved shall not preclude any person from serving as a member of the appeal board so long as that person did not take part in a prior hearing on the action or recommendation being challenged. The appeal board may select an attorney to assist it in the proceeding, but that attorney shall not be entitled to vote with respect to the appeal.

5.  Appeal Procedure

The proceedings by the appeal board shall be in the nature of an appellate review based upon the record of the proceedings before the Hearing Committee. However, the appeal board may accept additional oral or written evidence, subject to a foundational showing that such evidence could not have been made available to the Hearing Committee in the exercise of reasonable diligence, and subject to the same rights of cross-examination or confrontation that are provided at a hearing. The appeal board shall also have the discretion to remand the matter to the Hearing Committee for the taking of further evidence or for clarification or reconsideration of the Hearing Committee's decision. In such instances, the Hearing Committee shall report back to the appeal board within such reasonable time limits as the appeal board imposes. Each party shall have the right to be represented by legal counsel before the appeal board, to present a written argument to the appeal board, to personally appear and make oral argument and respond to questions in accordance with the procedure established by the appeal board. After the arguments have been submitted, the appeal board shall conduct its deliberations outside the presence of the parties and their representatives.

6.  Decision

Within thirty (30) days after the submission of arguments as provided above, the appeal board shall render a decision in writing and shall forward copies thereof to each side involved in the hearing. The appeal board may affirm, reverse or modify the decision of the Hearing Committee, and its decision shall constitute the final decision of the hospital. Any recommendation affirmed by the appeal board shall become effective immediately.

T.  Right to One Hearing

No practitioner shall be entitled to more than one (1) evidentiary hearing and one (1) appellate review on any adverse action or recommendation.

ARTICLE IX
OFFICERS

9.1     OFFICERS OF THE MEDICAL STAFF

A.     Identification

The officers of the medical staff shall be the president, vice president, immediate past president and secretary-treasurer.

B.     Qualifications

Officers must be members of the active medical staff at the time of their nominations and election, and must remain members in good standing during their term of office. Failure to maintain such status shall create a vacancy in the office involved.

C.     Nominations

1.     The medical staff shall provide for elections every two (2) years. The medical staff election year shall begin February 1. A nominating committee consists of the current president, the vice-president, two other members of the MEC appointed by the president, and three (3) members chosen by the active medical staff at its annual closed staff meeting. The president shall appoint the chairman of the nominating committee. The nominating committee shall nominate one or more nominees for each office to be filled. The MEC shall be notified of all nominations made by the Committee. Nominations shall be mailed to the voting members of the medical staff at least fifteen (15) days prior to sending ballots.

2.     Further nominations may be made for any office by any voting member of the medical staff, provided that the name of the candidate is submitted in writing to the chairman of the nominating committee, is endorsed by the signature of at least ten (10) percent of other members who are eligible to vote, and bears the candidate's written consent. These nominations shall be delivered to the chairman of the nominating committee as soon as reasonably practicable, but at least five (5) days prior to the date of sending ballots.

D.     Elections

The vice-president and secretary-treasurer shall be elected by written ballot mailed to members of the active medical staff. The ballots shall also provide space for a write-in candidate for each office. Three tellers appointed by the president shall count the ballots and report the results to the president. Candidates receiving a simple majority of votes cast shall be deemed elected. Ballots will be returned in sealed envelopes with the hand written signature of the voter for comparison with signatures on file, when necessary.

If no candidate for the office receives a majority vote on the first ballot, a run-off election shall be held promptly between the two candidates receiving the highest number of valid votes cast. In the case of a tie on the second ballot, the majority vote of the MEC shall decide the election by secret written ballot at its next meeting or a special meeting called for that purpose, whichever comes first.

E.    Term of Elected Office

Each officer shall serve a two (2) year term, commencing on the first day of the medical staff year (February 1) following such election. Each officer shall serve in each office until the end of that officer's term, or until a successor is elected, unless that officer shall sooner resign or be removed from office. At the end of that officer's term, the president shall automatically assume the office of immediate past president and the vice president shall automatically assume the office of president.

F.    Recall of Officer

Any medical staff officer may be removed from office for cause, including, but not limited to neglect or misfeasance in office or failure to satisfactorily discharge the duties of office. Recall of a medical staff officer may be initiated by the Medical Executive Committee or by a petition signed by at least one-third of the members of the medical staff eligible to vote for officers. Recall shall be considered at a special meeting called for that purpose. The grounds for the proposed removal shall be presented to the officer, in writing, at least 10 days prior to the special meeting, and the officer be given the opportunity to address them before the matter is put to vote. Recall shall require a two-thirds vote of the medical staff members eligible to vote for medical staff officers who actually cast votes at the special meeting in person by confidential written ballot marked "for" or "against" removal.

G.    Vacancies in Elected Office

If there is a vacancy in the office of president, the vice president shall serve as president for the remainder of the president's term. If a vacancy in office occurs during the year, other than in the office of the president, the nominating committee shall meet and present at least one nominee to the MEC. Election of the replacement officer shall be by vote of the active medical staff either at a meeting or by mail.

9.2    DUTIES OF OFFICERS

A.    President

The president shall serve as the chief officer of the medical staff. The duties of the president shall include, but not be limited to:

> 1.    enforcing the medical staff bylaws and rules and regulations, implementing sanctions where indicated, and promoting compliance with procedural safeguards where appointments, summary suspensions, corrective action, hearings or appeals have been requested or initiated;

2.    calling, presiding at, and being responsible for the agenda of all general meetings of the medical staff;

3.    serving as chairman of the MEC;

4.    serving as an ex-officio member on all other medical staff committees except the credentials committee, with vote;

5.    interacting with the administrator and board of trustees in all matters of mutual concern within the hospital;

6.    appointing, in consultation with the MEC, committee members for all standing and special medical staff liaison, or multi-disciplinary committees, except where otherwise provided by these bylaws and, except where otherwise indicated, designating the chairmen of these committees;

7.    representing the views and policies of the medical staff to the board of trustees and to the administrator;

8.    being a spokesperson for the medical staff in external professional and public relations;

9.    performing such other functions as may be assigned to the president of staff by these bylaws of the medical staff, or by the MEC;

10.    serving on liaison committees with the board of trustees and administration, as well as outside licensing or accreditation agencies;

11.    receiving and interpreting the policies of the board of trustees as transmitted by the administrator, to the medical staff and report to the administrator on the performance of the medical staff's responsibility to provide medical care and maintain the quality of medical care;

12.    being responsible for assuring that the educational activities of the medical staff are adequately assigned to and discharged by appropriate members, departments and committees of the medical staff.

B.    Vice-President

The vice-president shall assume all duties and authority of the president in the absence of the president. The vice president shall serve as chair of the performance improvement committee, shall be a member of the MEC, and shall perform such other duties as the president may assign or as may be delegated by these bylaws, or by the MEC.

C.    Immediate Past President

The immediate past president shall serve as chair of the credentials committee, and the bylaws committee and shall be a member of the MEC, and shall perform such other duties as may be assigned by the president or delegated by these bylaws, or by the MEC.

D.    Secretary-Treasurer

The secretary-treasurer shall be a member of the MEC.  The duties shall include, but not be limited to:

1.    keeping accurate and complete minutes of all MEC and general medical staff meetings;

2.    calling meetings on the order of the president or MEC;

3.    serve as vice chairman of the Utilization Management Committee;

4.    attending to all appropriate correspondence and notices on behalf of the medical staff;

5.    supervise the collection, banking, and accounting for all funds that may be collected in the form of medical staff dues, assessments or application fees and shall render in writing a monthly report of disbursal and collection and, in addition have a yearly audit of the funds with the results of the audit presented to the MEC;

6.    performing such other duties as ordinarily pertain to the office or as may be assigned from time to time by president or MEC.

**ARTICLE X**
**CLINICAL DEPARTMENTS AND SERVICES**

10.1   ORGANIZATION OF CLINICAL DEPARTMENTS AND SERVICES

The medical staff shall be divided into clinical departments.  Each department shall be organized as a separate component of the medical staff and shall have a chairman selected and entrusted with the authority, duties, and responsibilities specified in these Bylaws.  A department may be further divided, as appropriate, into services which shall be directly responsible to the department within which it functions, and which shall have a service chief selected and entrusted with the authority, duties and responsibilities specified in Section 10.7.  When appropriate, the MEC may recommend to the medical staff the creation, elimination, modification, or combination of departments or services.

10.2   CURRENT DEPARTMENTS AND SERVICES

The current departments and services are:

A.   Department of Anesthesia

B.   Department of Emergency Medicine

C.   Department of Medicine with services of:

| | | | |
|---|---|---|---|
| 1. | Behavioral Medicine | 7. | Infectious Disease |
| 2. | Cardiology | 8. | Internal Medicine |
| 3. | Dermatology | 9. | Nephrology |
| 4. | Family Practice | 10. | Neurology |
| 5. | Gastroenterology | 11. | Pulmonary Medicine |
| 6. | Hematology/Oncology/ | 12. | Neonatology |
| | Radiation Oncology | | |

D.   Department of Obstetrics and Gynecology

E.   Department of Orthopedic Surgery with services of:

1.   Foot
2.   Hand
3.   Podiatry

F.   Department of Surgery with services of:

| | | | |
|---|---|---|---|
| 1. | Dentistry & Oral Surgery | 6. | Plastic Surgery |
| 2. | General Surgery | 7. | Thoracic & Cardiac Surgery |
| 3. | Neurosurgery | 8. | Urology |
| 4. | Ophthalmology | 9. | Vascular Surgery |
| 5. | Otolaryngology | | |

G.   Department of Hospital Services with services of:

1.   Diagnostic Imaging
2.   Pathology

## 10.3   ASSIGNMENT TO DEPARTMENTS AND SERVICES

Each member shall be assigned membership in at least one department, and to a service, if any, within such department, but may also be granted membership and/or clinical privileges in other departments or services consistent with practice privileges granted.

## 10.4   FUNCTIONS OF DEPARTMENTS

The general functions of each department shall include:

A.   conducting patient care reviews for the purpose of analyzing and evaluating the quality and appropriateness of care and treatment provided to patients within the department. The department shall routinely collect information about important

aspects of patient care provided in the department, periodically assess this information, and develop objective criteria for use in identifying problem areas and opportunities for the improvement of patient care.

Patient care reviews shall include all clinical work performed under the jurisdiction of the department, regardless of whether the member whose work is subject to such review is a member of that department;

B.      recommending to the MEC criteria for the delineation of clinical privileges and the performance of specified services within the department;

C.      conducting, participating and making recommendations regarding continuing education programs pertinent to departmental clinical practice;

D.      reviewing and evaluating departmental adherence to:

        1.      department rules and regulations and
        2.      sound principles of clinical practice;

E.      coordinating patient care provided by the department's members with nursing and ancillary patient care services;

F.      submitting written reports to the MEC concerning:

        1.      the department's review and evaluation activities, actions taken thereon, and the results of such action; and

        2.      recommendations for maintaining and improving the quality of care provided in the department and the hospital;

G.      meeting at least twice a year for the purpose of considering patient care review findings and the results of the department's other review and evaluation activities, as well as reports on other department and staff functions;

H.      establishing such committees or other mechanisms as are necessary and desirable to perform properly the functions assigned to it, including proctoring protocols;

I.      taking appropriate action when important problems in patient care and clinical performance or opportunities to improve care are identified;

J.      accounting to the MEC for all professional and medical staff administrative activities within the department;

K.    establishing such committees as may be necessary or appropriate to conduct department functions; and

L.    formulating recommendations for departmental rules and regulations reasonably necessary for the proper discharge of its responsibilities subject to the approval by the MEC and the board of directors.

10.5    FUNCTIONS OF SERVICES

Subject to approval of the MEC, each service shall perform the functions assigned to it by the department chairman. Such functions may include, without limitation, retrospective patient care reviews, evaluation of patient care practices, credentials review and privileges delineation, and continuing education programs. The service shall transmit regular reports to the department chairman on the conduct of its assigned functions.

10.6    DEPARTMENT CHAIR

A.    Qualifications

Each department shall have a chair and vice-chair who shall be members of the active medical staff and shall be board certified by their specialty board or affirmatively established through the privilege delineation process that they are possessed of comparable competence, and qualified by training, experience and demonstrated ability in at least one of the clinical areas covered by the department.

B.    Selection

Department chair shall be elected every three (3) years by those members of the department who are eligible to vote for general officers of the medical staff. Vice-chair shall be nominated by the department chair and voted on by members of the department. Election of the department chair shall be so arranged that the chairmen of at least two (2) departments shall be elected annually.

For the purpose of this election, each department chair, or designee, shall appoint a nominating committee of three (3) members at least sixty (60) days prior to the election. The recommendations of the nominating committee of one or more nominees for each office shall be circulated to the voting members of each department at least thirty (30) days prior to the election. Nominations also may be made by any voting member, in writing to the chair of the Nominating Committee and must bear the candidate's written consent. The candidate obtaining the majority vote of those cast will be elected. Election of department chair and vice-chair shall be subject to ratification by the MEC. If the MEC rejects the electees of the department, the department shall revote. If upon revote there is at least a two-thirds (2/3) majority of those department members eligible to vote in favor of the electees, that name shall be resubmitted and accepted by the MEC. If an electee does not receive two-thirds (2/3) majority, then the department shall be required to hold another election according to the preceding provisions. Vacancies due to any reason shall be filled for the unexpired term through special election by the respective department with such mechanisms as that department may adopt.

C.    Term of Office

Each department chair and vice-chair shall serve a three (3) year term which coincides with the medical staff year or until their successors are chosen, unless they shall sooner resign, be removed from office, or lose their medical staff membership or clinical privileges in that department. Department officers shall be eligible for two consecutive terms. Departments may propose alternative terms of office for chair and vice-chair for good cause. After approval by a two-thirds (2/3) majority of the members voting at the MEC and approval by the board of trustees, the alternative terms will be established in the department rules and regulations.

D.    Removal

After election and ratification, removal of department chair and vice-chair from office may occur by a two-thirds (2/3) vote of the MEC or by two-thirds (2/3) vote of the department members eligible to vote.

Because department chairs/(vice chairs) are elected by the medical staff, and occupy their respective leadership positions based on subjective factors involving the trust and confidence of their peers, the sole condition for their removal is that the requisite number of members vote for their recall as provided in this paragraph; no statement of charges or cause need be presented or resolved through any hearing process, and no issue other than the ultimate question of whether there shall be a recall need be put to a vote.

E.    Duties

Each chairman shall have the following authority, duties and responsibilities, and the vice-chair, in the absence of the chair, shall assume all of them and shall otherwise perform such duties as may be assigned to him:

1.    act as presiding officer at departmental meetings;

2.    report to the MEC and to the president of the medical staff regarding all professional and administrative activities within the department;

3.    generally monitor and evaluate the quality of patient care and professional performance rendered by applicants for and members with clinical privileges in the department through a planned and systematic process; oversee the effective conduct of the patient care, evaluation, and monitoring functions delegated to the department by the MEC;

4.    develop and implement departmental programs for retrospective patient care review, on-going monitoring of practice, credentials review and privilege delineation, medical education, utilization review, and quality assurance;

5.    be a member of the MEC, and give guidance on the overall medical policies of the medical staff and hospital and make specific

recommendations and suggestions regarding the department; and review of outside contract in terms of quality of service affecting patient care;

6.    evaluate and make appropriate recommendations regarding the qualifications of applicants seeking appointment or reappointment and clinical privileges within that department;

7.    conduct, participate in and make recommendations regarding orientation and CME programs pertinent to departmental clinical practice;

8.    endeavor to enforce the medical staff bylaws, rules, and regulations and the department rules and regulations within the department;

9.    recommend to the MEC criteria for delineation of privileges and the performance of specified service with the department;

10.    Recommend a sufficient number of qualified and competent persons to provide care, as appropriate.

11.    Determine the qualifications and competence of department personnel who provide patient care services and who are not licensed independent practitioners, as appropriate.

12.    implement within the department appropriate actions taken by the MEC;

13.    participate in every phase of administration of the department, including cooperation with the nursing service and the hospital administration in matters such as personnel, supplies, special regulations, standing orders and techniques;

14.    assist in the preparation of such annual reports, including budgetary planning, pertaining to the department as may be required by the MEC;

15.    establish committees as reasonably necessary to assist in the discharge of the above functions and appoint members to such committees as may be established by the department;

16.    participate, as warranted, in selecting outside sources for needed services; and

17.    perform such other duties commensurate with the office as may from time to time be reasonably requested by the president or the MEC;

10.7   SERVICE CHIEFS

A.   Qualifications

Each service shall have a chief and associate chief who shall be an active staff member of the service, and shall be board certified by their specialty board or affirmatively established through the privilege delineation process that they are possessed of comparable competence, and shall be qualified by training, experience, and demonstrated current ability in the clinical area covered by the service.

B.   Selection

With the exception of the Department of Hospital Services, each service chief and associate service chief shall be selected by the department chairman with approval of the MEC. Vacancies due to any reason shall be filled for the unexpired term by the department chairman. Members of the Hospital Services Department shall elect their service chiefs according to their Service Rules and Regulations.

C.   Term of Office

Service chiefs and associate chiefs shall serve a three-year term which coincides with the medical staff year or until a successor is chosen, unless they shall sooner resign or be removed from office or lose medical staff membership or clinical privilege in that service.  Service chiefs and associate chiefs may not hold office for more than two (2) consecutive terms.

D.   Removal

After appointment and ratification, a service chief or associate chief may be removed by the department chairman and the MEC.

E.   Duties

Each service chief shall:

1.   act as presiding officer at service meetings;

2.   assist in the development and implementation, in cooperation with the department chairman, of programs to carry out the quality review, and evaluation and monitoring functions assigned to the service.

3.   evaluate the clinical work performed in the service;

4.   conduct investigations and submit reports and recommendations to the department chairman regarding the clinical privileges to be exercised within his service by members of or applicants to the medical staff; and

5.    perform such other duties commensurate with the office as may from time to time be reasonably requested by the department chairman, the president, or the MEC.

## 10.8  DECISIONS REGARDING OVERLAPPING OF SERVICES

Differences of opinion regarding the overlapping of services provided by departments/services will be adjudicated on an immediate and temporary basis by the President, and on a long term basis by the direction of the MEC.

## 10.9  CONFIDENTIALITY OF DEPARTMENT/SERVICE PROCEEDINGS

All departments and services in the medical staff function and conduct their proceedings, including all meetings at the departmental and service levels, as committees of the medical staff having a responsibility for the evaluation and improvement of the quality of care rendered in the hospital. Accordingly, the minutes, files, records and proceedings of the departmental/ service meetings shall be subject to the confidentiality provisions of Article XIII of these bylaws.

### ARTICLE XI
### COMMITTEES

## 11.1  DESIGNATION

With the approval of the MEC, the president shall determine the composition, type and duties of each staff committee. The names and/or description of these committees are elaborated in the rules and regulations of the medical staff. Special or ad hoc committees may be created consistent with these bylaws to perform specified tasks. Unless otherwise specified, the chair and members of all committees shall be appointed by and may be removed by the president, subject to consultation with and approval by the MEC. Medical staff committees shall be responsible to the MEC.

Where appropriate, nursing, administration and other hospital representatives shall be appointed to committees as consultants (ex-officio) unless otherwise indicated in the committee composition.

Medical staff functions covered by appropriate committees include, but are not limited to, executive review, credentialing, medical records, tissue review, utilization review, infection control, pharmacy and therapeutics, and assisting the medical staff members impaired by chemical dependency and/or mental illness to obtain necessary rehabilitation services.

## 11.2  GENERAL PROVISIONS

A.    Terms of Committee Members

Unless otherwise specified, committee members shall be appointed for a term of one (1) year, and shall serve until the end of this period or until the member's successor is appointed, unless the member shall sooner resign or be removed from the committee.

B.    Removal

If a member of a committee ceases to be a member in good standing of the medical staff, or loses employment or a contract relationship with the hospital, suffers a loss or significant limitation of practice privileges, or if any other good cause exists, that member may be removed by the MEC.

C.    Vacancies

Unless otherwise specifically provided, vacancies on any committee shall be filled in the same manner in which an original appointment to such committee is made; provided however, that if an individual who obtains membership by virtue of these bylaws is removed for cause, a successor may be selected by the MEC.

D.    Quorum

Unless otherwise stipulated in these bylaws, a quorum is constituted by at least three (3) voting members for the purpose of conducting business.

E.    Voting Members

Unless otherwise required by law, provided by these bylaws, or decided by the chair of the affected committee, only physician members of the medical staff committees may vote. The chairman of the committee votes only in the event of a tie vote.

F.    Function

Except as is otherwise expressly provided in these bylaws, committees shall act in an advisory capacity and shall report to the MEC.

G.    Meetings

Except as is otherwise expressly provided in these bylaws, all committees shall meet as often as is necessary for the performance of their duties.

H.    Attendance

Any committee may invite the attendance of any individuals who may be useful to its work. Unexcused absence of a committee member for more than one-half of the scheduled meetings, may be the basis for removal from the committee.

I.    Attendance by Medical Staff Services Director

The Medical Staff Services Director or designee may attend any medical staff committee meeting in order to provide staff support.

J.    Appointment of Hospital Personnel

The president may appoint hospital personnel to any committee to which he/she may make appointments. Such personnel shall only vote and be counted for purposes of establishing a quorum if permitted by the rules of the committee.

K.    Minutes

Minutes shall be maintained of all medical staff committee meetings.

L.    Confidentiality

All information discussed or generated by a medical staff committee shall be subject to the confidentiality provisions of Article XIII of these bylaws.

11.3   MEDICAL EXECUTIVE COMMITTEE

A.    Composition

The MEC shall consist of the following persons:

1.    The officers of the medical staff;

2.    The department chair of Anesthesia, Emergency Medicine, Medicine/Family Practice, Obstetrics and Gynecology, Orthopedics, and Surgery;

3.    Three (3) at-large members of the active medical staff, two from the Department of Medicine/Family Practice (one of which must be a Family Practitioner) and one from the Department of Surgery, who shall be nominated and elected for one (1) two-(2) year term in the same manner and at the same time as provided in Section 10.6-B for the selection of department chair. All of the above positions, with vote.

4.    A representative from Diagnostic Imaging and from Pathology. These representatives shall be appointed according to the rules and regulations of these services. Only one of these members shall have a vote. The representative from Diagnostic Imaging shall vote in even numbered years and the representative from Pathology shall vote in odd numbered years.

5.    The chief executive officer (CEO) of the hospital or his or her designee attends each executive committee meeting on an ex-officio basis, without a vote.

6.    Attendance by other members of the administrative team, without vote, will be agreed upon by the president of the medical staff and the chief executive officer.

B.    Duties

The duties of the MEC shall include, but not be limited to:

1.    representing and acting on behalf of the medical staff in the intervals between medical staff meetings, subject to such limitations as may be imposed by these bylaws;

2.    coordinating and implementing the professional and organizational activities and policies of the medical staff;

3.    receiving and acting upon reports and recommendations from medical staff departments, services, committees, and assigned activity groups, and those recommendations generated through the Hospital wide Performance Improvement programs as set out in the MEC approved PI Plan;

4.    recommending actions to the board of directors on matters of a medical-administrative nature;

5.    through the medical staff bylaws process, review and recommend regarding establishing the structure of the medical staff, the mechanism to review credentials and delineate individual clinical privileges, the organization of quality assurance activities and mechanisms of the medical staff for termination of medical staff membership and fair hearing procedures, as well as other matters relevant to the operation of an organized medical staff;

6.    evaluating the medical care rendered to patients in the hospital;

7.    participating in the development of medical staff and hospital policy, practice, and planning;

8.    reviewing the qualifications, credentials, performance and professional competence, and character of applicants and staff members, and making recommendations to the board of trustees regarding staff appointments and reappointments, assignments to departments, clinical privileges, and corrective action;

9.    taking reasonable steps to promote ethical conduct and competent clinical performance on the part of all members including the initiation of and participation in medical staff corrective or review measures when warranted;

10.    taking reasonable steps to develop continuing education activities and programs for the medical staff;

11.    designating such committees as may be appropriate or necessary to assist in carrying out the duties and responsibilities of the medical staff and

approving or rejecting appointments to those committees by the president of the medical staff;

12.   reporting to the medical staff at each regular staff meeting;

13.   assisting in the obtaining and maintenance of accreditation;

14.   developing and maintenance of methods for the protection and care of patients and others in the event of internal or external disaster;

15.   appointing such special or ad hoc committees as may seem necessary or appropriate to assist the MEC in carrying out its functions and those of the medical staff;

16.   reviewing the quality and appropriateness of services provided by contract physicians; and

17.   To assure adequate supervision over all budgetary and monetary matters, including:

    a.   establishment of medical staff dues

    b.   collection of funds

    c.   preparation and approval of annual budget

    d.   approval of disbursement of funds

C.   <u>Meetings</u>

The MEC shall meet as often as necessary, but at least monthly and shall maintain a permanent record of its proceedings and actions.

D.   <u>Quorum</u>

To conduct business, the MEC must have a majority of its voting members present.

## 11.4   <u>CREDENTIALS COMMITTEE</u>

A.   <u>Composition</u>

The credentials committee shall consist of not less than seven (7) members of the active staff selected on a basis that will ensure, insofar as feasible, broad representation of major clinical specialties and each of the staff departments and shall include the immediate past president who shall be the Chair.

B.   <u>Duties</u>

The credentials committee shall:

1.  review and evaluate the qualifications of each practitioner applying for initial appointment, reappointment, or modification of clinical privileges, and, in connection therewith, obtain and consider the recommendations of the appropriate departments;

2.  submit required reports and information on the qualifications of each practitioner applying for membership or particular clinical privileges including recommendations with respect to appointment, membership category, department affiliation, clinical privileges, and special conditions;

3.  investigate, review and report on matters referred by the president of the medical staff or the MEC regarding the qualifications, conduct, professional character or competence of any applicant or medical staff member; and

4.  submit periodic reports to the MEC on its activities and the status of pending applications.

C.  Meetings

The credentials committee shall meet as often as necessary at the call of its chairman. The committee shall maintain a record of its proceedings and actions and shall report to the MEC.

D.  Quorum

To conduct business, the Credentials Committee must have a majority of its voting members present.

11.5  NOMINATING COMMITTEE

A.  Composition

The committee shall consist of the current president, the vice-president and two (2) other members of the MEC appointed by the president and three (3) members chosen by the active medical staff at its annual closed staff meeting. The president shall appoint the chair of the nominating committee.

B.  Duties

The duties involved in presenting to the staff qualified candidates for elective positions in the staff organization are to:

1.  consult with the MEC and administration concerning the qualifications and acceptability of prospective nominees.

2.    submit, at the appropriate times as provided in these bylaws, one or more nominations for: (a) each elective office of the staff to be filled, and (b) such other elective positions as may be required by these bylaws.

C.    Meetings

The committee shall meet at least every two (2) years. It shall maintain a written record of its recommendations and shall report to the MEC.

## ARTICLE XII
## MEETINGS

12.1    MEETINGS

A.    Regular Meetings

The active staff shall meet annually and the general medical staff shall meet biennially. The date of these meetings is set and the meetings are called by the president.

B.    Order of Business

The order of business at meetings of the medical staff shall be determined by the president of the medical staff and MEC. The agenda shall include, insofar as feasible:

1.    reading and acceptance of the minutes of the last and all special meetings held since the last annual meeting;

2.    administrative reports from the president of medical staff, departments, and committees, and the administrator;

3.    election results in even years when required by these bylaws;

4.    reports by responsible officers, committees and departments on the overall results of quality review, evaluation, and monitoring activities of the staff and on the fulfillment of other required staff functions;

5.    old business;

6.    new business.

C.    Special Meetings

Special meetings of the medical staff may be called at any time by the president of the medical staff or the MEC, or shall be called upon the written request of ten (10) percent of the members of the active medical staff. The person calling or requesting the special meeting shall state the purpose of such meeting in writing. The meeting shall be scheduled by the MEC within thirty (30) days after receipt of such request. No later than ten (10) days prior to the meeting, notice shall be mailed or delivered to the members of the staff which includes the stated purpose

**EXHIBIT  C**

B Y L A W S


SUMMIT MEDICAL STAFF


\*\*\*\*\*\*\*\*\*\*


June, 2006

# TABLE OF CONTENTS

BYLAWS OF THE SUMMIT MEDICAL STAFF.................................................................1

PREAMBLE.................................................................................................................1

DEFINITIONS............................................................................................................1

**ARTICLE I**      NAME.................................................................................3
    1.1   NAME.........................................................................................3

**ARTICLE II**     PURPOSES AND RESPONSIBILITIES.........................................3
    2.1   PURPOSES..................................................................................3
    2.2   RESPONSIBILITIES OF THE MEDICAL STAFF ..............................4

**ARTICLE III**    MEMBERSHIP......................................................................5
    3.1   NATURE OF MEMBERSHIP ...........................................................5
    3.2   QUALIFICATIONS FOR MEMBERSHIP ...........................................5
        A.   General Qualifications.........................................................5
        B.   Particular Qualifications ......................................................6
        C.   No Entitlement To Appointment ...........................................7
        D.   Effect of Other Affiliations..................................................7
        E.   Non-Discrimination .............................................................8
        F.   Administrative Practitioners and Practitioners Under Contract..............8
        G.   Staff Dues.......................................................................8
        H.   Professional Liability Insurance ...........................................8
    3.3   TERMINATION OF MEMBERSHIP BY RESIGNATION .........................9
    3.4   BASIC RESPONSIBILITIES OF MEDICAL STAFF MEMBERSHIP ...........9
    3.5   HARASSMENT PROHIBITED.........................................................11

**ARTICLE IV**     CATEGORIES OF MEMBERSHIP.............................................11
    4.1   CATEGORIES............................................................................11
    4.2   ACTIVE STAFF.........................................................................12
        A.   Qualifications...................................................................12
        B.   Prerogatives.....................................................................12
        C.   Transfer of Active Staff Member..........................................12
    4.3   COURTESY STAFF.....................................................................13
        A.   Qualifications...................................................................13
        B.   Prerogatives.....................................................................13
        C.   Transfer of Courtesy Staff Members to Active Staff...................14
    4.4   PROVISIONAL STAFF.................................................................14

i

|   |   |   |   |
|---|---|---|---|
| | A. | Qualifications | 14 |
| | B. | Prerogatives | 14 |
| | C. | Observation and Proctoring of Provisional Staff Members | 14 |
| | D. | Action at Conclusion of Provisional Staff | 16 |
| 4.5 | | AFFILIATE STAFF | 16 |
| | A. | Qualifications | 16 |
| | B. | Prerogatives | 16 |
| 4.6 | | HONORARY AND RETIRED STAFF | 16 |
| | A. | Qualifications | 16 |
| | B. | Prerogatives | 17 |
| 4.7 | | LIMITATION OF PREROGATIVES | 17 |
| 4.8 | | MODIFICATION OF MEMBERSHIP | 17 |
| **ARTICLE V** | | APPOINTMENT AND REAPPOINTMENT | 17 |
| 5.1 | | GENERAL | 17 |
| 5.2 | | BURDEN OF PRODUCING INFORMATION | 17 |
| 5.3 | | APPOINTMENT AUTHORITY | 18 |
| 5.4 | | DURATION OF APPOINTMENT AND REAPPOINTMENT | 18 |
| 5.5 | | APPLICATION FOR INITIAL APPOINTMENT AND REAPPOINTMENT | 18 |
| | A. | Application Form | 18 |
| | B. | Content | 18 |
| | C. | Current and Complete Information | 20 |
| | D. | Incomplete Application | 20 |
| | E. | Application and Processing Fee | 21 |
| 5.6 | | EFFECT OF APPLICATION | 21 |
| 5.7 | | PROCESSING THE APPLICATION | 22 |
| | A. | Verification of Information | 22 |
| | B. | Department Action | 22 |
| | C. | Credentials Committee Action | 22 |
| | D. | Medical Executive Committee Action | 23 |
| | E. | Effect of MEC Action | 23 |
| | F. | Expedited Credentialing | 23 |
| | G. | Board Action on the Application | 24 |
| | H. | Notice of Final Decision | 24 |
| | I. | Reapplication After Adverse Decision or Involuntary Termination of Credentialing Process | 25 |
| | J. | Timely Processing of Applications | 25 |
| 5.8 | | REAPPOINTMENT PROCESS | 26 |
| | A. | Application | 26 |
| | B. | Content | 26 |
| | C. | Current and Complete Information | 27 |
| | D. | Incomplete Application | 27 |
| | E. | Verification of Information | 27 |
| | F. | Department Report and Recommendation | 28 |
| | G. | Credentials Committee Report and Recommendation | 28 |
| | H. | Medical Executive Committee Report and Recommendation | 28 |

I.     Final Processing and Board Action.........................................28
J.     Bases for Recommendations.................................................28
K.    Time Periods for Processing .................................................29
L.     Effect of Application.............................................................29
M.   Reapplication After Adverse Decision or Involuntary Termination of
        Credentialing Process...........................................................29

5.9    REQUESTS FOR MODIFICATION OF MEMBERSHIP STATUS.................30
A.    Modification of Staff Status..................................................30
B.    Resignations.........................................................................30

5.10  LEAVE OF ABSENCE ..............................................................30
A.    Leave Status.........................................................................30
B.    Termination of Leave...........................................................31
C.    Failure to Request Reinstatement .........................................31

**ARTICLE VI**     CLINICAL PRIVILEGES ......................................................31
6.1    EXERCISE OF PRIVILEGES .........................................................31
6.2    DELINEATION OF PRIVILEGES IN GENERAL.................................32
A.    Requests...............................................................................32
B.    Bases for Privileges Determination.......................................32
C.    Requests for Modification of Clinical Privileges....................32
6.3    PROCTORING...........................................................................32
A.    General Provisions...............................................................32
B.    Medical Staff Advancement ................................................33
6.4    PRIVILEGES FOR DENTISTS AND PODIATRISTS AND CLINICAL
       PSYCHOLOGISTS .......................................................................33
A.    Admissions...........................................................................33
B.    Surgery ................................................................................33
6.5    TEMPORARY CLINICAL PRIVILEGES .........................................34
A.    Circumstances......................................................................34
B.    Application Process – Care of Specific Patient and Locum Tenens....34
C.    Application Process – Pendency of Application.......................35
D.    General Conditions. .............................................................36
6.6    DISASTER PRIVILEGES ..............................................................37
A.    General Conditions. .............................................................37
6.7    EMERGENCY PRIVILEGES.........................................................39

**ARTICLE VII**    CORRECTIVE ACTION .......................................................39
7.1    CORRECTIVE ACTION ...............................................................39
A.    Criteria for Initiation ...........................................................39
B.    Investigation.........................................................................39
C.    Initiation..............................................................................40
D.    Medical Executive Committee Action...................................40
E.    Board of Trustees Action .....................................................41
F.    Summary Restriction or Suspension......................................42
G.    Special Actions ...................................................................43

**ARTICLE VIII**    HEARINGS AND APPELLATE REVIEWS .......................................... 46
- 8.1    General Provisions .......................................................................................... 46
  - A.    Intent ......................................................................................... 46
  - B.    Exhaustion of Remedies ........................................................ 46
  - C.    Intraorganizational Remedies ............................................... 46
  - D.    Definitions .............................................................................. 47
  - E.    Substantial Compliance ........................................................ 47
  - F.    Grounds for Hearing ............................................................. 47
  - G.    Requests for Hearing ............................................................ 48
  - H.    Hearing Procedure ................................................................ 49
  - I.    Discovery ................................................................................ 52
  - J.    Procedural Disputes .............................................................. 53
  - K.    Record of Hearing ................................................................. 53
  - L.    Attendance ............................................................................. 53
  - M.    Rights of the Participants ..................................................... 53
  - N.    Rules of Evidence .................................................................. 54
  - O.    Burdens of Presenting Evidence and Proof ......................... 54
  - P.    Adjournment and Conclusion ............................................... 55
  - Q.    Basis for Decision ................................................................. 55
  - R.    Decision of the Hearing Committee ..................................... 55
  - S.    Appeal .................................................................................... 55
  - T.    Right to One Hearing ............................................................ 57

**ARTICLE IX**    OFFICERS .......................................................................... 57
- 9.1    OFFICERS OF THE MEDICAL STAFF .................................................. 57
  - A.    Identification .......................................................................... 57
  - B.    Qualifications ......................................................................... 58
  - C.    Nominations ........................................................................... 58
  - D.    Elections ................................................................................. 58
  - E.    Term of Elected Office .......................................................... 58
  - F.    Recall of Officer .................................................................... 59
  - G.    Vacancies in Elected Office .................................................. 59
- 9.2    DUTIES OF OFFICERS ............................................................................ 59
  - A.    President ................................................................................. 59
  - B.    Vice-President ........................................................................ 60
  - C.    Immediate Past President ...................................................... 60
  - D.    Secretary-Treasurer ............................................................... 60

**ARTICLE X**    CLINICAL DEPARTMENTS AND SERVICES ...................................... 61
- 10.1    ORGANIZATION OF CLINICAL DEPARTMENTS AND SERVICES ........... 61
- 10.2    CURRENT DEPARTMENTS AND SERVICES ....................................... 61
  - A.    Department of Anesthesia ..................................................... 61
  - B.    Department of Emergency Medicine ..................................... 61
  - C.    Department of Medicine with services of: ............................ 61
  - D.    Department of Obstetrics and Gynecology ........................... 62
  - E.    Department of Orthopedic Surgery with services of: ........... 62

F.        Department of Surgery with services of: ...........................................62
G.        Department of Hospital Services with services of:................................62
10.3    ASSIGNMENT TO DEPARTMENTS AND SERVICES....................................62
10.4    FUNCTIONS OF DEPARTMENTS.............................................................62
10.5    FUNCTIONS OF SERVICES .....................................................................63
10.6    DEPARTMENT CHAIR .............................................................................64
A.        Qualifications...........................................................................64
B.        Selection..................................................................................64
C.        Term of Office .........................................................................64
D.        Removal ...................................................................................65
E.        Duties ......................................................................................65
10.7    SERVICE CHIEFS.....................................................................................66
A.        Qualifications...........................................................................66
B.        Selection..................................................................................66
C.        Term of Office ........................................................................67
D.        Removal ...................................................................................67
E.        Duties ......................................................................................67
10.8    DECISIONS REGARDING OVERLAPPING OF SERVICES ...........................67
10.9    CONFIDENTIALITY OF DEPARTMENT/SERVICE PROCEEDINGS ...........67

ARTICLE XI        COMMITTEES.................................................................................68
11.1    DESIGNATION ........................................................................................68
11.2    GENERAL PROVISIONS...........................................................................68
A.        Terms of Committee Members ................................................68
B.        Removal ...................................................................................68
C.        Vacancies.................................................................................68
D.        Quorum....................................................................................68
E.        Voting Members ......................................................................69
F.        Function ...................................................................................69
G.        Meetings...................................................................................69
H.        Attendance ...............................................................................69
I.        Attendance by Medical Staff Services Director.......................69
J.        Appointment of Hospital Personnel.........................................69
K.        Minutes ....................................................................................69
L.        Confidentiality .........................................................................69
11.3    MEDICAL EXECUTIVE COMMITTEE .......................................................69
A.        Composition.............................................................................69
B.        Duties ......................................................................................70
C.        Meetings...................................................................................72
D.        Quorum ....................................................................................72
11.4    CREDENTIALS COMMITTEE ...................................................................72
A.        Composition.............................................................................72
B.        Duties ......................................................................................72
C.        Meetings...................................................................................72
D.        Quorum ....................................................................................73
11.5    NOMINATING COMMITTEE.....................................................................73

|  | A. | Composition | 73 |
|  | B. | Duties | 73 |
|  | C. | Meetings | 73 |

**ARTICLE XII    MEETINGS** .......... 73

| 12.1 | MEETINGS |  | 73 |
|  | A. | Regular Meetings | 73 |
|  | B. | Order of Business | 73 |
|  | C. | Special Meetings | 74 |
| 12.2 | COMMITTEE AND DEPARTMENT MEETINGS |  | 74 |
|  | A. | Regular Meetings | 74 |
|  | B. | Special Meetings | 74 |
| 12.3 | QUORUM |  | 74 |
|  | A. | General Staff Meetings | 74 |
|  | B. | Department Meetings | 75 |
| 12.4 | MANNER OF ACTION |  | 75 |
| 12.5 | MINUTES |  | 75 |
| 12.6 | ATTENDANCE REQUIREMENTS |  | 75 |
|  | A. | Regular Attendance | 75 |
|  | B. | Special Attendance | 75 |
| 12.7 | CONDUCT OF MEETINGS |  | 76 |

**ARTICLE XIII    RECORDS AND PROCEEDINGS OF THE MEDICAL STAFF** .......... 76

| 13.1 | CONFIDENTIALITY | 76 |
| 13.2 | PARTICIPATION IN RELIANCE ON CONFIDENTIALITY | 76 |
| 13.3 | PRESERVATION OF CONFIDENTIALITY | 77 |
| 13.4 | CORRECTIVE ACTION FOR BREACH OF CONFIDENTIALITY | 77 |
| 13.5 | RECORDS AND PROCEEDINGS COVERED | 77 |
| 13.6 | INDEMNIFICATION | 78 |

**ARTICLE XIV    GENERAL PROVISIONS** .......... 78

| 14.1 | STAFF RULES AND REGULATIONS | 78 |
| 14.2 | DEPARTMENTAL RULES AND REGULATIONS AND DEPARTMENTAL PROCTORING PROTOCOL | 78 |
| 14.3 | DUES OR ASSESSMENTS | 78 |
| 14.4 | PROFESSIONAL LIABILITY INSURANCE | 78 |
| 14.5 | CONSTRUCTION OF TERMS AND HEADINGS | 79 |
| 14.6 | AUTHORITY TO ACT | 79 |
| 14.7 | DIVISION OF FEES | 79 |
| 14.8 | NOTICES | 79 |
| 14.9 | NOMINATION OF MEDICAL STAFF REPRESENTATIVES | 79 |
| 14.10 | INDEPENDENT LEGAL COUNSEL | 79 |

**ARTICLE XV    ADOPTION AND AMENDMENT OF BYLAWS** .......... 79

| 15.1 | MEDICAL STAFF RESPONSIBILITY | 79 |
| 15.2 | AMENDMENTS | 80 |
| 15.3 | METHOD | 80 |

|  | A. | Medical Staff | 80 |
|  | B. | Board of Trustees | 80 |
| 15.4 |  | EXCLUSIVITY | 80 |

**ARTICLE I**
**NAME**

1.1    NAME

The name of this organization is the Summit Medical Staff of Alta Bates Summit Medical Center.

**ARTICLE II**
**PURPOSES AND RESPONSIBILITIES**

2.1    PURPOSES

The purposes of the medical staff are to:

A.    serve as the primary means for accountability to the board of trustees for the appropriateness of the professional performance and ethical conduct of its members and the allied health professionals and to strive toward the continual upgrading of the quality and efficiency of patient care delivered in the hospital consistent with the state of the healing arts and the resources locally available.

B.    monitor the quality of medical and health care provided by all practitioners authorized to practice in the hospital through the appropriate delineation of clinical privileges and through an on-going review and evaluation of each practitioner's performance in the hospital.

C.    be the formal organizational structure through which the benefits of membership on the staff may be obtained by individual practitioners and the obligations of staff membership may be fulfilled.

D.    provide a means through which the medical staff may participate in the hospital's policy-making and planning process.

E.    provide a means of effective communication between the medical staff, the administrator and the board of trustees.

F.    maintain self-government in cooperation with the administration and the board of trustees.

G.    cooperate with recognized accredited medical schools and other educational institutions in undergraduate, graduate, post-graduate and continuing education programs. All such programs should be evaluated and approved by the medical staff.

2.2    RESPONSIBILITIES OF THE MEDICAL STAFF

The responsibilities of the medical staff are to:

A.    account to the board of trustees for the quality and efficiency of patient care provided by all practitioners authorized to practice in the hospital through regular reports and recommendations concerning the implementation, operation, and results of the quality review and evaluation activities, through the following measures:

1.    A credentials program, including mechanisms for appointment and reappointment and the matching of clinical privileges to be exercised or of specified services to be performed with the verified credentials and current demonstrated competence of the applicant or staff member.

2.    an organizational structure and mechanisms that allow on-going monitoring of patient care practices.

3.    review and evaluation of the quality of patient care through the quality assurance program.

4.    a continuing education program fashioned, at least in part, on the needs demonstrated through the quality review and evaluation programs.

B.    endorse and participate in a utilization review program to provide for the allocation of medical and health services to patients;

C.    recommend to the board of trustees action with respect to medical staff appointments, reappointments, staff category, department assignments, clinical privileges and corrective action.

D.    recommend to the board of trustees programs for the establishment, maintenance, continuing improvement and enforcement of professional standards in the delivery of health care within the hospital.

E.    initiate and pursue corrective action with respect to practitioners, when warranted.

F.    develop, administer, recommend amendments to and seek compliance with these bylaws and the rules and regulations of the staff, rules and regulations and proctoring protocol of the clinical departments, and other hospital policies.  The bylaws, rules and regulations will be reviewed annually.

G.    assist in identifying community health needs and in setting appropriate institutional goals and implementing programs to meet those needs.

H.    provide that physician backup coverage to the Emergency Room is a joint responsibility shared by the members of the medical staff and the hospital.

consistent with the applicant's/member's existing and/or intended privileges. Upon request from the Medical Staff Office, the practitioner shall provide proof of compliance with this requirement.

    2.    <u>Proof of Insurance - Failure to Provide Evidence</u>

At the time of application and reapplication to the medical staff, each applicant and member shall advise on the application/reapplication form:

    a.    the name of the insurance carrier, policy number and expiration date;

    b.    that coverage provided by such insurance is consistent with the applicant's or member's existing and/or intended privileges;

    c.    the coverage limits of the policy; and

    d.    evidence satisfactory to the Medical Staff Office and the MEC of the existence of such insurance coverage. In addition, each applicant and member shall have a continuous duty to immediately notify the Medical Staff Office of any cancellation or change in the policy, including a change in carrier, amount, or scope of coverage.

Failure to provide evidence of such professional liability insurance, at the time of appointment/reappointment, shall render the application incomplete and ineligible for processing.

## 3.3    <u>TERMINATION OF MEMBERSHIP BY RESIGNATION</u>

A staff member may terminate membership on the staff by submitting a letter of resignation which shall be effective upon receipt by the medical staff office.

## 3.4    <u>BASIC RESPONSIBILITIES OF MEDICAL STAFF MEMBERSHIP</u>

Except for the affiliate, honorary and retired staff, the ongoing responsibilities of each member of the medical staff include:

    A.    providing patients with efficient and high quality care which shall include timely patient visits, usually on a daily basis. For the critically ill patient, more frequent visits may be appropriate and required.

    B.    abiding by the medical staff bylaws, medical staff rules and regulations and department rules and regulations and by all other lawful standards, policies and rules of this hospital and medical staff;

4.      the development of any mental or physical condition or other situation that could significantly compromise the member's ability to perform the functions associated with his or her clinical privileges in a safe and effective manner.

P.      complying with requests from the Medical Executive Committee, as it deems necessary, to demonstrate qualifications or fitness for ongoing medical staff membership or clinical privileges, for example, by submitting to a medical or mental examination.

Q.      discharging such other staff obligations as may be lawfully established from time to time.

## 3.5    HARASSMENT PROHIBITED

Harassment by a medical staff member against any individual (e.g., against another medical staff member, house staff, hospital employee or patient) on the basis of race, religion, color, national origin, ancestry, physical disability, mental disability, medical disability, marital status, sex, gender or sexual orientation shall not be tolerated.

"Sexual harassment" is unwelcome verbal or physical conduct of a sexual nature which may include verbal harassment (such as epithets, derogatory comments or slurs), physical harassment (such as unwelcome touching, assault, or interference with movement or work), and visual harassment (such as the display of derogatory cartoons, drawings, or posters).

Sexual harassment includes unwelcome advances, requests for sexual favors, and any other verbal, visual, or physical conduct of a sexual nature when (1) submission to or rejection of this conduct by an individual is used as a factor in decisions affecting hiring, evaluation, retention, promotion, or other aspects of employment; or (2) this conduct substantially interferes with the individual's employment or creates an intimidating, hostile, or offensive work environment. Sexual harassment also includes conduct which indicates that employment and/or employment benefits are conditioned upon acquiescence in sexual activities.

All allegations of sexual harassment shall be immediately investigated by the medical staff pursuant to Article VII and, if confirmed, will result in appropriate corrective action, from reprimands up to and including termination of medical staff privileges or membership, if warranted by the facts.

### ARTICLE IV
### CATEGORIES OF MEMBERSHIP

## 4.1    CATEGORIES

The categories of the medical staff shall include the following: active, courtesy, provisional, affiliate, honorary and retired. At each time of reappointment, the member's staff category shall be determined.

## 6.7  EMERGENCY PRIVILEGES

In case of emergency, any member of the Medical Staff who has been granted privileges under these Bylaws, to the degree permitted by his/her license and regardless of department or staff category, shall be permitted and assisted to do everything possible to save the life of a patient, using every facility of the hospital necessary, including the calling for any consultation necessary or desirable. When the emergency situation no longer exists, the patient shall be promptly assigned to a member of the Medical Staff having privileges appropriate to the patient's care. For the purpose of this Section, an "emergency" is defined as a condition in which serious or permanent harm might result to a patient or in which the life of a patient is in immediate danger and any delay in administering treatment would add to that danger.

## ARTICLE VII
## CORRECTIVE ACTION

### 7.1  CORRECTIVE ACTION

#### A.  Criteria for Initiation

Any person may provide information to the Medical Staff about the conduct, performance, or competence of its Members. When reliable information indicates that a Member may have exhibited acts, demeanor, or conduct, whether on or off the hospital premises, that is reasonably likely to be:

1. detrimental to patient safety or to the delivery of quality patient care;

2. unethical or unprofessional;

3. in violation of the Medical Staff's Bylaws, Rules and Regulations or Policies;

4. inconsistent with the performance standards of the Medical Staff; or

5. disruptive of hospital operations,

A request for an investigation or action against such Member may be initiated by the Medical Staff President, a Department Chairman or the Hospital CEO, or the Medical Executive Committee may commence an investigation or take an action on its own initiative.

#### B.  Investigation

An investigation under these Bylaws ("Investigation") means an investigation ordered by the Medical Executive Committee, or by the Medical Staff President on its behalf, based upon information indicating that a Member has exhibited acts, demeanor or conduct as described above in Section A. An Investigation does not include the usual activities of departments and other committees of the Medical Staff, including the usual quality assessment and improvement activities undertaken by the Medical Staff in compliance with the licensing and certification requirements for health facilities set forth in Title 22 of the California Code of Regulations, or

preliminary deliberations or inquiries of the Medical Executive Committee, or its representatives, to determine whether to order an Investigation.

C.    Initiation

A request for action or for an Investigation under the auspices of the Medical Executive Committee must be supported by reference to specific activities or conduct alleged. The Medical Executive Committee shall determine how to proceed. The Medical Staff President may act on behalf of the Medical Executive Committee to initiate an Investigation, subject to subsequent review and approval by that Committee. In addition, the Medical Staff President or any other Medical Staff official may, instead of initiating an Investigation, initiate or conduct such reviews as may be appropriate to his or her responsibilities under the Medical Staff's Bylaws, Rules and Regulations, or Policies.

If the Medical Executive Committee concludes that an Investigation is warranted, it may conduct the investigation itself, or may assign the task to an appropriate Medical Staff official, Medical Staff Department, or standing or Ad Hoc Committee of the Medical Staff. The Member shall, at an appropriate time, be notified that an Investigation is being conducted and shall be given an opportunity to provide information in a manner and upon such terms as the investigator or investigating body deems appropriate. The individual or body investigating the matter may, but is not obligated to, conduct interviews with persons involved; however, such Investigation shall not constitute a "hearing," nor shall the procedural rules with respect to hearings or appeals apply. At the conclusion of the Investigation a written summary of the findings and recommendation(s) shall be forwarded to the Medical Executive Committee. Despite the status of any Investigation, at all times the Medical Executive Committee shall have authority and discretion to take whatever action may be warranted by the circumstances, including summary suspension, termination of the Investigative process, or other action.

D.    Medical Executive Committee Action

As soon as practicable, but not later than the next scheduled meeting following the conclusion of the Investigation, the Medical Executive Committee shall take action which may include, without limitation:

1.    Determining that no corrective action is warranted.

2.    Deferring action for a specified period.

3.    Issuing a letter of admonition, censure, reprimand, or warning.

4.    Taking special measures to monitor the Member's exercise of privileges on a non-restrictive basis.

5.    Recommending restrictions or special limitations regarding the exercise of clinical privileges including, but not necessarily limited to, requirements for co-admission, mandatory consultation, or restrictive proctoring.

6.    Recommending reduction, modification, suspension or revocation of Medical Staff membership and/or clinical privileges.

7.    Imposing a suspension or restriction of clinical privileges and/or Medical Staff membership for a duration of fourteen (14) days or less, after giving the Member an opportunity to be heard by the Medical Executive Committee.

8.    Summarily suspending or restricting Medical Staff membership and/or clinical privileges.

9.    Taking other actions deemed appropriate under the circumstances.

E.    Board of Trustees Action

1.    The Medical Executive Committee's action or recommendation following an Investigation as described herein shall be reported to the Board of Trustees at its next regularly scheduled meeting.

   a.    If the Medical Executive Committee has imposed or recommended corrective action as to which the affected Practitioner may request a hearing, the Board of Trustees shall take no action on the matter until the Practitioner has either waived or exhausted his hearing rights.

   b.    If the Practitioner invokes his hearing and appeal rights, the Board of Trustees shall proceed as described in Article VIII.

   c.    If the Medical Executive Committee has taken or recommended corrective action and the Practitioner has no rights of hearing or appeal, or has waived such rights, and the Board of Trustees questions or disagrees with the action of the Medical Executive Committee, the matter must be remanded back to the Medical Executive Committee for further consideration. If the decision of the Board of Trustees is to take corrective action more severe than the action presented for the Board's consideration, the Practitioner shall be given an opportunity for a hearing before the Board of Trustees or a committee thereof. The procedures governing the hearing shall be determined by the Board of Trustees, in accordance with the Member's rights under California law. The decision following the hearing shall be the final decision of the Hospital.

2.    If the Medical Executive Committee decides not to conduct an Investigation or otherwise initiate corrective action proceedings as set forth above, the matter shall be subject to review by the Board of Trustees. The Board of Trustees may concur in the Medical Executive Committee's decision or, if the Board of Trustees reasonably determines the Medical Executive Committee's decision to be contrary to the weight of the

evidence presented, the Board of Trustees may consult with the Medical Staff President and thereafter direct the Medical Executive Committee to conduct an investigation or otherwise initiate corrective action proceedings. In the event the Medical Executive Committee fails to take action in response to a directive from the Board of Trustees, the Board of Trustees may, after written notification to the Medical Executive Committee, conduct an investigation or otherwise initiate corrective action proceedings on its own initiative. Any such proceedings shall afford the Member the rights to which he or she is entitled under California law. The decision following such proceedings shall be the final decision of the Hospital.

F.    Summary Restriction or Suspension

1.    Initiation

a.    Member's clinical privileges may be summarily suspended or restricted where the failure to take such action may result in an imminent danger to the health or safety or any individual, including current or future hospital patients.

b.    The following persons are authorized to impose a summary suspension or restriction: The Hospital CEO in consultation with the Medical Staff President; the Medical Staff President; the Medical Executive Committee; or the Chair of the Department(s) in which the Member holds privileges. Unless otherwise stated, such summary restriction or suspension shall become effective immediately upon imposition, and the person or body responsible shall promptly give written confirmation to the Member.

c.    When none of the persons listed above is available to impose a summary suspension or restriction, the Board of Trustees or its designee may take such action if a failure to do so would be likely to result in an imminent danger to the health or safety of any individual, including current or future hospital patients. Prior to exercising this authority, the Board of Trustees must make a reasonable attempt to contact the Medical Staff President. Summary action by the Board of Trustees which as not been ratified by the Medical Staff President within two (2) working days, excluding weekends and holidays, after the suspension shall terminate automatically without prejudice to further summary action as warranted by the circumstances.

d.    The summary restriction or suspension may be limited in duration and shall remain in effect for the period and/or subject to the terms stated or, if none, until resolved as set forth herein. Unless otherwise indicated by the terms of the summary restriction or

suspension, the Member's patients shall be promptly assigned to another Member by the clinical service Chief or by the Medical Staff President, considering, where feasible, the wishes of the patient in the choice of a substitute Member.

e.    Unless an Investigation of the practitioner is already underway at the time the summary suspension or restriction is imposed, that action shall automatically constitute a request to the Medical Executive Committee for Investigation or action pursuant to this Article. If the Medical Executive Committee imposed the summary suspension or restriction on its own initiative, it shall determine what, if any, Investigation and further actions are warranted.

2.    Medical Executive Committee Action

As soon as practicable, within seven (7) days after a summary restriction or suspension has been imposed, a meeting of the Medical Executive Committee shall be convened to review and consider the action. The Member shall attend and make a statement concerning the relevant issues, on such terms and conditions as the Medical Executive Committee may impose, although in no event shall any such meeting of the Medical Executive Committee, with or without the Member, constitute a "hearing" within the meaning of Article VIII, nor shall any procedural hearing rules apply. The Medical Executive Committee may modify, continue, or lift the summary restriction or suspension, and it shall give the Member notice of its decision. If the summary restriction or suspension is not lifted, the Member shall be entitled to such hearing rights as are described in Article VIII.

G.    Special Actions

1.    Failure to Complete Medical Records

Members of the Medical Staff are required to complete medical records within such reasonable time as may be prescribed by the Medical Executive Committee. Failure to comply shall result in an automatic suspension of all clinical privileges, to be imposed by the Medical Staff President, or designee. A grace period may be allowed under compelling circumstances, such as illness. A Member whose privileges have been suspended for delinquent records may continue to care for patients in the hospital at the time the suspension is imposed, and may admit patients in life-threatening situations. The suspension shall continue until lifted by the individual who imposed it.

2.    Removal of Patient Records

Admitting, consulting and clinical privileges (except with respect to patients already in the hospital) of practitioners who remove any record from the hospital without permission will be automatically suspended until all records are returned.

3.  Action by State Licensing Agency

Whenever a Member's license or other legal credential authorizing practice in this state is:

a.  revoked or suspended, Medical Staff membership and clinical privileges shall be automatically revoked or suspended, as applicable, as of the date such action becomes effective and throughout its term.

b.  limited or restricted by the applicable licensing or certifying authority, any clinical privileges which the Member has been granted at the Hospital which are within the scope of said limitation or restriction shall be automatically limited or restricted, as applicable, as of the date such action becomes effective and throughout its term.

c.  placed on probation his or her membership status and clinical privileges shall automatically become subject to the same terms and conditions of the probation as of the date such action becomes effective and throughout its term.

4.  Failure to Be Adequately Insured

If at any time a Member's professional liability insurance coverage lapses, falls below the required minimum, is terminated or otherwise ceases to be in effect (in whole or in part), the Member's affected clinical privileges shall be suspended automatically as of that date until documentation of adequate professional liability insurance coverage is received. If insurance is not obtained within ninety (90) days of the lapse then clinical privileges and membership shall be automatically terminated.

5.  Action by DEA

Whenever a Member's DEA certificate is:

a.  revoked, limited, or suspended, the Member shall automatically and correspondingly be divested of the right to prescribe medications covered by the certificate, as of the date such action becomes effective and through its term;

b.  subject to probation, the Member's right to prescribe medications shall automatically become subject to the same terms of the

probation, as of the date such action becomes effective and throughout its term.

6.    Action by Government Funded Health Program

Whenever a Member's provider status is suspended, revoked or subjected to probationary terms by a government funded health program, his or her authority to care for, or to order hospital goods and services for, any beneficiary of such program shall automatically be subject to the same action.

7.    Failure to Respond or Appear

Members are expected to cooperate with Medical Staff committees and representatives in the discharge of their official functions. This includes responding promptly and appropriately to correspondence, and appearing at appropriately announced meetings regarding quality of care issues, utilization management issues, Medical Staff administrative issues, and other issues that may arise in the conduct of Medical Staff affairs. It also includes submitting to mental or physical examinations, as requested by the Medical Staff President or the Medical Executive Committee, for the purpose of resolving issues of fitness to perform mental or physical functions associated with the practitioner's privileges or related issues of reasonable accommodation. Failure to comply shall constitute grounds for the Medical Staff President or a Department Chair to suspend the Member's clinical privileges or take other appropriate action until a response is provided which is satisfactory to the requesting party. Any such suspension or action shall remain in effect until the Member is expressly notified that it is rescinded.

8.    Medical Executive Committee Deliberation And Action

As soon as practicable after action is taken or warranted as described elsewhere in this Article, with the exception of routine suspensions for failure to complete medical records, the Medical Executive Committee shall review and consider the facts, and may take or recommend such additional action as it deems appropriate.

9.    Procedural Rights

There shall be no formal hearing rights under Article VIII for actions affecting a Member's Medical Staff status or clinical privileges. However, the Member may be given an opportunity to be heard by the Medical Executive Committee related solely to the question whether grounds exist for the special action as described above; the Medical Executive Committee shall reverse any action that was based on a material mistake of fact as to the existence of the grounds for such special action. Additional actions taken by the Medical Executive Committee on a

discretionary basis shall be subject to hearing rights to the extent provided by Article VIII.

10.    Member Obligations

A members shall immediately provide written notice to the Medical Staff office of any of the above described actions or events – i.e., action taken by a state licensing agency, failure to maintain adequate insurance, action by the DEA, or action by a government funded health program. The member shall also promptly provide the Medical Staff office with a written explanation of the basis for such actions, including copies of relevant documents. The limitations described above shall take effect automatically as of the date of the underlying action or event, regardless of whether the member provides notice thereof to the Medical Staff office. The Medical Executive Committee may request the member to provide additional information concerning the above described actions or events, and a failure of the member to provide such information may extend the special actions listed above, even though the underlying limitation may have been removed.

### ARTICLE VIII
### HEARINGS AND APPELLATE REVIEWS

8.1    GENERAL PROVISIONS

A.    Intent

The intent of these hearing and appellate review procedures is to provide for a fair review of decisions that adversely affect practitioners (as described below) and at the same time to protect the peer review participants from liability. It is further the intent to establish flexible procedures which do not create burdens that will discourage the Medical Staff and Board of Trustees from carrying out peer review. Accordingly, discretion is granted to the medical staff and Board of Trustees to create a hearing process which provides for the least burdensome level of formality in the process and yet still provides a fair review and to interpret these Bylaws in that light. The Medical Staff, Board of Trustees, and their officers, committees and agents hereby constitute themselves as peer review bodies under the Federal Health Care Quality Improvement Act of 1986 and the California peer review hearing laws and claim all privileges and immunities afforded by the federal and state laws.

B.    Exhaustion of Remedies

If adverse action as described in these provisions is taken or recommended, the Practitioner must exhaust the remedies afforded by these bylaws before resorting to legal action.

C.    Intraorganizational Remedies

The hearing and appeal rights established in these Bylaws are strictly "judicial" rather than "legislative" in structure and function. The hearing committees have no authority to adopt

or modify rules and standards or to decide questions about the merits or substantive validity of Bylaws, Rules or Policies. However, the Board of Trustees may, at its discretion, entertain challenges to the merits of substantive validity of Bylaws, Rules and Regulations or Policies and decide those questions. If the only issue in a case is whether a Bylaw, Rule and Regulation or Policy is lawful or meritorious, the Practitioner is not entitled to a hearing or appellate review. In such cases, the Practitioner must submit his challenges first to the Governing Body. The Governing Body shall consult with the Medical Executive Committee before taking final action regarding the Bylaw, Rule or Policy involved.

D.     Definitions

Except as otherwise provided in these bylaws, the following definitions shall apply under this Article:

"Body whose decision prompted the hearing" refers to the Medical Executive Committee in all cases where the Medical Executive Committee or authorized Medical Staff officers, members or committees took the action or rendered the decision which resulted in a hearing being requested. It refers to the Governing Body in all cases where the Governing Body or its authorized officers, directors or committees took the action or rendered the decision which resulted in a hearing being requested.

"Practitioner," as used in this Article and refers to the practitioner who may request or has requested a hearing pursuant to this Article.

"Day" means calendar day.

E.     Substantial Compliance

Technical, insignificant, or non-prejudicial deviations from the procedures set forth in these Bylaws shall not be grounds for invalidating the action taken or recommended by the body whose decision prompted the hearing.

F.     Grounds for Hearing

Except as otherwise specified in applicable bylaws, rules, regulations or policies, any one of the following adverse actions or recommended actions shall be deemed grounds for a hearing:

1.     Denial of Medical Staff membership, reappointment and/or clinical privileges, based on professional competence or conduct which affects or could affect adversely the health or welfare of a patient or patients;

2.     Revocation of Medical Staff membership, based on professional competence or conduct which affects or could affect adversely the health or welfare of a patient or patients;

3.    Revocation or reduction of clinical privileges, based on professional competence or conduct which affects or could affect adversely the health or welfare of a patient or patients;

4.    Significant restriction of clinical privileges (except for proctoring incidental to Provisional Status, new privileges, insufficient activity, or return from leave of absence) for more than fourteen (14) days based on professional competence or conduct which affects or could affect adversely the health or welfare of a patient or patients;

5.    Suspension of Medical Staff membership and/or clinical privileges for more than fourteen (14) days based on professional competence or conduct which affects or could affect adversely the health or welfare of a patient or patients; and,

6.    Any other disciplinary action or recommendation that must be reported, by law, to the Medical Board of California.

No actions or recommendations except those described above shall entitle the Practitioner to request a hearing.

G.    Requests for Hearing

1.    Notice of Action or Recommendation

In all cases in which action has been taken or recommended as set forth in Section B, the Practitioner shall be given prompt written notice of the action or recommendation including the following information:

a.    A description of the action or recommendation;

b.    A brief statement of the reasons for the action or recommendation;

c.    A statement that the Practitioner may request a hearing;

d.    A statement of the time limit within which a hearing may be requested;

e.    A summary of the Practitioner's rights at a hearing; and

f.    A statement as to whether the action or recommendation must be reported to the Medical Board of California and/or the National Practitioner Data Bank.

2.    Request for Hearing

The Practitioner shall have thirty (30) days following receipt of the notice of the action or recommendation within which to request a hearing. The request shall be in writing addressed to

the Medical Staff President, and received by the Medical Staff Office within the deadline. A copy also shall be sent to the Chief Executive Officer.

If the Practitioner does not request a hearing within the time and in the manner described, the Practitioner shall be deemed to have waived any right to a hearing and accepted the recommendation or action involved. Said action shall thereupon become the final action of the Medical Staff. The action or recommendation shall be presented for consideration by the Board of Trustees, which shall not be bound by it. If the Board of Trustees ratifies the action or recommendation, it shall thereupon become the final action of the Hospital. However, if the Board of Trustees, after consulting with the Medical Executive Committee, is inclined to take action against the Practitioner that is more adverse than the action recommended by the Medical Staff, the Practitioner shall be so notified and given an opportunity for a hearing based on "an adverse action by the Board of Trustees," as provided herein.

H.    Hearing Procedure

1.    Hearings Prompted by Board of Trustees Action

If the hearing is based upon an adverse action by the Board of Trustees, the Chair of the Board of Trustees shall fulfill the functions assigned in this Article to the Medical Staff President. The procedure may be modified as warranted under the circumstances, but the practitioner shall have all of the same rights to a fair hearing.

2.    Time and Place for Hearing

Upon receipt of a request for hearing, the Medical Staff President shall schedule a hearing and, within thirty (30) days from the date he or she received the request for a hearing, give written notice to the Practitioner of the time, place and date of the hearing. The date of commencement of the hearing shall be not less than thirty (30) days nor more than sixty (60) days from the date the Medical Staff President received the request for a hearing.

3.    Notice of Charges

Together with the Notice stating the place, time and date of the hearing, the Medical Staff President shall state clearly and concisely in writing the reasons for the adverse action taken or recommended (if not already provided), including a description of the acts or omissions with which the practitioner is charged and a list of the charts or cases in question, where applicable. The Notice of reasons or charges may be supplemented or amended at any time prior to the issuance of the Hearing Committee's decision, provided the Practitioner is afforded a fair and reasonable opportunity to respond.

4.    Hearing Committee

When a hearing is requested, the Medical Staff President shall appoint a Hearing Committee which shall be composed of not less than three (3) members of the Active Medical Staff who shall gain no direct financial benefit from the outcome and who have not acted as accusers, investigators, fact-finders or initial decision-makers, and otherwise have not actively participated in the consideration of the matter leading up to the recommendation or action.

Knowledge of the matter involved shall not preclude a member of the Medical Staff from serving as a member of the Hearing Committee. In the event that it is not feasible to appoint a Hearing Committee from the Active Medical Staff, the Medical Staff President may appoint members from other Medical Staff categories or practitioners who are not Medical Staff members. Such appointment shall include designation of the chair. When feasible, the Hearing Committee shall include at least one member who has the same healing arts licensure and practices in the same specialty as the Practitioner involved.

Alternatively, the Medical Staff President shall have the discretion to enter into an agreement with the Practitioner involved to hold the hearing before a mutually acceptable arbitrator or arbitrators. Failure or refusal to exercise this discretion shall not constitute a breach of the Medical Staff's responsibility to provide a fair hearing.

A majority of the Hearing Committee must be present throughout the hearing. In unusual circumstances when a Hearing Committee member must be absent from any part of the proceedings, he or she shall not be permitted to participate in the deliberations or the decision unless and until he or she has read the entire transcript of the portion of the hearing from which he or she was absent.

The Hearing Committee or the arbitrator (if one is used) shall have such powers as are necessary to discharge its or his or her responsibilities.

5.    The Hearing Officer

The Chief Executive Officer shall appoint a hearing officer to preside at the hearing. The hearing officer shall be an attorney-at-law who is qualified to preside over a quasi-judicial hearing, but an attorney regularly utilized by the hospital or medical staff for legal advice regarding its affairs and activities shall not be eligible to serve as hearing officer. The hearing officer shall not be biased for or against any party, shall gain no direct financial benefit from the outcome and must not act as a prosecuting officer or as an advocate. The hearing officer shall endeavor to assure that all participants in the hearing have a reasonable opportunity to be heard and to present relevant oral and documentary evidence in an efficient and expeditious manner, and that proper decorum is maintained. The hearing officer shall be entitled to determine the order of or the procedure for presenting evidence and argument during the hearing and shall have the authority and discretion to make all rulings on questions which pertain to matters of law, procedure or the admissibility of evidence that are raised prior to, during, or after the hearing. If the hearing officer determines that either party in a hearing is not proceeding in an efficient and expeditious manner, the hearing officer may take such action as he or she deems warranted by the circumstances. The hearing officer should participate in the deliberations of the hearing committee and be a legal advisor to it, but the hearing officer shall not be entitled to vote.

6.    Voir Dire

The Practitioner shall have the right to a reasonable opportunity to voir dire the Hearing Committee members and the hearing officer, and the right to challenge the appointment of any member or the hearing officer. The hearing officer shall establish the procedure by which this right may be

exercised, which may include reasonable requirements that voir dire
questions be proposed in writing in advance of the hearing and that the
questions be presented by the hearing officer. The hearing officer shall
rule on any challenges in accordance with applicable legal principles
defining standards of impartiality for hearing panels and hearing officers
in proceedings of this type.

7.    Representation

The hearings provided for in these Bylaws are for the purpose of intra professional
resolution of matters bearing on professional conduct, professional competency, or character.
Neither party may be represented in any phase of the hearing by an attorney-at-law unless the
hearing officer agrees, in his or her sole discretion, to allow both parties to be represented by
legal counsel. In any event, the body whose decision prompted the hearing shall not be
represented by an attorney-at-law if the Practitioner is not so represented. The foregoing shall be
not be deemed to deprive any party of its right to be represented by legal counsel for the purpose
of preparing for the hearing. When attorneys are not allowed, the Practitioner and the body
whose decision prompted the hearing may be represented at the hearing only by a Practitioner
licensed to practice in the State of California who is not also an attorney-at-law.

In all instances, whether or not attorneys are allowed to represent the parties during the
hearing, the Medical Executive Committee shall be represented by a member of the Medical
Staff who shall be responsible for representing the Medical Executive Committee's interests in
connection with the peer review matter and proceeding. This responsibility shall include the
authority to make decisions regarding the detailed contents of the Notice of Reasons or Charges;
to make decisions regarding the presentation of testimony and exhibits; to direct the activities of
the Medical Executive Committee's attorney, if any; to consult with specialists; and to amend the
Notice of Reasons or Charges as he or she deems warranted during the course of the
proceedings, subject to the Practitioner's procedural rights. However, the Medical Executive
Committee's representative shall not have the authority to modify the nature of the Medical
Executive Committee's action or recommendation without the Medical Executive Committee's
approval.

8.    Failure to Appear or Proceed

Failure without good cause of the practitioner to personally attend and proceed at a
hearing in an efficient and orderly manner shall be deemed to constitute a waiver of any hearing
rights and voluntary acceptance of the recommendation(s) or action(s) involved. Good cause shall
be determined by the hearing officer. The practitioner's voluntary acceptance of an action
or recommendation pursuant to this provision shall be presented for consideration by the Board
of Trustees, and the matter will be addressed in the same manner as a waiver of hearing rights.

9.    Postponements And Extensions

Once a timely request for a hearing has been made, postponements and extensions of the
time beyond those referenced in this Article may be permitted by the hearing officer within his or
her discretion.

I.    Discovery

1.    Rights of Inspection and Copying

The practitioner may inspect and copy, at his or her expense, any documentary information relevant to the charges that the Medical Executive Committee has in its possession or under its control. The Medical Executive Committee may inspect and copy, at its expense, any documentary information relevant to the charges that the practitioner has in his or her possession or under his or her control. Requests for discovery shall be met as soon as practicable. Failure to comply with reasonable discovery requests at least thirty (30) days prior to the hearing shall be good cause for a continuance of the hearing.

2.    Limits on Discovery

The hearing officer shall rule on discovery disputes that the parties cannot resolve. Discovery may be denied or safeguards may be imposed when justified to protect peer review or in the interest of fairness and equity. Further, the right to inspect and copy by either party does not extend to confidential information referring to individually identifiable practitioners other than the practitioner under review, nor does it create or imply any obligation to modify or create documents in order to satisfy a request for information.

3.    Ruling on Discovery Disputes

In ruling on discovery disputes, the factors that may be considered include:

a.    whether the information sought may be introduced to support or to defend against the charges;

b.    whether the information is "exculpatory" in that it would dispute or cast doubt upon the charges or "inculpatory" in that it would prove or help support the charges and/or recommendation;

c.    the burden imposed on the party in possession of the information sought, if access is granted; and

d.    any previous requests for access to information submitted or resisted by the parties to the same proceeding.

4.    Prehearing Document Exchange

The parties must exchange all documents that will be introduced at the hearing. The documents must be exchanged at least ten (10) day prior to the hearing. Failure to comply with this rule is good cause for the hearing officer to grant a continuance, or to limit the introduction of any documents not provided to the other party in a timely manner.

5.    Witness Lists

Not less than fifteen (15) days prior to the hearing, each party shall furnish to the other a written list of the names and addresses of the individuals, so far as is then reasonably known or anticipated, who are expected to give testimony or evidence in support of that party at the hearing. Nothing in the foregoing shall preclude the testimony of additional witnesses whose possible participation was not reasonably anticipated. The parties shall notify each other as soon as they become aware of the possible participation of such additional witnesses. Failure to provide the name of any witness at least ten (10) days prior to the hearing date at which the witness is to appear shall constitute good cause for a continuance.

J.    Procedural Disputes

It shall be the duty of the parties to exercise reasonable diligence in notifying the hearing officer of any pending or anticipated procedural disputes as soon as possible in advance of the scheduled hearing, in order that decisions concerning such matters may be made in advance of the hearing. Objections to any pre-hearing decisions may be succinctly made at the hearing.

The parties shall be entitled to file motions or otherwise request rulings as deemed necessary to give full effect to rights established by the Bylaws and to resolve such procedural matters as the hearing officer determines may properly be resolved outside the presence of the full Hearing Committee. All such motions or requests, the arguments presented by both parties, and rulings thereon shall be reflected in the hearing record in a manner deemed appropriate by the hearing officer.

K.    Record of Hearing

A shorthand reporter shall be present to make a record of the hearing proceedings, and the prehearing proceedings if deemed appropriate by the hearing officer. The cost of attendance of the shorthand reporter shall be borne by the hospital, but the cost of preparing a transcript, if any, or of a copy of the transcript if it has already been prepared, shall be borne by the party requesting it. The hearing officer may, but shall not be required to, order that oral evidence shall be taken only under oath administered by a person lawfully authorized to administer such oath.

L.    Attendance

Except as otherwise provided in these Bylaws and subject to reasonable restriction by the hearing officer, the following shall be permitted to attend the entire hearing in addition to the hearing officer, the court reporter, and the parties (with attorneys, if allowed): The Director of Medical Staff Services, one or more key consultants for each party, one or more key witnesses for each party, and the Chief Executive Officer or his or her designee. An individual shall not be excluded from attending any portion of the hearing solely by reason of the possibility or expectation that he or she will be a witness for one of the parties.

M.    Rights of the Participants

Within reasonable limitations, both parties may call and examine witnesses for relevant testimony; introduce relevant exhibits or other documents; cross-examine or impeach witnesses who have testified orally on any matter relevant to the issues, and otherwise rebut evidence; receive all information made available by the other party to the Hearing Committee; and submit

a written statement, as long as these rights are exercised in an efficient and expeditious manner. The practitioner may be called by the body whose decision prompted the hearing or the Hearing Committee and examined as if under cross-examination. The Hearing Committee may question witnesses or call additional witnesses if it deems such action appropriate. The hearing officer shall also have the discretion to ask questions of witnesses if he or she deems it appropriate for purposes of clarification or efficiency.

N.    Rules of Evidence

Judicial rules of evidence and procedure relating to the conduct of a trial regarding the examination of witnesses and presentation of evidence shall not apply to a hearing conducted under these provisions. Any relevant evidence, including hearsay, may be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law.

O.    Burdens of Presenting Evidence and Proof

1.    The body whose decision prompted the hearing shall have the initial duty to present evidence which supports its recommendation or action. The practitioner shall be obligated to present evidence in response.

2.    An applicant for membership and/or privileges shall bear the burden of persuading the Hearing Committee, by a preponderance of the evidence, that he or she is sufficiently qualified to be awarded such membership and/or privileges at this hospital. This burden requires the production of information which allows for adequate evaluation and resolution of reasonable doubts concerning the practitioner's current qualifications. The applicant shall not be permitted to introduce information that was not produced upon the request of any committee or person on behalf of the Medical Staff during the application process, unless the member establishes that the information could not have been produced in the exercise of reasonable diligence. This provision shall not be construed to compel the Medical Staff to act on, or to afford a practitioner a hearing regarding, an incomplete application.

3.    Except as provided above, the body whose decision prompted the hearing shall bear the burden of persuading the Hearing Committee, by a preponderance of the evidence, that its action or recommendation is reasonable and warranted. The term "reasonable and warranted" means within the range of reasonable and warranted alternatives open to the body whose decision prompted the hearing, as a matter of discretion, and not necessarily the only or best action or recommendation that could be formulated in the opinion of the Hearing Committee.

P.    Adjournment and Conclusion

The hearing officer may adjourn and reconvene the hearing at such times and intervals as may be reasonable and warranted, with due regard for the objective of reaching an expeditious conclusion to the hearing.

Q.    Basis for Decision

The decision of the Hearing Committee shall be based on the evidence and written statements introduced at the hearing, including all logical and reasonable inferences from the evidence.

R.    Decision of the Hearing Committee

Within thirty (30) days after the final adjournment of the hearing, the Hearing Committee shall render a written decision. Final adjournment shall be when the Hearing Committee has concluded its deliberations. A copy of the decision shall be forwarded to the Hospital CEO, the Medical Staff President, the Board of Trustees, and the practitioner. The report shall contain the Hearing Committee's findings of fact and a conclusion articulating the connection between the evidence produced at the hearing and the decision reached. Both the practitioner and the body whose decision prompted the hearing shall be provided a written explanation of the procedure for appealing the decision. The decision of the Hearing Committee shall be considered final, subject only to such rights of appeal or review as described in these Bylaws.

S.    Appeal

    1.    Time for Appeal

        a.    Within ten (10) days after receipt of the decision of the Hearing Committee, either the practitioner or the Medical Executive Committee may request an appellate review. A written request for such review shall be delivered to the Hospital CEO and the other party in the hearing. If a request for appellate review is not received by the Hospital CEO within such period, the decision of the Hearing Committee shall thereupon become final, except if modified or reversed by the Board of Trustees.

        b.    It shall be the obligation of the party requesting appellate review to produce the record of the Hearing Committee's proceedings. If the record is not produced within a reasonable period, as determined by the Governing Body or its authorized representative, appellate rights shall be deemed waived.

        c.    In the event of a waiver of appellate rights by a practitioner, if the Board of Trustees is inclined to take action which is more adverse than that taken or recommended by the Medical Executive Committee, the Board of Trustees must consult with the Medical Executive Committee before taking such action. If the Board of

Trustees is still inclined to take such action then the practitioner shall be given an opportunity to be heard before a final decision is made. Said opportunity shall not involve additional evidentiary proceedings if the action under consideration by the Board of Trustees is based on the factual findings or conclusions of the Hearing Committee.

2.    Grounds for Appeal

A written request for an appeal shall include an identification of the grounds of appeal, and a clear and concise statement of the facts in support of the appeal. The recognized grounds for appeal from a Hearing Committee decision are:

a.    substantial noncompliance with the standards or procedures required by these Bylaws, or applicable law which has created demonstrable prejudice; or

b.    the factual findings of the Hearing Committee were not supported by substantial evidence based upon the hearing record or such additional information as may be permitted pursuant to Section 5 below.

c.    the Hearing Committee's failure to sustain an action or recommendation of the Medical Executive Committee that, based on the evidence, was reasonable and warranted.

3.    Time, Place and Notice

The appeal board shall, within thirty (30) days after receipt of a request for appellate review, schedule a review date and cause each side to be given notice of time, place and date of the appellate review. The appellate review shall not commence less than thirty (30) or more than sixty (60) days from the date of notice; provided, however, that when a request for appellate review concerns a practitioner who is under suspension which is then in effect, the appellate review may commence as soon as the arrangements may reasonably be made. The time for appellate review may be extended by the appeal board for good cause.

4.    Appeal Board

The Board of Trustees may sit as the appeal board, or it may delegate that function to an appeal board which shall be composed of not less than three (3) members of the Board of Trustees. Knowledge of the matter involved shall not preclude any person from serving as a member of the appeal board so long as that person did not take part in a prior hearing on the action or recommendation being challenged. The appeal board may select

an attorney to assist it in the proceeding, but that attorney shall not be entitled to vote with respect to the appeal.

5.    Appeal Procedure

The proceedings by the appeal board shall be in the nature of an appellate review based upon the record of the proceedings before the Hearing Committee. However, the appeal board may accept additional oral or written evidence, subject to a foundational showing that such evidence could not have been made available to the Hearing Committee in the exercise of reasonable diligence, and subject to the same rights of cross-examination or confrontation that are provided at a hearing. The appeal board shall also have the discretion to remand the matter to the Hearing Committee for the taking of further evidence or for clarification or reconsideration of the Hearing Committee's decision. In such instances, the Hearing Committee shall report back to the appeal board within such reasonable time limits as the appeal board imposes. Each party shall have the right to be represented by legal counsel before the appeal board, to present a written argument to the appeal board, to personally appear and make oral argument and respond to questions in accordance with the procedure established by the appeal board. After the arguments have been submitted, the appeal board shall conduct its deliberations outside the presence of the parties and their representatives.

6.    Decision

Within thirty (30) days after the submission of arguments as provided above, the appeal board shall render a decision in writing and shall forward copies thereof to each side involved in the hearing. The appeal board may affirm, reverse or modify the decision of the Hearing Committee, and its decision shall constitute the final decision of the hospital. Any recommendation affirmed by the appeal board shall become effective immediately.

T.    Right to One Hearing

No practitioner shall be entitled to more than one (1) evidentiary hearing and one (1) appellate review on any adverse action or recommendation.

## ARTICLE IX
## OFFICERS

9.1    OFFICERS OF THE MEDICAL STAFF

A.    Identification

The officers of the medical staff shall be the president, vice president, immediate past president and secretary-treasurer.

B.    Qualifications

Officers must be members of the active medical staff at the time of their nominations and election, and must remain members in good standing during their term of office. Failure to maintain such status shall create a vacancy in the office involved.

C.    Nominations

1.    The medical staff shall provide for elections every two (2) years. The medical staff election year shall begin February 1. A nominating committee consists of the current president, the vice-president, two other members of the MEC appointed by the president, and three (3) members chosen by the active medical staff at its annual closed staff meeting. The president shall appoint the chairman of the nominating committee. The nominating committee shall nominate one or more nominees for each office to be filled. The MEC shall be notified of all nominations made by the Committee. Nominations shall be mailed to the voting members of the medical staff at least fifteen (15) days prior to sending ballots.

2.    Further nominations may be made for any office by any voting member of the medical staff, provided that the name of the candidate is submitted in writing to the chairman of the nominating committee, is endorsed by the signature of at least ten (10) percent of other members who are eligible to vote, and bears the candidate's written consent. These nominations shall be delivered to the chairman of the nominating committee as soon as reasonably practicable, but at least five (5) days prior to the date of sending ballots.

D.    Elections

The vice-president and secretary-treasurer shall be elected by written ballot mailed to members of the active medical staff. The ballots shall also provide space for a write-in candidate for each office. Three tellers appointed by the president shall count the ballots and report the results to the president. Candidates receiving a simple majority of votes cast shall be deemed elected. Ballots will be returned in sealed envelopes with the hand written signature of the voter for comparison with signatures on file, when necessary.

If no candidate for the office receives a majority vote on the first ballot, a run-off election shall be held promptly between the two candidates receiving the highest number of valid votes cast. In the case of a tie on the second ballot, the majority vote of the MEC shall decide the election by secret written ballot at its next meeting or a special meeting called for that purpose, whichever comes first.

E.    Term of Elected Office

Each officer shall serve a two (2) year term, commencing on the first day of the medical staff year (February 1) following such election. Each officer shall serve in each office until the end of that officer's term, or until a successor is elected, unless that officer shall sooner resign or

be removed from office. At the end of that officer's term, the president shall automatically assume the office of immediate past president and the vice president shall automatically assume the office of president.

F.    Recall of Officer

Any medical staff officer may be removed from office for cause, including, but not limited to neglect or misfeasance in office or failure to satisfactorily discharge the duties of office. Recall of a medical staff officer may be initiated by the Medical Executive Committee or by a petition signed by at least one-third of the members of the medical staff eligible to vote for officers. Recall shall be considered at a special meeting called for that purpose. The grounds for the proposed removal shall be presented to the officer, in writing, at least 10 days prior to the special meeting, and the officer be given the opportunity to address them before the matter is put to vote. Recall shall require a two-thirds vote of the medical staff members eligible to vote for medical staff officers who actually cast votes at the special meeting in person by confidential written ballot marked "for" or "against" removal.

G.    Vacancies in Elected Office

If there is a vacancy in the office of president, the vice president shall serve as president for the remainder of the president's term. If a vacancy in office occurs during the year, other than in the office of the president, the nominating committee shall meet and present at least one nominee to the MEC. Election of the replacement officer shall be by vote of the active medical staff either at a meeting or by mail.

9.2    DUTIES OF OFFICERS

A.    President

The president shall serve as the chief officer of the medical staff. The duties of the president shall include, but not be limited to:

1.    enforcing the medical staff bylaws and rules and regulations, implementing sanctions where indicated, and promoting compliance with procedural safeguards where appointments, summary suspensions, corrective action, hearings or appeals have been requested or initiated;

2.    calling, presiding at, and being responsible for the agenda of all general meetings of the medical staff;

3.    serving as chairman of the MEC;

4.    serving as an ex-officio member on all other medical staff committees except the credentials committee, with vote;

5.    interacting with the administrator and board of trustees in all matters of mutual concern within the hospital;

6.    appointing, in consultation with the MEC, committee members for all
      standing and special medical staff liaison, or multi-disciplinary
      committees, except where otherwise provided by these bylaws and, except
      where otherwise indicated, designating the chairmen of these committees;

7.    representing the views and policies of the medical staff to the board of
      trustees and to the administrator;

8.    being a spokesperson for the medical staff in external professional and
      public relations;

9.    performing such other functions as may be assigned to the president of
      staff by these bylaws of the medical staff, or by the MEC;

10.   serving on liaison committees with the board of trustees and
      administration, as well as outside licensing or accreditation agencies;

11.   receiving and interpreting the policies of the board of trustees as
      transmitted by the administrator, to the medical staff and report to the
      administrator on the performance of the medical staff's responsibility to
      provide medical care and maintain the quality of medical care;

12.   being responsible for assuring that the educational activities of the medical
      staff are adequately assigned to and discharged by appropriate members,
      departments and committees of the medical staff.

B.    Vice-President

The vice-president shall assume all duties and authority of the president in the absence of
the president. The vice president shall serve as chair of the performance improvement
committee, shall be a member of the MEC, and shall perform such other duties as the president
may assign or as may be delegated by these bylaws, or by the MEC.

C.    Immediate Past President

The immediate past president shall serve as chair of the credentials committee, and the
bylaws committee and shall be a member of the MEC, and shall perform such other duties as
may be assigned by the president or delegated by these bylaws, or by the MEC.

D.    Secretary-Treasurer

The secretary-treasurer shall be a member of the MEC. The duties shall include, but not
be limited to:

1.    keeping accurate and complete minutes of all MEC and general medical
      staff meetings;

2.    calling meetings on the order of the president or MEC;

3.     serve as vice chairman of the Utilization Management Committee;

4.     attending to all appropriate correspondence and notices on behalf of the medical staff;

5.     supervise the collection, banking, and accounting for all funds that may be collected in the form of medical staff dues, assessments or application fees and shall render in writing a monthly report of disbursal and collection and, in addition have a yearly audit of the funds with the results of the audit presented to the MEC;

6.     performing such other duties as ordinarily pertain to the office or as may be assigned from time to time by president or MEC.

## ARTICLE X
## CLINICAL DEPARTMENTS AND SERVICES

### 10.1    ORGANIZATION OF CLINICAL DEPARTMENTS AND SERVICES

The medical staff shall be divided into clinical departments. Each department shall be organized as a separate component of the medical staff and shall have a chairman selected and entrusted with the authority, duties, and responsibilities specified in these Bylaws. A department may be further divided, as appropriate, into services which shall be directly responsible to the department within which it functions, and which shall have a service chief selected and entrusted with the authority, duties and responsibilities specified in Section 10.7. When appropriate, the MEC may recommend to the medical staff the creation, elimination, modification, or combination of departments or services.

### 10.2    CURRENT DEPARTMENTS AND SERVICES

The current departments and services are:

A.     Department of Anesthesia

B.     Department of Emergency Medicine

C.     Department of Medicine with services of:

| | | | |
|---|---|---|---|
| 1. | Behavioral Medicine | 7. | Infectious Disease |
| 2. | Cardiology | 8. | Internal Medicine |
| 3. | Dermatology | 9. | Nephrology |
| 4. | Family Practice | 10. | Neurology |
| 5. | Gastroenterology | 11. | Pulmonary Medicine |
| 6. | Hematology/Oncology/ Radiation Oncology | 12. | Neonatology |

D.  Department of Obstetrics and Gynecology

E.  Department of Orthopedic Surgery with services of:

    1.    Foot
    2.    Hand
    3.    Podiatry

F.  Department of Surgery with services of:

| | | | |
|---|---|---|---|
| 1. | Dentistry & Oral Surgery | 6. | Plastic Surgery |
| 2. | General Surgery | 7. | Thoracic & Cardiac Surgery |
| 3. | Neurosurgery | 8. | Urology |
| 4. | Ophthalmology | 9. | Vascular Surgery |
| 5. | Otolaryngology | | |

G.  Department of Hospital Services with services of:

    1.    Diagnostic Imaging
    2.    Pathology

## 10.3  ASSIGNMENT TO DEPARTMENTS AND SERVICES

Each member shall be assigned membership in at least one department, and to a service, if any, within such department, but may also be granted membership and/or clinical privileges in other departments or services consistent with practice privileges granted.

## 10.4  FUNCTIONS OF DEPARTMENTS

The general functions of each department shall include:

A.  conducting patient care reviews for the purpose of analyzing and evaluating the quality and appropriateness of care and treatment provided to patients within the department. The department shall routinely collect information about important aspects of patient care provided in the department, periodically assess this information, and develop objective criteria for use in identifying problem areas and opportunities for the improvement of patient care.

Patient care reviews shall include all clinical work performed under the jurisdiction of the department, regardless of whether the member whose work is subject to such review is a member of that department;

B.  recommending to the MEC criteria for the delineation of clinical privileges and the performance of specified services within the department;

C.  conducting, participating and making recommendations regarding continuing education programs pertinent to departmental clinical practice;

D.    reviewing and evaluating departmental adherence to:

    1.    department rules and regulations and
    2.    sound principles of clinical practice;

E.    coordinating patient care provided by the department's members with nursing and ancillary patient care services;

F.    submitting written reports to the MEC concerning:

    1.    the department's review and evaluation activities, actions taken thereon, and the results of such action; and

    2.    recommendations for maintaining and improving the quality of care provided in the department and the hospital;

G.    meeting at least twice a year for the purpose of considering patient care review findings and the results of the department's other review and evaluation activities, as well as reports on other department and staff functions;

H.    establishing such committees or other mechanisms as are necessary and desirable to perform properly the functions assigned to it, including proctoring protocols;

I.    taking appropriate action when important problems in patient care and clinical performance or opportunities to improve care are identified;

J.    accounting to the MEC for all professional and medical staff administrative activities within the department;

K.    establishing such committees as may be necessary or appropriate to conduct department functions; and

L.    formulating recommendations for departmental rules and regulations reasonably necessary for the proper discharge of its responsibilities subject to the approval by the MEC and the board of directors.

10.5  FUNCTIONS OF SERVICES

    Subject to approval of the MEC, each service shall perform the functions assigned to it by the department chairman. Such functions may include, without limitation, retrospective patient care reviews, evaluation of patient care practices, credentials review and privileges delineation,

and continuing education programs. The service shall transmit regular reports to the department chairman on the conduct of its assigned functions.

10.6    DEPARTMENT CHAIR

A.    Qualifications

Each department shall have a chair and vice-chair who shall be members of the active medical staff and shall be board certified by their specialty board or affirmatively established through the privilege delineation process that they are possessed of comparable competence, and qualified by training, experience and demonstrated ability in at least one of the clinical areas covered by the department.

B.    Selection

Department chair shall be elected every three (3) years by those members of the department who are eligible to vote for general officers of the medical staff. Vice-chair shall be nominated by the department chair and voted on by members of the department. Election of the department chair shall be so arranged that the chairmen of at least two (2) departments shall be elected annually.

For the purpose of this election, each department chair, or designee, shall appoint a nominating committee of three (3) members at least sixty (60) days prior to the election. The recommendations of the nominating committee of one or more nominees for each office shall be circulated to the voting members of each department at least thirty (30) days prior to the election. Nominations also may be made by any voting member, in writing to the chair of the Nominating Committee and must bear the candidate's written consent. The candidate obtaining the majority vote of those cast will be elected. Election of department chair and vice-chair shall be subject to ratification by the MEC. If the MEC rejects the electees of the department, the department shall revote. If upon revote there is at least a two-thirds (2/3) majority of those department members eligible to vote in favor of the electees, that name shall be resubmitted and accepted by the MEC. If an electee does not receive two-thirds (2/3) majority, then the department shall be required to hold another election according to the preceding provisions. Vacancies due to any reason shall be filled for the unexpired term through special election by the respective department with such mechanisms as that department may adopt.

C.    Term of Office

Each department chair and vice-chair shall serve a three (3) year term which coincides with the medical staff year or until their successors are chosen, unless they shall sooner resign, be removed from office, or lose their medical staff membership or clinical privileges in that department. Department officers shall be eligible for two consecutive terms. Departments may propose alternative terms of office for chair and vice-chair for good cause. After approval by a two-thirds (2/3) majority of the members voting at the MEC and approval by the board of trustees, the alternative terms will be established in the department rules and regulations.

D.     Removal

After election and ratification, removal of department chair and vice-chair from office may occur by a two-thirds (2/3) vote of the MEC or by two-thirds (2/3) vote of the department members eligible to vote.

Because department chairs/(vice chairs) are elected by the medical staff, and occupy their respective leadership positions based on subjective factors involving the trust and confidence of their peers, the sole condition for their removal is that the requisite number of members vote for their recall as provided in this paragraph; no statement of charges or cause need be presented or resolved through any hearing process, and no issue other than the ultimate question of whether there shall be a recall need be put to a vote.

E.     Duties

Each chairman shall have the following authority, duties and responsibilities, and the vice-chair, in the absence of the chair, shall assume all of them and shall otherwise perform such duties as may be assigned to him:

1.     act as presiding officer at departmental meetings;

2.     report to the MEC and to the president of the medical staff regarding all professional and administrative activities within the department;

3.     generally monitor and evaluate the quality of patient care and professional performance rendered by applicants for and members with clinical privileges in the department through a planned and systematic process; oversee the effective conduct of the patient care, evaluation, and monitoring functions delegated to the department by the MEC;

4.     develop and implement departmental programs for retrospective patient care review, on-going monitoring of practice, credentials review and privilege delineation, medical education, utilization review, and quality assurance;

5.     be a member of the MEC, and give guidance on the overall medical policies of the medical staff and hospital and make specific recommendations and suggestions regarding the department; and review of outside contract in terms of quality of service affecting patient care;

6.     evaluate and make appropriate recommendations regarding the qualifications of applicants seeking appointment or reappointment and clinical privileges within that department;

7.     conduct, participate in and make recommendations regarding orientation and CME programs pertinent to departmental clinical practice;

8.     endeavor to enforce the medical staff bylaws, rules, and regulations and the department rules and regulations within the department;

9.     recommend to the MEC criteria for delineation of privileges and the performance of specified service with the department;

10.     Recommend a sufficient number of qualified and competent persons to provide care, as appropriate.

11.     Determine the qualifications and competence of department personnel who provide patient care services and who are not licensed independent practitioners, as appropriate.

12.     implement within the department appropriate actions taken by the MEC;

13.     participate in every phase of administration of the department, including cooperation with the nursing service and the hospital administration in matters such as personnel, supplies, special regulations, standing orders and techniques;

14.     assist in the preparation of such annual reports, including budgetary planning, pertaining to the department as may be required by the MEC;

15.     establish committees as reasonably necessary to assist in the discharge of the above functions and appoint members to such committees as may be established by the department;

16.     participate, as warranted, in selecting outside sources for needed services; and

17.     perform such other duties commensurate with the office as may from time to time be reasonably requested by the president or the MEC;

## 10.7   SERVICE CHIEFS

### A.   Qualifications

Each service shall have a chief and associate chief who shall be an active staff member of the service, and shall be board certified by their specialty board or affirmatively established through the privilege delineation process that they are possessed of comparable competence, and shall be qualified by training, experience, and demonstrated current ability in the clinical area covered by the service.

### B.   Selection

With the exception of the Department of Hospital Services, each service chief and associate service chief shall be selected by the department chairman with approval of the MEC. Vacancies due to any reason shall be filled for the unexpired term by the department chairman.

Members of the Hospital Services Department shall elect their service chiefs according to their Service Rules and Regulations.

C.    Term of Office

Service chiefs and associate chiefs shall serve a three-year term which coincides with the medical staff year or until a successor is chosen, unless they shall sooner resign or be removed from office or lose medical staff membership or clinical privilege in that service. Service chiefs and associate chiefs may not hold office for more than two (2) consecutive terms.

D.    Removal

After appointment and ratification, a service chief or associate chief may be removed by the department chairman and the MEC.

E.    Duties

Each service chief shall:

1.    act as presiding officer at service meetings;

2.    assist in the development and implementation, in cooperation with the department chairman, of programs to carry out the quality review, and evaluation and monitoring functions assigned to the service.

3.    evaluate the clinical work performed in the service;

4.    conduct investigations and submit reports and recommendations to the department chairman regarding the clinical privileges to be exercised within his service by members of or applicants to the medical staff; and

5.    perform such other duties commensurate with the office as may from time to time be reasonably requested by the department chairman, the president, or the MEC.

## 10.8    DECISIONS REGARDING OVERLAPPING OF SERVICES

Differences of opinion regarding the overlapping of services provided by departments/services will be adjudicated on an immediate and temporary basis by the President, and on a long term basis by the direction of the MEC.

## 10.9    CONFIDENTIALITY OF DEPARTMENT/SERVICE PROCEEDINGS

All departments and services in the medical staff function and conduct their proceedings, including all meetings at the departmental and service levels, as committees of the medical staff having a responsibility for the evaluation and improvement of the quality of care rendered in the hospital. Accordingly, the minutes, files, records and proceedings of the departmental/ service meetings shall be subject to the confidentiality provisions of Article XIII of these bylaws.

ARTICLE XI
COMMITTEES

11.1    DESIGNATION

With the approval of the MEC, the president shall determine the composition, type and duties of each staff committee. The names and/or description of these committees are elaborated in the rules and regulations of the medical staff. Special or ad hoc committees may be created consistent with these bylaws to perform specified tasks. Unless otherwise specified, the chair and members of all committees shall be appointed by and may be removed by the president, subject to consultation with and approval by the MEC. Medical staff committees shall be responsible to the MEC.

Where appropriate, nursing, administration and other hospital representatives shall be appointed to committees as consultants (ex-officio) unless otherwise indicated in the committee composition.

Medical staff functions covered by appropriate committees include, but are not limited to, executive review, credentialing, medical records, tissue review, utilization review, infection control, pharmacy and therapeutics, and assisting the medical staff members impaired by chemical dependency and/or mental illness to obtain necessary rehabilitation services.

11.2    GENERAL PROVISIONS

A.    Terms of Committee Members

Unless otherwise specified, committee members shall be appointed for a term of one (1) year, and shall serve until the end of this period or until the member's successor is appointed, unless the member shall sooner resign or be removed from the committee.

B.    Removal

If a member of a committee ceases to be a member in good standing of the medical staff, or loses employment or a contract relationship with the hospital, suffers a loss or significant limitation of practice privileges, or if any other good cause exists, that member may be removed by the MEC.

C.    Vacancies

Unless otherwise specifically provided, vacancies on any committee shall be filled in the same manner in which an original appointment to such committee is made; provided however, that if an individual who obtains membership by virtue of these bylaws is removed for cause, a successor may be selected by the MEC.

D.    Quorum

Unless otherwise stipulated in these bylaws, a quorum is constituted by at least three (3) voting members for the purpose of conducting business.

E.    Voting Members

Unless otherwise required by law, provided by these bylaws, or decided by the chair of the affected committee, only physician members of the medical staff committees may vote. The chairman of the committee votes only in the event of a tie vote.

F.    Function

Except as is otherwise expressly provided in these bylaws, committees shall act in an advisory capacity and shall report to the MEC.

G.    Meetings

Except as is otherwise expressly provided in these bylaws, all committees shall meet as often as is necessary for the performance of their duties.

H.    Attendance

Any committee may invite the attendance of any individuals who may be useful to its work. Unexcused absence of a committee member for more than one-half of the scheduled meetings, may be the basis for removal from the committee.

I.    Attendance by Medical Staff Services Director

The Medical Staff Services Director or designee may attend any medical staff committee meeting in order to provide staff support.

J.    Appointment of Hospital Personnel

The president may appoint hospital personnel to any committee to which he/she may make appointments. Such personnel shall only vote and be counted for purposes of establishing a quorum if permitted by the rules of the committee.

K.    Minutes

Minutes shall be maintained of all medical staff committee meetings.

L.    Confidentiality

All information discussed or generated by a medical staff committee shall be subject to the confidentiality provisions of Article XIII of these bylaws.

11.3    MEDICAL EXECUTIVE COMMITTEE

A.    Composition

The MEC shall consist of the following persons:

1.    The officers of the medical staff;

2.      The department chair of Anesthesia, Emergency Medicine, Medicine/Family Practice, Obstetrics and Gynecology, Orthopedics, and Surgery;

3.      Three (3) at-large members of the active medical staff, two from the Department of Medicine/Family Practice (one of which must be a Family Practitioner) and one from the Department of Surgery, who shall be nominated and elected for one (1) two-(2) year term in the same manner and at the same time as provided in Section 10.6-B for the selection of department chair. All of the above positions, with vote.

4.      A representative from Diagnostic Imaging and from Pathology. These representatives shall be appointed according to the rules and regulations of these services. Only one of these members shall have a vote. The representative from Diagnostic Imaging shall vote in even numbered years and the representative from Pathology shall vote in odd numbered years.

5.      The chief executive officer (CEO) of the hospital or his or her designee attends each executive committee meeting on an ex-officio basis, without a vote.

6.      Attendance by other members of the administrative team, without vote, will be agreed upon by the president of the medical staff and the chief executive officer.

B.      Duties

The duties of the MEC shall include, but not be limited to:

1.      representing and acting on behalf of the medical staff in the intervals between medical staff meetings, subject to such limitations as may be imposed by these bylaws;

2.      coordinating and implementing the professional and organizational activities and policies of the medical staff;

3.      receiving and acting upon reports and recommendations from medical staff departments, services, committees, and assigned activity groups, and those recommendations generated through the Hospital wide Performance Improvement programs as set out in the MEC approved PI Plan;

4.      recommending actions to the board of directors on matters of a medical-administrative nature;

5.      through the medical staff bylaws process, review and recommend regarding establishing the structure of the medical staff, the mechanism to review credentials and delineate individual clinical privileges, the organization of quality assurance activities and mechanisms of the medical

staff for termination of medical staff membership and fair hearing procedures, as well as other matters relevant to the operation of an organized medical staff;

6.  evaluating the medical care rendered to patients in the hospital;

7.  participating in the development of medical staff and hospital policy, practice, and planning;

8.  reviewing the qualifications, credentials, performance and professional competence, and character of applicants and staff members, and making recommendations to the board of trustees regarding staff appointments and reappointments, assignments to departments, clinical privileges, and corrective action;

9.  taking reasonable steps to promote ethical conduct and competent clinical performance on the part of all members including the initiation of and participation in medical staff corrective or review measures when warranted;

10.  taking reasonable steps to develop continuing education activities and programs for the medical staff;

11.  designating such committees as may be appropriate or necessary to assist in carrying out the duties and responsibilities of the medical staff and approving or rejecting appointments to those committees by the president of the medical staff;

12.  reporting to the medical staff at each regular staff meeting;

13.  assisting in the obtaining and maintenance of accreditation;

14.  developing and maintenance of methods for the protection and care of patients and others in the event of internal or external disaster;

15.  appointing such special or ad hoc committees as may seem necessary or appropriate to assist the MEC in carrying out its functions and those of the medical staff;

16.  reviewing the quality and appropriateness of services provided by contract physicians; and

17.  To assure adequate supervision over all budgetary and monetary matters, including:

   a.  establishment of medical staff dues

   b.  collection of funds

    c.    preparation and approval of annual budget

    d.    approval of disbursement of funds

### C.   Meetings

The MEC shall meet as often as necessary, but at least monthly and shall maintain a permanent record of its proceedings and actions.

### D.   Quorum

To conduct business, the MEC must have a majority of its voting members present.

## 11.4  CREDENTIALS COMMITTEE

### A.   Composition

The credentials committee shall consist of not less than seven (7) members of the active staff selected on a basis that will ensure, insofar as feasible, broad representation of major clinical specialties and each of the staff departments and shall include the immediate past president who shall be the Chair.

### B.   Duties

The credentials committee shall:

1.    review and evaluate the qualifications of each practitioner applying for initial appointment, reappointment, or modification of clinical privileges, and, in connection therewith, obtain and consider the recommendations of the appropriate departments;

2.    submit required reports and information on the qualifications of each practitioner applying for membership or particular clinical privileges including recommendations with respect to appointment, membership category, department affiliation, clinical privileges, and special conditions;

3.    investigate, review and report on matters referred by the president of the medical staff or the MEC regarding the qualifications, conduct, professional character or competence of any applicant or medical staff member; and

4.    submit periodic reports to the MEC on its activities and the status of pending applications.

### C.   Meetings

The credentials committee shall meet as often as necessary at the call of its chairman. The committee shall maintain a record of its proceedings and actions and shall report to the MEC.

D.    Quorum

To conduct business, the Credentials Committee must have a majority of its voting members present.

11.5    NOMINATING COMMITTEE

A.    Composition

The committee shall consist of the current president, the vice-president and two (2) other members of the MEC appointed by the president and three (3) members chosen by the active medical staff at its annual closed staff meeting. The president shall appoint the chair of the nominating committee.

B.    Duties

The duties involved in presenting to the staff qualified candidates for elective positions in the staff organization are to:

1.    consult with the MEC and administration concerning the qualifications and acceptability of prospective nominees.

2.    submit, at the appropriate times as provided in these bylaws, one or more nominations for: (a) each elective office of the staff to be filled, and (b) such other elective positions as may be required by these bylaws.

C.    Meetings

The committee shall meet at least every two (2) years. It shall maintain a written record of its recommendations and shall report to the MEC.

**ARTICLE XII**
**MEETINGS**

12.1    MEETINGS

A.    Regular Meetings

The active staff shall meet annually and the general medical staff shall meet biennially. The date of these meetings is set and the meetings are called by the president.

B.    Order of Business

The order of business at meetings of the medical staff shall be determined by the president of the medical staff and MEC. The agenda shall include, insofar as feasible:

1.    reading and acceptance of the minutes of the last and all special meetings held since the last annual meeting;

**EXHIBIT  D**

CONFIDENTIAL

5412 Tree Side Dr.
Carmichael, CA 95806
November 14, 2003

Dr. Gretchen Kunitz
c/o. Renee Russell, CMSC, Manager
Medical Staff Services
Alta Bates Medical Center
2450 Ashby Avenue
Berkeley, CA 94705

Dear Dr. Kunitz,

Thank you for asking me to evaluate cardiac operations preformed at Alta Bates in 2002.

My review of records to date is summarized in the appended confidential notes. The group is complex with numerous increased risk factors. Some aspects of the review could be expanded but would take considerable time. For instance listing medications, fluids, vital signs, lab studies, observations may give clues to fluid balance and cardiac performance. I did not proceed on that task or others that would be necessary to establish practice patterns anticipated to improve results.

Enclosed invoice details hours dedicated to the review. Please let me know if there are questions or need for further consideration. I will maintain the records until you indicate whether you wish them returned or destroyed.

Very truly yours,

*Forrest Junod*

Forrest Junod, M.D.

RECEIVED
NOV 1 9 2003
ALTA BATES
MEDICAL STAFF SERVICES

Chart review of ten cases submitted for examination documented nine deaths and one complicated late discharge for AB cardiac surgery in 2002. For the year, 46 bypass patients had 'off-pump' procedures. Only 6 cases using cardiopulmonary bypass were reported by independent source; however, seven of the patients reviewed had pump support.

Three patients submitted for review were operated by 'off-pump' technique. Two deaths (75-84-64/63-63-35) and one long complicated hospital stay led to discharge of patient (36-22-05) after 24 days. Gross mortality for 'off-pump' procedures is 2 of 46 for just over 4% mortality. The three patients reviewed had multiple risk factors, e.g., emergent, elderly, chronic renal failure, pre-op myocardial infarct, atrial fibrillation, mitral valve disease, low ejection fraction and previous CVA. The litany of complications for the three patients ending in two mortalities for the whole 'off-pump' group probably falls well within expectation for comparable patients.

A brief summary of findings follows.

Patient (63-63-35) 88 y. o. m. showed significant mitral regurgitation, an ejection fraction of 20% and required pre-op intra-aortic balloon support for multi-vessel coronary artery disease including left main stenosis. At 88 years of age and with end-stage renal failure, he represented a formidable risk especially in an emergent setting. It is doubtful that he would have survived even with more grafts and mitral valve replacement.

Patient (75-84-64) 60 y. o. m. presented with history of heavy drinking, atrial fibrillation and syncope in the throes of a myocardial infarction (elevated enzymes and non-Q wave infarct). Ventricular hypo kinesis was also noted pre-op. Although cath demonstrated multi-vessel disease (60% L main, 90% L circumflex, 60% distal marginal, 90% L ant. descending and 75% R coronary stenosis), only 2 bypasses were completed in a four and a half operation. Less than satisfactory 'revascularization' in high-risk patient predicted outcome.

Patient (36-22-05) 70 y. o. f. survived prolonged hospital course and was discharged home. Previous 'successful angioplasty' of stenotic L coronary artery was followed at interval by readmission for respiratory distress and a diagnosis of congestive heart failure. Cath findings of LAD and two Marginal branches with recurrent stenosis as well as an occluded R coronary artery was treated with two bypasses in a four hour operation. The thoracic artery was unsatisfactory for use as conduit. Some vessels were deemed too small for bypass. Her course was complicated by hemorrhage requiring re-exploration 3 days post-op. In addition, a diagnosis of Heparin Induced Thrombocytopenia contributed to need for large volume of blood and platelets. Length of operation (4 hours) and the incomplete revascularization (2 of 4 potential targets) may be critical issues contributing to her course. However, the Heparin Induced Thrombocytopenia and uncertainty regarding changes in patient's status, notifications, observations and tests prior to repeat thoracotomy confound 'evaluation' of re-exploration timing and cause.



Seven of the charts showed evidence of cardiopulmonary bypass pump support and all died. This record represents disastrous results in spite of the patients complicating factors. All patients had diagnoses that require cardiopulmonary bypass to accomplish the procedures indicated for surgical treatment. Patient (03-67-96) perhaps started as an off-pump procedure but was done by beating heart technique with pump support. Perhaps this patient explains the discrepancy in numbers.

To summarize briefly, the following cases were reviewed:

      (04-50-53) 84 y. o. m. -- CABG and Maze Procedure (by Ablation)
      (06-34-88) 77 y. o. f. – Aortic Valve Replacement
      (50-36-78) 79 y. o. m. – Aortic Valve Replacement and Repeat CABG
      (26-62-18) 74 y. o. m. – Repeat Coronary Artery Bypass Grafts
      (45-01-62) 77 y. o. m. – Perforated R CA/ Tamponade/ CABG post PCI
      (03-67-96) 77 y. o. m. – CABG
      (08-18-99) 86 y. o. f. – Redo Mitral Valve Replacement

Observations

- All of these patients were old and only one was one year less than 75. Age significantly increases the risk of heart surgery.

- Three of the patients had previous heart surgery. Another strong risk factor is repeat operation. Of these 2 required valve replacement that necessitates open heart with pump and also increases risk of operation.

- One patient was operated emergently because of a misadventure with Jo-Med Stent in the cath lab with hemorrhage and tamponade. In our experience this rare complication carries about 50 % mortality.

- Patient (08-18-99) 86 y. o. f. required operation for a failed mitral valve prosthesis and had an unusual complication of hemorrhage from the endotracheal tube following the administration of heparin. Pulmonary insufficiency and pneumonia led to prolonged ventilation. Renal failure and dialysis along with arrhythmia and pacer implant also complicated her course. Death occurred 53 day into her hospitalization and probably most represents the high risk for complication and death for age and disease process rather than mismanagement.

2



The following are criticisms of management, judgment or technique with supportive reasoning.

Patient (04-50-53) had Coronary Artery Bypass but was supported for approximately three and a half hours for a Maze procedure to treat Chronic Atrial Fibrillation as part an eight and a half hour procedure. The addition of the Maze procedure represents fallacious judgment especially in light of current studies showing rate control and anticoagulation are as effective as rhythm control. For an 84 y. o. prudent judgment suggests only rapid revascularization. Prolonging the operation to use ablation techniques resulted in a hypotensive, anuric patient on the intra-aortic balloon pump that required re-operation for bleeding. What was the compelling reason to undertake this treatment other than to gain experience in the Maze procedure?

Patient (06-34-88) had an appropriate operation with cross clamp and pump times that are satisfactory. However, intra-cardiac air was noted on echo following the procedure, which was followed by cardiac decompensation, hemorrhage and a CVA. Inadequate air removal from the heart and pulmonary vessels led to this scenario and the eventual death of the patient.

Patient (50-36-78) presented with Aortic Stenosis 5 years after CABG. In addition he was noted at operation to have a calcified aorta, bilateral carotid stenosis. A cannula was placed in the R subclavian artery for arterial perfusion. Bypass time of nearly 4 and half hours and cross clamp time of over 3 hours contributed to congestive heart failure and bleeding complications. Since his chest was left open, it may be presumed that the heart was edematous and closure not tolerated. The circumstances suggest inadequate fluid management aggravated by the prolonged extra-corporeal circulation. In order to accomplish the operation it is sometimes necessary to continue the operation beyond times desired or contemplated at the outset. Pump runs of greater than 2 hours and similar cross clamp times significantly increase risk of operation. Risk rises almost exponentially after that time.

For the patients requiring bypass for arteriosclerosis and stenotic coronary arteries most appeared to have more vessels to be bypassed than were accomplished. How bypass target selection is made, facility and feasibility should increase with experience. Because of the length of operations, the time required to complete graft connections appear longer than average. At least one patient had limited conduit with internal thoracic artery of limited value and previous varicose vein stripping, was consideration given to mapping the leg or arm veins as possible sources of conduit? Preparation of the radial artery requires care and inexperience with vessel may affect its usefulness.

3.



Myocardial preservation in all cross clamp cases was attempted yet the adequacy of the process is suspect as there was evidence of poor cardiac output. In the initial review schematic evaluation with concurrent cardiac output, volume, pressures and gasses was not done in the interest of time. Also without post op enzymes and cardiac output evaluations there is little to say about the source of problems.

The group of patients was high risk and demonstrated intra and post-op complications. Among the complications were low cardiac output requiring IABP support (3), open chest post procedure (2), hemorrhage and tamponade (2+), prolonged ventilation (2 of 3 longer term survivors), atrial fibrillation (2), coagulopathy (2+), dialysis (2 of 3), tracheostomy (1 of 3), ischemic bowel, stroke, brachial plexis injury, and hemofiltration. Only 4 survived more than a few hours.

Regarding the operative technique, it is difficult to translate the record into specifics about flow rates, cardiac output, fluid management, oxygenation, myocardial protection, and anesthetic affects on this set of patients. Generally there must be a good communication and understanding with all members of the operative team in order to accomplish the above procedures with a minimum of risk. The infrequency of cardiopulmonary bypass practiced in the hospital contributes to unfamiliarity with steps needed to accomplish these procedures routinely and safely. If these patients had been part of a much larger group of pump procedures a number might well have died. Therefore, given the high risk associated with the reviewed patients, poor results might be expected but are not acceptable as standard of care.

4

EXHIBIT  E

Profile: CARDIOTHORACIC SURGERY PROFILE
Provider: ENNIX,COYNESS L (CO-1720)
ABSMC: Summit campus
Service: SURGERY    Specialty: SURG-CARDIOTHORACIC

| Indicator | Bench Mark | 2000 | 2001 | 2002 | 2003 | Jan-Feb 2004 | MDTotal | CVS Group | CT Surgery | %GROUP | %CT SURG |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL CARDIAC SURGERY PT COUNT(CABG/VALVE) | | 57 | 50 | 62 | 116 | 13 | 298 | 1220 | 3503 | 24.4% | 8.5% |
| CDB125 - Primary CABG Freq/1000 ACA (numerator) | | 6 | 16 | 27 | 45 | 3 | 96 | 480 | 1721 | 21.5% | 5.8% |
| TOTAL MORTALITY AFTER OHS | | | | | | | | | | | |
| %MORTALITY AFTER OHS (In the hospital) | | 4 | 3 | 2 | 6 | 2 | 17 | 45 | 82 | 21.9% | 20.7% |
| | | 7.017 | 6.00 | 3.226 | 5.172 | 15.385 | 5.705 | 3.69% | 2.282 | | |
| OM-TOTAL MORTALITY AFTER ISOLATED CABG | | 0 | 2 | 1 | 1 | 0 | 4 | 24 | 44 | 16.7% | 9.1% |
| %MORTALITY AFTER CABG | | 0 | 11.111 | 3.704 | 2.222 | 0 | 4.04 | 5.22% | 2.557 | | |
| TOTAL RETURN TO SURG AFTER OHS(OM&FCE) | | 4 | 5 | 7 | 7 | 0 | 23 | 61 | 172 | 37.7% | 13.4% |
| %RETURN TO SURG AFTER OHS | | 7.017 | 10.00 | 11.29 | 5.034 | 0 | 7.72 | 6.00% | 4.787 | | |
| ENCHATROGENIC CVA AFTER OHS | | 2 | 3 | 2 | 0 | 0 | 7 | 22 | 62 | 31.8% | 11.3% |
| %Acute CVA complication after OHS | 2.70% | 3.509 | 4.00 | 4.859 | 0 | 0 | 2.349 | 1.00% | 1.447 | | |
| STERNAL WOUND INFECTIONS, DEEP | | 0 | 0 | 0 | 3 | 0 | 3 | 17 | 38 | 17.6% | 7.9% |
| STERNAL WOUND INFECTIONS, SUPERFICIAL | | 0 | 0 | 0 | 0 | 0 | 0 | 14 | 98 | 14.3% | 14.3% |
| %NOSOCOMIAL STERNAL WOUND INFECTIONS | <3.57-5.68 | 0 | 2 | 0 | 3.448 | 0 | 1.978 | 1.700 | 1.447 | | |
| %Deep sternal wound infections after OHS | | 0 | 0 | 0 | 2.586 | 0 | 1.383% | 1.385% | 1.058 | | |
| DONOR SITE INFECTIONS - Cardiac surgery | | 1 | 2 | 4 | 0 | 0 | .007 | .17 | .49 | 34.7% | 14.3% |
| %NOSOCOMIAL DONOR SITE INFECTIONS | | 1.754 | 4 | 6.452 | 0 | 0 | 2.349 | 1.393% | 1.964 | | |
| INF/Ventilator related pneumonia after OHS | <.27 | 1 | 0 | 2 | 0 | 0 | 3 | .13 | .41 | 23.1% | 7.3% |
| %Ventilator related pneumonia after OHS | | 1.754 | 0 | 3.226 | 0 | 0 | 1.007 | 1.050% | 1.141 | | |
| CDB128 - Primary CABG ALOS | | 6.833 | 7.778 | 7.741 | 6.622 | 8 | 8.101 | NA | 7.618 | | |
| TOTAL PATIENTS WITH OA EVENTS | | 9 | 5 | 2 | 11 | 1 | 28 | 99 | 189 | 28.3% | 14.8% |
| TOTAL OA EVENTS (indicators) | | 10 | 10 | 3 | 13 | 1 | 37 | 116 | 212 | 30.3% | 17.5% |
| TOTAL EVENTS CLOSED BY PHYSICIAN | | 5 | 6 | 3 | 6 | 0 | 59 | 1 | .104 | 37.3% | 21.2% |
| TOTAL OA EVENTS TO COMMITTEE | | 0 | 3 | 0 | 3 | 0 | .13 | .3 | .101 | 64.3% | 31.6% |
| STD OF CARE-NOT DETERMINED | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% | 0.0% |
| STD OF CARE-MET (No care issues) #indicators | | 5 | 8 | 2 | 8 | 0 | 100 | 3 | 3 | 38.3% | 21.1% |
| STD OF CARE-MINOR CARE ISSUE | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% | 0.0% |
| STD OF CARE-MODERATE/TRENDED (#indicators) | | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0.0% | 0.0% |
| STD OF CARE-NOT MET (Class 3&4) | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% | 0.0% |
| #CASES - STD OF CARE NOT MET | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% | 0.0% |

*Jan-Feb 2004 cases not reviewed yet by peer review

3/30/2004