G. SCOTT EMBLIDGE, State Bar No. 121613
emblidge@meqlaw.com
RACHEL J. SATER, State Bar No. 147976
sater@meqlaw.com
ANDREW E. SWEET, State Bar No. 160870
sweet@meqlaw.com
MOSCONE, EMBLIDGE, & QUADRA, LLP
220 Montgomery Street, Suite 2100
San Francisco, California 94104-4238
Telephone:    (415) 362-3599
Facsimile:     (415) 362-2006

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX JR., M.D.,<br><br>        Plaintiff,<br><br>   vs.<br><br>ALTA BATES SUMMIT MEDICAL CENTER,<br><br>        Defendants. | Case No. C 07-2486 WHA<br><br>**DECLARATION OF COYNESS L. ENNIX JR., M.D. IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:**       **April 24, 2008**<br>**Time:**      **8:00 a.m.**<br>**Dept:**      **Ctrm. 9, 19th Floor**<br>**Judge:**     **Hon. William H. Alsup** |

I, Coyness L. Ennix Jr., M.D., declare:

1.      I am the plaintiff in this case.  I have personal knowledge of the facts stated in this declaration.

2.      I am a certified cardiac and thoracic surgeon and the only African American lead cardiac surgeon at Alta Bates Summit.  I obtained certification by the American Board of Surgery in 1978 and the American Board of Thoracic and Cardiac Surgery in 1980, 1989 and

1

1    1999. I have taught and lectured extensively in my field of cardiac surgery and have held

2    hospital administrative positions in this field.

3        3.    In early 2004, after substantial research and training, I began performing some

4    cardiac surgeries using a new, minimally invasive process ("MIV"), rather than the standard

5    process of opening a patient's chest. In preparation for performing the MIV procedures, I

6    underwent substantial training and preparation, including observing eight to ten procedures at

7    hospitals across the country including the Cleveland Clinic and New York University Medical

8    Center, taking two instructional courses and reading extensively in the literature relevant to the

9    procedure. I have reviewed the deposition testimony of Drs. Hon Lee and Leigh Iverson

10   regarding their preparation for MIV procedures; I underwent substantially the same training,

11   planning and preparation to perform the MIV procedure as those doctors did.

12       4.    Shortly after I performed four initial MIV procedures, Dr. William Isenberg, the

13   President of the Medical Staff at Summit Hospital, and Dr. Steven Stanten, the Chief of the

14   Department of Surgery, asked me to cease performing the MIV procedures out of a professed

15   concern with long operating times and the outcomes in these cases. I agreed.

16       5.    The Ad Hoc Committee ("AHC") that reviewed my MIV cases sent the four MIV

17   cases to an outside peer review company, the National Medical Audit ("NMA"), and also sent to

18   the NMA six more of my cases – all involving deaths, and all previously reviewed and cleared of

19   standard of care issues by the Cardiothoracic Peer Review Committee. It did so even though

20   ABSMC's established peer review process – reviews by a nurse, a physician, and finally the

21   Cardiothoracic Peer Review Committee if necessary – found no concerns regarding patient

22   safety as to my practice.

23       6.    After Dr. Isenberg summarily suspended me in reliance on the unvetted NMA

24   report and bogus allegations that I had not made rounds on a post-operative patient, I requested

25   permission to assist other surgeons during the remaining duration of my peer review in order to

26   maintain my skills and some income stream. The MEC agreed.

27

2

28   | ENNIX DECLARATION IN OPPOSITION TO | Case No. C 07-2486 WHA |
     | MOTION FOR SUMMARY JUDGMENT | |

7.    The AHC did not meet with me until after the NMA had returned its report and Dr. Isenberg had summarily suspended me. Dr. Isenberg was an active participant in questioning witnesses at the AHC, and asked most of the questions in the AHC's examination of me.

8.    Prior to a meeting of the MEC regarding the NMA report and AHC's recommendations, I submitted to the MEC reviews of the ten cases by nationally renowned cardiac surgeons Dr. Bruce Reitz of Stanford and Dr. Bruce Lytle of the Cleveland Clinic, among others, who cleared the ten cases of standard of care issues. I also submitted reports by medical statisticians debunking the bogus statistics the NMA and the AHC offered to justify their conclusions. These reports are attached to the Sweet declaration submitted herewith.

9.    The entire peer review process lasted over two years and caused me a substantial loss of income, irreparable damage to my reputation and practice, and significant emotional distress.

10.    As a member of the ABSMC Medical Staff, I pay annual membership fees to Summit and agree to abide by the Medical Staff bylaws. Additionally, ABSMC receives payments from my patients and/or their insurers in connection with services I have provided at ABSMC . True and correct copies of Medical Staff membership fees statements and checks evidencing payment of annual membership fees and hospital fees are attached hereto as Exhibit A.

11.    When I agree to operate on a patient, and the patient agrees to use my services, the patient signs a consent form. A true and correct copy of an example of such forms is attached hereto as Exhibit B. These forms evidence agreements to treat patients on which I could not perform due to my first summary suspension. If a patient or its insurer fails to pay me for services, then I would send the bill out for collection.

12.    When ABSMC summarily suspended me, I could not perform several surgeries that I had previously agreed to perform. I also could not enjoy the benefits of my Medical Staff membership. When I was permitted to surgically assist, I recovered some, but not all, of those

3

rights and privileges, in that I still could not serve as lead surgeon. Even the period of proctorship limited the benefits of my Medical Staff membership, in that it was burdensome to find doctors willing to serve as proctors and to ensure their availability during scheduled surgeries.

13.    A true and correct copy of the letter from the California Medical Board regarding its review of my case is attached hereto as Exhibit C.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge and that this declaration was signed in Oakland, California.

Dated:  March 26, 2008                    _____
                                                                  /s/
                                                      Coyness L. Ennix Jr., M.D.

ENNIX DECLARATION IN OPPOSITION TO                    Case No. C 07-2486 WHA
MOTION FOR SUMMARY JUDGMENT

# EXHIBIT A



**Alta Bates Summit Medical Center**

A Sutter Health Affiliate

Alta Bates Medical Staff
Tel: (510) 204-1521 Fax: (510) 204-1221
2450 Ashby Ave., Berkeley, CA 94705

December 19, 2006

Coyness L. Ennix Jr., M.D.
3300 Webster St. #404
Oakland, CA 94609

### RE: 2007 Annual Alta Bates Medical Staff Dues Invoice

The dues structure approved by the Medical Executive Board for 2007 is as follows:

Active, Courtesy, Provisional: $275
Affiliate: $137.50
Allied Health Professionals: $150

Your current staff category: **Provisional**
AMOUNT DUE: **$275.00**
Date Due: **January 31, 2007**

We are not able to accept credit card payments. You are responsible for forwarding this notice to the entity paying dues on your behalf. Please see instructions below.

You may sign and return the statement below if you ***do not*** wish to remain on the Medical or Allied Health Professional Staff.

*I do not wish to remain on the Medical or Allied Health Professional Staff.*

E002477



**SUMMIT**
DICAL CENTER

November 15, 2006

*Sent 12/14* (handwritten)

Coyness L. Ennix Jr., M.D.
3300 Webster Street Suite #404
Oakland, CA 94609

Dear Dr. Ennix:

This is your annual notification of Medical Staff dues. The Medical Executive Committee has established the year 2007 dues at $275.00 for all members of the Summit Medical Staff, with the exception of Honorary and Retired members.

Please be sure that your check clearly indicates the member's name(s) covered by the check and submit payable to the Summit Medical Staff.

Please be sure we have your payment no later than March 1, 2007. Thank you in advance for your cooperation. A return envelope is provided for your convenience.

Very truly yours,

Michael Kim, M.D.
Secretary/Treasurer


If you do not plan to maintain your privileges at Summit and you wish to resign your membership at this time, please do so by signing below.

_____


Fredric Herskowitz, M.D.   •   Philip Rich, M.D.   •   Michael Kim, M.D.   •   William Isenberg, M.D., Ph.D.
*President*                    *Vice-President*        *Secretary/Treasurer*       *Immediate Past President*
Dues.rpt
350 Hawthorne Avenue • Oakland, California 94609

E002476

3300 Webster St., Ste 404
Oakland, CA. 94609
510 465-5500

2969 Broadway
Oakland, CA. 94604-0898
90-3895/1211

12/4/06

PAY TO THE
ORDER OF  Summit Medical Center                    $ 275.00

two hundred Seventy five and  no/100  ————  DOLLARS

MEMO  Medical Staff dues

G. J. Ennix Jr

"008575"  "121138958":0120008198"

---

Coyness L. Ennix, Jr., M.D., Inc.
3300 Webster St., Ste 404
Oakland, CA. 94609
510 465-5500

SUMMIT BANK
2969 Broadway
Oakland, CA. 94604-0898
90-3895/1211

8576

12/4/06

PAY TO THE
ORDER OF  Medical Xchange Ans. Service          $ 135.00

One hundred thirty five and no/100  ————  DOLLARS

MEMO  Invoice 11644

G. J. Ennix Jr

"008576"  "121138958":0120008198"

---

Coyness L. Ennix, Jr., M.D., Inc.
3300 Webster St., Ste 404
Oakland, CA. 94609
510 465-5500

SUMMIT BANK
2969 Broadway
Oakland, CA. 94604-0898
90-3895/1211

8577

12/4/06

PAY TO THE
ORDER OF  Western Thoracic Surgical Association    $ 575.00

five hundred Seventy five and no/100  ————  DOLLARS

dues

G. Ennix Jr

"008577"  "121138958":0120008198"

E002473

---

3300 Webster St., Ste 404
Oakland, CA. 94609
510 465-5500

SUMMIT BANK
2969 Broadway
Oakland, CA. 94604-0898
90-3895/1211

8557

11-6-06

TO THE
ORDER OF  *Prematic Service Corporation*                $ 80.40

eighty and 40/100                    DOLLARS

MEMO  Acct # JE44068

⑈008557⑈ ⑆121138958⑆01 20008198⑈

---

Coyness L. Ennix, Jr., M.D., Inc.
3300 Webster St, Ste 404
Oakland, CA. 94609
510 465-5500

SUMMIT BANK
2969 Broadway
Oakland, CA. 94604-0898
90-3895/1211

8559

11-6-06

PAY TO THE
ORDER OF  *Alta Bates Summit Medical Center*             $ 872.88

eight hundred Seventy two and 88/100             DOLLARS

MEMO  Outpatient Services
Pt #

⑈008559⑈ ⑆121138958⑆01 20008198⑈

---

Coyness L. Ennix, Jr., M.D., Inc.
3300 Webster St, Ste 404
Oakland, CA. 94609
510 465-5500

SUMMIT BANK
2969 Broadway
Oakland, CA. 94604-0898
90-3895/1211

8558

11-6-06

PAY TO THE
ORDER OF  *City of Oakland*                             $ 47.00

forty Seven and no/100                       DOLLARS

Citation# 154020935

⑈008558⑈ ⑆121138958⑆01 20008198⑈

**REDACTED**

E002443

3300 Webster St., Ste 404
Oakland, CA. 94609
510 465-5500

2969 Broadway
Oakland, CA. 94604-0898
90-3895/1211

9-28-06

Y TO THE
ORDER OF   Alta Bates Medical Staff      $ 137.50

One hundred thirty seven and 50/100 —      DOLLARS

MEMO   Annual Dues

Coyness L. Ennix Jr.

⑈008527⑈ ⑆121138958⑆ 0120008198⑈

---

Coyness L. Ennix, Jr., M.D., Inc.
3300 Webster St., Ste 404
Oakland, CA. 94609
510 465-5500

SUMMIT BANK
2969 Broadway
Oakland, CA. 94604-0898
90-3895/1211

8526

9-28-06

PAY TO THE
ORDER OF   Prematic Service Corporation   $ 81.64

eighty one and 64/100 —      DOLLARS

MEMO   Account # JE44068

Coyness L. Ennix Jr.

⑈008526⑈ ⑆121138958⑆ 0120008198⑈

---

Coyness L. Ennix, Jr., M.D., Inc.
3300 Webster St., Ste 404
Oakland, CA. 94609
510 465-5500

SUMMIT BANK
2969 Broadway
Oakland, CA. 94604-0898
90-3895/1211

8510

9-28-06

PAY TO THE
ORDER OF   Cingular Wireless      $ 132.60

One hundred thirty two and 60/100 —      DOLLARS

Acct. # 564664468

Coyness L. Ennix Jr. MD

⑈008510⑈ ⑆121138958⑆ 0120008198⑈

E002396

E002158

**COYNESS L. ENNIX, JR., M.D., INC.**
3300 WEBSTER STREET, SUITE 500
OAKLAND, CA 94609
(510) 465-5000

8232

*Summit Bank*
P.O. Box 898
2969 Broadway
Oakland, CA 94604-0898

90-3895/1211

12/30/05

PAY TO THE
ORDER OF _____ Alta Bates Medical Staff _____ $ 350.00

Three hundred fifty and 00/100 _____ DOLLARS

MEMO Application fee Dr. Ennix          Coyness L. Ennix Jr.

⑈008232⑈ ⑆121138958⑆0120008198⑈

# EXHIBIT B



**SUMMIT**
MEDICAL CENTER
HAWTHORNE AVE. STE.
OAKLAND, CA 94609

**VERIFICATION OF CONSENT
FOR CORONARY INTERVENTION**

Your physician has recommended a procedure to open up one or more of your coronary arteries, which are now blocked. Your doctor should have already explained how this coronary intervention procedure works. To make sure you understand the issues your doctor has discussed with you, this form reviews the procedure and its effects.

The coronary intervention called "angioplasty" may use a balloon, a laser, various mechanical devices, or a combination of these things to open the arteries. During the procedure, small catheters will be placed inside the coronary arteries and these tubes will be used for access during the unblocking procedure. A device known as a "stent" may be placed in the artery to hold the artery open. While undergoing coronary intervention, patients often experience angina, but it usually stops at the end of the procedure.

Complications of the procedure can include heart attack, stroke, life threatening cardiac irregularities, and even death. Blockage can also occur in the leg or arm artery where the catheter is placed. Bleeding may occur, and in rare cases, a blood transfusion may be needed. (This possibility is considered "less than a reasonable possibility" for the purpose of the Paul Gann Blood Safety Act.) Rarely, a surgical procedure may be required to treat complications.

During the procedure medications may be given to relax you and reduce discomfort; this is called "conscious sedation." Conscious sedation has a small risk that you could stop breathing during the procedure. You will be carefully monitored.

The alternatives to coronary intervention are continued medical therapy and coronary bypass surgery. Each of these options has its own risks and benefits and you should discuss these with your physician.

By signing below, you will indicate that you understand the nature of the coronary intervention procedure, that you are aware of its risks, and that you understand the alternatives. Your signature confirms that you are consenting to having coronary intervention performed. If you have second thoughts about having the procedure, do not sign this form. Ask to discuss your options further with your physician.

REDACTED

_____          REDACTED          _____
(Patient Signature)                                                              (Date)

_____                                      _____
(Witness Signature)                                                             (Date)

96-2000-6 (7/00)

**CONFIDENTIAL**

# EXHIBIT C

STATE OF CALIFORNIA -- STATE AND CONSUMER SERVICES AGENCY                    Arnold Schwarzenegger, Governor



**MEDICAL BOARD OF CALIFORNIA**
PLEASANT HILL DISTRICT OFFICE
3478 BUSKIRK AVENUE, SUITE #217
PLEASANT HILL, CA 94523
(925) 937-1909 fax (925) 937-1964



July 13, 2006

Coyness Ennix, M.D.                          **REDACTED**
3300 Webster Street, Suite 404
Oakland, CA 94609

Dear Doctor Ennix:

The Medical Board of California has concluded its investigation regarding the 805 Business
and Professions Code Section reports filed by Alta Bates Summit Medical Center.  This case
was reviewed by a outside expert.

The expert found no departure from the standard of practice in two of the four cases reviewed
for minimally invasive procedures.  The two cases that the expert found simple departures
read as follows:

> Patient # ▓▓▓▓▓▓
>
> The operative approach was indicated.  The length of operative times was not
> unreasonable, considering the approach and the surgeon's experience, and does not
> represent a violation of the standard of practice.  The amount of IVF administered was
> excessive, and resulted in the subsequent administration of numerous blood products,
> that would, in all likelihood, not have been otherwise necessary.  That is the
> responsibility of both the anesthesiologist, as well as the surgeon, and represents a
> simple departure from the standard of practice.  The remainder of the intra and
> postoperative care are within the realm of surgeon experience and preference.
>
> Patient # ▓▓▓▓▓▓
>
> The failure to recognize and prevent the administration of the large volume of
> crystalloid to the patient intraop constitutes a simple departure from the standard of
> practice.  The remainder of the allegations are unfounded, and no other departures
> from the standard of practice can be clearly demonstrated in this case.

After receipt of the supplemental 805 reports filed by Alta Bates Summit Medical Center,
additional records were obtained and reviewed by our expert.  Six additional records were
reviewed by the expert who found the following:

Page 2                                          **REDACTED**

Patient #█████████

The delay in transporting this patient to surgery from the time the diagnoses were made to the time of the operative interventions probably contributed to her poor outcome and represents a simple departure from the standard of practice. The remainders of the case including preoperative, operative, and postoperative management were within the realm of physician experience, training, and bias.

Summary Conclusion

A simple departure in the standard of practice could be identified in one case. The remainder of the cases had no evidence of deviations in the standard of practice by Dr. Ennix. There is no evidence whatsoever, in these reviewed cases, that the conduct of Dr. Ennix; preoperatively, intraoperatively, or postoperatively, has violated the standard of practice in cardiac surgery.

Based upon the expert reviewer's opinion, this case will be closed and kept on file for a period of five years. In the event that a similar complaint is received, this case may be re-opened.

Sincerely,

Teri Bennett
Senior Investigator
12-2004-158215

cc:  John Etchevers, Esq.