G. SCOTT EMBLIDGE, State Bar No. 121613
emblidge@meqlaw.com
RACHEL J. SATER, State Bar No. 147976
sater@meqlaw.com
ANDREW E. SWEET, State Bar No. 160870
sweet@meqlaw.com
MOSCONE, EMBLIDGE, & QUADRA, LLP
220 Montgomery Street, Suite 2100
San Francisco, California 94104-4238
Telephone:   (415) 362-3599
Facsimile:   (415) 362-2006

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| COYNESS L. ENNIX JR., M.D<br><br>Plaintiff,<br><br>vs.<br><br>ALTA BATES SUMMIT MEDICAL CENTER<br><br>Defendant. | Case No.: C 07-2486 WHA<br><br>**DECLARATION OF ANDREW E. SWEET IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   April 24, 2008<br>Time:   8:00 a.m.<br>Dept.:   Ctrm. 9, 19th Floor<br>Judge:  Hon. William H. Alsup<br><br>Complaint Filed: May 9, 2007<br>Trial Date:   June 2, 2008 |
|---|---|

I, Andrew E. Sweet declare:

1.   I am an attorney licensed to practice in California, admitted to this Court, and an attorney at Moscone, Emblidge & Quadra LLP, attorneys of record for Plaintiff Coyness L. Ennix, Jr. M.D.  I have personal knowledge of the facts stated in this declaration.

2.      Attached hereto as Exhibit A is a true and accurate copy of ABSMC's Racial Composition Data concerning the Summit Medical Staff membership for 2004 through 2006.  ASBMC provided this document to plaintiff to represent its claim as to the racial makeup of the Summit Medical Staff.  The exhibit lists 991 physicians, of which ABSMC identified the race of 547 physicians.   Plaintiff believes that ABSMC's data underestimates the number of Caucasian physicians on the Summit Medical Staff.  However, without conceding its accuracy and for purposes of this Opposition, Plaintiff accepts ABSMC's data regarding the racial make up of the Summit Medical Staff from 2004 through 2006.  Further, for purposes of analyzing this data for evidence of disparate treatment based on race, Plaintiff has eliminated from consideration all but the 547 doctors for which ABSMC attributed a race, treating that set of 547 as if they represented the entire Medical Staff.  Plaintiff believes that this approach underestimates Caucasian physicians, giving the impression that Caucasian physicians make up a smaller percentage of the Medical Staff than they actually do.

3.      A true and accurate accounting of ABSMC's representations in Exhibit A are as follows:  of the 547 physicians identified by race, ABSMC identified 379 as Caucasian, 65 as African American, and 96 as Asian.

4.      Exhibit F to the Hernaez declaration in support of Defendant's Motion for Summary Judgment is a table ("ABSMC's Table"), produced in response to Plaintiff's discovery requests, listing each physician investigated by the Summit MEC since 19992, and providing some details about each investigation, including the race of the subject physicians.  ABSMC's Table incorrectly identifies the race of the doctor identified as "Physician H" as "non African-American."  As explained in the declaration of Physician H, filed herewith under seal, the race of Physician H is a mix of predominantly Indian, African American and Native American, with some English and Irish.  For that reason, for purposes of analyzing patterns of disparate treatment in ABSMC's Table, Plaintiff treats Physician H as African American.

5.  Attached hereto as Exhibit B– F are true and accurate visual representations that compare the racial composition of physicians reviewed at the MEC level as shown on ABSMC's Table to the racial makeup of the Medical Staff, as shown on Exhibit A hereto.  Exhibit B illustrates that while almost 70% of the Medical Staff is Caucasian, only about 55% of physicians reviewed by the MEC are Caucasian.  In contrast, about 12% of the Medical Staff is African American, but almost 28% of physicians reviewed by the MEC are African American.

6.  Exhibit C illustrates that African American physicians on the Medical Staff face almost three times the risk of MEC review than their Caucasian colleagues.  Specifically, 7.69% of the African American physicians on the Medical Staff are investigated by the MEC while only 2.64% of Caucasian physicians face the same fate.

7.  Exhibit D illustrates that physicians of color, and African Americans in particular, are investigate by the MEC almost exclusively for patient care concerns, while Caucasian physicians are much more likely to be investigated for "behavioral issues" or violations of the bylaws.  Specifically, of the physicians disciplined by the MEC, 30% of Caucasian physicians were disciplined for standard of care issues while 100% of African American physicians were disciplined for those reasons.  The remaining 70% of Caucasian physicians were disciplined for behavioral issues or violations of the bylaws.

8.  Exhibit E illustrates that Caucasian physicians at Summit have less than a 1% chance of having their skill as a physician questioned by the MEC, but well over 7% of African American physicians at Summit have their skill questioned.

9.  Exhibit F illustrates that physicians of color, and African Americans in particular, disproportionably face summary suspension by the MEC.  Specifically 80% of African American physicians who reach the MEC level are summarily suspended while only 40% of Caucasian physicians are summarily suspended.

10. Attached hereto as Exhibit G is a true and accurate copy of a document produced in discovery by ABSMC. The document is a February 13, 2005, letter regarding Dr. Ennix from cardiothoracic surgeon Junaid Kahn to Dr. Isenberg.

11. Attached hereto as Exhibit H is a true and accurate copy of a document produced in discovery by ABSMC. The document is the Summit Medical Center Department of Surgery Peer Review Quality Indicators.

12. Attached hereto as Exhibit I are true and accurate copies of excerpts from the deposition transcript (including relevant exhibits) of Marilyn Barkin, R.N., who gave testimony pursuant to Federal Rule of Civil Procedure section 30(b)(6).

13. Attached hereto Exhibit J are true and accurate copies of excerpts from the deposition transcript (including relevant exhibits) of Joanne Jellin, PsyD., who gave testimony pursuant to Federal Rule of Civil Procedure section 30(b)(6).

14. Attached hereto as Exhibit K are true and accurate copies of excerpts from the deposition transcript (including relevant exhibits) of Leigh I. G. Iverson, M.D.

15. Attached hereto Exhibit L are true and accurate copies of excerpts from the deposition transcript (including relevant exhibits) of Debbie Mogg, who gave testimony pursuant to Federal Rule of Civil Procedure section 30(b)(6).

16. Attached hereto as Exhibit M are true and accurate copies of excerpts from the deposition transcript (including relevant exhibits) of William M. Isenberg, M.D.

17. Attached hereto as Exhibit N are true and accurate copies of excerpts from the deposition transcript (including relevant exhibits) of Russell D. Stanten, M.D.

18. Attached hereto as Exhibit O are true and accurate copies of excerpts from the deposition transcript (including relevant exhibits) of Hon S. Lee, M.D.

19. Attached hereto as Exhibit P are true and accurate copies of excerpts from the deposition transcript (including relevant exhibits) of Steven A. Stanten, M.D.

20. Attached hereto as Exhibit Q are true and accurate copies of excerpts from the deposition transcript (including relevant exhibits) of Lamont Paxton, M.D.

21. Attached hereto as Exhibit R is a true and accurate copy of a document produced in discovery by ABSMC. The document is the meeting minutes from the April 12, 2004, SPRC meeting.

22. Attached hereto as Exhibit S is a true and accurate copy of a document produced in discovery by ABSMC. The document is the Summit Center Medical Staff Rules and Regulations (Revised 2/04) cover page and table of contents, and Chapter 24 ("Peer Review Process"). The Summit Center Medical Staff Rules and Regulations are amended periodically; however, Plaintiff knows of no amendments in the Chapter regarding the Peer Review Process until after the peer review of Dr. Ennix.

23. Attached hereto as Exhibit T are true and accurate copies of excerpts from the deposition transcript (including relevant exhibits) of Dat Ly, M.D.

24. Attached hereto as Exhibit U is a true and accurate copy of the report written by Don Hill, M.D. regarding the same ten cases reviewed by the outside reviewer.

25. Attached hereto as Exhibit V are true and accurate copies of excerpts from the deposition transcript (including relevant exhibits) of Barry Horn, M.D.

26. Attached hereto as Exhibit W is a true and accurate copy of a document produced in discovery by ABSMC. The document is the meeting minutes from the second AHC meeting, which was on August 30, 2004.

27. Attached hereto as Exhibit X are true and accurate copies of documents produced in discovery by ABSMC. These documents are letters written by three Summit Registered Nurses to Drs. Isenberg, Herskowitz and S. Stanten that verify that Dr. Ennix visited the patient at issue.

28. Attached hereto as Exhibit Y is a true and accurate copy of a document produced in discovery by ABSMC. The document is an April 19, 2006, letter from all of the proctors to Dr. Paxton.

29. Attached hereto as Exhibit Z are true and accurate excerpts of the 2003-2004 California CABG Outcomes Reporting Program Report ("CCORP") that show that

5
SWEET DECLARATION          Case No. C 07-2486 WHA

1  Dr. Ennix's mortality rate during the relevant time period was within the acceptable
2  range. The Exhibit also shows that Dr. Iverson's mortality rate for 2003-2004 was higher
3  than that of Dr. Ennix. The Exhibit further shows that Dr. Housman, one of the NMA
4  peer reviewers, had a mortality rate below the acceptable range (identified as "worse").
5  The following pages from the CCORP Report comprise Exhibit Z: The Executive
6  Summary, "Table 5: Surgeon Risk-Adjusted Operative Mortality Results, 2003-2004" for
7  Dr. Ennix, Dr. Housman and Dr. Iverson, and Figure 2: Surgeon Risk-Adjusted Operative
8  Mortality Results for Dr. Ennix, Dr. Housman and Dr. Iverson. (The full report can be
9  obtained from the State's website at
10 http://www.oshpd.ca.gov/HQAD/Outcomes?Studies/cabg/200304HospSurgReport/fullre
11 port.pdf.)

12    30.    Attached hereto as Exhibit AA are true and accurate copies of excerpts
13 from the deposition transcript (including relevant exhibits) of Neil Smithline, M.D.

14    31.    Attached hereto as Exhibit BB is a true and accurate copy of a document
15 produced in discovery by ABSMC. The document is a January 4, 2005, letter from Drs.
16 Paxton and Isenberg to the outside reviewer.

17    32.    Attached hereto as Exhibit CC is a true and accurate copy of a document
18 produced in discovery by ABSMC. The document is a memorandum written by Dr.
19 Isenberg regarding his February 24, 2004, telephone conversation with Dr. Moorstein.

20    33.    Attached hereto as Exhibit DD are true and accurate copies of excerpts
21 from the deposition transcript (including relevant exhibits) of Leland Housman, M.D.

22    34.    Attached hereto as Exhibit EE are true and accurate copies of ABSMC
23 Objections and Responses to Plaintiff's Special Interrogatories, Set One.

24    35.    Attached hereto as Exhibit FF are true and accurate copies of ABSMC
25 Objections and Responses to Plaintiff's Request for Production of Documents, Set Two.

36. Attached hereto as Exhibit GG is the declaration and expert report of Howard Barkan, DrPH, originally submitted in opposition to Defendants' Special Motion to Strike.

37. Attached hereto as Exhibit HH is the declaration and expert report of Richard E. Shaw, M.A., Ph.D., F.A.C.C., F.A.C.A, originally submitted in opposition to Defendants' Special Motion to Strike.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was signed in San Francisco, California.

Dated: March 27, 2008               /s/
                                 Andrew E. Sweet