G. SCOTT EMBLIDGE, State Bar No. 121613
emblidge@meqlaw.com
RACHEL J. SATER, State Bar No. 147976
sater@meqlaw.com
ANDREW E. SWEET, State Bar No. 160870
sweet@meqlaw.com
MOSCONE, EMBLIDGE, & QUADRA, LLP
220 Montgomery Street, Suite 2100
San Francisco, California 94104-4238
Telephone:    (415) 362-3599
Facsimile:    (415) 362-2006

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX JR., M.D.,<br><br>      Plaintiff,<br><br>vs.<br><br>ALTA BATES SUMMIT MEDICAL CENTER,<br><br>      Defendant. | Case No.: C 07-2486 WHA<br><br>**PLAINTIFF'S OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANT ALTA BATES SUMMIT MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:**    **April 25, 2008**<br>**Time:**    **8:00 a.m.**<br>**Dept.:**    **Ctrm. 9, 19th Floor**<br>**Judge:**  **Hon. William H. Alsup**<br><br>**Complaint Filed:**  **May 9, 2007**<br>**Trial Date:**       **June 2, 2008** |

1
2
3
4
5
6
7
8

Plaintiff objects to the following evidence that Defendant Alta Bates Summit Medical Center ("Alta Bates" or "Defendant") has presented in support of its Motion for Summary Judgment.  Under Federal Rule of Civil Procedure 56(e), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Defendant has filed several declarations, including the exhibits attached thereto, that fall short of the standards of admissibility.

9
10

More specifically, Plaintiff hereby objects to the declarations of Drs. Robert Breyer, Jeffrey Breall, Robert Paxton, and William Isenberg as follows:

11
12

## I.  OBJECTIONS TO DECLARATION OF ROBERT H. BREYER

| DECLARATION CITES | OBJECTIONS |
|---|---|
| Paragraph 3 at 3:2-5:  "Throughout my involvement in the focused review of Dr. Ennix's medical records, I saw no evidence of a 'sham peer review' being conducted by either NMA, Mercer, or the Alta Bates Summit Medical Center.  Nor did I see any evidence of racial discrimination against Dr. Ennix by any individual or entity." | Inadmissible opinion testimony; improper legal conclusion. |

## II.    OBJECTIONS TO DECLARATION OF JEFFREY BREALL

| DECLARATION CITES | OBJECTIONS |
|---|---|
| Paragraph 3 at 3:2-5:  "Throughout my involvement in the focused review of Dr. Ennix's medical records, I saw no evidence of a 'sham peer review' being conducted by either NMA, Mercer, or the Alta Bates Summit Medical Center.  Nor did I see any evidence of racial discrimination against Dr. Ennix by any individual or entity." | Inadmissible opinion testimony; improper legal conclusion. |

## III.    OBJECTIONS TO DECLARATION OF LAMONT D. PAXTON

| DECLARATION CITES | OBJECTIONS |
|---|---|
| Paragraph 2 at 1:8-9:  "Dr. Isenberg informed me that he had notified Dr. Ennix of the AHC's appointment." | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e). |
| Paragraph 3 at 1:10-16:  "In a letter to Dr. Ennix dated August 24, 2004, I confirmed the appointment of the AHC, and noted that the investigation would cover his performance of minimally invasive procedures, as well as other | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e). |

| | |
|---|---|
| matters involving his practice, more generally, both at the Summit Campus and the Alta Bates Campus of ABSMC.  I assured him that no conclusions would be drawn on any substantial issues without first giving him an opportunity to comment.  I stated that our intent was to complete our task as soon as possible, but that our top priority was to be fair and complete." | |
| Paragraph 4 at 1:27:  "We also engaged the services of National Medical Audit ('NMA'), a reputable independent peer review organization. . ." | Inadmissible conclusion and opinion that NMA is "reputable"; lack of foundation because the opinion is based on assumed facts regarding NMA. |
| Paragraph 4 at 1:26-2:2:  "We also engaged the services of National Medical Audit ("NMA"), a reputable independent peer review organization, to assist us in reviewing ten (10) specific cases that appeared clearly to involve substantial quality of care issues." | Speculation regarding the motivations of others; speculation regarding the quality of care; lack of foundation and personal knowledge regarding ten specific cases to which witness refers.  Fed. R. Civ. Pro. 56(e). |
| Paragraph 5 at 2:3-9:  "During the course of the AHC's investigation, Dr. Ennix was kept abreast of developments, informed of the issues presented, and allowed to submit materials for NMA's consideration.  Before | Lacks foundation and personal knowledge.  Dr. Paxton fails to reveal the source of any personal knowledge he may have about the investigation; hearsay. |

| | |
|---|---|
| NMA prepared its findings, arrangements were made for Dr. Ennix to have extensive telephone conferences with the two independent practitioners who were assigned by NMA to review the cases.  One was a cardiothoracic surgeon in San Diego, and the other was a cardiovascular surgeon in Chicago." | |
| Paragraph 5 at 2:9-10:  "In a letter to Dr. Isenberg dated April 5, 2005, Dr. Ennix expressed his gratitude for the opportunity to speak with the reviewers and address the issues." | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e). |
| Paragraph 6 at 2:17-21:  "We investigated the issues, and found no reasonable justification for disregarding or discounting the reviewers' findings.  Some of the issues raised by Dr. Ennix had no relevance to the reviewers' professional practices; and the malpractice cases that were listed by Dr. Ennix, without revealing the results, had all been resolved in favor of the reviewers or, in a few instances, settled for small amounts." | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); lack of foundation. |

PLAINTIFF'S OBJECTIONS TO EVIDENCE ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

| | |
|---|---|
| Exhibit A (copy of the AHC's Report and Recommendation). | If submitted for the truth of the matters asserted in the documents, the statements are inadmissible hearsay. Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e). |
| Paragraph 9 at 3:13-15: "On August 1, 2005, the President of the Medical Staff sent Dr. Ennix a copy of the AHC's Report and Recommendation, and invited him to attend a special meeting of the MEC on August 15, 2005, to discuss it. Dr. Ennix was also given the opportunity to supplement his presentation with written materials, if he wished." | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay. Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); lacks foundation and personal knowledge. |
| Paragraph 11 at 4:1-9 (entire paragraph): "I have continued to serve as an available resource to the MEC for purposes of reviewing noteworthy cases or issues that have arisen in Dr. Ennix's practice. For example, in late December, 2005, and early January, 2006, I worked with Steven Stanten, M.D., Chair of the Department of Surgery, to review a series of ten (10) cases, five (5) of which involved complications as noted by Dr. Ennix's proctors. As a result of those cases, Dr. | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay. Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); speculation regarding the motivations of others; lack of foundation; Dr. Paxton fails to reveal the source of any personal knowledge he may have about Dr. Stanten and Dr. Isenberg's decision to summarily suspend Dr. Ennix's clinical privileges. |

PLAINTIFF'S OBJECTIONS TO EVIDENCE ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

| | |
|---|---|
| Stanten and Dr. Isenberg had decided to summarily suspend Dr. Ennix's clinical privileges on December 10, 2005, pending further review.  After we reviewed those cases in detail, we determined that the suspension should be lifted, and it was." | |
| Paragraph 12 at 4:10-18:  "On May 4, 2006, the AHC reviewed Dr. Ennix's proctoring reports, and determined that there were an inadequate number of cases to warrant a conclusion that the proctoring requirements should be lifted.  On July 10, 2006, after reviewing additional cases, the AHC recommended to the MEC that the proctoring requirements be discontinued.  (Dr. Barry Horn resigned from the AHC in April, 2006.)  However, the AHC also recommended that 100% retrospective chart review be conducted on an ongoing basis, by the Chief of the Cardiac Surgery Service and/or his designees.  The Chief of the Service was, and still is, Russell Stanten, M.D.  The MEC adopted these recommendations." | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); speculation regarding the motivations of others; lack of foundation; Dr. Paxton fails to reveal the source of any personal knowledge. |

| | |
|---|---|
| Paragraph 13 at 5:1-3: "Throughout my involvement in the activities described in this Declaration, I have seen no evidence of 'sham peer review' or racial discrimination against Dr. Ennix by any committee or individual." | Inadmissible opinion testimony. Draws improper legal conclusion. |

## IV. OBJECTIONS TO DECLARATION OF WILLIAM M. ISENBERG

| DECLARATION CITES | OBJECTIONS |
|---|---|
| Paragraph 6 at 4:13-21: "Every aspect of the peer review process concerning Dr. Ennix was conducted confidentially within the parameters of California Evidence Code Section 1157. Doctors and Medical Center employees who provided information were told of the confidential nature of the proceeding. Peer review documents were marked 'Confidential' and/or 'Subject to Evidence Code 1157.' To my observation, the Medical Staff and the Medical Staff office personnel have been, and remain, vigilant about protecting the confidentiality of the process as such is crucial to the efficacy of the process, which requires that all involved answer inquiries in a totally | As to the conduct of persons other than Dr. Isenberg, these statements lack foundation and are based on speculation regarding the motivations of others. |

| | |
|---|---|
| candid manner." | |
| Paragraph 7 at 6:3-7: "Additionally, the AHC considered an outside physician review by Dr. Forest Junod of surgeries Dr. Ennix performed in 2002 at the Alta Bates campus. Throughout the process, I, and others, consistently consulted with our Medical Staff counsel, Harry Shulman, Esq. with the San Francisco office of Davis Wright Tremaine, LLP." | Irrelevant; as to the conduct of persons other than Dr. Isenberg, these statements lack foundation and are based on speculation regarding the motivations of others. |
| Paragraph 8 at 5:8-9: "I believe that I have been sued because I was President of the Medical Staff during a period of peer review of Dr. Ennix." | Irrelevant; speculative. |
| Paragraph 8 at 5:9-11: "The role I played in such process is required by the Medical Staff Bylaws and California law governing physician peer review." | Irrelevant; improper legal conclusion. |
| Paragraph 8 at 5:12-15: "I have spent many uncompensated hours on not only this, but on many other peer review processes because I strongly believe that the confidential peer review system is an essential part of providing | Irrelevant. |

PLAINTIFF'S OBJECTIONS TO EVIDENCE ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

| | |
|---|---|
| quality patient care to our community." | |
| Paragraph 8 at 5:17-18:  "At <u>no</u> time did I act with any racially discriminatory or other non-peer review related motivation." | Improper legal opinion. |
| Paragraph 8 at 5:21-25:  "I am very concerned about the false accusations that Dr. Ennix has made against me and the other doctors he has sued, not only because they are untrue and disparaging but also because they will make (and have made) the task of obtaining Medical Staff participation in peer review activities exponentially more difficult.  Even before the onset of this litigation, I had difficult obtaining three members to serve on the AHC appointed to review Dr. Ennix's provision of patient care." | Irrelevant and inadmissible conclusions about the falsity of allegations. |
| Paragraph 8 at 5:26-6:4:  "Four doctors, including two African-Americans, declined my invitation to serve on the AHC.  One individual, a former Medical Staff President, told me that his career had suffered from his being Chief of Staff and that he could not afford to have Dr. Ennix mobilize individuals | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); statements lack foundation and are based on speculation regarding the motivations of others; irrelevant. |

| | |
|---|---|
| against him. Taking time to conduct peer review is itself a burden on a doctor's practice; that burden is multiplied by threats of being sued or otherwise being involved in a litigation process." | |
| Exhibit D | If submitted for the truth of the matters asserted in these documents, the statements in the documents are inadmissible hearsay. Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e). |
| Paragraph 9 at 6:12: "the poor results of the first four minimally invasive valve procedures. . ." | Inadmissible conclusion regarding "poor result"; no foundation that any of the four cases involved "poor results." |
| Paragraph 9 at 6:15-17: "concerns expressed by Steven Stanten, M.D. (Chair of the Surgery Department and of the Surgery Peer Review committee) or to me by anesthesiologists of both medical staffs." | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay. Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e). |
| Paragraph 9:20-21: "Dr. Ennix agreed initially to a temporary, and himself suggested a permanent, moratorium on his performance of such procedures." | Irrelevant. |
| Paragraph 9 at 6:21-7:6 and Exhibit E: | If submitted for the truth of the matters |

PLAINTIFF'S OBJECTIONS TO EVIDENCE ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Additionally, in March 2004, I reviewed a printout of the outcomes of Dr. Ennix's surgeries at the Summit campus from 2000 through February 2004 compared to the surgeries performed by members of his medical group as well as to all cardiothoracic surgeries performed at Summit for the same time period.  In my judgment, that comparison supported the need for further peer review.  Dr. Ennix's open heart surgeries at the Summit campus during that entire period had a mortality rate of 5.705% compared to all open heart surgeries performed during such period (a number which includes Dr. Ennix's procedures) which had a mortality rate of 2.82%.  Dr. Ennix's rate of a return to surgery after open heart surgery was 7.718%; that number for all surgeons (inclusive of Dr. Ennix) was 4.787%.  Additionally, the data for procedures performed by Dr. Ennix in January and February 2004 showed an alarming trend. Dr. Ennix's mortality rate after open heart surgeries increased to 15.385% for that two-

asserted in these documents, the statements in the documents are inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); Dr. Isenberg's conclusions are inadmissible expert opinion testimony and lack any foundation about whether the numbers he cites reflect adjustment for risk factors in patients.

PLAINTIFF'S OBJECTIONS TO EVIDENCE ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

| | |
|---|---|
| month period." | |
| Paragraph 10 at 7:7-12: "Following review by the Surgery Peer Review Committee (which included considering a report done by Dr. Hon lee regarding the minimally invasive valve surgeries) and the expression of concern by that committee with regard to the conduct and documentation of the minimally invasive valve procedures, and in light of what the MEC officers believed was the need to review the Junod report, the MEC determined to convene the AHC." | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay. Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); statements lack foundation and personal knowledge; speculation regarding the motivations of others. |
| Paragraph 10 at 7:15-18: "As noted above, Dr. Ennix agreed, voluntarily, to continue his moratorium on the performance of minimally invasive valve procedures initially until completion of the review process, and later on a permanent basis." | Speculation regarding Dr. Ennix's motivation or state of mind. |
| Paragraph 10 at 7:22-23: "The issues that arose in Dr. Ennix's performance of such procedures have not arisen when others have performed the procedures." | Lack of foundation and personal knowledge. |
| Paragraph 11 at 8:7-12: "I made the decision | No foundation for statements about NMA's |

PLAINTIFF'S OBJECTIONS TO EVIDENCE ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

| | |
|---|---|
| to select NMA. I considered NMA's substantial years of experience in reviewing medical records for quality issues (over twenty years) and the nationwide reputations held by leaders of NMA. I was impressed, for example, by the credentials | experience; statement regarding Dr. Milstein are irrelevant given that no evidence exists that he had any involvement whatsoever in reviewing Dr. Ennix. |
| Paragraph 11 at 8:18-22: "Indicative of the care applied by the MEC to this peer review process is the fact that fees for this outside audit were about $115,000, a number which includes charges for over 170 hours of time spent by the three physician reviewers on chart review, data analysis, consideration of material submitted by Dr. Ennix, speaking with Dr. Ennix, and preparation of the report." | Irrelevant; lack of foundation. |
| Paragraph 12 at 8:27-9:2: "The NMA identified five instances of poor judgment (leading to death in three cases, post-operative cardiac arrest in one case, and severe complications in another case); six instances of substandard technique; and many instances of 'grossly substandard' operative notes." | If submitted for the truth of the matters asserted in the NMA documents, the statements in the documents are inadmissible hearsay. Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); lack of foundation. |
| Paragraph 12 at 9:12-23: "I know this because | If submitted for the truth of the matter asserted, |

PLAINTIFF'S OBJECTIONS TO EVIDENCE ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

| | |
|---|---|
| two Medical Staff leaders (Dr. Fredric Herskowitz, then Vice President of the Medical Staff and Medical Director of the Intensive Care Unit, and Dr. Steven Stanten, Chair of the Surgery Department) saw the chart in the morning of May 6 without any doctor's note. Dr. Ennix thereafter entered a note, which he dated May 5, that however refers to lab values generated on May 6.  While Dr. Ennix insisted that he saw the patient on May 5, there was no contemporaneous note that such was the case; the May 6 note does not describe an adequate physical examination for the first day after open heart surgery; and Dr. Ennix' description of the patient's condition on May 5 (in the May 6 note and during a May 10, 2005 discussion with officers of the MEC and the Chair of the Surgery Department) was inconsistent with the patient's actual condition as demonstrated in the patient's medical records." | the statement is inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); speculation regarding the timing of Dr. Ennix's entry; lack of personal knowledge and foundation. |
| Paragraph 12 at 9:23-26:  "Taken together with the various problems in attending to patients disclosed in the NMA report (such as Dr. | If submitted for the truth of the matters asserted in the NMA documents, the statements in the documents are inadmissible |

| | |
|---|---|
| Ennix's leaving the hospital immediately following surgery so that he was not present when his patient had a cardiac arrest about eight minutes after leaving the OR), I determined that there was an imminent issue of patient safety." | hearsay. Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); lack of foundation and personal knowledge. |
| Paragraph 13 at 10:4-11: "One of the statistics that I presented to the MEC on May 18, 2005, in addition to discussing the circumstances of the May 6 chart notation and the NMA report, was the fact that Dr. Ennix had 28 cases fall out for peer review in the period of 2003 through April 2004 as compared to a mean of seven cases falling out for the other Summit cardiovascular surgeon during the same period. (The term 'fall out' applies to peer review mandated by certain specified occurrences such as a patient death or a return to surgery. The fall-out definitions are set by the Department, with MEC approval, and are applied uniformly to all members.)" | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay. Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); lack of foundation; fails to note that Dr. Ennix performed far more surgeries than his peers so it is not surprising that he would have more cases "fall out" for peer review; Dr. Isenberg again fails to state whether the numbers he cites reflect adjustment for risk factors in patients. |
| Paragraph 13 at 10:20-23: "Additionally, in April and May 2005, Dr. Ennix was repeatedly | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay. Fed. R. |

PLAINTIFF'S OBJECTIONS TO EVIDENCE ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

| notified in writing by the Chair of the Medical Records Committee of the Medical Staff that his records were delinquent and incomplete." | Evid. 802; Fed. R. Civ. Pro. 56(e); lack of foundation. |
| Exhibit K; Paragraph 14 at 11:10-19: "My letter discusses the MEC's analysis of the AHC's recommendation and its consideration of written reports and testimonials submitted by Dr. Ennix.  My 10/11/05 letter notes the conclusions of the AHC, as approved by the MEC, that those who wrote letters on Dr. Ennix's behalf did not appear to have substantial knowledge of the facts considered by the investigatory bodies.  My letter further notes that Dr. Ennix had declined the request of the MEC to provide it with a description of the information presented by Dr. Ennix to the persons who wrote letters on his behalf." | If submitted for the truth of the matters asserted in these documents, the statements in the documents are inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e). |
| Paragraph 15 at 11:20-25:  As noted above, on two occasions Dr. Ennix voluntarily agreed to a restriction on his privileges to perform minimally invasive valve procedures, obviating any need for the MEC to consider taking action against those privileges which might have | Speculation regarding Dr. Ennix's motivation or state of mind. |

| | |
|---|---|
| resulted in hearing rights under Article VIII of the Bylaws.  Specifically, on April 16, 2004, Dr. Ennix voluntarily agreed temporarily, and on April 26, 2004, he agreed | |
| Paragraph 15 at 12:15-19:  "As noted above, on two occasions Dr. Ennix voluntarily agreed to a restriction on his privileges to perform minimally invasive valve procedures, obviating any need for the MEC to consider taking action against those privileges which might have resulted in hearing rights under Article VII of the Bylaws.  Specifically, on April 16, 2004, Dr. Ennix voluntarily agreed temporarily, and on April 26, 2004, he agreed permanently, to not perform minimally invasive valve procedures." | Inadmissible legal conclusion regarding exhaustion of administrative remedies; lack of foundation and personal knowledge. |
| Paragraph 15 at 11:27-12:7:  "Similarly, in May 2005, after Dr. Ennix's surgical privileges were summarily suspended based on the May 5 incident and the contents of the just-received NMA Report, he requested that his privileges be restricted to surgical assisting only, in lieu of the ongoing suspension.  I had informed Dr. | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e). |

PLAINTIFF'S OBJECTIONS TO EVIDENCE ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

| | |
|---|---|
| Ennix of his right to request a hearing under the Bylaws procedure to contest a summary suspension of fourteen days or more (Section 8.2 J of Exhibit A)  On May 19, 2005, when Dr. Ennix requested restriction of his privileges to surgical assisting only, I told him that if the MEC accepted such request, the summary suspension would be lifted and he would forfeit his right to a hearing.  Dr. Ennix told me that he understood such forfeiture." | |
| Exhibit M; Paragraph 16 at 12:22-28:  "By letter dated December 30, 2005 (attached as Exhibit M), in my capacity as President of the Medical Staff and following consultation with Dr. Steven Stanten, Chair of the Surgery Department, and the three other officers of the MEC, I notified Dr. Ennix of a summary suspension of his surgery privileges in light of imminent concerns regarding patient safety. The December 30, 2005 letter notes that there were complications in five out of ten surgeries done since the reinstatement of privileges as indicated by those proctoring Dr. Ennix." | If submitted for the truth of the matters asserted in these documents, the statements in the documents are inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e). |

PLAINTIFF'S OBJECTIONS TO EVIDENCE ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

| | |
|---|---|
| Paragraph 16 at 12:28-13:4:  Some of the proctors brought to my attention these issues, which included Dr. Ennix's apparent difficult with what the proctors told me should have been an uncomplicated procedure and that a patient's chest was closed at the end of a surgery, prior to Dr. Ennix's assuring that adequate control of bleeding had been accomplished." | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); lack of foundation and personal knowledge. |
| Paragraph 17 at 13:22-14:5; Exhibit P:  "Effective February 1, 2006, communications with Dr. Ennix on behalf of the MEC were from Dr. Fredric Herskowitz, who took over the President position at that time.  In July 2006, the MEC, accepting a recommendation of the AHC, lifted the proctoring requirement and imposed a requirement that Dr. Ennix's cases be subject to retrospective chart review by the Chief of the Cardiothoracic Surgery Service or his designee.  Attached hereto and incorporated herein by reference as Exhibit P is a true and correct copy of the July 11, 2006 letter sent by Dr. Herskowitz (with copies to | Lack of foundation; inadmissible hearsay; if Exhibit P and the statements regarding Exhibit P are submitted for the truth of the matters asserted in Exhibit P, the statements are inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e). |

PLAINTIFF'S OBJECTIONS TO EVIDENCE ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

| | |
|---|---|
| those who had been performing proctoring functions and to the chair of the AHC). I am personally familiar with the contents of this letter through my membership in the MEC. This letter explains the determinations reached by the MEC in which I, along with several other MEC members, participated." | |
| Paragraph 18 at 14:6-19 (entire paragraph): "Throughout this process and upon the advice of counsel, I, in my capacity as President of the Medical Staff, provided reports to the Medical Board of California pursuant to Section 805 and to the federal National Practitioner Data Bank pursuant to the Health Care Quality Improvement Act regarding the following actions: (1) the April 2004 agreement by Dr. Ennix to restrict his privileges so as not to perform minimally invasive valve surgery; (2) the May 2005 summary suspension and Dr. Ennix's acceptance thereafter of voluntary restrictions on his privileges; and (3) the October 2005 reinstatement of cardiothoracic surgical privileges subject to proctoring | If submitted for the truth of the matter asserted, the statement is inadmissible hearsay. Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); irrelevant. |

| | |
|---|---|
| restrictions.  Both such oversight agencies were also notified of the lifting of the proctoring requirements in July 11, 2006.  (A willful failure to file a report required by Section 805 is punishable by a fine not to exceed $100,000 per violation.  Section 805(k)).” | |
| Exhibit Q | Inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e). |
| Paragraph 19 at 14:23-15:10:  “Being sued in this lawsuit makes me very reluctant to further participate in peer review of Dr. Ennix notwithstanding my knowledge that the function is critical for patient safety.  This lawsuit appears to me to be a continuation of Dr. Ennix’s pattern, exhibited throughout the peer review described in this declaration, of seeking the intervention of persons or institutions extraneous to the process for the apparent purpose of exerting pressure upon those engaged in the peer review to desist from effectuating our legal and ethical responsibilities for review and correction of | Irrelevant; inadmissible opinion testimony; if submitted for the truth of the matter asserted, the statement is inadmissible hearsay.  Fed. R. Evid. 802; Fed. R. Civ. Pro. 56(e); lack of foundation; speculation; lack of personal knowledge. |

PLAINTIFF’S OBJECTIONS TO EVIDENCE ISO DEFENDANT’S MOTION FOR SUMMARY JUDGMENT
Case No. C 07-2486 WHA

poor patient care outcomes. For example,

Congresswoman Barbara Lee, The Sinkler-

Miller Medical Association, and the NAACP

all wrote letters of complaint about the peer

review of Dr. Ennix to the Medical Center or

other corporate executives. I should note that,

although all of the letters have exhibited an

exposure to only an inaccurate version of the

facts, the Medical Staff and Medical Center

representatives have striven to maintain the

confidentiality obligations that are inherent to

the integrity of the peer review process. This

position, however, has made us regularly

unable to respond substantively to these

attempted interventions by third parties, and

has created significant awkwardness and

tensions."

  Plaintiff will respectfully request the Court at the hearing on the Motion for Summary
Judgment to sustain the above objections and to strike the evidence referred to above.

  Dated: March 27, 2008          Respectfully Submitted,

                                 MOSCONE, EMBLIDGE & QUADRA, LLP

                                 By:_____/s/_____
                                      G. Scott Emblidge
                                      Rachel J. Sater
                                      Andrew E. Sweet
                                 Attorneys for Coyness L. Ennix Jr., M.D.