MAUREEN E. MCCLAIN (State Bar No. 062050)
Email: mcclain@kmm.com
ALEX HERNAEZ (State Bar No. 201441)
Email: hernaez@kmm.com
KAUFF MCCLAIN & MCGUIRE LLP
One Post Street, Suite 2600
San Francisco, California 94104
Telephone:  (415) 421-3111
Facsimile:   (415) 421-0938

Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL CENTER

TAZAMISHA H. IMARA (State Bar No. 201266)
Email: imara@kmm.com
KAUFF MCCLAIN & MCGUIRE LLP
2049 Century Park East
Suite 2690
Los Angeles, CA 90067
Telephone:  (310) 277-7550
Facsimile:   (310) 277-7525

Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL CENTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX, JR., M.D.,<br><br>Plaintiff,<br><br>v.<br><br>ALTA BATES SUMMIT MEDICAL CENTER,<br><br>Defendant. | CASE NO. C 07-2486 WHA<br><br>**DEFENDANT'S MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE RELATING TO MORTALITY STATISTICS**<br><br>DATE:     May 19, 2008<br>TIME:     2:00 p.m.<br>DEPT:    Ctrm. 9, 19th Floor<br>JUDGE:  Hon. William H. Alsup<br><br>COMPLAINT FILED: May 9, 2007<br>TRIAL DATE: June 2, 2008 |

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION IN LIMINE NO. 4                                    CASE NO. C 07-2486 WHA

## I. INTRODUCTION

Defendant Alta Bates Summit Medical Center ("ABSMC" or "the Hospital"), hereby applies for an order *in limine*, directing that Plaintiff Coyness L. Ennix ("Plaintiff"), his counsel, and witnesses be precluded from presenting evidence or argument in the presence of the jury concerning mortality statistics collected by the California Office of Statewide Health Planning and Development's Coronary Artery Bypass Graft Surgery Reporting Program (the "CCORP Statistics"). The statistics do not include any information about the mortality rate incident to valve procedures performed by Plaintiff. These procedures were a significant basis for the peer review of Plaintiff's surgical practices. The CCORP Statistics are not relevant to the issues to be tried in this action. Even if they were found to be relevant, they are substantially more prejudicial than probative – and therefore inadmissible.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Following an extensive peer review of Plaintiff's surgical practices and outcomes, the Summit Medical Staff Medical Executive Committee's ("MEC") restricted Plaintiff to surgical assisting between May and October 2005, and to proctoring between October and July of 2005. This action concerns Plaintiff's claims that the Hospital's decision to refer him for peer review, and MEC's resultant disciplinary actions constituted race discrimination and were in violation of 42 U.S.C. § 1981.

Among the factors examined as part of the peer review process was the mortality rate of Plaintiff's patients. (Decl. of Lamont D. Paxton in Supp. Of ABSMC's Motion to Strike ("Paxton Decl.") ¶ 4.) The mortality statistics utilized in the peer review process compared Plaintiff's mortality rates with those of his partners, as well as with other cardiac surgeons nationwide. (Paxton Decl. ¶ 7.) The Hospital anticipates that Plaintiff will seek to introduce a different set of statistics in an effort to demonstrate that Plaintiff's mortality rate was within acceptable limits, and that another physician at the hospital had a higher mortality rate. It is expected that the CCORP Statistics will be

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION IN LIMINE NO. 4                                    CASE NO. C 07-2486 WHA

introduced in an effort to show that the proffered reasons for the referral peer review and the resulting discipline were false, and therefore pretextual.

The statistics Plaintiff intends to rely upon are collected by the California Office of Statewide Health Planning and Development's Coronary Artery Bypass Graft Surgery Reporting Program. (Plaintiff's MPA in Opposition to ABSMC's MSJ ("Opp. MSJ"), 12:19-13:21.) Based on these statistics, Plaintiff asserts that his "risk-adjusted mortality rate during 2003 and 2004 at ABSMC was 4.79, well within the acceptable range statewide…[and his] peers had similar mortality rates, but . . . at least one Caucasian peer had a risk-adjusted mortality rate at ABSMC of 6.45, over 34 percent higher than Dr. Ennix." (Opp. MSJ 13:1-5.)

The CCORP Statistics list mortality rates for coronary bypass procedures only, and cover only the years 2003 and 2004. (Decl. of Andrew Sweet in Opp. to ABSMC's MSJ ("Sweet Decl."), Ex. Z, p. 12.) By contrast, the statistics utilized in the peer review process that resulted in the restriction of Plaintiff's surgical privileges documented statewide mortality rates associated with *both* valve and coronary bypass procedures. (Paxton Decl., ¶3, Ex. A p. 21.[1]) Plaintiff performed both types of surgeries. In addition, the mortality statistics utilized as part of the peer review of Plaintiff's surgical practices covered the years 1999 through April 30, 2005. (Paxton Decl. ¶ 8, Ex. B.)[2] Plaintiff seeks to introduce the truncated CCORP data that excludes two-thirds of the time period covered by the peer review, and all of the valve procedures performed by Plaintiff.

---

[1] For the Court's convenience, the statistics in question, which compare Plaintiff's mortality rate to that of his appears are attached as Exhibit A to this motion. This data was submitted in support of Defendant's motion for summary judgment as Exhibit B to the Declaration of Lamont D. Paxton.

[2] These statistics demonstrate that the mortality rate associated with valve and coronary bypass procedures performed by Plaintiff was 7.4% during the 6.5 years reviewed, as compared to his partners' overall 3.8% mortality rate. (Paxton Decl., Ex. A. p. 70.)

- 2 -

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION IN LIMINE NO. 4     CASE NO. C 07-2486 WHA

## III. ARGUMENT

### A. The CCORP Statistics Relied Upon by Plaintiff Are Irrelevant.

The Federal Rules of Evidence provide that only relevant evidence is admissible at trial. Relevant evidence is defined as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

F.R.E. 401; *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579, 587. The CCORP statistics fail to meet this basic test of admissibility. It is anticipated that the statistics will be offered as evidence that Plaintiff's mortality rates were on par with those of his peers, not a legitimate object of concern for the Hospital, and indicative of pretext.

The CCORP data addresses only surgical outcomes attendant to coronary bypass procedures. By contrast, the peer review of Plaintiff concerned practices and outcomes incident to both coronary bypass and *valve* procedures. (Paxton Decl. ¶ 3, Ex. A, p. 21.) Indeed, the most negative outcomes examined in the course of the peer review concerned breaches of the standard of care occurring in connection with valve procedures—including, lengthy surgical times, excessive use of blood products and negative patient outcomes, including death. That Plaintiff's mortality statistics are more favorable relative to those of his colleagues if the valve procedures he performed are excluded from the analysis is not probative of any matter at issue in this case.

Moreover, the CCORP statistics Plaintiff intends to rely upon were compiled only after Plaintiff's peer review. Thus, the data which Plaintiff claims undermines the outcome of the peer review process and the subsequent discipline was not even available at the time of the peer review. Plaintiff should not be permitted to second-guess the peer review outcome based on after-the-fact statistics.

KAUFF McCLAIN & McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION IN LIMINE NO. 4                                            CASE NO. C 07-2486 WHA

**B. The CCORP Statistics Are Substantially More Prejudicial Than Probative and Therefore Inadmissible.**

Even assuming, *arguendo*, that the statistical data in question is relevant, it remains inadmissible. "[R]elevance is not always enough. Even though evidence is relevant, the probative value as well as the harmful consequences that might flow from its admission must be assessed." *Coursen v. A. H. Robins Co., Inc.* (9th Cir, 1985) 764 F.2d 1329, 1340, citing *Cohn v. Papke* (9th Cir, 1981) 655 F.2d 191, 194. The statistics Plaintiff seeks to rely upon are significantly more prejudicial than probative, and are inadmissible on that basis pursuant to F.R.E. 403. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

F.R.E. 403. District courts are accorded great latitude in determining whether the prejudicial effect of evidence outweighs its probative value. *Trevino v. Gates* (9th Cir. 1996) 99 F.3d 911, 922. Plaintiff seeks to rely upon the CCORP data precisely because it does not take into account outcomes associated with valve procedures. The CCORP statistics also cover a significantly shorter time period than those which were reviewed as part of the peer review process. As a result of this significantly narrowed scope, the CCORP statistics attribute a somewhat lower mortality rate to Plaintiff's surgeries. The CCORP Statistics pose an unreasonable risk of confusing and misleading the jury with regard to the actual rate of mortality associated with the entirety of Plaintiff's surgical work.

///

///

///

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 4 -

DEFENDANT'S MOTION IN LIMINE NO. 4                          CASE NO. C 07-2486 WHA

## IV. CONCUSION

For each of the foregoing reasons, Defendant Alta Bates Summit Medical Center respectfully requests an order in limine preventing Plaintiff from introducing testimony or evidence related or referring to the CCORP mortality statistics at trial.

DATED:   April 29, 2008

Respectfully submitted,

KAUFF MCCLAIN & MCGUIRE LLP

By: /s/ ALEX HERNAEZ

Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL CENTER

4845-7846-1186.2

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 5 -

DEFENDANT'S MOTION IN LIMINE NO. 4

CASE NO. C 07-2486 WHA

**EXHIBIT A**

CONFIDENTIAL

# APPENDIX B

## Tabular STS Data as Provided to the Ad Hoc Committee by Dr. Ennix

E000657

Case 3:07-cv-02486-WHA    Document 194    Filed 05/12/2008    Page 9 of 16

STS Operative Mortalities: Predicted Risk vs. Observed
Dr. Ennix and Non-Kaiser Surgeons 1/1/1999 - 4/30/05

|  | 1999 |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  | n | Deaths | Predicted Mortality | Mortality | 95% CI Low | 95% CI High |
| CE | 24 | 2 |  | 8.3% | 1.03% | 27.0% |
| ACB only | 17 | 2 | 2.7% | 11.8% | 1.46% | 36.4% |
| Isolated Valve | 2 | 0 | 9.6% | 0.0% | 0.00% | 77.6% |
| ACB + Valve | 0 | 0 | n/a | 0.0% | n/a | n/a |
|  |  |  |  |  |  |  |
| Non CE and Non-Kaiser MDs | 267 | 12 |  | 4.5% | 2.34% | 7.7% |
| ACB only Other MDs | 180 | 8 | 4.0% | 4.4% | 1.94% | 8.6% |
| Isolated Valve Other MDs | 38 | 0 | 3.7% | 0.0% | 0.00% | 7.6% |
| ACB + Valve Other MDs | 17 | 1 | 8.1% | 9.0% | 0.15% | 28.7% |
| Summit total | 291 | 14 |  | 4.8% | 2.66% | 7.9% |

|  | 2000 |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  | n | Deaths | Predicted Mortality | Mortality | 95% CI Low | 95% CI High |
| CE | 56 | 4 |  | 7.1% | 1.98% | 17.3% |
| ACB only | 47 | 1 | 3.1% | 2.1% | 0.05% | 11.3% |
| Isolated Valve | 4 | 0 | 2.2% | 0.0% | 0.00% | 57.2% |
| ACB + Valve | 1 | 1 | 29.7% | 100.0% | 5.00% | 100.0% |
|  |  |  |  |  |  |  |
| Non CE | 297 | 8 |  | 2.7% | 1.17% | 5.2% |
| ACB only Other MDs | 217 | 6 | 3.7% | 2.8% | 1.02% | 5.9% |
| Isolated Valve Other MDs | 26 | 1 | 4.7% | 3.0% | 0.10% | 19.6% |
| ACB + Valve Other MDs | 17 | 0 | 8.4% | 0.0% | 0.00% | 16.2% |
| Summit total | 353 | 12 |  | 3.4% | 1.77% | 5.9% |

|  | 2001 |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  | n | Deaths | Predicted Mortality | Mortality | 95% CI Low | 95% CI High |
| CE | 51 | 3 |  | 5.9% | 1.23% | 16.2% |
| ACB only | 39 | 2 | 2.8% | 5.1% | 0.63% | 17.3% |
| Isolated Valve | 6 | 1 | 4.9% | 16.7% | 0.42% | 64.1% |
| ACB + Valve | 3 | 0 | 3.5% | 0.0% | 0.00% | 63.2% |
|  |  |  |  |  |  |  |
| Non CE | 238 | 11 |  | 4.6% | 2.33% | 8.2% |
| ACB only Other MDs | 152 | 6 | 4.0% | 3.9% | 1.46% | 8.4% |
| Isolated Valve Other MDs | 39 | 0 | 7.3% | 0.0% | 0.00% | 7.4% |
| ACB + Valve Other MDs | 18 | 2 | 7.9% | 10.5% | 1.30% | 33.1% |
| Summit total | 289 | 14 |  | 4.8% | 2.67% | 8.0% |

|  | 2002 |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  | n | Deaths | Predicted Mortality | Mortality | 95% CI Low | 95% CI High |
| CE | 64 | 3 |  | 4.7% | 0.98% | 13.1% |
| ACB only | 46 | 2 | 2.4% | 4.3% | 0.53% | 14.8% |
| Isolated Valve | 6 | 0 | 3.8% | 0.0% | 0.00% | 39.3% |
| ACB + Valve | 1 | 1 | 15.5% | 100.0% | 5.00% | 100.0% |
|  |  |  |  |  |  |  |
| Non CE and Non-Kaiser MDs | 246 | 4 |  | 1.6% | 0.44% | 4.1% |
| ACB only Other MDs | 163 | 3 | 3.0% | 1.8% | 0.38% | 5.3% |
| Isolated Valve Other MDs | 30 | 0 | 6.2% | 0.0% | 0.00% | 9.5% |
| ACB + Valve Other MDs | 18 | 0 | 7.9% | 0.0% | 0.00% | 15.3% |
| Summit total | 310 | 7 |  | 2.3% | 0.91% | 4.6% |

CONFIDENTIAL

## Operative mortalities: Predicted Risk vs. Observed
### Dr. Ennix and Non-Kaiser Surgeons 1/1/1999 - 4/30/05

|  | 2003 | | | | | |
|---|---|---|---|---|---|---|
|  | n | Deaths | Predicted Mortality | Mortality | 95% CI Low | 95% CI High |
| CE | 118 | 10 |  | 8.5% | 4.14% | 15.0% |
| ACB only | 73 | 1 | 3.8% | 1.4% | 0.03% | 7.4% |
| Isolated Valve | 10 | 2 | 2.5% | 20.0% | 2.52% | 55.6% |
| ACB + Valve | 13 | 2 | 12.2% | 15.4% | 1.92% | 45.4% |
|  |  |  |  |  |  |  |
| Non CE and Non-Kaiser MDs | 224 | 12 |  | 5.4% | 2.80% | 9.2% |
| ACB only Other MDs | 131 | 6 | 3.7% | 4.6% | 0.17% | 9.7% |
| Isolated Valve Other MDs | 31 | 2 | 4.8% | 6.5% | 0.79% | 21.4% |
| ACB + Valve Other MDs | 11 | 2 | 6.9% | 18.2% | 2.28% | 51.8% |
| Summit total | 342 | 22 |  | 6.4% | 4.08% | 9.6% |

|  | 2004 | | | | | |
|---|---|---|---|---|---|---|
|  | n | Deaths | Predicted Mortality | Mortality | 95% CI Low | 95% CI High |
| CE | 97 | 9 |  | 9.3% | 4.30% | 16.9% |
| ACB only | 58 | 4 | 3.8% | 6.9% | 1.91% | 16.7% |
| Isolated Valve | 15 | 2 | 5.0% | 13.3% | 1.66% | 40.5% |
| ACB + Valve | 5 | 0 | 12.2% | 0.0% | 0.00% | 45.1% |
|  |  |  |  |  |  |  |
| Non CE and Non-Kaiser MDs | 244 | 10 |  | 4.1% | 2.00% | 7.4% |
| ACB only Other MDs | 127 | 2 | 3.1% | 1.6% | 0.19% | 5.6% |
| Isolated Valve Other MDs | 38 |  | * | 0.0% | 0.00% | 7.6% |
| ACB + Valve Other MDs | 18 |  | * | 5.6% | 0.14% | 27.3% |
| Summit total | 341 | 19 |  | 5.6% | 3.40% | 8.6% |

|  | 2005 | | | | | |
|---|---|---|---|---|---|---|
|  | n | Deaths | Predicted Mortality | Mortality | 95% CI Low | 95% CI High |
| CE | 21 | 1 |  | 4.8% | 0.12% | 23.8% |
| ACB only | 15 | 1 | 6.9% | 6.7% | 0.17% | 32.0% |
| Isolated Valve | 2 | 0 | 2.4% | 0.0% | 0.00% | 77.6% |
| ACB + Valve | 1 | 0 | 1.1% | 0.0% | 0.00% | 95.0% |
|  |  |  |  |  |  |  |
| Non CE and Non-Kaiser MDs | 75 | 2 |  | 2.7% | 0.32% | 9.3% |
| ACB only Other MDs | 38 | 1 | 3.2% | 2.6% | 0.07% | 13.8% |
| Isolated Valve Other MDs | 7 | 0 | 5.2% | 0.0% | 0.00% | 34.8% |
| ACB + Valve Other MDs | 3 | 0 | 6.1% | 0.0% | 0.00% | 63.2% |
| Summit total | 96 | 3 |  | 3.1% | 0.65% | 8.9% |

CONFIDENTIAL

## STS Operative Mortalities: Predicted Risk vs. Observed
### Dr. Ennix and Non-Kaiser Surgeons 1/1/1999 - 4/30/05

| | 1999 through April 2005 total | | | | | |
|---|---|---|---|---|---|---|
| | n** | Deaths | Predicted Mortality | Mortality | 95% CI Low | 95% CI High |
| CE | 431 | 32 | | 7.4% | 5.13% | 10.3% |
| ACB only | 295 | 13 | 3.3% | 4.4% | 2.40% | 7.4% |
| Isolated Valve | 45 | 5 | 3.8% | 11.1% | 3.71% | 24.1% |
| ACB + Valve | 24 | 4 | 10.7% | 16.7% | 4.75% | 37.4% |
| | | | | | | |
| Non CE and Non-Kaiser MDs | 1591 | 59 | | 3.8% | 2.90% | 4.8% |
| ACB only Other MDs | 1008 | 31 | 3.6%* | 3.1% | 2.21% | 4.3% |
| Isolated Valve Other MDs | 207 | 3 | 5.4%* | 1.5% | 0.30% | 4.2% |
| ACB + Valve Other MDs | 103 | 6 | 8.0%* | 5.8% | 2.17% | 12.3% |
| Summit total | 2022 | 91 | | 4.5% | 3.64% | 5.5% |

* Weighted average of relevant predictions weighted by number of patients to which predictions applied

CONFIDENTIAL

G. SCOTT EMBLIDGE, State Bar No. 121613
emblidge@meqlaw.com
RACHEL J. SATER, State Bar No. 147976
sater@meqlaw.com
ANDREW E. SWEET, State Bar No. 160870
sweet@meqlaw.com
MOSCONE, EMBLIDGE, & QUADRA, LLP
220 Montgomery Street, Suite 2100
San Francisco, California 94104-4238
Telephone:    (415) 362-3599
Facsimile:    (415) 362-2006

Attorneys for Plaintiff

REC'D MAY 09 2008

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX JR., M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>ALTA BATES SUMMIT MEDICAL CENTER,<br><br>Defendants. | Case No. C 07-2486 WHA<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE NO. 4 RE MORTALITY STATISTICS**<br><br>**Trial Date:** June 2, 2008<br>**Dept:** Ctrm. 9, 19th Floor<br>**Judge:** Hon. William H. Alsup |

Defendant based its discipline of Dr. Ennix, in part, on his mortality rates. Defendant knows that the data it used to illustrate those mortality rates was faulty. Rather than acknowledge this flaw in its case, Defendant seeks to exclude from evidence the most statistically reliable data about patient mortality for California cardiac surgeons. Why? Because the data shows that Dr. Ennix's mortality rate was no cause for concern, was significantly different from the rate cited by Defendant, and was, in fact, better than at least one white cardiac surgeon at ABSMC.

## I. THE CCORP DATA IS THE BEST AVAILABLE

The State of California compiles statistics relating to every hospital where cardiac surgeries are performed and every cardiac surgeon who performs them. After rigorous statistical analysis, the State publishes this data.[1] Dr. William Weintraub, a nationally recognized epidemiologist and Cardiology Section Chief at Christiana Care Health System in Newark, had this to say about the CCORP data:

> I also reviewed the statistical approach used by the State of California in its report concerning mortality rates in 2003 and 2004 for cardiac surgeons statewide performing isolated coronary bypass surgeries, also known as the CCORP report. The approach taken in the CCORP report is consistent with the best mathematical methods for risk adjustment, using the multivariable approach logistic regression to correct for confounding. In this report Dr. Ennix is not listed as a surgeon with worse performance than peers. His risk adjusted mortality for coronary bypass surgery straddles the state average, meaning that there is no evidence that Dr. Ennix's performance, based on mortality is worse than the state average of his peers. *This report should be considered the definitive assessment of surgical mortality for isolated coronary bypass surgery by surgeon for the State of California.* There are two reasons for this, first related to the large sample size of the control number of surgeons and surgeries (that is all other providers), and the second is that the State of California report is created independently of any one health care system.

See Weintraub Declaration, ¶ 5, filed on March 27, 2008 (emphasis added).

Defendant does not dispute Dr. Weintraub's opinion about the reliability and trustworthiness of CCORP's data. Instead, it argues that the data is irrelevant.

## II. THE CCORP DATA IS DIRECTLY RELEVANT.

The CCORP data deals with precisely the timeframe at issue in this case: 2003-2004. Dr. Ennix was subjected to peer review in early 2004 after he performed his first four minimally invasive surgeries in January and February of 2004. When he was then subjected to further review, that review encompassed six other cases, all but one of which occurred in 2003 (the

---

[1] The report is quite lengthy. It was attached as Exhibit Z to the Declaration of Andrew E. Sweet in opposition to summary judgment filed on March 27, 2008. It is also available on line at http://www.oshpd.cahwnet.gov/HID/Products/Clinical_Data/CABG/03-04fullreport.pdf.

2

PLAINTIFF'S RESPONSE TO DEF'S MOTION IN   Case No. C 07-2486 WHA

remaining case occurred in 2002). Defendant disingenuously argues that the CCORP data is "truncated" because it covers only 2003 and 2004, while the inaccurate data on which Defendant purportedly relied went back to 1999. But Defendant cites no evidence that Dr. Ennix's mortality rates from 1999 to 2002 had any bearing on the peer review that took place in 2005 regarding his performance in cases from 2003 to 2004.

Next, defendant claims the CCORP data is "irrelevant" because it relates only to coronary bypass (or CABG) procedures. Defendant suggests that its Ad Hoc Committee was concerned with Dr. Ennix's mortality rate for other surgical procedures besides CABG procedures. There are three problems with Defendant's argument. First, ten cases of Dr. Ennix were scrutinized. Four were not CABGs – they involved the new MIV technique. It is undisputed that Dr. Ennix agreed not to perform further MIV procedures so his mortality rate regarding those cases is irrelevant. Further, only one MIV procedure had been performed at ABSMC prior to Dr. Ennix's four cases, so there could be no apples-to-apples comparison of mortality rates in MIV cases even if ABSMC had wanted to do one.

Second, the other six cases were *all CABGs*; none were valve procedures. If ABSMC was concerned about Dr. Ennix's outcomes in cases other than CABGs, then why did it not have any of those cases peer reviewed or send any of those cases to its outside "experts"? Indeed, defendant cites no evidence in support of its disingenuous assertion that mortality rates for valve procedures was a "significant basis for the peer review of Plaintiff's surgical practices."

Third, every statistician that has looked at the data on which the AHC relied has concluded that the sample size for non-CABG procedures was so small that no reliable conclusions could be drawn from the data. See, e.g., Weintraub Decl., Ex. A, p. 6. This is true even for the statistician retained by ABSMC's outside expert, Dr. Neil Smithline, as his deposition shows:

Q. Who is Christy Moynihan?

A. She is a health services researcher, slash, statistician person we work with.

3

Q. And so you've worked with her -- you had worked with her frequently prior to this Ennix report?

A. I would not say frequently, but maybe on two or three occasions.

Q. And what kind of assignments had she had on those other occasions?

A. I don't recall. You know, where we needed statistical support or analysis.

Q. That's what I was getting at. She's someone you hired for statistical analysis?

A. Yes.

* * *

Q. And in it I'm going to tell you how I read this, and tell me if this is a fair reading. She was telling you that she looked at two --

A. Starting with the March 6th one?

Q. Yes -- two sets of data, data that involved valve procedures, on the one hand, and the other hand, she looked at data that involved combined CABGs and valves, right?

A. Yes.

Q. And she told you that for the valve cases there were too few cases to do any statistical analysis, right?

A. Yes.

Smithline Deposition: 186:24-187:13; 226:21-227:8

Finally, even if ABSMC had been concerned with non-CABG cases, and even if it were concerned about Dr. Ennix's performance in years before 2003, that would go only to the weight, not the admissibility of the CCORP data.

### III.   THE CCORP DATA SHOWS THAT DR. ENNIX IS NOT AN OUTLIER.

The CCORP data shows the following:

1. In 2003 and 2004, 43 cardiac surgery patients undergoing CABG procedures at ABSMC died.

2. During that period, Dr. Ennix experienced six deaths in 135 CABG procedures at ABSMC, and had a risk-adjusted mortality rate of 4.79.

3. Dr. Ennix's Caucasian colleague, Leigh Iverson, experienced five deaths in 89 CABG procedures at ABSMC, and had a risk-adjusted mortality rate of 6.45.

4. Dr. Ennix's other Caucasian colleague, Russell Stanten, experienced four deaths in 109 CABG procedures at ABSMC, and had a risk-adjusted mortality rate of 3.69.

This data shows a number of things. First, the data on which the AHC purportedly relied does not correlate with the data ABSMC reported to the State, so either the data it reported to the State is false, or it chose to rely on other data that it knew (or should have known) was false.[2]

Second, Dr. Ennix's mortality rate is slightly higher than one Caucasian colleague and slightly lower than another Caucasian colleague. In other words, he is not an outlier.

Third, ABSMC professed concern about patient safety is belied by the fact that it investigated only the deaths involving Dr. Ennix and not the deaths associated with his Caucasian colleagues with similar mortality rates.

## CONCLUSION

For the foregoing reasons, the Court should deny this motion and permit Dr. Ennix to inform the jury about what the best statistical evidence shows about Dr. Ennix's mortality rates during the relevant time frame, and how that data contrasts with the faulty data on which the AHC purportedly relied.

Dated: May 9, 2008

Respectfully submitted,

MOSCONE, EMBLIDGE & QUADRA, LLP

By: _____
G. Scott Emblidge

Attorneys for Plaintiff

---

[2] Defendant's relevance argument based on the fact that the AHC did not review the CCORP data misses the mark. The CCORP data comes from ABSMC (see CCORP report at p.3), so the AHC had the same data at its fingertips. Given its ability to easily access accurate data, the AHC's reliance on inaccurate data to condemn Dr. Ennix is all the more outrageous.