MAUREEN E. MCCLAIN (State Bar No. 062050)
Email: mcclain@kmm.com
ALEX HERNAEZ (State Bar No. 201441)
Email: hernaez@kmm.com
KAUFF MCCLAIN & MCGUIRE LLP
One Post Street, Suite 2600
San Francisco, California 94104
Telephone:  (415) 421-3111
Facsimile:   (415) 421-0938

Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL CENTER

TAZAMISHA H. IMARA (State Bar No. 201266)
Email: imara@kmm.com
KAUFF MCCLAIN & MCGUIRE LLP
2049 Century Park East
Suite 2690
Los Angeles, CA 90067
Telephone:  (310) 277-7550
Facsimile:   (310) 277-7525

Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL CENTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX, JR., M.D.,<br><br>Plaintiff,<br><br>v.<br><br>ALTA BATES SUMMIT MEDICAL CENTER,<br><br>Defendant. | CASE NO. C 07-2486 WHA<br><br>**DEFENDANT'S MOTION IN LIMINE NO. 6 TO EXCLUDE EVIDENCE REGARDING EXISTENCE OF WHITE MALE "CLUB"**<br><br>DATE:  May 19, 2008<br>TIME:  2:00 p.m.<br>DEPT:  Ctrm. 9, 19th Floor<br>JUDGE:  Hon. William H. Alsup<br><br>COMPLAINT FILED: May 9, 2007<br>TRIAL DATE: June 2, 2008 |

---

DEFENDANT'S MOTION IN LIMINE NO. 6                                      CASE NO. C 07-2486 WHA

## I. INTRODUCTION

Defendant Alta Bates Summit Medical Center ("ABSMC" or "the Hospital"), hereby applies for an order *in limine*, directing that Plaintiff Coyness L. Ennix ("Plaintiff"), his counsel, and witnesses be precluded from offering testimony at the trial of this action referring to and describing the white physicians at ABSMC as a "club" of white male physicians. Such testimony is irrelevant and clearly meant to inflame the jury, impute racial motives to White physicians at the Hospital and to serve as a proxy for evidence that Plaintiff was subjected to discrimination. Such testimony is not relevant to any issue to be tried in this action, and is far more prejudicial than probative. The order *in limine* is requested pursuant to Federal Rules of Evidence 401 and 403.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Following an extensive peer review of Plaintiff's surgical practices and outcomes, the Summit Medical Staff Medical Executive Committee's ("MEC") restricted Plaintiff to surgical assisting between May and October 2005, and to proctoring between October and July of 2005. This action concerns Plaintiff's claims that the Hospital's decision to refer him for peer review, and MEC's resultant disciplinary actions constituted race discrimination and were in violation of 42 U.S.C. § 1981.

In connection with opposing the Hospital's Motion for Summary Judgment, Plaintiff made repeated references to White doctors at the Hospital as being members of a "'club' of white male physicians. Specifically, Plaintiff asserts:

- "ABSMC has a history of manipulating the peer review system to eliminate competition from doctors who are not part of a close-knit 'club' of white, male physicians." (Opp. to MSJ 3:7-9.)

- Plaintiff's "peer review process…involved many of the same members of the 'club' that has tried to destroy Dr. Ennix's career.'" (Opp. to MSJ, 3:23-4:1.)

- "The description of the power brokers at ABS<C as a 'club' of white, male physicians is not hyperbole. The majority of the key decision makers regarding Dr. Ennix's punishment are a close-knit group of

-1-

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104

DEFENDANT'S MOTION IN LIMINE NO. 6                                    CASE NO. C 07-2486 WHA

exclusively white, male friends." (Opp. to MSJ, fn. 5, 6:22-23.)

## III. ARGUMENT

ABSMC anticipates that Plaintiff, his witnesses and counsel will seek to introduce testimony referring to White physicians at the Hospital, including Drs. Stanten, Dr. Iverson, Dr. Moorstein and others as members of a "club" of White doctors who were intent on unfairly impairing Plaintiff's medical career. By hammering on White physicians' race and association with one another—in one case consisting of playing golf with one another twice over a period of 15 years—Plaintiff clearly intends to impute racial bias to those physicians.

As an initial matter such evidence is not relevant to any matter at issue in the trial of this action, and therefore is inadmissible under Federal Rule of Evidence 401. That rule provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Reference by Plaintiff, his witnesses and counsel to a "club" of white male physicians at ABSMC, and the fact that these physicians had known each other for some period of time is irrelevant to the issue of whether Plaintiff was subjected to discipline based on discrimination. Indeed, Plaintiff's evidence of the existence of the so-called club is scanty at best. For example, referring to Drs. R. Stanten, S. Stanten, Iverson, Moorstein and Paxton, Plaintiff states: "All of these doctors are white men. All of them golf together." This hardly establishes the existence of a "club." (Opp. to MSJ, fn 5 6:27-28.) The cited testimony in support of Plaintiff's belief that there was a "club" of White men determined to eliminate his practice includes testimony of Dr. Iverson that he "took [Dr. Russell Stanten] out to play golf two, maybe three times over the years we were together" as business associates, and that he never played golf with Dr. Steven Stanten. *See,* Iverson Deposition 43:2-11, Ex. K to Sweet Decl. in Opp. to MSJ. Other cited "evidence" of the existence of an alleged "club" of White males provides no support for such a claim. Plaintiff states that Russell and

- 2 -

Steven Stanten are brothers, that Dr. Iverson was acquainted with the Stantens' father, and knew Dr. Russell Stanten since he was a teenager. (Opp. to MSJ, fn 5, 6:23-25.)

The anticipated testimony regarding a "club" of White physicians is calculated to impute racial bias to the doctors participating in the peer review based solely on negative stereotypes and in the absence of any actual, relevant direct or indirect evidence of discrimination. Plaintiff's attribution of bad motive to White physicians and by extension to the Hospital consists merely of their association—in some cases tenuous—association with one another. This is not relevant to any showing that the actions of White physicians involved in the peer review process acted with racial animus or that African American doctors were subject to disparate treatment. Reference to White male physicians at the Hospital as members of a club, or any similar reference, is therefore inadmissible.

Such testimony is also properly excluded as inadmissible pursuant to Federal Rule of Evidence 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence

Testimony that White physicians at the Hospital constituted a "club" of White. White males is not probative of any issue in this case and can only serve to unfairly prejudice the jury against the Hospital. Clearly by conjuring up the image of a "club" of White male physicians, Plaintiff intends to create prejudice and prejudgment of the motives and actions of the Hospital and those participating the peer review. Such evidence has no place at the trial of this action.

In *Jinro America, Inc. v. Secure Investments, Inc.* (9th Cir. 2001) 266 F.3d 993, 1001, the court of appeal found that the district court improperly admitted testimony of an expert which imputed to Korean companies an "alleged propensity to engage in fraudulent activity." The case involved the trial of a civil action between companies in

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104

which allegations of breach of contract, fraud and racketeering were made. *Id.* at 995-996. The witness in question testified on behalf of the defendants as an expert on "Korean law and the business practice of Korean companies—particularly their alleged propensity to engage in fraudulent activity." *Id.* at 1001. The court rejected the testimony as to these racial stereotypes in part because it was "far more prejudicial than probative and should have been excluded under Rule 403." *Id.* at 1004. The court of appeal noted:

> A number of cases have dealt with the problem of testimony that either directly or indirectly seeks to link a defendant's conduct to that which is said to be typical of a particular racial, ethic group or nationality. Although most such cases involve criminal prosecutions, which implicate constitutional and other considerations that are not wholly applicable in civil litigation, their principles are nonetheless relevant here. Thus, as we recently stated in *Bird v. Glacier Elec. Coop., Inc.*, 253 F.3d 1136, 1151 (9th Cir. 2001):
>
> "[F]airness to parties and the need for a fair trial are important not only in criminal but also in civil proceedings, both of which require due process. Racial stereotyping cannot be condoned in civil cases."

*Jinro* at 1006-1007.

Although the *Jinro* case arose in the context of expert testimony, the principle at issue is properly applied to the instant case. Plaintiff should not be permitted to present irrelevant testimony that other doctors---based on their race and acquaintance with one another--- were somehow pre-disposed to harbor racial bias toward Plaintiff. Nor does testimony that the White physicians at the Hospital belonged to a "club" of white males constitute evidence that Plaintiff was subjected to race discrimination or that African American physicians were disparately treated relative to their White colleagues at the Hospital. Such inflammatory testimony should be excluded at the trial of this action, as its only purpose is to inflame the jury and to exploit racial stereotypes and impute to Defendant racial motives that are unsupported by evidence.

Kauff McClain &
McGuire LLP
One Post Street
Suite 2600
San Francisco, CA 94104

- 4 -

DEFENDANT'S MOTION IN LIMINE NO. 6     CASE NO. C 07-2486 WHA

## IV. CONCUSION

For each of the foregoing reasons, Defendant Alta Bates Summit Medical Center respectfully requests an order in limine preventing Plaintiff from introducing testimony or evidence referring to a White male "club" of physicians at the Hospital during the trial of this action.

DATED: April 29, 2008

Respectfully submitted,

KAUFF MCCLAIN & MCGUIRE LLP

By: /s/ Alex Hernaez
ALEX HERNAEZ

Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL CENTER

4822-6340-1986.1

G. SCOTT EMBLIDGE, State Bar No. 121613
emblidge@meqlaw.com
RACHEL J. SATER, State Bar No. 147976
sater@meqlaw.com
ANDREW E. SWEET, State Bar No. 160870
sweet@meqlaw.com
MOSCONE, EMBLIDGE, & QUADRA, LLP
220 Montgomery Street, Suite 2100
San Francisco, California 94104-4238
Telephone:   (415) 362-3599
Facsimile:    (415) 362-2006

Attorneys for Plaintiff

REC'D MAY 0 9 2008

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX JR., M.D., <br><br> Plaintiff, <br><br> vs. <br><br> ALTA BATES SUMMIT MEDICAL CENTER, <br><br> Defendants. | Case No. C 07-2486 WHA <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 6 RE WHITE MALE "CLUB"** <br><br> Trial Date:  June 2, 2008 <br> Dept:         Ctrm. 9, 19th Floor <br> Judge:       Hon. William H. Alsup |

Dr. Ennix's case alleges institutional racism at ABSMC involving not a written policy, but the attitudes, prejudices, or shared purpose of key decision-makers. If the decision-makers involved did not know each other, or had only limited, purely professional relationships, proving a common attitude, prejudice or purpose of these decision-makers would be difficult. But that is not the case here. In this case, most of these key decision-makers—namely Drs. Steven Stanten, Russell Stanten, Iverson, Paxton and Moorstein—have relatively close, long-standing personal and professional relationships. The evidence that these key players have something more than strictly professional relationships makes the fact of a shared discriminatory attitude, purpose or

MOTION IN LIMINE NO. 6

1

Case No. C 07-2486 WHA

scheme "more probable . . . than it would be without the evidence." FRE 401. Therefore, this evidence is relevant.

The cast of characters and the positions of importance held by them is as follows:

| | |
|---|---|
| Dr. Russell Stanten | Chief of the Cardiothoracic Surgery Peer Review Committee, member of the Surgery Peer Review Committee and a cardiac surgeon |
| Dr. Steven Stanten | Chief of the Surgery Peer Review Committee |
| Dr. Leigh Iverson | Former Chief of the Cardiothoracic Surgery Peer Review Committee, member of the Surgery Peer Review Committee and a cardiac surgeon |
| Dr. Bruce Moorstein | Former Chief of the Surgery Peer Review Committee |
| Dr. Lamont Paxton | Member of the Surgery Peer Review Committee and Chair of the Ad Hoc Committee that reviewed Dr. Ennix |

The relationships among these individuals who helped decide Dr. Ennix's fate include: Drs. Russell and Steven Stanten are brothers. (R. Stanten: 16:19-24)[1] Russell Stanten and Dr. Iverson were business partners for over 10 years until Dr. Iverson retired. (R. Stanten: 5:9-14) Dr. Iverson was acquainted with the Stanten's father, and has known Russell Stanten since he was a teenager. (Iverson Depo: 41:24-41:25) Drs. Iverson and Moorstein are close friends. (Iverson: 154:13-24) Dr. Moorstein played the lead role along with Dr. Steven Stanten in ABSMC's use of outside reviewers to eliminate another minority surgeon – the only other surgeon subjected to outside review. ("Physician H" Decl., ¶¶ 10-14.) Dr. Paxton is a close friend of Dr. Steven Stanten. (Paxton 44:6-45:3; S. Stanten: 244:1-11) All of these doctors are white men. All of them golf together. (Iverson: 43:2-11; 154:3-12; S. Stanten: 244:1-11; 247:15-20.)

---

[1] All deposition transcript excerpts are attached to the Sweet Declaration in Opposition to Summary Judgment.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S     Case No. C 07-2486 WHA
MOTION IN LIMINE NO. 6

1   ABSMC seeks to prevent Dr. Ennix from referring to this group of doctors as a "white,
male 'club.'" But the relationships between these key decision-makers are relevant to Dr.
Ennix's claim, and counsel is entitled to use some "short hand" means of referring to those
relationships. Further, the term "club" is not pejorative; applicable pejorative terms would be
"cabal," "gang," or "sect," for example. And "white" and "male" are merely accurate
descriptions of the members.

Dated: May 9, 2008

Respectfully submitted,

MOSCONE, EMBLIDGE & QUADRA, LLP

By: _____
Rachel J. Sater

Attorneys for Plaintiff