1  MAUREEN E. MCCLAIN (State Bar No. 062050)
   Email: mcclain@kmm.com
2  ALEX HERNAEZ (State Bar No. 201441)
   Email: hernaez@kmm.com
3  KAUFF MCCLAIN & MCGUIRE LLP
   One Post Street, Suite 2600
4  San Francisco, California 94104
   Telephone:  (415) 421-3111
5  Facsimile:  (415) 421-0938

6  Attorneys for Defendant
   ALTA BATES SUMMIT MEDICAL CENTER
7
   TAZAMISHA H. IMARA (State Bar No. 201266)
8  Email: imara@kmm.com
   KAUFF MCCLAIN & MCGUIRE LLP
9  2049 Century Park East
   Suite 2690
10 Los Angeles, CA 90067
   Telephone:  (310) 277-7550
11 Facsimile:  (310) 277-7525

12 Attorneys for Defendant
   ALTA BATES SUMMIT MEDICAL CENTER
13

14              UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16

17 COYNESS L. ENNIX, JR., M.D.,              CASE NO. C 07-2486 WHA

18              Plaintiff,                   **DEFENDANT'S MOTION IN LIMINE
                                             NO. 8 TO EXCLUDE EVIDENCE OF
19 v.                                        "OTHER PHYSICIANS"**

20 ALTA BATES SUMMIT MEDICAL CENTER,         **DATE:**     May 19, 2008
                                             **TIME:**     2:00 p.m.
21              Defendant.                   **DEPT:**     Ctrm. 9, 19th Floor
                                             **JUDGE:**    Hon. William H. Alsup
22
                                             **COMPLAINT FILED:** May 9, 2007
23                                           **TRIAL DATE:** June 2, 2008

24

25

26

27

28

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION IN LIMINE NO. 8                    CASE NO. C 07-2486 WHA

1    **I.    INTRODUCTION**

2    Defendant Alta Bates Summit Medical Center ("ABSMC" or "the Hospital")

3    hereby applies for an order *in limine* directing that Plaintiff Coyness L. Ennix ("Plaintiff"),

4    his counsel, and witnesses be precluded from presenting evidence or argument in the

5    presence of the jury concerning the testimony of any other physician, including but not

6    limited to Jaikrishna Balkissoon, M.D., because such testimony amounts to improper and

7    irrelevant opinions lacking foundation.

8    ABSMC anticipates that Plaintiff may seek to introduce evidence and/or

9    testimony of other physicians, such as Dr. Balkissoon, who will speculate as to the

10   alleged discriminatory nature of Plaintiff's peer review as well as their own alleged

11   mistreatment during the peer review process.  The motion is based upon the ground that

12   such irrelevant and improper testimony is not admissible and must be excluded.

13   **II.    ARGUMENT**

14   **A.    The Anticipated Testimony Of Other Physicians Regarding Plaintiff's Peer Review And/Or Their Alleged Mistreatment During The Peer**
15   **Review Process Is Improper And Irrelevant.**

16   The Federal Rules of Evidence provide that relevant evidence is

17   admissible at trial.  Relevant evidence is defined as:

18   [E]vidence having any tendency to make the
     existence of any fact that is of consequence to the
19   determination of the action more probable or less
     probable than it would be without the evidence.

20
     Fed. R. Evid. 401.
21
     Furthermore, Federal Rule of Evidence 701 defines the scope of
22
     permissible testimony of non-expert witnesses at trial.  Rule 701 provides:
23
24   If the witness is not testifying as an expert, the witness'
     testimony in the form of opinions or inferences is limited to
     those opinions or inferences which are (a) rationally based on
25   the perception of the witness, and (b) helpful to a clear
     understanding of the witness' testimony or the determination
26   of a fact in issue, and (c) not based on scientific, technical, or
     other specialized knowledge within the scope of Rule 702.

27

28

KAUFF McCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-1-

DEFENDANT'S MOTION IN LIMINE NO. 8                                    CASE NO. C 07-2486 WHA

1   In this case, Plaintiff has shown his propensity to rely on the testimony of other

2   physicians who intend to provide evidence having no bearing on this case. For example,

3   in support of Plaintiff's opposition to ABSMC's motion for summary judgment, Plaintiff

4   presented irrelevant evidence of Physician H, Jaikrishna Balkissoon, M.D. In his

5   declaration, Dr. Balkissoon discussed his first year of practice at Hills Physicians HMO in

6   1993; evidence clearly irrelevant to Plaintiff's claims. (3:18-20).[1] Dr. Balkissoon also

7   draws comparisons between his experience during the peer review process and that of

8   Plaintiff's.[2] Dr. Balkissoon's experience during the peer review process has no bearing

9   on this case. The anticipated testimony of Balkissoon is entirely irrelevant and improper

10  for the purpose for which it is offered; namely, to suggest that Plaintiff's peer review

11  occurred because of race discrimination.

12          Furthermore, any anticipated testimony by other physicians offered by

13  Plaintiff that refer to or make comparisons to Plaintiff's peer review and are not rationally

14  based on the perception of the witness would be inadmissible hearsay. Such evidence

15  should be excluded pursuant to Federal Rule of Evidence 802. All references by Dr.

16  Balkissoon to Plaintiff's peer review are hearsay as such information must have been

17  gained solely through discussions with Plaintiff or his counsel. Dr. Balkissoon did not

18  participate in Plaintiff's peer review and had in fact resigned from the Summit Medical

19

20  [1] Citations are to pages and line numbers of the Declaration of "Physician H" in
    Opposition to Defendant's Motion for Summary Judgment. Other irrelevant and hearsay
21  statements by Dr. Balkissoon include: "After my first year of practice, Hill Physicians
    HMO, . . . told me to stop taking breast cancer cases. . . (3:18-20). "Hill Physicians told
22  me if I continued to take such cases, the HMO would drop me" (3:20-21). "When I
    complained to Dr. Moorstein about this extensive review, he responded: 'What are you
23  going to do about it?'" (5:23-24). "I learned from one of my former referring
    gynecologists that Dr. Steven Stanten informed him that I was no longer practicing due
24  to 'trouble at the hospital'..." (8:1-4). "Additionally, I was informed that Dr. Lisa Bailey
    discussed my peer review with a medical staff officer at California Pacific Medical
25  Center..." (8:4-6).
    [2] "...I understand that many of the details of my peer review process are similar to those
26  of Dr. Ennix's" (2:8-9). "Also, like Dr. Ennix, ABMSC targeted me for an extensive and
    protracted peer review process..." (2:12-13). "Like Dr. Ennix's case, ABSMC found an
27  obscure outside peer reviewer who they paid to review cases of mine that they had
    selected, many of which had already been cleared of care issues through the normal
28  review process" (2:16-18).

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION IN LIMINE NO. 8                    CASE NO. C 07-2486 WHA

1    Staff before Plaintiff's peer review process commenced.[3]  A "witness may not testify to a

2    matter unless evidence is introduced sufficient to support a finding that the witness has

3    personal knowledge of the matter."  Fed. R. Evid. 602.  These intended witnesses have

4    no firsthand knowledge of Plaintiff's peer review or the circumstances surrounding the

5    peer review of Plaintiff.  The testimony of any other physician intending to offer evidence

6    similar to that of Dr. Balkisoon is based exclusively on Plaintiff's self-serving and

7    inaccurate account of events.  As such, it should be excluded.

8    **B.    The Anticipated Testimony Of Other Physicians Regarding Plaintiff's**
     **Peer Review And/Or Their Alleged Mistreatment During The Peer**
9    **Review Process Is Improper And Irrelevant.**

10           Moreover, any arguable relevancy is substantially outweighed by Federal

11   Rule of Evidence 403, which provides:

12           Although relevant, evidence may be excluded if its
             probative value is substantially outweighed by the
13           danger of unfair prejudice, confusion of the issues, or
             misleading the jury, or by considerations of undue
14           delay, waste of time, or needless presentation of
             cumulative evidence.

15   References to the peer review of any other physician would require a substantial

16   expenditure of time and lead to undue confusion.  The issues, medical procedures and

17   the decision makers in Dr. Balkissoon's peer review differed substantially from those in

18   Plaintiff's peer review.[4]  Nevertheless, Plaintiff intends to offer evidence that Dr.

19   Balkisson was also subjected to race discrimination regarding his peer review process.

20   However, the Accusation filed by the Medical Board of California as to Dr. Balkisson

21   relative to surgeries Balkissoon performed at Summit Medical Center from January 1998

22   through January 2002 contradicts Dr. Balkissoon's anticipated testimony.[5]  Dr.

23   Balkissoon settled these charges by accepting a stayed license revocation, a three-year

24   probation and mandatory clinical education.  As the State sets minimum standards for

25

26

27   [3] See Dr. Balkissoon's peer review Exhibit F, page 7 to the 2/26/08 Hernaez Declaration.
     [4] See Exh. F to the 2/26/08 Hernaez Declaration.
28   [5] See Exhibit 2(A) to Defendant's Supplemental Request for Judicial Notice ("RJN").

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 3 -

DEFENDANT'S MOTION IN LIMINE NO. 8                                      CASE NO. C 07-2486 WHA

1   patient safety[6], the State's action toward Dr. Balkissoon arising out of the practice that

2   was peer reviewed by the Summit Medical Staff must be seen as negating entirely Dr.

3   Balkissoon's conclusory claim of race discrimination.[7] If Plaintiff is permitted to present

4   such witnesses, separate mini-trials would first be required to determine the validity of

5   their claims, which would confuse the issues pertinent to this case.

6          An examination of the Plaintiff's peer review in the course of this litigation

7   has generated many depositions, the production of thousands of pages of documents

8   and several discovery disputes.  An additional examination of the peer review process of

9   other physician's would require a substantial expenditure of time and lead to undue

10  confusion.

11  **III.    CONCLUSION**

12         Because the testimony of Dr. Balkissoon as well as any other physician

13  concerning Plaintiff's peer review or their alleged mistreatment during the peer review

14  process that Plaintiff intends to introduce is devoid of any evidentiary value, the court

15  should grant ABSMC's motion.

16  DATED:      April 29, 2008          Respectfully submitted,

17                                      KAUFF MCCLAIN & MCGUIRE LLP

18

19                                      By
                                            ALEX HERNAEZ
20

21                                      Attorneys for Defendant
                                        ALTA BATES SUMMIT MEDICAL
22                                      CENTER

23  4848-8857-7538.1

24  _____

25  [6] See *Bonner v. Sisters of Providence Corp.*, 194 Cal. App. 3d 437, 444-446 (1987)
    (Decision of the Medical Board not relevant to mandamus proceedings concerning a
26  Hospital's revocation of certain staff privileges because the hospital had a higher
    standard of care.)
27  [7] Dr. Balkissoon did not exhaust administrative remedies concerning the actions of the
    ABSMC's Medical Staffs to terminate or otherwise restrict his privileges.  Instead, he
28  resigned from the Staffs.  (Exhibit (2)(A) to Defendant's RJN, 3:9-16.)

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 4 -

DEFENDANT'S MOTION IN LIMINE NO. 8                    CASE NO. C 07-2486 WHA

RECD MAY 0 9 2008

1  G. SCOTT EMBLIDGE, State Bar No. 121613
   emblidge@meqlaw.com
2  RACHEL J. SATER, State Bar No. 147976
   sater@meqlaw.com
3  ANDREW E. SWEET, State Bar No. 160870
   sweet@meqlaw.com
4  MOSCONE, EMBLIDGE, & QUADRA, LLP
   220 Montgomery Street, Suite 2100
5  San Francisco, California 94104-4238
   Telephone:    (415) 362-3599
6  Facsimile:    (415) 362-2006

7  Attorneys for Plaintiff

8

9            UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11

12  COYNESS L. ENNIX JR., M.D.,          Case No. C 07-2486 WHA

13          Plaintiff,                   **PLAINTIFF'S OPPOSITION TO
                                         DEFENDANT'S MOTION IN
14      vs.                              LIMINE NO. 8 RE "OTHER
                                         PHYSICIANS"**
15  ALTA BATES SUMMIT MEDICAL
    CENTER,                              **Trial Date:  June 2, 2008**
16                                       **Dept:        Ctrm. 9, 19th Floor**
17          Defendants.                  **Judge:       Hon. William H. Alsup**

18

19          For years, ABSMC has imposed discipline on doctors of color relatively more frequently

20  and more harshly than their Caucasian peers.  ABSMC's brand of racial discrimination is subtle

21  and institution-wide, and it involves not just how harshly the MEC disciplines a doctor under

22  review, but also who ABSMC targets for peer review or discipline at every level and what path

23  that disciplinary process takes.  In a system as specialized, extensive, complex, and secretive as

24  hospital peer review, such institutional racial discrimination is hard to detect on an individual

25  basis.  And so far, ABSMC has gotten away with it in part because lay people have neither the

26  desire nor the expertise to "second guess" a hospital's determination that a particular doctor

27  requires discipline.

28

                                         1

1    ABSMC knows this.  And ABSMC knows that its strength lies in isolating Dr. Ennix's

2    case from any others, and so seeks to exclude other examples of ABSMC's racial discrimination,

3    such as the testimony of Dr. Jaikrishna Balkissoon and "other physicians."  But such evidence is

4    relevant and admissible circumstantial evidence to prove racial discrimination in this case, and

5    its use would not require "separate mini-trials" as ABSMC baldly claims.

## ARGUMENT

7    "Particularly because employers now know better, direct evidence of employment

8    discrimination is rare." *Aragon v. Republic Silver State Disp*, 292 F.3d 654, 662 (9th Cir. 2002).

9    "It is well established that a . . . plaintiff may prove a defendant's discriminatory motive through

10    circumstantial evidence alone." *Beck v. United Food and Commercial Workers Union, Local 99*,

11    506 F.3d 874, 883 (9th Cir. 2007).  Such evidence may include examples of similar

12    discriminatory treatment by the employer of other individuals in a protected class.  *See, e.g., id.*

13    at 884 (trial court considered evidence of gender discrimination against plaintiff's female co-

14    worker, finding it "strengthens the inference that [the union] intentionally discriminated on the

15    basis of sex in handling the grievances of female members.")

16    **I.    DR. BALKISSOON'S TESTIMONY IS RELEVANT AND ADMISSIBLE.**

17    Relevant evidence is "evidence having any tendency to make the existence of any fact

18    that is of consequence to the determination of the action more probable or less probable than it

19    would be without the evidence." FRE 401.  Dr. Balkissoon would testify to his own experience

20    as a doctor of color at ABSMC, not his opinions of Dr. Ennix's case.  Dr. Balkissoon's account

21    of events at ABSMC displays disparate treatment of him in comparison with his Caucasian

22    colleagues, involves similar fact patterns and many of the same key decision-makers.  As such, it

23    tends to "strengthen the inference" that ABSMC intentionally discriminates on the basis of race

24    in its review and discipline of physicians of color, such as Dr. Ennix.  *Beck,* 506 F.3d at 884.

25    Dr. Balkissoon's testimony would include the following evidence, all of which is

26    described in detail in Dr. Balkissoon's declaration, submitted under seal in opposition to

27    summary judgment:

28

2

- He is a physician of color;
- He is a highly trained specialist in Surgical Oncology who sought to bring new techniques and treatments to ABSMC;
- ABSMC administration, including Drs. Moorstein and Steven Stanten, required Dr. Balkissoon to take emergency room call even though it interfered significantly with his developing, busy practice; ABSMC did not make the same request of Dr. Balkissoon's Caucasian partners;
- The Surgery Peer Review Committee ("SPRC") routinely targeted Dr. Balkissoon's challenging cases for review, but did not target similar cases of Dr. Balkissoon's Caucasian partners;
- The SPRC included no Surgical Oncologists (ergo no specialist qualified to review Dr. Balkissoon's challenging cases) and ABSMC administration refused to include a Surgical Oncologist on that committee;
- The SPRC, including Drs. Moorstein and Steven Stanten, decided to conduct a "100% focus review" of Dr. Balkissoon's cases, even though Dr. Balkissoon had no malpractice suits and his partners—both seasoned Surgical Oncologists (who were rarely if ever subject to peer reviews)—had assisted him on many cases and never found fault in his approach.  The review encompassed 64 cases and included cases which had already been reviewed and cleared by the SPRC.  The report concluded that there was nothing "of sufficient seriousness to warrant disciplinary action" and discontinued the review.
- Some months later, the SPRC targeted for peer review yet another case of Dr. Balkissoon's, a particularly challenging case he had presented at a weekly Tumor Board. ABSMC decided to send it for outside review.  Although numerous highly qualified and well known Surgical Oncologists at Stanford and UCSF could have conducted the review, ABSMC chose for the outside review an entirely unknown doctor with relatively little experience in the field located in Salinas.

3

1     • ABSMC also sent to the reviewer thirteen other cases, some of which had already been

2        cleared in the "focus review" and others of which were as much as seven years old.

3     • The outside reviewer cleared the case Dr. Balkissoon had presented at the Tumor Board,

4        but found care issues in some of the other cases. On the basis of that report, in 2003, the

5        SPRC recommended his privileges be summarily suspended.

6        Dr. Balkissoon's story bears striking similarities with the facts of Dr. Ennix's case. For

7   example, both cases involve:

8     • Highly successful physicians of color seeking to introduce new treatments at ABSMC;

9     • Higher scrutiny of the physician of color than his Caucasian colleagues;

10    • Internal peer review by doctors outside the specialty;

11    • Targeting cases for a second peer review after initial clearance of care issues;

12    • Many of the same doctors in positions of authority, specifically, Drs. Steven Stanten,

13       Moorstein, Isenberg and Shaieb.

14    • A summary suspension based on an outside peer review report which found issues with

15       cases that had already been cleared by internal peer review.

16       These facts speak for themselves. A jury could easily consider that Dr. Balkissoon's

17  testimony "strengthens the inference" that ABSMC intentionally discriminates on the basis of

18  race in its review and discipline of successful physicians of color, such as Dr. Ennix. *Beck*, 506

19  F.3d at 884. As such, Dr. Balkissoon's testimony, and that of "other physicians" of color

20  subjected to discrimination at ABSMC, is relevant and admissible.

21       As for ABSMC's statement that the California Medical Board's actions against Dr.

22  Balkissoon "must be seen as negating entirely" Dr. Balkissoon's claim of race discrimination,

23  that question should be left for the jury to decide when it weighs Dr. Balkissoon's testimony.

24  Finally, despite ABSMC's fears, Plaintiff has no need, or intention, of asking Dr. Balkissoon to

25  opine regarding whether ABSMC discriminated again Dr. Ennix on the basis of race.

26

27

28

4

**II.    THE PROBATIVE VALUE OF DR. BALKISSOON'S TESTIMONY OUTWEIGHS ANY PHANTOM CONFUSION OR EXPENDITURE OF TIME.**

1

2    ABSMC asserts that admitting evidence of any other instances of racially discriminatory

3    peer reviews would cause confusion and require a substantial expenditure of time, and that such

4    risks outweigh any probative value. ABSMC's argument is self-serving. The probative value of

5    evidence of similar instances of racial discrimination by ABSMC is high, especially in light of

6    the difficulty in proving racial motive in a specialized, complex system like medical peer review,

7    a system inherently suited for manipulation. Circumstantial evidence of this kind is permitted

8    and indeed necessary to prove disparate treatment cases. *Aragon,* 292 F.3d at 662. Further, its

9    use will not require "separate mini-trials to determine the validity of their claims." ABSMC

10    cited no cases, as Plaintiff knows of none, which require a "separate mini-trial" to screen

11    witnesses to racial discrimination to determine whether their claims would be "valid." Certainly,

12    *Beck* did not appear to require a "separate mini-trial" for that plaintiff's female co-worker who

13    alleged similar discrimination to the plaintiff in that case. *Beck,* 506 F.3d at 884. Equally, Dr.

14    Balkissoon would testify to the ways in which ABSMC treated him differently than his

15    Caucasian peers. The issue would not be the complex question of whether Dr. Balkissoon is a

16    good doctor, an issue that would require its own trial. Again, whether and how much to credit

17    Dr. Balkissoon's testimony, or that of any other witness testifying to disparate treatment at

18    ABSMC, should be left to the jury.

19                                   CONCLUSION

20    Because the testimony of Dr. Balkissoon and other ABSMC physicians is probative and

21    relevant as to whether ABSMC subtly discriminates against physicians of color in the peer

22    review process, it must be admitted.

23    Respectfully submitted,

24    Dated: May 9, 2008        MOSCONE, EMBLIDGE & QUADRA, LLP

25

26    By: _____

27        Rachel J. Sater

Attorneys for Plaintiff

5