G. SCOTT EMBLIDGE, State Bar No. 121613
emblidge@meqlaw.com
RACHEL J. SATER, State Bar No. 147976
sater@meqlaw.com
ANDREW E. SWEET, State Bar No. 160870
sweet@meqlaw.com
MOSCONE, EMBLIDGE, & QUADRA, LLP
220 Montgomery Street, Suite 2100
San Francisco, California 94104-4238
Telephone:    (415) 362-3599
Facsimile:    (415) 362-2006

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX JR., M.D.,<br><br>          Plaintiff,<br><br>     vs.<br><br>ALTA BATES SUMMIT MEDICAL CENTER,<br><br>          Defendant. | Case No.: C 07-2486 WHA<br><br>**PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE LAWYER-EXPERT LEGAL OPINION TESTIMONY OF DEFENDANT'S PROFERRED EXPERT KIMBERLY S. WARE**<br><br>**Trial Date:    June 2, 2008**<br>**Dept.:          Ctrm. 9, 19th Floor**<br>**Judge:         Hon. William H. Alsup** |

    The statements and opinions of Kimberly S. Ware ("Ware") proffered by Defendant in its

expert designation should be excluded at trial because Ms. Ware is not qualified to offer the

statements and opinions and they are inadmissible legal opinions of a "lawyer-expert" that usurp

the role of the Court and Jury.

1

**ARGUMENT**

Defendant hired Ms. Ware to opine as to whether its peer review of Dr. Ennix "conformed to generally accepted standards for the performance of medical staff peer review." (Opening Report of Kimberly S. Ware at p. 1, attached as Exhibit A to Sweet Decl.)  However, Ms. Ware is a healthcare lawyer with no medical training and has never testified as an expert (at deposition or trial) or qualified as an expert witness.  She does not possess specialized knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue.  Her opinions are the type of "taking the expert's word for it" evidence properly excludable since they are based solely on her legal experience and are offered without a sufficient basis or explanation how her experience is reliably applied to the facts of this case.

In addition, Ms. Ware's opinions are improper legal conclusions that usurp the Court's role to define the law of the case and the jury's role to apply the facts to that law.

**1.    Ms. Ware is Not Qualified**

Ms. Ware is not qualified to offer an expert opinion regarding defendant's handling of Dr. Ennix's peer review.

Federal Rule of Evidence 702 states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Expert testimony is admissible only if it is both relevant and reliable.  *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, (1999) (citing *Daubert v. Merrell Dow Pharm.,* 509 U.S. 579 (1993)). The trial judge has a general "gate-keeping" obligation which "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Id.* at 147-148.

Although Ms. Ware has 22 years of legal experience in the heath care field, she is not competent to testify as an expert about the fairness of the peer review process in this case. She has no formal medical training. (Depo. testimony at 6:25-7:1, attached as Exhibit B to Sweet Decl.) She is a lawyer, not a physician, and has not been involved in peer review other than as a legal advisor to Medical Executive Committees or as a fair hearing officer in quasi-judicial proceedings - - a level of peer review that never occurred with Dr. Ennix. Even when Ms. Ware has appeared at MEC peer review meetings, she has appeared to provide legal advice for a discrete period of time and then she left those meetings. (172:10-17)

Ms. Ware has almost no experience, even as a lawyer, with peer review at any level other than the MEC level. Specifically, Ms. Ware may have met one time with a department of surgery peer review body. (66:17-67:1) She may have attended at least one ad hoc committee meeting. (67:7-14) But these are the very levels of peer review at which Dr. Ennix was examined. In other words, any experience Ms. Ware has with peer review proceedings similar to those that involved Dr. Ennix is so limited that she could not possibly qualify as an expert.

In addition, until this case, Ms. Ware never acted as an expert regarding peer review and never provided testimony as an expert witness. (34:5-7) She does not have the proper knowledge, skill, experience, training, or education to assist the trier of fact in this case.

Further, while the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience, the advisory committee notes emphasize that "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Fed. Evid. 702 advisory committee's note.

Here, Ms. Ware repeatedly concludes that defendant's peer review of Dr. Ennix was within acceptable standards. But she cannot define the term "acceptable standard." Instead, she summarily claims that her legal experience forms the basis for her opinion. For example, Ms.

3

EXCLUDE LAWYER-EXPERT LEGAL OPINION
TESTIMONY OF KIMBERLY S. WARE                    Case No. C 07-2486 WHA

1   Ware was asked at her deposition to define "accepted standards."  She answered' "to me it's

2   whether the peer review process was generally compliant with the laws, with the accreditation

3   standards, with licensure regulations, and is practiced by California hospitals as I know them."

4   (56:16-22.) She offers no explanation regarding why her experience is a sufficient basis for the

5   opinion, and how her experience is reliably applied to the facts.  She provided no empirical

6   evidence or studies to support her sweeping conclusion regarding acceptable standards and few

7   anecdotal examples.

8          Ms. Ware is relying primarily on her experience as an attorney; however, she has failed

9   to explain how that experience leads to the opinions reached, why that experience is a sufficient

10  basis for his opinions, and how that experience is reliably applied to the facts in this matter.

11  More specifically, defendant cannot show that Ms. Ware's experience as an attorney in the area

12  of health care law is a sufficient basis for her opinion that defendant investigated and handled Dr.

13  Ennix's peer review properly.

14         Ms. Ware's proclamations are the exact type of  "taking the expert's word for it"

15  evidence that should be excluded.  Her sweeping generalizations are unreliable and should not be

16  admitted as expert opinion.  *See e.g. Jinro America Inc. v. Secure Investments, Inc.*  266 F.3d

17  993, 1006 (9th Cir. 2001); *Daubert v. Merrel Dow Pharmaceuticals, Inc.* 43 F.3d 1311, 1319 (9th

18  Cir. 1995).

19  **2.      The Proffered Opinion is Inadmissible Legal Opinion**

20         Ms. Ware's testimony should also be excluded because it states legal conclusions.

21          "[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion

22  on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct

23  and exclusive province of the court."  *U.S. v. Moran*  493 F.3d 1002, 1008 (9th Cir. 2007);

24  *Hangarter v. Provident Life and Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir.2004)

25

26

27                                                  4

28

Here, Ms. Ware's opinions are almost entirely legal in nature regarding the propriety of defendant's peer review of Dr. Ennix. Ms. Ware is legal counsel and advisor to hospitals. She is not an expert in peer review practices. Her career has been spent primarily advising hospital Medical Executive Committees regarding their legal obligations. Her opinions concern whether the defendant's peer review of Dr. Ennix violated the law. Ms. Ware was hired to opine whether defendant's peer review of Dr. Ennix conformed to acceptable standards for the performance of medical staff peer review. To make that determination, Ms. Ware decided whether the process complied with the laws and regulations. (56:12-57:21; 151:24-152:15) She presented legal conclusions that are within the province of this Court and that will not assist the tier of fact.

Ms. Ware's opening report is instructive. The first approximately 11 pages of the report contain a summary of the legal background of peer review. The next eight pages of the report summarize Ms. Ware's understanding of the facts. The final eight pages essentially restate the facts accompanied by the conclusion that the facts fall within accepted standards of peer review. In the report, Ms. Ware cites cases and makes legal arguments. That is the role of an advocate, not an expert witness.

## 3.    Rule 403 Should Also Preclude Ms. Ware's Testimony

Even if Ms. Ware's testimony might be admissible as expert testimony, it should be excluded under Rule 403's balancing test. "Otherwise admissible expert testimony may be excluded under Fed.R.Evid. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay." *United States v. Hoac,* 990 F.2d 1099, 1103 (9th Cir.1993).

Here, the probative value of Ms. Ware's opinions is insignificant for the reasons stated above. Similarly, the unfair prejudice to Dr. Ennix is high since a jury is likely to put undue emphasis on a legal opinion of Ms. Ware, who would be cloaked with the mantle of an expert, regarding the legality of the peer review n this matter.

## CONCLUSION

The statements and opinions of Ms. Ware proffered by Defendant in its expert designation should be excluded at trial because Ms. Ware is not qualified to offer the statements and opinions and they are inadmissible legal opinions of a 'lawyer-expert' that usurp the role of the Court and Jury.

Dated: February 28, 2008                    Respectfully Submitted,

                                            MOSCONE, EMBLIDGE & QUADRA, LLP


                        By:_____/s/_____
                                            G. Scott Emblidge
                                            Rachel J. Sater
                                            Andrew E. Sweet

                        Attorneys for Coyness L. Ennix Jr., M.D.

## DECLARATION OF ANDREW E. SWEET

I, Andrew E. Sweet, declare:

1.      I am an attorney licensed to practice law in the State of California and in this Court. I am an attorney at Moscone, Emblidge & Quadra, LLP, counsel of record for the Plaintiff.

2.      Attached hereto as Exhibit A is a true and correct copy of the Opening Report of defendant's designated expert Kimberley S. Ware.

3.      Attached hereto as Exhibit B are true and correct copies of excerpts from the deposition taken in this matter on February 29, 2008, of Kimberly S. Ware.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Dated: April 29, 2008                       _____/s/_____

                                            Andrew E. Sweet

6

MAUREEN E. MCCLAIN (State Bar No. 062050)
Email: mcclain@kmm.com
ALEX HERNAEZ (State Bar No. 201441)
Email: hernaez@kmm.com
KAUFF MCCLAIN & MCGUIRE LLP
One Post Street, Suite 2600
San Francisco, California  94104
Telephone:    (415) 421-3111
Facsimile:    (415) 421-0938

TAZAMISHA H. IMARA (State Bar No. 201266)
Email: imara@kmm.com
KAUFF MCCLAIN & MCGUIRE LLP
2049 Century Park East
Suite 2690
Los Angeles, CA  90067
Telephone:    (310) 277-7550
Facsimile:    (310) 277-7525

Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL CENTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYNESS L. ENNIX, JR., M.D.,<br><br>                    Plaintiff,<br><br>v.<br><br>ALTA BATES SUMMIT MEDICAL CENTER,<br><br>                    Defendant. | CASE NO.  C 07-2486 WHA<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE TESTIMONY OF EXPERT WITNESS KIMBERLY S. WARE; DECLARATION OF ALEX HERNAEZ IN SUPPORT THEREOF**<br><br>**DATE:**        May 19, 2008<br>**TIME:**        2:00 p.m.<br>**DEPT:**        Ctrm. 9, 19th Floor<br>**JUDGE:**      Hon. William H. Alsup<br><br>**COMPLAINT FILED:**  May 9, 2007<br>**TRIAL DATE:**        June 2, 2008 |

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA  94104
TELEPHONE (415) 421-3111

1    I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

2            Plaintiff Coyness L. Ennix, Jr. ("Plaintiff" or "Ennix") seeks to prevent

3    Defendant Alta Bates Summit Medical Center's ("ABSMC" or "the Hospital") from

4    proffering testimony of its retained expert, Kimberly S. Ware at the trial of this action.

5    Ms. Ware is an attorney, who has spent her career advising hospitals and medical

6    associations in the area of physician oversight and peer review.  Her experience

7    includes but is not limited to, advising clients on reporting requirements and peer review

8    standards, and serving as a hearing officer on matters of physician discipline.  Plaintiff's

9    request that Ms. Ware be prevented from testifying regarding peer review in California,

10   and whether the peer review of Plaintiff met accepted peer review standards should be

11   denied.  Federal Rule of Evidence 702, which governs the admission of expert

12   testimony, clearly contemplates expert testimony based upon experience and

13   specialized knowledge such as Ms. Ware's.

14           Not only is Ms. Ware qualified, but her testimony is directly relevant to the

15   determination to be made by the jury in this case.  Ms. Ware will provide critical context

16   for the series of events that led to the restriction of Plaintiff's surgical privileges.  Her

17   testimony will be helpful to the trier of fact in understanding why peer review is

18   undertaken, and whether the peer review process in place at ABSMC comported with

19   accepted standards in medical peer review.  The probative value of her testimony is not

20   outweighed by the risk of prejudice or confusing the jury.

21           Ms. Ware's testimony also should not be excluded based on Plaintiff's

22   claim that she will offer inadmissible legal conclusions.  ABSMC does not propose to

23   offer testimony by Ms. Ware regarding the legal question of whether Plaintiff suffered

24   racial discrimination.  Testimony describing legal regulations relevant to physician

25   oversight and peer review—such as laws requiring hospitals to report certain disciplinary

26   actions taken against physicians—does not constitute inadmissible legal opinion.

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA  94104
TELEPHONE (415) 421-3111

- 2 -

## II.    ANTICIPATED TESTIMONY

Kimberly Ware has been retained by ABSMC to provide testimony regarding the origins, purposes, and common practices of peer review of doctors in the State of California.  Ms. Ware is a attorney with more than 20 years experience in the area of "medical staff and medical group operations, including bylaws matters, credentialing and peer review, physician hearings, hearing officer and mediator services...mandated reporting and disciplinary hearings."  (C.V. of Kimberly S. Ware, Ex.1 to Expert Report, p. 1.)[1]  Ms. Ware's experience includes acting as legal advisor to the California Medical Association ("CMA").  Her duties in that role included providing credentialing and peer review services to CMA subsidiary, California Advantage.  Ms. Ware's practice has included serving as a peer review hearing officer, providing legal advice to medical staffs in the area of peer review, representing medical staffs in peer review hearings, and serving as a mediator in cases involving issues of physician oversight and discipline.  (Id.; Ware Depo. 11:22-12:5; 12:23-13:7; 31:2-32:15.)[2]  Her writings include a co-authored guide on peer review law.  (C.V. of Kimberly S. Ware, Ex. 1 to 1/25/08 Expert Report, p. 5.)  Ms. Ware has lectured extensively regarding hospital peer review and provided advice to medical institutions regarding the peer review process.  (Id. at p. 1, 4-5.)

Ms. Ware has been retained to provide testimony regarding the standards and practices applicable to medical peer review, and the origins and bases of the use of the peer review process in California.  She will also offer her opinion regarding whether the peer review of Plaintiff comported with accepted peer review standards.  (ABSMC's Witness List, Ms. Ware's testimony is based upon her knowledge and experience of medical peer review.

---

[1] Ms. Ware's expert report is attached as an exhibit to Plaintiff's motion in limine.
[2] Cited excerpts of Ms. Ware's expert deposition are attached hereto as Exhibit 1.

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S OPP TO PLAINTIFF'S MOT IN LIMINE NO. 3 TO EXCLUDE TESTIMONY OF EXPERT WITNESS KIMBERLY S. WARE; DECLARATION OF ALEX HERNAEZ IN SUPPORT THEREOF    CASE NO. C 07-2486 WHA

III.   **ARGUMENT**

A.   **Plaintiff's Claim That Ms. Ware Does Not Meet The Criteria For Qualification As An Expert Is Without Merit.**

Plaintiff's initial argument is that Ms. Ware lacks the requisite skills, knowledge or experience required to provide expert testimony on the subject of peer review. An examination of Ms. Ware's qualifications in light of the standards for admissibility for expert testimony thoroughly discredits Plaintiff's claim. Ms. Ware is clearly qualified by both expertise and knowledge to provide the proffered expert testimony in this action. Rule 702 "'contemplates a broad conception of expert qualifications.'" *Hangarter v. Provident Life and Accident Insurance Co.* (9th Cir. 2004) 373 F.3d 998, 1015 citing, *Thomas v. Newton Int'l Enterprises* (9th Cir, 1997) 42 F.3d 1266, 1269. In *Hangarter,* the court of appeal addressed a similar challenge to expert qualifications. The court noted that Rule 702 does not prescribe a narrow or rigid set of criteria for expert qualification. In fact, the advisory notes to the rule provide that, "in certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.*

Ms. Ware's experience as a legal advisor has provided her with specialized knowledge regarding statutes and regulations that mandate oversight of physicians, and require hospitals to comply with reporting and monitoring requirements. Over several years, she has advised and assisted medical institutions regarding their peer review programs. (Depo. 62:9-63:5; 64:3-7; 64:24-65:2.) Her advice work alone has exposed her to the peer review processes in use at various California hospitals. She is qualified to testify about why and how medical peer review is used in California, and whether the peer review conducted regarding Plaintiff's surgical practices was in line with peer review programs used by other California medical facilities.

The fact that Ms. Ware does not possess a medical degree also does not support Plaintiff's claim that she is not qualified to offer testimony in this action. Ms. Ware is not providing expert testimony regarding medical diagnosis or treatment.

KAUFF McCLAIN & McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S OPP TO PLAINTIFF'S MOT IN LIMINE NO. 3 TO EXCLUDE TESTIMONY OF EXPERT WITNESS KIMBERLY S. WARE; DECLARATION OF ALEX HERNAEZ IN SUPPORT THEREOF     CASE NO. C 07-2486 WHA

1   Instead, her role is to provide information to the jury about the role of peer review in the

2   medical profession, how the peer review process works, and the legal requirement for

3   physician oversight.  Plaintiff's claim that Ms. Ware should be disqualified because she

4   does not have prior experience as a witness at deposition or trial also is unavailing.

5   Plaintiff cites no authority for the proposition that Ms. Ware cannot be qualified as an

6   expert on this basis.

**B.    Ms. Ware's Testimony Is Relevant To Issues To Be Decided At Trial.**

8           As discussed, Ms. Ware's experience and knowledge qualifies her to

9   provide expert testimony at the trial of this action.  The issue then is whether Ms. Ware's

10  experience and knowledge are sufficient to permit her to provide reliable testimony about

11  the peer review process.  This standard is met so long as her 'qualifying training or

12  experience and resultant specialized knowledge, are sufficiently related to the issues

13  and evidence before the trier of fact [such] that the witness's proposed testimony will be

14  of assistance to the trier of fact.'  *Harrison v. Howmedica* (D. Ariz 2008) 2008 WL

15  906585, 8, citing *In re Apollo Group Inc. Securities Litigation* (D. Ariz 207) 2007 WL

16  3342704, 2.

17          Ms. Ware's testimony is relevant to the jury's consideration of whether the

18  peer review of Plaintiff met accepted standards—or as Plaintiff contends, was tainted by

19  racial bias.  Based on her experience, she can testify regarding whether the various

20  steps taken in the process of reviewing Plaintiff departed from usual practice in the

21  medical field.  For example, her testimony will assist the jury in determining whether the

22  Hospital's referral of Plaintiff's cases to the National Medical Audit ("NMA") for outside

23  review was out of the ordinary in the field of peer review.  Ms. Ware can also provide

24  useful insight regarding whether the group of physicians involved in the peer review of

25  Plaintiff was unusual in size and medical specialization.  Ms. Ware's opinion on these

26  issues will be based upon her observation of hospital peer review practices.  These

27  issues are directly relevant to the case, and are clearly within the permissible scope of

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 5 -

1   her expert testimony, given her knowledge and experience relative to medical peer

2   review.

3        Plaintiff suggests that Ms. Ware's testimony must be limited to her

4   experience with ad hoc committees such as the one that was appointed to undertake the

5   peer review of Plaintiff.  Case law clearly indicates that the permissible scope of Ms.

6   Ware's testimony is not nearly as narrow as Plaintiff claims.  The Supreme Court has

7   noted:

8        [F]ederal Rules 702 and 703 grant expert witnesses
         testimonial latitude unavailable to other
9        witnesses…The Rules grant that latitude to all experts,
         not just to scientific ones.

10   *Kumho Tire Co. Ltd. V. Carmichael* (1999) 526 U.S. 137, 148.  What is important is that

11   Ms. Ware will testify about the procedures commonly used by hospitals to review the

12   practices of their medical staffs—regardless of the technical name given to those

13   procedures.

14

15   **C.    Ms. Ware's Testimony Regarding the Peer Review Process Does Not
             Constitute Inadmissible Legal Opinion.**

16        Plaintiff asserts that Ms. Ware's testimony should be barred because it

17   violates the rule that an expert witness may not express an opinion on an ultimate issue

18   of law.  Contrary to Plaintiff's claim, Ms. Ware report does not include any conclusion

19   about the ultimate issue of law in this case—whether Plaintiff was subjected to race

20   discrimination by ABSMC.  Expert testimony regarding whether the peer review process

21   comported with accepted standards does not constitute as to an ultimate issue of law,

22   and is admissible.  *Hangarter supra*, which involved a claim that an insurance company

23   acted in bad faith, is illustrative on this point.

24        In *Hangarter*, the plaintiff's expert opined that the "[d]efendants failed to

25   comport with industry standards" in terminating the plaintiff's disability benefits.  *Id.* at

26   1016-1017.  The defendant contended that this was impermissible legal opinion, and

27   that the expert's testimony "usurped" the court's role in instructing the jury on issues of

28   law.  *Id.*  The court of appeal rejected the defendant's argument on both counts.  The

- 6 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA  94104
TELEPHONE (415) 421-3111

1  expert did not testify that "he had reached a legal conclusion that Defendants actually

2  acted in bad faith (i.e. an ultimate issue of law)." *Id.* at 1016.  In the instant case, Ms.

3  Ware does not purport to have reached a legal conclusion regarding Plaintiff was

4  discriminated against based on his race, and Plaintiff's argument therefore fails.

5          Plaintiff additionally complains that Ms. Ware's expert report includes

6  citation to statutes and regulations that are relevant to her discussion of the history of

7  hospital peer review, and the standards and practices associated with its use.  For

8  example, Ms. Ware cites portions of the California Code of Regulations requiring that

9  hospitals maintain committees to "monitor the care and treatment rendered to patients."

10  (Ware Rpt. p. 4.)  She also refers to the legal obligation of hospitals to report corrective

11  actions it takes with respect to medical staff to the Medical Board of California, and the

12  penalties associated with the failure to make required reports.  (*Id.*)  This information

13  does not constitute inadmissible legal opinion.  As the court noted in *Hangarter*,

14          Although [plaintiff's expert's] testimony that
            Defendants departed from insurance industry norms
15          relied in part on his understanding of the requirements
            of state law…"a witness may refer to the law in
16          expressing an opinion without that reference rendering
            the testimony inadmissible.  Indeed, a witness may
17          properly be called upon to aid the jury in
            understanding the facts in evidence even though
18          reference to those facts is couched in legal terms."

19  *Id.* at 1017, citing *Sprecht v. Jensen* (10th Cir, 1988) 853 F.2d 805, 809.  Ms. Ware may

20  refer to legal requirements for peer review, and express her opinion about whether the

21  peer review process was in line with applicable standards.  These are legitimate subjects

22  for expert testimony.

23  **D.      The Probative Value Of Ms. Ware's Testimony Is Not Outweighed By
            The Potential For Prejudicial Impact.**

24          Plaintiff's final claim regarding Ms. Ware's proffered testimony is that it is

25  properly barred by Evidence Code section 403, which provides that relevant evidence

26  may be excluded if its probative value is substantially outweighed by its prejudicial

27  impact.  Plaintiff asserts that Ms. Ware's status as an attorney will lead the jury to give

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1    her opinion undue weight when considering "the legality of the peer review." (Plaintiff's

2    MIL 5:25.) As discussed, Ms. Ware's testimony is highly relevant to the issues to be

3    decided in this case. Plaintiff offers no facts to support the bare contention that Ms.

4    Ware's testimony poses an exceptional risk of prejudice that outweighs its probative

5    value. Plaintiff's argument should be disregarded.

6    **IV.**    <u>**CONCLUSION**</u>

7         For each of the foregoing reasons, Defendant ABSMC respectfully

8    requests that the Court deny Plaintiff's Motion in Limine No. 3 to exclude the expert legal

9    opinion testimony of Kimberly S. Ware in its entirety.

10       DATED:       May 9, 2008         KAUFF MCCLAIN & MCGUIRE LLP

11

12                                 By:

13                                       ALEX HERNAEZ

14                                Attorneys for Defendant
                                      ALTA BATES SUMMIT MEDICAL

15                                       CENTER

16

17

18

19

20

21

22

23

24

25

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

## DECLARATION OF ALEX HERNAEZ

1.    I am an attorney with the law firm of Kauff McClain & McGuire LLP, counsel for Defendant Alta Bates Summit Medical Center in the above-captioned action.

2.    I have personal knowledge of the facts stated in this declaration and, if called as a witness, could and would testify competently thereto.

3.    On February 29, 2008, the deposition of Kimberly S. Ware was taken in this action.  Attached hereto as **Exhibit 1** are true and correct copies of cited excerpts from the deposition.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct

Executed this 9th day of May, 2008 at San Francisco, California.

By: _____
ALEX HERNAEZ

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S OPP TO PLAINTIFF'S MOT IN LIMINE NO. 3 TO EXCLUDE TESTIMONY OF EXPERT
WITNESS KIMBERLY S. WARE; DECLARATION OF ALEX HERNAEZ IN SUPPORT THEREOF

CASE NO. C 07-2486 WHA

# EXHIBIT A

00011

1 A.  I LEFT CMA AND WENT TO THE SAN FRANCISCO LAW

2 FIRM OF LATHAM & WATKINS.

3 Q.  FROM ABOUT WHEN TO WHEN?

4 A.  I'M TRYING TO REMEMBER.  IT WAS ABOUT TWO AND

5 A HALF TO THREE YEARS.  I LEFT -- IN 1997, I BELIEVE I

6 LEFT CMA AND WENT TO LATHAM, UNTIL ABOUT 2000,

7 APPROXIMATELY.

8 Q.  THEN WHAT DID YOU DO?

9 A.  THEN I WENT OUT ON MY OWN AND MOVED MY

10 PRACTICE TO OAKLAND AND OPENED A SOLO PRACTICE FOR A

11 WHILE, AND NOW WE'RE STARTING TO GROW AND I HAVE THREE

12 ATTORNEYS.

13 Q.  WAS IT ALWAYS CALLED THE WARE LAW GROUP?

14 A.  NO.  IT WAS CALLED THE LAW OFFICES OF KIM

15 DAVENPORT.  I CAN'T REMEMBER WHETHER "WARE" WAS PART OF

16 THE PICTURE AT THAT POINT.  AND THEN LAW OFFICES OF

17 KIMBERLY DAVENPORT-WARE.  I CHANGED IT TO THE WARE LAW

18 GROUP IN 1997 WHEN I STARTED BRINGING IN NEW

19 ASSOCIATES.

20 Q.  2007?

21 A.  I'M SORRY.  2007, YES.  THANK YOU.

22 **Q.  WHY DID YOU MOVE FROM HANSON TO THE CMA?**

23 **A.  I WAS JUST LOOKING FOR SOMETHING NEW.  I**

24 **WANTED A NEW CHALLENGE.  AND I ACTUALLY WENT FOR AN**

25 **INFORMATIONAL INTERVIEW ABOUT ANOTHER JOB I WAS**

00012

1 THINKING OF TAKING, AND THEY OFFERED ME A JOB AND IT

2 SOUNDED INTERESTING, SO I WENT THERE.

3 Q.   WHAT DID YOU DO THERE?

4 A.   I WAS ALMOST FROM THE BEGINNING PUT IN CHARGE

5 OF THE PEER REVIEW ISSUES THAT OUR MEMBERSHIP FACED.

6 IT WAS A BIG MEMBERSHIP OF PHYSICIANS, AND THEY NEEDED

7 SOMEONE TO FILL THAT SLOT.  WE HAD, AT THE MOST -- AT

8 THE GREATEST NUMBER OF ATTORNEYS, SEVEN IN THE

9 DEPARTMENT, AND WE ALL TOOK DIFFERENT AREAS OF

10 SPECIALTY.

11 THE VERY FIRST THING I WAS GIVEN WAS TO

12 REWRITE THE PEER REVIEW LAW BOOK, AS AN INITIAL

13 PROJECT, ALONG WITH OTHER THINGS.

14 Q.   WHEN YOU SAY YOU WERE ALMOST IMMEDIATELY

15 PUT INTO PEER REVIEW ISSUES, WHAT DOES THAT MEAN,

16 "PEER REVIEW ISSUES"?

17 A.   WELL, CMA HAS AN ORGANIZED MEDICAL STAFF

18 SECTION, AND THEY HAVE REPRESENTATIVES FROM VIRTUALLY

19 EVERY HOSPITAL IN CALIFORNIA, AND THOSE PHYSICIANS MEET

20 ON A REGULAR BASIS AND DEVELOP POLICY RELATED TO

21 CONCERNS OF MEDICAL STAFFS.  A MAJOR ASPECT OF THAT

22 POLICY TENDED TO ADDRESS PEER REVIEW ISSUES.

23 Q.   SO YOUR ROLE WAS WHAT?

24 A.   MY ROLE WAS TO ATTEND THOSE MEETINGS, WRITE

25 MEMORANDA FOR THE COMMITTEES THAT WERE CONSIDERING

00013

1  DIFFERENT ISSUES. THEY WOULD PRESENT ISSUES TO ME, AND

2  I WOULD TRY TO GET THEM THE INFORMATION THEY NEEDED.

3  WE'D TALK ABOUT WHAT THE LAW WAS, WHAT THE LAW SHOULD

4  BE. THEY WOULD RECOMMEND SPONSORING LEGISLATION TO

5  CHANGE THINGS AND THAT SORT OF THING.

6  Q. WHAT WAS THE NAME OF THE COMMITTEE?

7  A. THE ORGANIZED MEDICAL STAFF SECTION.

8  Q. STRIKES ME --

9  A. OMSS.

10  Q. -- AS AN ODD NAME. AS OPPOSED TO THE

11  DISORGANIZED MEDICAL STAFF SECTION? WHAT'S THE

12  RELEVANCE OF THE WORD "ORGANIZED"?

13  A. I DON'T KNOW, TO TELL YOU THE TRUTH. IT'S

14  INTERESTING. THERE IS CASE LAW GOING WAY BACK THAT

15  REFERS TO THE SELF-GOVERNING ORGANIZED MEDICAL STAFF.

16  AND RECENTLY IT'S BEEN THE BIG ISSUE WITH THE

17  JOINT COMMISSION, AS I UNDERSTAND, SINCE I LEFT CMA,

18  BECAUSE SOME HOSPITALS WANT TO SEE THE MEDICAL STAFF AS

19  A WING OF THE HOSPITAL OR AN ARM OF THE HOSPITAL

20  ORGANIZATION AND THE PHYSICIANS AND MEDICAL STAFFS WANT

21  TO KEEP SOME LEVEL OF INDEPENDENCE. IT'S JUST A TERM

22  OF ART THAT THEY'VE USED.

23  Q. YOU DESCRIBED WRITING A NEW EDITION OF

24  THE PEER REVIEW -- WHAT YOU CALL "PEER REVIEW LAW

25  BOOK"?

00031

1  MEDICAL STAFF WORK.

2  Q.  THE WORK YOU DID FOR THE CLINIC THAT

3  INVOLVED BEING A HEARING OFFICER AT -- HEARING A

4  PEER REVIEW MATTER?

5  A.  YES.

6  Q.  WHEN A PEER REVIEW MATTER GETS TO THE

7  POINT OF A HEARING OFFICER BEING APPOINTED, IS

8  THERE A GENERALLY ACCEPTED TERM FOR THAT TYPE OF

9  HEARING?

10  A.  YES.  IT'S, IN MY EXPERIENCE, CALLED A

11  JUDICIAL REVIEW COMMITTEE HEARING, JRC.

12  Q.  GREAT.  AND THAT'S WHAT YOU DID THROUGH

13  THE CLINIC?

14  A.  I WAS RETAINED BY THEIR PROFESSIONAL STAFF,

15  BUT I THINK I WAS PAID BY THE CLINIC.  AND I

16  REPRESENTED NOBODY.  I WAS THE NEUTRAL FOR THE HEARING

17  OFFICER.

18  Q.  AND AT THE JRC PROCEEDINGS, IS THERE

19  USUALLY ONE HEARING OFFICER OR A PANEL?

20  A.  THERE IS A HEARING OFFICER WHO ACTS LIKE AN

21  ADMINISTRATIVE LAW JUDGE, AND THEN THERE IS A PANEL

22  WHICH IS THE ACTUAL JUDICIAL REVIEW COMMITTEE, USUALLY

23  OF PEERS, AND THEN THE PHYSICIAN WITH HIS OR HER

24  ATTORNEY IF HE OR SHE SO CHOOSES, THE HEAD OF THE

25  PROFESSIONAL STAFF LEADERSHIP AND HIS OR HER ATTORNEY.

00032

1  THAT'S USUALLY THE WAY IT'S SET UP.

2  Q.  THE ROLE OF A HEARING OFFICER IS TO MAKE

3  FINDINGS OF FACT AND CONCLUSIONS OF LAW OR WHAT?

4  A.  NO.  THE HEARING OFFICER MERELY RUNS THE

5  PROCESS.  THE FINDINGS OF FACT ARE MADE BY THE JUDICIAL

6  REVIEW COMMITTEE.  THE HEARING OFFICER ASSISTS THEM IN

7  PREPARING THEIR PAPERS.

8  AND WHAT THEY DO, THE ONLY -- YES, THE HEARING

9  OFFICER ASSISTS THEM WITH THE CONCLUSIONS OF WHETHER

10  THEY MET THE STANDARDS UNDER THE LAW, WHETHER THE

11  ACTION -- THE PROPOSED ACTION WAS REASONABLE AND

12  WARRANTED, AND ASSIST THEM WITH ANY LEGAL ADVICE THEY

13  MAY NEED.  BUT THE HEARING OFFICER IS THERE TO WATCH

14  THE PROCESS PRIMARILY.

15  Q.  IF THE HEARING OFFICER IS SUPPOSED TO BE

16  NEUTRAL, HOW WOULD A HEARING OFFICER ASSIST THE

17  COMMITTEE ON LEGAL ISSUES?

18  A.  THE COMMITTEE MIGHT HAVE QUESTIONS -- THEY

19  OFTEN DO -- AND THEY ASK THE HEARING OFFICER.  ALSO,

20  THE HEARING OFFICER INFORMS THE COMMITTEE OF THEIR

21  CHARGE.  "YOU'RE HERE TO HEAR THIS MATTER.  THIS IS THE

22  STANDARD UNDER THE LAW.  YOU WILL BE ASKED AT THE END

23  OF THIS PROCESS TO DETERMINE WHETHER X, Y, AND Z MEET

24  THE STANDARD."  THAT SORT OF THING.

25  Q.  MAYBE I MISUNDERSTOOD YOU.  I THOUGHT YOU

00062

1 A. NO, YOU'RE NOT CORRECT. AT HANSON BRIDGETT, I

2 DID, I'M SURE, GIVE TELEPHONE ADVICE TO SPECIFIC

3 CLIENTS ON SPECIFIC PEER REVIEW MATTERS. I CAN'T

4 RECALL WHAT THEY ARE.

5 Q. IN YOUR ROLE AT LATHAM, THOUGH, YOU

6 PROVIDED ADVICE TO HOSPITALS ABOUT HOW TO DEAL

7 WITH SPECIFIC PEER REVIEW ISSUES, RIGHT?

8 A. TO MEDICAL STAFFS, YES.

9 Q. AND WHO WERE THE CLIENTS THAT YOU ADVISED

10 ON PEER-REVIEW-RELATED ISSUES WHILE AT LATHAM?

11 A. WHO WERE THEY? WELL, ALL THE VARIOUS HOSPITAL

12 CLIENTS THAT WE HAD, HOSPITAL MEDICAL STAFF CLIENTS.

13 Q. WHO ARE?

14 A. SAN JOSE MEDICAL CENTER, FOR EXAMPLE. DO I

15 HAVE TO NAME THESE NAMES, THESE CLIENTS? IT'S

16 PROTECTED CLIENT INFORMATION. I'D RATHER NOT GO THERE.

17 Q. WELL, I'M NOT GOING TO ASK YOU TO REVEAL

18 ATTORNEY-CLIENT COMMUNICATIONS.

19 A. LONG BEACH COMMUNITY MEMORIAL HOSPITAL. I

20 CAN'T EVEN REMEMBER THEM ALL. THERE WERE A NUMBER OF

21 HOSPITALS IN THE TRIAD SYSTEMS WHOSE NAMES I DON'T

22 RECALL. THERE WERE A NUMBER OF HOSPITALS IN THE HCA

23 SYSTEM WHOSE NAMES I DON'T RECALL AT THIS POINT.

24 CEDARS-SINAI MEDICAL CENTER IN BEVERLY HILLS,

25 NORTHRIDGE HOSPITAL UP IN FAIRFIELD. I CAN'T REMEMBER

00063

1 **THE SPECIFIC NAMES OTHER THAN THAT.**

2 **Q.  SO THESE ARE HOSPITALS THAT DURING YOUR**

3 **TIME AT LATHAM YOU PROVIDED ADVICE TO SPECIFICALLY**

4 **ABOUT PEER REVIEW PROCEEDINGS?**

5 **A.  RIGHT.**

6 Q.  WHAT'S THE TRIAD SYSTEM?  WHAT DOES THAT

7 MEAN?

8 A.  WELL, IT'S A SYSTEM THAT I BELIEVE IS BASED IN

9 TEXAS.  IT'S JUST ONE MORE SYSTEM, AND THEY OWN LOTS OF

10 HOSPITALS.

11 Q.  AND HCA, SAME THING?

12 A.  YES.  COLUMBIA/HCA, IT USED TO BE CALLED.  AND

13 I THINK THEY'RE JUST -- I THINK THEY'RE THE TENANT

14 SYSTEM THESE DAYS.

15 Q.  SO WHAT'S YOUR BEST ESTIMATE OF THE TOTAL

16 NUMBER OF HOSPITALS THAT YOU ADVISED ON PEER

17 REVIEW ISSUES WHILE AT LATHAM?  YOU LISTED FOUR

18 AND A COUPLE OF THE SYSTEMS.

19 A.  I DON'T KNOW.  IT WAS MY ENTIRE PRACTICE

20 PRETTY MUCH, OTHER THAN THE ORAL AND MAXILLOFACIAL

21 SURGEONS.  SO IT WAS PROBABLY TWENTY OR SO.  AND A LOT

22 OF IT WAS REPEAT COUNSELING TO THE SAME FOLKS.  SO

23 MAYBE IT WAS FEWER THAN TWENTY.

24 Q.  IN YOUR EXPERIENCE, WHAT'S YOUR BEST

25 ESTIMATE OF THE NUMBER OF HOSPITALS IN CALIFORNIA?

00064

1 BALLPARK.

2 A.  GOSH. I DON'T KNOW.  FIVE HUNDRED MAYBE.

3 Q.  AT THE WARE LAW GROUP, MEANING THE

4 PRACTICE YOU'VE HAD SINCE YOU LEFT LATHAM,

5 APPROXIMATELY HOW MANY HOSPITALS HAVE YOU ADVISED

6 PEER-REVIEW-RELATED MATTERS?

7 A.  I THINK SLIGHTLY OVER TWENTY.

8 Q.  THE SAME MIX OR --

9 A.  NO.  NO.  ACTUALLY, A LOT OF THE ONES THAT I

10 TOOK WITH ME FROM LATHAM & WATKINS I NO LONGER HAVE

11 BECAUSE OF CHANGES IN THEIR CORPORATE LEADERSHIP AND

12 BRINGING ON LARGE FIRMS TO DO ALL OF THEIR LEGAL WORK.

13 SO SOME OF THEM -- I'M TRYING TO THINK IF ANY

14 OF THEM ARE STILL WITH ME.  I HAVE CURRENTLY TWO MAJOR

15 HOSPITAL CLIENTS, AND I DO MOST OF MY WORK FOR THEM,

16 BUT I HAVE ANOTHER COUPLE THAT I DO OCCASIONAL WORK

17 FOR.  AND THE OTHERS I DO VERY OCCASIONAL WORK FOR.

18 BUT TOTAL DURING THAT TIME -- AND THERE WOULD BE MORE

19 WORK FOR ONE AND LESS WORK AND MORE WORK FOR THE OTHER.

20 Q.  WHAT'S THE MAJOR CLIENT?

21 A.  FREMONT.  IT'S WASHINGTON HOSPITAL IN FREMONT.

22 AND ALSO WATSONVILLE COMMUNITY HOSPITAL DOWN IN

23 WATSONVILLE.

24 Q.  WOULD IT BE FAIR TO SAY, THEN, FROM THE

25 TIME YOU LEFT THE CMA YOU'VE ADVISED APPROXIMATELY

00065

1 **THIRTY HOSPITALS ON PEER-REVIEW-RELATED MATTERS?**

2 **A.  PROBABLY.**

3 Q.  IN YOUR REPORT, YOU SAY THAT YOU HAVE

4 SERVED AS THE MEDICAL STAFF'S LEGAL COUNSEL IN

5 MANY CALIFORNIA PEER REVIEW HEARINGS.  WHAT DOES

6 THAT MEAN?  WHAT DOES THAT ROLE ENTAIL?

7 A.  THAT ROLE ENTAILS ADVISING THEM THROUGHOUT THE

8 PEER REVIEW PROCESS AND GOING TO THE HEARING WITH THEM

9 AND ACTING AS THEIR ADVOCATE ON BEHALF OF THE MEDICAL

10 EXECUTIVE COMMITTEE AT THE HEARING.

11 Q.  AND THE HEARING WE'RE TALKING ABOUT IS

12 WHAT YOU EARLIER IDENTIFIED AS THE JRC?

13 A.  RIGHT.

14 Q.  A JUDICIAL HEARING.

15 A.  RIGHT.

16 Q.  AND AS FAR AS YOU KNOW FROM THE RECORDS

17 YOU REVIEWED, NO HEARING LIKE THAT EVER OCCURRED

18 IN THIS CASE, CORRECT?

19 A.  THAT'S CORRECT.

20 Q.  WE'VE GONE THROUGH AT LENGTH YOUR

21 EMPLOYMENT BACKGROUND, AND I HAVE A GENERAL

22 QUESTION FOR YOU, WHICH IS APART FROM WHAT YOU

23 TOLD ME ABOUT YOUR MEDICAL -- YOUR LEGAL PRACTICE

24 IN THE MEDICAL WORLD.

25 IS THERE ANYTHING ELSE ABOUT YOUR